No. 24-6072

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ELI BRIDGE, on behalf of ANDREW BRIDGE, a minor, by his next friends and parents, *et al.*,

Plaintiffs-Appellants

v.

OKLAHOMA STATE DEPARTMENT OF EDUCATION, *et al.*,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
The Honorable Judge Jodi W. Dishman, No. 22-cv-00787-JD

# BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND URGING REVERSAL

KRISTEN CLARKE
Assistant Attorney General

BONNIE I. ROBIN-VERGEER
ELIZABETH PARR HECKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 616-5550

## TABLE OF CONTENTS

PAGE

INTEREST OF THE UNITED STATES ........................................................ 1

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE .................................................................... 3

A. SB615 ..................................................................................... 3

B. Procedural History ................................................................. 4

SUMMARY OF ARGUMENT .................................................................... 6

ARGUMENT

I. The district court erred in dismissing plaintiffs' claim that SB615 violates Title IX. ........................................................ 8

A. SB615 discriminates against transgender students "on the basis of sex" in violation of Title IX. ........................... 9

1. Under Title IX, discrimination "on the basis of sex" occurs when separation or different treatment on the basis of sex causes harm. ...................... 9

2. SB615 violates Title IX because it mandates that recipients treat transgender students differently on the basis of sex in a manner that causes them harm. ............................................ 16

B. Neither Title IX's statutory text nor its regulations authorize recipients to prohibit transgender students from using school restrooms that align with their gender identity. ........................................................................ 18

**TABLE OF CONTENTS (continued): PAGE**


C. Providing unisex, single-occupancy restrooms for the use of transgender students is insufficient under Title IX. .......... 21

II. The district court erred in dismissing plaintiffs' claim that SB615 violates the Equal Protection Clause. .......... 22

A. SB615 warrants heightened scrutiny. .......... 22

B. The district court erred in holding as a matter of law that SB615 survives heightened scrutiny. .......... 23

CONCLUSION .......... 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF DIGITAL SUBMISSION

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*A.C. v. Metropolitan Sch. Dist. of Martinsville*,
75 F.4th 760 (7th Cir. 2023), *cert. denied*,
144 S. Ct. 683 (2024)................................................11, 13, 16-17, 22, 25-26

*Adams v. School Bd. of St. John's Cnty.*,
57 F.4th 791 (11th Cir. 2022) (en banc)..................................... 18-19, 22, 25

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) ..........................5, 7, 9-14, 18, 27-28

*Doe v. Boyertown Area Sch. Dist.*,
897 F.3d 518 (3d Cir. 2018) ..........................................................................21

*Doe v. Rocky Mountain Classical Acad.*,
99 F.4th 1256 (10th Cir. 2024)............................................................... 25-26

*Etsitty v. Utah Transit Auth.*, 502 F.3d 1215 (10th Cir. 2007).......................... 27-28

*Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024) ..................................................9, 12

*Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992)...................................11

*Gossett v. Oklahoma ex rel. Board of Regents for Langston Univ.*,
245 F.3d 1172 (10th Cir. 2001).......................................................................11

*Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110 (9th Cir. 2023).....................11

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir.),
*as amended* (Aug. 28, 2020)..................... 11, 13-14, 16-17, 19, 21, 23-25, 28

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)........................................ 10-11

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) .........................................11

*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024) .............................................10

**CASES (continued):** **PAGE**

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017) ................................................23

*United States v. Bettcher*, 911 F.3d 1040 (10th Cir. 2018),
*vacated on other grounds*, 141 S. Ct. 2780 (2021) ......................................28

*United States v. Brooks*, 751 F.3d 1204 (10th Cir. 2014).......................................28

*United States v. Salazar*, 987 F.3d 1248 (10th Cir. 2021)......................................27

*United States v. Virginia*, 518 U.S. 515 (1996) ................................................22-24

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) ...................................... 13, 17, 21, 23, 25, 28

**STATUTES:**

Education Amendments of 1972, 20 U.S.C. 1681 *et seq*. (Title IX).........................1
20 U.S.C. 1681......................................................................................19
20 U.S.C. 1681(a) ..............................................................................8, 10
20 U.S.C. 1681(a)(1)-(9) ..........................................................................15
20 U.S.C. 1681(a)(4) ................................................................................20
20 U.S.C. 1681(a)(6) ................................................................................20
20 U.S.C. 1682..........................................................................................1
20 U.S.C. 1686...................................................................6-7, 15, 18-20

42 U.S.C. 2000c-6........................................................................................1

42 U.S.C. 2000e-2(a) ....................................................................................9

42 U.S.C. 2000e-2(a)(1)...........................................................................9-10

42 U.S.C. 2000h-2.........................................................................................2

**REGULATIONS:** **PAGE**

U.S. Dep't of Educ., *Final Rule: Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024)....................14-16, 19-20

3 C.F.R. 298 (1980 comp.) (Exec. Order No. 12,250) ....................1

28 C.F.R. 0.51 ....................1

28 C.F.R. Pt. 54....................1

34 C.F.R. Pt. 106....................1

34 C.F.R. 106.12-106.15....................15

34 C.F.R. 106.32(b)(1).................... 15, 19-20

34 C.F.R. 106.33 ....................6-7, 18-19

34 C.F.R. 106.41(b) ....................15

**RULE:**

Fed. R. App. P. 29(a)(5)....................1

## INTEREST OF THE UNITED STATES

The United States has a significant interest in ensuring that all students, including students who are transgender, can participate in an educational environment free from unlawful sex discrimination and that the proper legal standards are applied to claims under Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.* (Title IX), and the Equal Protection Clause. The United States enforces Title IX to protect students from sex discrimination in federally funded education programs and activities. The Department of Justice (DOJ) and the Department of Education enforce Title IX, and both agencies have issued regulations implementing the statute. *See* 28 C.F.R. Pt. 54; 34 C.F.R. Pt. 106. Where it serves as a funding agency or upon referral from another agency, DOJ may enforce Title IX against recipients of federal financial assistance. 20 U.S.C. 1682. In addition, DOJ coordinates federal agencies' implementation and enforcement of Title IX. Exec. Order No. 12,250, 3 C.F.R. 298 (1980 comp.); 28 C.F.R. 0.51.

In addition to its Title IX enforcement authority, DOJ has authority to investigate and resolve certain complaints that a public school is depriving students of equal protection based on sex (and other bases), 42 U.S.C. 2000c-6, and may intervene in cases of general public importance involving alleged denials of the

"equal protection of the laws under the fourteenth amendment to the Constitution," 42 U.S.C. 2000h-2.

The United States files this brief under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES

The United States addresses the following questions:

1. Whether the district court erred in dismissing plaintiffs' claim that Oklahoma Senate Bill 615 (SB615), which mandates that public schools and public charter schools require students to use either single-sex, multiple-occupancy school restrooms consistent with their sex assigned at birth or unisex, single-occupancy restrooms, violates Title IX.

2. Whether the district court erred in determining as a matter of law that SB615 is substantially related to achieving the State's asserted interest in protecting student safety and privacy, and accordingly dismissing plaintiffs' equal protection claim.

## STATEMENT OF THE CASE

### A. SB615

Oklahoma enacted SB615 on May 25, 2022. A.0244-0245[1]; *see* Okla. Stat. tit. 70, § 1-125 (2023). SB615 provides, in relevant part:

> To ensure privacy and safety, each public school and public charter school that serves students in prekindergarten through twelfth grades in this state shall require every multiple occupancy restroom or changing area [to be] designated as follows:
>
> 1. For the exclusive use of the male sex; or
>
> 2. For the exclusive use of the female sex.

*Id.* § 1-125(B). The statute defines "sex" as "the physical condition of being male or female based on genetics and physiology, as identified on the individual's original birth certificate." *Id.* § 1-125(A)(1). The law further states that schools "shall provide a reasonable accommodation to any individual who does not wish to comply with" Subsection B, and that "[a] reasonable accommodation shall be access to a single occupancy restroom or changing room." *Id.* § 1-125(C).

School districts or public charter schools that fail to comply with the statute "shall receive a five percent (5%) decrease in state funding . . . for the fiscal year following the year of noncompliance." Okla. Stat. tit. 70, § 1-125(F). Additionally, "[a] parent or legal guardian of a student enrolled in and physically

---

[1] "A.____" refers to the appendix by page number.

attending a public school district or public charter school shall have a cause of action against the public school district or public charter school for noncompliance with" the law. *Id.* § 1-125(G).[2]

### B. Procedural History

Three transgender minors who attend public schools or public charter schools in Oklahoma, along with their parents, filed a complaint seeking declaratory and injunctive relief and nominal damages against the Oklahoma State Department of Education, the State Superintendent of Public Instruction, members of the Oklahoma State Board of Education, and the Oklahoma Attorney General (collectively, the "State Defendants"), along with three public school districts and a public charter school district (collectively, the "School District Defendants"). A.0010-0011, 0013-0018, 0049-0050. Plaintiffs allege that SB615 violates their rights under Title IX and the Equal Protection Clause. A.0044-0048.[3]

On September 29, 2022, plaintiffs moved for a preliminary injunction barring enforcement of SB615. A.0007. The next month, the State Defendants moved to dismiss plaintiffs' complaint. A.0118-0151. On January 12, 2024, the

[2] The statute lists several exceptions that are not at issue here. *See* Okla. Stat. tit. 70, § 1-125(D).

[3] Though SB615 applies to "changing areas" in addition to restrooms, Okla. Stat. tit. 70, § 1-125(B) (2023), plaintiffs did not seek relief relating to changing areas. *See* A.0251 n.6. The United States thus limits its analysis in this brief to restrooms.

district court granted the State Defendants' motion to dismiss and denied plaintiffs' motion for a preliminary injunction as moot. A.0258-0259.

As relevant here, the district court held that SB615 does not violate the Equal Protection Clause. A.0249-0254. Though the court determined that heightened scrutiny applies (A.0250-0251), it held that "[s]eparating students based off biological sex . . . so that they are able to use the restroom, change their clothes, and shower outside the presence of the opposite sex is an important governmental objective" (A.0251). The court also recognized "maintaining safety in a public-school environment" as an important governmental objective. A.0252 (citation and internal quotation marks omitted). The court held that the statute satisfied heightened scrutiny because "[p]rotecting students' safety and privacy interests in school restrooms and changing areas is undoubtedly closely related to the statute's mandate that all multiple-occupancy restrooms or changing areas be for the exclusive use of either the male or female sex, as determined by 'genetics' or 'physiology.'" A.0253.

The district court further held that SB615 does not violate Title IX. A.0254-0258. The court reasoned that the "ordinary public meaning of the word 'sex' at the time Title IX was enacted in 1972 . . . 'referred to the physiological distinctions between males and females.'" A.0256 (citation omitted). The court distinguished the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020),

which held that firing a person for being gay or transgender violated Title VII of the Civil Rights Act of 1964 (Title VII) because it constituted discrimination "because of sex." The district court asserted that Title IX, unlike Title VII, "explicitly allows schools to 'maintain[] separate living facilities' and 'separate toilet, locker room, and shower facilities' for the 'different sexes.'" A.0257 (alteration in original); *see also* A.0255 (citing 20 U.S.C. 1686 and 34 C.F.R. 106.33).

Having concluded that "[n]o fact-finding conducted by the [c]ourt could change" the "realit[ies]" of the plaintiffs' sexes assigned at birth, the district court granted the State Defendants' motion to dismiss and denied as moot plaintiffs' motion for a preliminary injunction. A.0258-0259.

On February 5, 2024, the School District Defendants moved for judgment on the pleadings. A.0260-0263. The district court granted the motion "for the same reasons it granted the State Defendants' [m]otion to [d]ismiss," and entered a judgment dismissing the complaint as to all defendants. A.0269-0270. Plaintiffs timely appealed. A.0271-0273.

## SUMMARY OF ARGUMENT

The district court erred in granting defendants' motions to dismiss and for judgment on the pleadings on plaintiffs' claims under both Title IX and the Equal Protection Clause.

1. The district court erred in dismissing plaintiffs' claims under Title IX. Under the Supreme Court's reasoning in *Bostock v. Clayton County*, 590 U.S. 644 (2020), discrimination based on gender identity necessarily constitutes sex discrimination. *Bostock* clarified that a defendant engages in sex discrimination when it treats an individual differently than it would have had the individual been assigned a different sex at birth, and the differential treatment injures the individual. *Bostock*'s analysis for determining whether an action constitutes discrimination based on sex applies with equal force to Title IX.

By forcing transgender students to use either single-sex, multiple-occupancy restrooms that do not align with their gender identity or unisex, single-occupancy restrooms, SB615 treats each student differently than it would have if that student had been assigned a different sex at birth. Moreover, plaintiffs allege that this differential treatment injures them. Therefore, plaintiffs adequately allege discrimination based on sex in violation of Title IX.

The district court further erred in holding that notwithstanding *Bostock*, Title IX and its implementing regulations authorize recipients to exclude transgender students from restrooms that align with their gender identity. The provisions the court cited for this conclusion either stand for the unremarkable point that having school restrooms that are separated by sex is permissible (34 C.F.R. 106.33) or do not apply to school restrooms at all (20 U.S.C. 1686).

2. Though it correctly held that SB615 imposes a sex-based classification and, as such, warrants heightened scrutiny under the Equal Protection Clause, the district court erred in holding as a matter of law that the statute satisfied this demanding standard. Under heightened scrutiny, the burden is on the defendant to demonstrate that a challenged law or policy substantially furthers important government interests—here, defendants' asserted interest in protecting student safety and privacy.

Plaintiffs adequately allege that excluding transgender students from single-sex, multiple-occupancy restrooms that align with their gender identity does not further the State's asserted interests in student safety or privacy. The district court thus erred in dismissing plaintiffs' equal-protection claim at this early stage.

## ARGUMENT

### I. The district court erred in dismissing plaintiffs' claim that SB615 violates Title IX.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. 1681(a). By mandating that public schools and public charter schools require students to use either multiple-occupancy school restrooms consistent with their sex assigned at birth or single-occupancy restrooms, SB615 discriminates against transgender students on the basis of sex in violation of Title

IX. And contrary to the district court's reading, neither the Title IX regulations permitting recipients to provide sex-separate restrooms nor the statutory provision permitting them to maintain sex-separate living facilities authorizes schools to prohibit transgender students from using restrooms that align with their gender identity.

### A. SB615 discriminates against transgender students "on the basis of sex" in violation of Title IX.

#### 1. Under Title IX, discrimination "on the basis of sex" occurs when separation or different treatment on the basis of sex causes harm.

SB615 violates Title IX because it discriminates against transgender students by treating them differently "on the basis of sex," thereby causing them harm, and such differential treatment does not fall into one of the statutory exclusions from Title IX's general nondiscrimination mandate. That conclusion follows directly from the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), and this Court's decision in *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024).

a. In *Bostock*, the Supreme Court held that firing a gay or transgender individual because of their sexual orientation or gender identity violates Title VII, which makes it "unlawful . . . to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. 2000e-2(a) and (a)(1). The Court explained that the word "discriminate" refers to "distinctions or differences in treatment that injure protected individuals." *Bostock*, 590 U.S. at 681 (citation omitted); *see also*

*Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) (citation omitted) (clarifying that the term "discriminate" in Title VII refers to "differences in treatment that injure" employees).

The *Bostock* Court further explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation." 590 U.S. at 656-657 (citation omitted). "[S]ex is necessarily a but-for cause" of discrimination on the basis of gender identity, the Court explained, "because it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Id.* at 660-661 (emphasis omitted). Such discrimination "penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Id.* at 660. That is so even if "sex" in Title VII "refer[s] only to biological distinctions between male and female." *Id.* at 655.

*Bostock*'s analysis of Title VII's "because of" language, 42 U.S.C. 2000e-2(a)(1), applies with equal force to Title IX's prohibition on discrimination "on the basis of sex," 20 U.S.C. 1681(a). The Supreme Court has long used the phrase "on the basis of" interchangeably with Title VII's "because of" language when discussing Title VII's causation standard, including in *Bostock* itself. *See* 590 U.S. at 650 ("[I]n Title VII, Congress outlawed discrimination in the workplace on the basis of . . . sex."); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176

(2009) (explaining statutory phrase "based on" has the same meaning as the phrase "because of" (citation omitted)). Title IX thus imposes a causation standard no more stringent than but-for causation under Title VII.

Courts—including this Circuit—consistently rely on interpretations of Title VII's prohibition against discrimination "because of . . . sex" to interpret Title IX's textually similar provision. *See, e.g.*, *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)); *Gossett v. Oklahoma ex rel. Board of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) ("Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims."). And, as relevant here, several courts have already concluded that, in light of *Bostock*, discrimination on the bases of sexual orientation or gender identity are necessarily forms of prohibited sex discrimination under Title IX. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir.), *as amended* (Aug. 28, 2020); *A.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023).

The district court rejected *Bostock*'s application to Title IX. Instead, it claimed that "[p]laintiffs can only prevail if 'sex' under Title IX means the sex with which an individual identifies (i.e., their gender identity), not their biological

sex," and reasoned that plaintiffs' claims failed because when "Title IX was enacted, 'sex' was defined by biology and reproductive functions." A.0256-0257. But as explained above, the Supreme Court in *Bostock* proceeded under the same assumption. Thus, regardless of how one defines the word "sex," *Bostock* made clear that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." 590 U.S. at 660.

If any doubt remained, last month this Court squarely rejected the argument that *Bostock*'s reasoning is limited to the Title VII context. In *Fowler*, the Court observed that "the [*Bostock*] Court did not indicate that its logic concerning the intertwined nature of transgender status and sex was confined to Title VII." 104 F.4th at 790; *see also ibid.* ("[T]he [*Bostock*] Court's focus on Title VII and the issue before it suggests a proper exercise of judicial restraint, not a silent directive that its reasoning about the link between . . . transgender status and sex was restricted to Title VII."). If anything, *Fowler*'s logic about *Bostock*'s relevance applies with even more force to Title IX's prohibition on sex discrimination, which is materially indistinguishable from the statutory text that was the beginning and end of the Supreme Court's analysis in *Bostock*. *See, e.g.*, 590 U.S. at 674 ("[W]hen the meaning of the statute's terms is plain, our job is at an end.").

b. Consistent with the reasoning set forth above, several courts of appeals have held that school restroom policies like the one at issue here violate Title IX. In *A.C.*, the Seventh Circuit considered whether school district policies prohibiting the plaintiffs, three transgender boys, from using school restrooms consistent with their gender identity violated Title IX. 75 F.4th at 764. The court tracked *Bostock*'s analysis for determining whether a policy constitutes sex discrimination: "As *Bostock* instructs, we ask whether our three plaintiffs are suffering negative consequences (for Title IX, lack of equal access to school programs) for behavior that is being tolerated in male students who are not transgender." *Id.* at 769. The court held that the plaintiffs' allegations met "*Bostock*'s definition of sex discrimination" because "the school districts persisted in treating the three plaintiffs worse than other boys because of their transgender status." *Id.* at 772. And the court found that the plaintiffs suffered harm as a result of that differential treatment, including "feeling depressed, humiliated, and excluded." *Ibid.*[4]

The Fourth Circuit reached the same conclusion. In *Grimm*, that court held that a school board's policy prohibiting the plaintiff, a transgender boy, from using

[4] *Accord Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048-1052 (7th Cir. 2017) (before *Bostock*, holding that transgender student was likely to succeed on his Title IX claim against school district for refusing to permit him to use the restroom consistent with his gender identity, because discrimination against student constituted impermissible sex stereotyping).

the boys' restroom at his high school violated Title IX. 972 F.3d at 619. The court stated that "[a]fter [*Bostock*]," it had "little difficulty holding that a bathroom policy precluding [the plaintiff] from using the boys['] restrooms discriminated against him 'on the basis of sex.'" *Id.* at 616. The court explained that "[e]ven if the Board's primary motivation in implementing or applying the policy was to exclude Grimm because he is transgender, his sex remains a but-for cause for the Board's actions." *Ibid.* The *Grimm* court also found that the discriminatory policy caused the plaintiff harm. *Id.* at 617-618.

c. On April 29, 2024, the Department of Education published a final rule amending its Title IX implementing regulations. *See* U.S. Dep't of Educ., *Final Rule: Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (Final Rule). Though the Final Rule is not scheduled to go into effect until August 1, 2024, it is instructive here because it reflects the above-cited *existing* law.

Section 106.10 of the Final Rule specifies that Title IX's prohibition on sex discrimination includes discrimination on the basis of gender identity. 89 Fed. Reg. at 33,886. Section 106.10 straightforwardly applies the Supreme Court's reasoning in *Bostock*—*i.e.*, that discrimination based on transgender status is necessarily sex discrimination "because it is impossible" to discriminate against a person for being transgender "without discriminating against that individual based

on sex," 590 U.S. at 660—and applies that same reasoning to the nearly identical text prohibiting sex discrimination in Title IX. 89 Fed. Reg. at 33,815-33,816.

Section 106.31(a)(2) of the Final Rule details when otherwise permissible separation or differentiation on the basis of sex constitutes prohibited sex discrimination. It provides in part:

> In the limited circumstances in which Title IX or this part permits different treatment or separation on the basis of sex, a recipient must not carry out such different treatment or separation in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm, *except as* permitted by 20 U.S.C. 1681(a)(1) through (9) and the corresponding regulations §§ 106.12 through 106.15, 20 U.S.C. 1686 and its corresponding regulation § 106.32(b)(1), or § 106.41(b).

89 Fed. Reg. at 33,887 (emphasis added). In doing so, the Final Rule recognizes a distinction between the contexts in which Congress has specified exceptions to Title IX's prohibition on sex discrimination and other contexts—such as restrooms—in which it has not. *See generally id.* at 33,816-33,817.

Section 106.31(a)(2) further states that "[a]dopting a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." 89 Fed. Reg. at 33,887. This too is consistent with the holdings of multiple courts that preventing students from participating in educational programs and activities consistent with their gender

identity causes them harm. *Id.* at 33,816; *see, e.g.*, *A.C.*, 75 F.4th at 769; *Grimm*, 972 F.3d at 617-618.[5]

**2. SB615 violates Title IX because it mandates that recipients treat transgender students differently on the basis of sex in a manner that causes them harm.**

By prohibiting transgender students from using single-sex, multiple-occupancy restrooms consistent with their gender identity, thereby causing them harm, SB615 fits squarely into Title IX's prohibition of sex discrimination.

First, it is undisputable here that a transgender student's sex is the reason they are treated differently than they would have been had they been assigned a different sex at birth. By requiring, for example, a transgender boy to use either a multiple-occupancy restroom according to his sex assigned at birth (*i.e.*, the girls'

[5] As of July 19, 2024, district courts in the Western District of Louisiana, Eastern District of Kentucky, District of Kansas, and Northern District of Texas have preliminarily enjoined the United States from enforcing the Final Rule in the States of Alaska, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Montana, Ohio, Tennessee, Texas, Utah, Virginia, West Virginia, and Wyoming, as well as against the schools attended by identified plaintiffs and their children and by members of plaintiff organizations and their children in the District of Kansas case. While the State of Oklahoma and the Oklahoma Department of Education—both defendants in this case—have filed separate challenges to the Final Rule in the Western District of Oklahoma, only the State of Oklahoma has moved for a preliminary injunction and the court has not yet ruled on that motion. *See* Compl., *Oklahoma State Dep't of Educ. v. United States*, No. 5:24-cv-00459 (W.D. Okla. May 6, 2024); Compl., *Oklahoma v. Cardona*, No. 5:24-cv-00461 (W.D. Okla. May 6, 2024). Whether an injunction against enforcement of the Final Rule in Oklahoma would affect the Department's ability to enforce Title IX consistent with analysis offered here would depend on the scope of such injunction.

restroom) or to use a unisex, single-occupancy restroom, SB615 treats him differently than it would have had he been assigned male at birth. *See Grimm*, 972 F.3d at 616 ("[T]he discriminator is necessarily referring to the individual's sex to determine incongruence between sex and gender, making sex a but-for cause for the discriminator's actions.").

Second, plaintiffs have alleged that this sex-based differential treatment injures them. A.0030-0039; *see also* A.0024-0025 (explaining that such exclusion "is harmful" to transgender students' "health and wellbeing" and "increases their risk of or worsens, their anxiety, depression, suicidal ideation, and self-harm; could lead to suicide; and interferes with the treatment of, and may cause or increase the intensity of, their gender dysphoria"). Defendants do not dispute those allegations; nor could they at this point in this litigation. Plaintiffs' alleged injuries also are similar to those that other courts have found to constitute cognizable harm under Title IX. *See A.C.*, 75 F.4th at 772; *Grimm*, 972 F.3d at 600-601; *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045-1046 (7th Cir. 2017). Accordingly, plaintiffs sufficiently allege that SB615 discriminates against them based on sex in violation of Title IX.

### B. Neither Title IX's statutory text nor its regulations authorize recipients to prohibit transgender students from using school restrooms that align with their gender identity.

Rather than grapple with the textual similarities between Title VII and Title IX, the district court attempted to distinguish *Bostock* on the ground that Title IX and its regulations "explicitly allow[] schools to 'maintain[] separate living facilities' and 'separate toilet, locker room, and shower facilities' for the 'different sexes.'" A.0257 (second alteration in original); *see also* A.0255 (citing 20 U.S.C. 1686 and 34 C.F.R. 106.33). In doing so, the district court tracked the reasoning of the only court of appeals to hold (incorrectly) that policies such as this one do not violate Title IX. In *Adams v. School Board of St. John's County*, 57 F.4th 791 (11th Cir. 2022), the en banc Eleventh Circuit held that barring a transgender boy from the boys' restrooms did not violate Title IX. Like the district court here, the *Adams* court distinguished *Bostock* on the ground that "Title IX and its implementing regulations expressly allow the School Board to provide separate bathrooms 'on the basis of sex.'" *Id.* at 814 (quoting 20 U.S.C. 1686 and 34 C.F.R. 106.33). But contrary to the reasoning of *Adams* and the district court here, these provisions do not permit schools to exclude transgender students from multiple-occupancy restrooms consistent with their gender identity.

First, while Section 106.33 allows recipients to provide sex-separate restrooms, that regulation does not implement a specific statutory exception to

Title IX's general nondiscrimination mandate at 20 U.S.C. 1681. Rather, the regulation merely clarifies that providing sex-separate restrooms is not, *by itself*, discriminatory because separation of such facilities generally does not injure students. *See Grimm*, 972 F.3d at 618 ("All it suggests is that the act of creating sex-separated restrooms in and of itself is not discriminatory."); *see also* 89 Fed. Reg. at 33,820-33,821 (Final Rule preamble confirming this understanding of 34 C.F.R. 106.33). As the Final Rule's preamble explains, there is no evidence that excluding *cisgender* students from facilities that do not match their gender identity harms those students. 89 Fed. Reg. at 33,820.

Second, while 20 U.S.C. 1686 permits a recipient to maintain sex-separate living facilities, that provision does not apply to school restrooms. Section 1686 states that "nothing contained [in Title IX] shall be construed to prohibit educational institutions receiving funds under this Act, from maintaining separate living facilities for the different sexes"; *accord* 34 C.F.R. 106.32(b)(1). The *Adams* court held that school restrooms are encompassed within the term "living facilities" under Section 1686. 57 F.4th at 811, 815.

But contrary to the court's conclusion in *Adams*, school restrooms are not living facilities for purposes of 20 U.S.C. 1686. Living facilities, as the name suggests, are places where students live, like college dormitories. *See* 89 Fed. Reg. at 33,532. As the Final Rule preamble explains, "[t]he *Adams'* court's reasoning

. . . cannot be reconciled with Title IX's plain text and ignores that Congress could have, but did not, address anything other than the practice of maintaining sex-separate 'living facilities' in 20 U.S.C. 1686." *Id.* at 33,821. The preamble further clarifies that Section 1686 and 34 C.F.R. 106.32(b)(1) do "not apply to . . . any other aspects of a recipient's education program or activity for which Title IX permits different treatment or separation on the basis of sex, such as bathrooms, locker rooms, or shower facilities[,] . . . which have long been addressed separately from 'living facilities.'" *Ibid.*

This distinction follows directly from the text and structure of Title IX itself. Title IX's prohibition of discrimination is premised on a concept of harm. Thus, in general, separate or different treatment based on sex is not permitted because it causes the very harm that the statute aimed to eliminate. But the Department of Education has long recognized that Congress excluded a few contexts from Title IX's general prohibition on sex discrimination. 89 Fed. Reg. at 33,816-33,817, 33,819. Section 1686, which carves out "separate living facilities for the different sexes," is one such context. 20 U.S.C. 1686; *see also* 20 U.S.C. 1681(a)(6) (membership practices of certain social fraternities or sororities); 20 U.S.C. 1681(a)(4) (institutions focused on military training). There is no corresponding statutory exclusion for school restrooms. For that reason, restrooms (unlike living

facilities) may be separated by sex *only* to the extent that such separation does not injure individual students.

### C. Providing unisex, single-occupancy restrooms for the use of transgender students is insufficient under Title IX.

Finally, SB615's requirement that schools provide "any individual who does not wish to comply with" its restrictions with the option to use "a single-occupancy restroom or changing room," Okla. Stat. tit. 70, § 1-125(C) (2023), does not save the statute. Plaintiffs allege that when all other students are permitted to use multiple-occupancy restrooms consistent with their gender identity, forcing them to choose between single-occupancy restrooms and multiple-occupancy restrooms that do not align with their gender identity treats them differently because of their sex, in a manner that causes them harm. A.0024, 0028, 0031, 0034, 0038; *see Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 530 (3d Cir. 2018) (Relegating transgender students to single-occupancy restrooms "would very publicly brand all transgender students with a scarlet 'T,' and they should not have to endure that as the price of attending their public school."); *see also Grimm*, 972 F.3d at 618; *Whitaker*, 858 F.3d at 1045-1046. Those allegations suffice to establish a Title IX violation at this point in the litigation.

*     *     *

In sum, SB615 violates Title IX because it treats transgender students differently than it would have had they been assigned a different sex at birth; that

differential treatment injures them; and no statutory or regulatory exception applies.

## II. The district court erred in dismissing plaintiffs' claim that SB615 violates the Equal Protection Clause.

The Supreme Court has long held that the Equal Protection Clause prevents States from discriminating against individuals on the basis of sex, unless doing so serves an important governmental objective and the discriminatory means employed are substantially related to the achievement of that objective. *See United States v. Virginia*, 518 U.S. 515, 557 (1996) (*VMI*). As the district court agreed, SB615 warrants heightened scrutiny, but the court erred in deciding at the pleading stage that SB615 is substantially related to advancing the State's asserted objectives of protecting student safety and privacy.

### A. SB615 warrants heightened scrutiny.

As the district court correctly held, *see* A.0250-0251, because SB615 classifies based on sex, it is subject to heightened scrutiny. This conclusion accords with the rulings of *all* other circuits that have addressed school restroom laws or policies like SB615. *See A.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 772 (7th Cir. 2023) ("[The school district]'s [restroom] access policy relies on sex-based classifications and is therefore subject to heightened scrutiny."), *cert. denied*, 144 S. Ct. 683 (2024); *Adams v. School Bd. of St. John's Cnty.*, 57 F.4th 791, 803 (11th Cir. 2022) (en banc) ("[B]ecause the policy that

Adams challenges classifies on the basis of biological sex, it is subject to intermediate scrutiny."); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 608 (4th Cir.) *as amended* (Aug. 28, 2020) (applying intermediate scrutiny because "[o]n its face, the Board's policy creates sex-based classifications for restrooms"); *accord Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051-1052 (7th Cir. 2017). Because it imposes a sex classification, SB615 is subject to heightened scrutiny, which it can withstand only if it is substantially related to achieving an important governmental objective.[6]

### B. The district court erred in holding as a matter of law that SB615 survives heightened scrutiny.

The district court erred in concluding as a matter of law that SB615 satisfies heightened scrutiny because it is substantially related to the State's asserted interest in protecting student safety and privacy. To withstand heightened scrutiny, the government's justification for a sex classification "must be genuine, not hypothesized." *VMI*, 518 U.S. at 533. Moreover, heightened scrutiny requires a "close means-ends fit" between the government's interest and the law or policy employed to achieve it. *Sessions v. Morales-Santana*, 582 U.S. 47, 68 (2017). And under heightened scrutiny, "[t]he burden of justification [for a sex

[6] SB615 also is subject to heightened scrutiny because it discriminates against transgender persons, a group that constitutes a quasi-suspect class. *See* U.S. Amicus Br. at 17-21, *Poe v. Drummond*, No. 23-5110 (10th Cir. Nov. 16, 2023).

classification] is demanding and it rests entirely on the State." *VMI*, 518 U.S. at 533.

1. The district court held that defendants' (undisputedly important) asserted interest in protecting students' privacy and safety were "undoubtedly closely related to the statute's mandate that all multiple occupancy restrooms or changing areas be for the exclusive use of either the male or female sex." A.0253. But as plaintiffs allege in their complaint, "[s]tudents who are transgender pose no risks to the privacy or safety of other students, whether in using multiple occupancy facilities or in any other context." A.0027. Plaintiffs further allege that excluding transgender students from restrooms that align with their gender identity does not further the State's asserted interests in safety or privacy, particularly where, as here, individual stalls are provided, given that transgender students tend to use these stalls to ensure their own privacy. A.0031, 0033. Indeed, the court itself acknowledged that it "in no way suggest[ed] that [p]laintiffs pose any safety risk to other students." A.0254.

Multiple courts of appeals considering the issue of transgender students' access to school restrooms have concluded the same. For example, in *Grimm*, the Fourth Circuit observed that the defendant's argument that the presence of transgender students in school restrooms would infringe on cisgender students' privacy "ignores the reality of how a transgender child uses the bathroom: 'by

entering a stall and closing the door.'" *Grimm*, 972 F.3d at 613 (citation omitted). Similarly, the Seventh Circuit held that a school board defendant's identical privacy argument was "based upon sheer conjecture and abstraction." *Whitaker*, 858 F.3d at 1052; *see also ibid.* ("A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than . . . any other student who uses the bathroom at the same time."); *accord A.C.*, 75 F.4th at 773 ("Martinsville has not identified how A.C.'s presence behind the door of a bathroom stall threatens student privacy.").

Again, the only court of appeals to hold otherwise is the en banc Eleventh Circuit in *Adams*. Characterizing the important governmental interest as "the protection of students' privacy interests in using the bathroom away from the opposite sex and in shielding their bodies from the opposite sex," *Adams* held, following a *trial* in the district court, that the school district's policy of separating restrooms by sex assigned at birth was "clearly related to" and "indeed, is almost a mirror of" those interests. 57 F.4th at 804-805. In this case, the district court simply adopted the *Adams* court's view and dismissed the claim. A.0253-0254.

But there are at least two problems with this reasoning. First, under heightened scrutiny, whether a law advances the State's asserted interest is a factual question that cannot be decided on a motion to dismiss, which is assessed solely on the allegations in the plaintiffs' complaint. *See Doe v. Rocky Mountain*

*Classical Acad.*, 99 F.4th 1256, 1261 (10th Cir. 2024) (reversing district court's grant of motion to dismiss where the plaintiff's "[c]omplaint does not establish that [the defendant] has an 'exceedingly persuasive justification' for its sex-based classification or that its classification serves important governmental objectives through means substantially related to those objectives," and pointing out that "at the 12(b)(6) stage, [the defendant] never had the opportunity to make such a showing").

Second, even accepting that offering sex-separate restrooms *generally* advances a governmental interest in ensuring student safety and privacy, that interest would not justify separating *transgender* students from other students who share their gender identity. Courts have found that even sex-specific privacy interests cannot justify the exclusion of transgender students from single-sex facilities consistent with their gender identity, given the reality of how those students use those facilities and how those facilities are structured—almost always with private stalls. *See, e.g.*, *A.C.*, 75 F.4th at 773 ("Gender-affirming facility access does not implicate the interest in preventing bodily exposure, because there is no such exposure."); *see also* pp. 24-25, *supra* (citing cases). In any event, plaintiffs allege that defendants' asserted interest in separating students on the basis of sex assigned at birth is insufficient compared with the concrete and demonstrable shame, stigma, psychological distress, and adverse health

consequences suffered by plaintiffs and other transgender students as a result of such policies. *E.g.*, A.0024-0025. The district court had no basis for deciding otherwise upon a motion to dismiss.

2. In holding that SB615 serves important governmental interests, the district court also cited *Etsitty v. Utah Transit Authority*, 502 F.3d 1215, 1224 (10th Cir. 2007), where this Court rejected Title VII and equal protection claims brought by a transgender transit operator who sought to use restrooms consistent with her gender identity while on her route. *Id.* at 1218-1219. The *Etsitty* court held that "discrimination against a trans[gender person] based on the person's status as [transgender] is not discrimination because of sex under Title VII." *Id.* at 1221. It likewise ruled that the transgender plaintiff's equal protection claim "fail[ed] for the same reasons" as her Title VII claim. *Id.* at 1227-1228.

The district court recognized that *Etsitty* has been overruled "to the extent that it conflicts with *Bostock*" (A.0253 n.7 (citation omitted)), but reasoned that "[s]ince *Bostock* did not address restrooms, this portion of *Etsitty* is still binding on this Court" (A.0253). This view fails to acknowledge that *Bostock* so undermined *Etsitty*'s reasoning that the decision no longer binds this Court. *See United States v. Salazar*, 987 F.3d 1248, 1254 (10th Cir. 2021) (alteration in original) ("The question . . . is not whether an intervening Supreme Court case is on all fours with our precedent, but rather whether the subsequent Supreme Court decision

contradicts or invalidates our prior analysis." (quoting *United States v. Brooks*, 751 F.3d 1204, 1209-1210 (10th Cir. 2014))); *see also United States v. Bettcher*, 911 F.3d 1040, 1046-1047 (10th Cir. 2018) (court may overrule decision of prior panel where prior panel's "reasoning" has "lost viability after" intervening Supreme Court precedent), *vacated on other grounds*, 141 S. Ct. 2780 (2021). *Etsitty* is no longer good law after *Bostock*, and this Court should not follow it.

Finally, the district court asserted that heightened scrutiny was satisfied because "[i]f the [c]ourt adopted [p]laintiffs' position, any biological male could claim to be transgender and then be allowed to use the same restroom or changing area as girls," which the court described as "a major safety concern." A.0254. But this is just the sort of "hypothesized" justification that the Equal Protection Clause forbids under intermediate scrutiny. *See Grimm*, 972 F.3d at 620 (citing evidence that "hypothetical fears such as the 'predator myth' [that sexual predators would pretend to be transgender to gain access to school restrooms] were merely that—hypothetical"); *Whitaker*, 858 F.3d at 1055 ("[H]ypothetical concerns" such as those asserted here "have simply not materialized."). And, of course, any student entering a school restroom to engage in pernicious activities presumably would be subject to discipline by the school. Upholding SB615 based on such unsubstantiated concerns is impermissible under heightened scrutiny—particularly on a motion to dismiss.

In sum, the district court erred in deciding as a matter of law that SB615 survives heightened scrutiny.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's orders granting the State Defendants' motion to dismiss and the School District Defendants' motion for judgment on the pleadings.

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General

s/ Elizabeth Parr Hecker
BONNIE I. ROBIN-VERGEER
ELIZABETH PARR HECKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 616-5550

## CERTIFICATE OF COMPLIANCE

I certify that the attached BRIEF FOR UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND URGING REVERSAL does not exceed the type-volume limitation imposed by Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B). The brief was prepared using Microsoft Word for Microsoft 365 and contains 6,500 words of proportionally spaced text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). The typeface is 14-point Times New Roman font.

s/ Elizabeth Parr Hecker
ELIZABETH PARR HECKER
Attorney

Date: July 19, 2024

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that the electronic version of the foregoing BRIEF FOR UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND URGING REVERSAL, prepared for submission via ECF, complies with the following requirements:

1. All required privacy redactions have been made under Federal Rule of Appellate Procedure 25(a)(5) and Tenth Circuit Rule 25.5;

2. With the exception of any redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the clerk; and

3. The ECF submission has been scanned for viruses with the most recent version of CrowdStrike (Version 7.14.18410.0) and is virus-free according to that program.

s/ Elizabeth Parr Hecker
ELIZABETH PARR HECKER
Attorney

Dated: July 19, 2024