No. 24-6072

# In the United States Court of Appeals for the Tenth Circuit

ANDREW BRIDGE, *et al.*,

*Plaintiffs-Appellants*,

v.

OKLAHOMA STATE DEPARTMENT OF EDUCATION, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Oklahoma
Case No. 5:22-CV-787-JD, The Honorable Judge Jodi Dishman

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

## ORAL ARGUMENT REQUESTED

Megan Lambert (OBA 33216)
Devraat Awasthi (OBA 35544)
AMERICAN CIVIL LIBERTIES UNION
OF OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
dawasthi@acluok.org

Jon W. Davidson
(admitted only in California)
Harper S. Seldin
(admitted only in Pennsylvania)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor

Isaac D. Chaput
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
ichaput@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
rgianchetti@cov.com

Paul D. Castillo

New York, NY 10004
(323) 536-9880
jondavidson@aclu.org
hseldin@aclu.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
(214) 219-8585
pcastillo@lambdalegal.org

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................. 2

I.  THE STUDENTS STATE A VIABLE EQUAL
    PROTECTION CLAIM. ............................................................... 2

    A.  The Students Allege Sufficient Facts Establishing that
        S.B. 615 and Defendants' Policies Discriminate Against
        the Students on the Basis of Sex and Transgender
        Status, Calling for Heightened Scrutiny. .............................. 3

        1.  The Students plausibly allege facts establishing
            discrimination on the basis of sex, requiring
            heightened scrutiny. ..................................................... 4

        2.  The Students plausibly allege facts establishing
            discrimination on the basis of transgender status,
            requiring heightened scrutiny. ..................................... 13

    B.  The Students Allege Sufficient Facts Showing that
        S.B. 615 and Defendants' Policies Cannot Survive
        Heightened Scrutiny. ........................................................ 17

II. THE STUDENTS STATE A VIABLE TITLE IX CLAIM. ............. 19

    A.  The Students Allege Facts Showing that S.B. 615 and
        Defendants' Policies Constitute Discrimination on the
        Basis of Sex. .................................................................... 19

        1.  *Bostock* applies to the Students' Title IX claim. .......... 21

        2.  S.B. 615 discriminates against transgender
            students on the basis of sex. ....................................... 24

        3.  *Department of Education v. Louisiana*, 144 S. Ct.
            2507 (2024), does not warrant dismissal of the
            Students' claims. ......................................................... 26

    B.    Title IX's Regulation Authorizing Separate Restrooms Does Not Permit Sex Discrimination Against Transgender Students. ........................................................27

III.   THE SCHOOL DEFENDANTS' ARGUMENT IN FAVOR OF DISMISSAL WAS WAIVED BELOW AND FAILS AS A MATTER OF LAW. ........................................................30

    A.    The School Defendants Waived the Argument They Now Seek to Assert in Support of Dismissal. ........................30

    B.    The Students Adequately Allege that the School Defendants Violated the Equal Protection Clause by Adopting and Implementing Policies Carrying Out S.B. 615.........................................................................36

    C.    The Students Adequately Allege that the School Defendants Violated Title IX by Adopting and Implementing Policies Carrying Out S.B. 615. ....................42

    D.    Oklahoma City Public Schools Can Be Held Liable for Providing Significant Assistance to Harding Independence Charter District, Inc.......................................44

CONCLUSION ........................................................................47

CERTIFICATE OF COMPLIANCE ........................................49

CERTIFICATE OF SERVICE..................................................50

CERTIFICATE OF DIGITAL SUBMISSION ..........................51

# TABLE OF AUTHORITIES

**Cases**

*Adamscheck v. Am. Fam. Mut. Ins. Co.*,
818 F.3d 576 (10th Cir. 2016) ............................................................. 33

*Aguilera v. Kirkpatrick*,
241 F.3d 1286 (10th Cir. 2001) ...................................................... 33, 34

*B.P.J. by Jackson v. W. Va. State Bd. of Educ.*,
98 F.4th 542 (4th Cir. 2024) ......................................................... 43, 44

*Barber ex rel. Barber v. Colo. Dep't of Revenue*,
562 F.3d 1222 (10th Cir. 2009) ...................................................... 37, 38

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
520 U.S. 397 (1997) ............................................................................ 40

*Blanchard v. Lampert*,
822 F. App'x 811 (10th Cir. 2020) ................................................. 35, 36

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) ................................... 10, 11, 21, 22, 23, 24, 25, 26

*Bradford v. U.S. Dep't of Lab.*,
101 F.4th 707 (10th Cir. 2024) ............................................................ 35

*Brown v. Collins*,
517 F. App'x 71 (3d Cir. 2013) ............................................................ 35

*Cacioppo v. Town of Vail, Colo.*,
528 F. App'x 929 (10th Cir. 2013) ...................................................... 40

*Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*,
220 F.3d 1171 (10th Cir. 2000) ........................................................... 35

*D.H. v. Williamson Cnty. Bd. of Educ.*,
2024 WL 4046581 (M.D. Tenn. Sept. 4, 2024) ..................................... 8

*Davis v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) ...................................................... 24, 44

*Dep't of Educ. v. Louisiana*,
144 S. Ct. 2507 (2024) ................................................. 26, 27

*Diné Citizens Against Ruining Our Env't v. Haaland*,
59 F.4th 1016 (10th Cir. 2023) ......................................... 29

*Doe by & through Doe v. Elkhorn Area Sch. Dist.*,
2024 WL 3617470 (E.D. Wis. Aug. 1, 2024) ........................ 19

*Doe v. Horne*,
115 F.4th 1083 (9th Cir. 2024) ..................................... 7, 44

*Doe v. Horne*,
683 F. Supp. 3d 950 (D. Ariz. 2023) ................................. 44

*Doe ex rel. Doe v. Rocky Mountain Classical Acad.*,
99 F.4th 1256 (10th Cir. 2024) .................................. 2, 5, 18

*Estrada v. Smart*,
107 F.4th 1254 (10th Cir. 2024) ...................................... 31

*Etsitty v. Utah Transit Auth.*,
502 F.3d 1215 (10th Cir. 2007) .............................. 11, 12, 13

*Fabian v. Hosp. of Cent. Conn.*,
172 F. Supp. 3d 509 (D. Conn. 2016) .................................. 9

*Fowler v. Stitt*,
104 F.4th 770 (10th Cir. 2024) ............ 2, 5, 11, 12, 13, 14, 18, 22

*Frappied v. Affinity Gaming Black Hawk, LLC*,
966 F.3d 1038 (10th Cir. 2020) ....................................... 24

*Gale v. City & Cnty. of Denver*,
962 F.3d 1189 (10th Cir. 2020) ....................................... 31

*Gamble v. United States*,
587 U.S. 678 (2019) ................................................... 11

iv

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ............................................................ 24

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ............................ 6, 19, 21, 22, 27, 28, 29

*Hiner v. Deere & Co.*,
    340 F.3d 1190 (10th Cir. 2003) ........................................ 36

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ............................................................ 29

*Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev.*,
    438 F.3d 195 (2d Cir. 2006) ........................................... 7, 8

*Jones v. Hosemann*,
    812 F. App'x 235 (5th Cir. 2020) ............................... 17, 18

*Juzumas v. Nassau Cnty., N.Y.*,
    33 F.4th 681 (2d Cir. 2022) ....................................... 41, 42

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) ........................................ 38

*Martinez v. Carson*,
    697 F.3d 1252 (10th Cir. 2012) ........................................ 40

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ..................................................... 38, 39

*N. Haven Bd. of Educ. v. Bell*,
    456 U.S. 512 (1982) ............................................................ 23

*Richison v. Ernest Grp., Inc.*,
    634 F.3d 1123 (10th Cir. 2011) ........................................ 35

*Roberts v. Clark Cnty. Sch. Dist.*,
    215 F. Supp. 3d 1001 (D. Nev. 2016) ............................... 9

*Romer v. Evans*,
    517 U.S. 620 (1996) ............................................................ 14

*Schneider v. City of Grand Junction Police Dep't,*
  717 F.3d 760 (10th Cir. 2013) .............................................. 39

*SECSYS, LLC v. Vigil,*
  666 F.3d 678 (10th Cir. 2012) ................................................ 9

*Throupe v. Univ. of Denver,*
  988 F.3d 1243 (10th Cir. 2021) ............................................ 31

*Tirrell v. Edelblut,*
  2024 WL 4132435 (D.N.H. Sept. 10, 2024) ....................... 44

*United States v. Carolene Prods. Co.,*
  304 U.S. 144 (1938) ............................................................ 16

*United States v. Gordon,*
  638 F.2d 886 (5th Cir. 1981) .............................................. 28

*Walton v. Powell,*
  821 F.3d 1204 (10th Cir. 2016) .......................................... 35

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1
  Bd. of Educ.,*
  858 F.3d 1034 (7th Cir. 2017) ........................................ 6, 21

*Whitesel v. Sengenberger,*
  222 F.3d 861 (10th Cir. 2000) ............................................ 41

*Windsor v. United States,*
  699 F.3d 169 (2d Cir. 2012) ............................................... 16

**Statutes**

20 U.S.C. § 1681 .......................................................... 24, 28

20 U.S.C. § 1686 ................................................................ 29

**Other Authorities**

34 C.F.R. § 106.31 ............................................................. 44

34 C.F.R. § 106.33 ....................................................... 27, 28

40 Fed. Reg. 24128 (1975) ................................................. 45, 46

39 Fed. Reg. 22228 (1974) ..................................................... 45

Dear Colleague Letter on Voluntary Youth Service
 Organizations, Office for Civil Rights (Dec. 15, 2015) ...................... 46

Letter from Joseph A. Califano, Jr. to the Hon. Trent Lott
 (Dec. 27, 1978) ................................................................. 46

## INTRODUCTION

Like any other Oklahoma student, Andrew Bridge, Mark Miles, and Sarah Stiles (the "Students") are entitled to an education free from discrimination. Like their classmates, the Students simply wish to use the school restroom consistent with their sex and get through the school day in a non-threatening environment. But S.B. 615 prevents the Students from being treated like their classmates because the Students' actual sex and gender identity are incongruent with the sex they were assigned at birth. This discrimination denies the Students equal protection of the law based on their sex and transgender status in violation of the Equal Protection Clause and subjects them to discrimination on the basis of sex in violation of Title IX.

Just as they did below, the State Defendants trivialize the difficulties the Students experience and rely on ad hominem attacks against transgender people, bald assertions that conflict with the factual allegations in the Students' Complaint, and legal arguments that have been rejected by courts across the country. For their part, the School Defendants abstain from any defense of S.B. 615 and instead seek to shift responsibility to the State Defendants, sidestepping their own

implementation of disciplinary policies that discriminate against the Students.  Because the Students have adequately stated claims for relief against all Defendants, the district court's dismissal should be reversed, and the Students should have the opportunity to pursue discovery in support of their claims and to prove them.

**ARGUMENT**

## I.  THE STUDENTS STATE A VIABLE EQUAL PROTECTION CLAIM.

The Students plausibly allege that S.B. 615 and Defendants' policies discriminate based on sex and transgender status and that this discrimination cannot survive the heightened scrutiny required because the safety and privacy rationales the State Defendants offer are unfounded and pretextual.  *See* Pls.' Br. (Doc. 51) at 32–55.  Just as this Court recently reversed the dismissal of equal protection claims on the pleadings in *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), and *Doe ex rel. Doe v. Rocky Mountain Classical Academy*, 99 F.4th 1256 (10th Cir. 2024), the Court should reverse the district court's order granting the State Defendants' motion to dismiss and the School Defendants' motion for judgment on the pleadings.

Rather than confronting the Students' allegations of discrimination, the State Defendants mischaracterize the allegations,[1] misstate the applicable law, and urge the Court to depart from precedent by failing to accept the allegations as true for purposes of the motions.[2]

### A. The Students Allege Sufficient Facts Establishing that S.B. 615 and Defendants' Policies Discriminate Against the Students on the Basis of Sex and Transgender Status, Calling for Heightened Scrutiny.

The exclusion of transgender students from the multiple occupancy restrooms aligned with what they know their sex to be treats them differently from similarly-situated cisgender students. Under S.B. 615 and Defendants' policies, cisgender students may use multiple occupancy restrooms consistent with the sex with which they identify and are identified by their peers, but students who are transgender are banned from doing so. This classification is based on sex and transgender status, requiring heightened scrutiny. *See* Pls.' Br. at 34–44.

---

[1] For example, the State Defendants claim that the Students "seek facial relief," *see* State Defs.' Br. (Doc. 121) at 14, but the Students also seek relief as applied to themselves. *See* A-0049–50.

[2] Because the School Defendants do not defend S.B. 615, this section focuses only on the State Defendants' arguments.

The State Defendants argue that rational basis review, not heightened scrutiny, should apply to the Students' equal protection claim. *See, e.g.*, State Defs.' Br. at 12, 14, 30–31, 34, 40, 46. But they have not established that rational basis review is appropriate or that the Students fail to state a claim under heightened scrutiny.

> 1. The Students plausibly allege facts establishing discrimination on the basis of sex, requiring heightened scrutiny.

The State Defendants concede that if S.B. 615 and Defendants' policies discriminate on the basis of sex, heightened scrutiny applies. *See* State Defs.' Br. at 31 ("[I]ntermediate scrutiny would apply . . . if there was differential treatment based on sex."). The Students *do* allege discrimination based on sex: S.B. 615 and Defendants' policies forbid each of the Students from using school restrooms that correspond with their sex. Andrew and Mark are boys barred from the boys' room and Sarah is a girl barred from the girls' room because each Student's sex does not conform with the sex they were assigned at birth, as listed on their original birth certificates. *See, e.g.*, Compl. ¶¶ 12–14, 63, 75, 94 (A-0014–15, A-0029–30, A-0032, A-0035). But students whose sex conforms with the sex listed on their original birth certificates are allowed to use

restrooms consistent with their sex. *See id.* ¶¶ 54, 58, 131 (A-0027–29, A-0044). This treatment discriminates based on sex, warranting heightened scrutiny. *See Fowler*, 104 F.4th at 794 (intermediate scrutiny applied because policy "discriminate[d] based on sex"); *Rocky Mountain*, 99 F.4th at 1260 (same).

The State Defendants assert that rational basis review should apply because the Students "do not object to restrooms separated by sex in schools." *See* State Defs.' Br. at 30–31; *id.* at 12. But having different restrooms for male and female students is not at issue in this case. The Students challenge the assignment of students to those sex-separated restrooms based on "the sex designated on [students'] original birth certificates." *See* Pls.' Br. at 34, 37, 51. They challenge the exclusion of transgender boys like Andrew and Mark from the boys' restroom and transgender girls like Sarah from the girls' restroom. The Students use multiple occupancy restrooms consistent with the sex they identify as in public settings and have used multiple occupancy restrooms at their schools in the past without problem. *See* Compl. ¶¶ 12, 47, 68, 80, 82, 100 (A-0014, A-0026, A-0030–31, A-0033, A-0037). The Students allege

that they are similarly situated to cisgender students with respect to use of such restrooms. *See id.* ¶ 131 (A-0044).

This alleged discrimination based on sex necessitates heightened scrutiny. *See Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("Here, the School District's policy cannot be stated without referencing sex, as the School District decides which bathroom a student may use based upon the sex listed on the student's birth certificate. This policy is inherently based upon a sex-classification and heightened review applies."); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 608 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (same).[3]

The weight of federal court precedent supports the Students, *see* Pls.' Br. at 36 & n.6, 50 & n.8, and the State Defendants' attempted reliance on out-of-circuit authority falls short. *See* State Defs.' Br. at 34.

---

[3] The State Defendants argue that "[i]f a plaintiff 'is a girl barred from the girls' room,' then the exclusion cannot, logically, be based on sex." *See* State Defs.' Br. at 31. The State Defendants misstate the Students' argument. The Students allege that a student like Sarah *is* barred from the girls' restroom based on her sex assigned at birth as reflected on her original birth certificate. *See* Comp. ¶¶ 3, 131, 132(b) (A-0012, A-0044). That is discrimination on the basis of sex. *See, e.g.*, *Whitaker*, 858 F.3d at 1051.

The State Defendants cite *Jana-Rock Construction, Inc. v. N.Y. State Department of Economic Development*, 438 F.3d 195 (2d Cir. 2006), in which the Second Circuit considered an equal protection challenge to an affirmative action program providing benefits to some Hispanics but not others. Although racial classifications ordinarily trigger strict scrutiny, the Second Circuit applied rational basis review because "once the government has shown that its decision to resort to explicit racial classifications survives strict scrutiny by being narrowly tailored to achieve a compelling interest, its program is no longer presumptively suspect." *Id.* at 200. The court declined "to apply automatically strict scrutiny a second time in determining whether an otherwise valid affirmative action program is underinclusive for having excluded a particular plaintiff." *Id.*

Later decisions have limited *Jana-Rock* to "remedial" statutes. *See, e.g.*, *Doe v. Horne*, 115 F.4th 1083, 1106–07 (9th Cir. 2024) (declining to apply *Jana-Rock* to equal protection challenge brought by student challenging transgender sports ban). Here, S.B. 615 is not part of a larger

remedial program that has already been upheld under strict scrutiny.[4] But even if *Jana-Rock* did apply, the court in that case recognized that under-inclusiveness triggers heightened scrutiny if the exclusion was "motivated by a discriminatory purpose," 438 F.3d at 200, which the Students allege here. *See* Pls.' Br. at 45–52.[5]

The State Defendants further argue that the Students "cannot establish intentional discrimination in violation of the Equal Protection Clause." *See* State Defs.' Br. at 12. But the Complaint alleges that S.B. 615 deliberately targets the Students for different treatment from other students because they are transgender—that is, because the sex with which they identify is different from the sex they were assigned at birth. Compl. ¶¶ 51–52 (A-0027). "When a distinction between groups of persons appears on the face of a state law or action, an intent to discriminate is presumed and no further examination of legislative purpose is required. . . . If the evidence shows that a generally applicable

---

[4] Defendants' amici thus are also mistaken in suggesting that rational basis review should apply. *See* Utah Amicus Br. (Doc. 133) at 8–13.

[5] *D.H. v. Williamson County Board of Education*, 2024 WL 4046581 (M.D. Tenn. Sept. 4, 2024), which was decided under Sixth Circuit precedent, likewise does not detract from the weight of authority applying heightened scrutiny in these circumstances. *Id.* at *3–5.

law was adopted at least in part because of, and not merely in spite of, its discriminatory effect on a particular class of persons, the first essential step of an equal protection challenge is satisfied." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685–86 (10th Cir. 2012). S.B. 615 and Defendants' policies make express sex-based distinctions. Examining intent therefore is unnecessary.

The State Defendants further attempt to disguise their discrimination by claiming that S.B. 615 merely distinguishes students based on "physical anatomy." *See* State Defs.' Br. at 30. Such discrimination purportedly "based on [a person's] genitalia, not his status as a transgender person, . . . is a distinction without a difference." *Roberts v. Clark Cnty. Sch. Dist.*, 215 F. Supp. 3d 1001, 1015 (D. Nev. 2016). Discrimination based on sex is "discrimination because of the *properties or characteristics* by which individuals may be classified as male or female." *Fabian v. Hosp. of Cent. Conn.*, 172 F. Supp. 3d 509, 526 (D. Conn. 2016). Nor is assessing and sorting students with respect to "anatomy" what S.B. 615 actually does, since it does not ask any student about their anatomy, relying instead on an initial birth certificate determination of students' "sex." "[I]t's irrelevant what

[defendant] might call its discriminatory practice, how others might label it, or what else might motivate it." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 664 (2020).

The State Defendants also argue that the Students do not allege differential treatment of people who are "in all relevant respects alike." *See* State Defs.' Br. at 32. Though they may disagree with the truth of the Students' allegations, such disagreement is not a basis for dismissal on the pleadings. The Students allege that S.B. 615 and Defendants' policies discriminate based on sex by mandating treatment of transgender students different from that of cisgender students. Under S.B. 615 and Defendants' policies, a student who identifies as male is not allowed to use his school's multiple occupancy restrooms for boys because he was assigned female at birth, whereas he would if he had been assigned male at birth. Transgender students thus are treated adversely because of the sex they were assigned at birth and because that differs from the sex with which they identify now. Viewed either way, that is sex discrimination.

As discussed in Section I(A)(2) below, S.B. 615 and Defendants' policies also discriminate against the Students based on their

transgender status. Such discrimination itself constitutes discrimination based on sex. *See Bostock*, 590 U.S. at 660 ("[I]t is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex."); *Fowler*, 104 F.4th at 788–94, 797 (applying *Bostock* and finding plaintiffs "plausibly alleged" birth certificate policy "purposefully discriminates on the basis of sex").

Despite this clear guidance from the Supreme Court and this Court, the State Defendants reject the Complaint's allegations that the justifications for S.B. 615 are pretextual and insist that *Etsitty v. Utah Transit Authority*, 502 F.3d 1215 (10th Cir. 2007), controls. But the *Etsitty* decision itself expressly emphasized that its affirmation of summary judgment was based only on "the record and arguments before [the] court." *Id.* at 1222. Moreover, the State Defendants ignore that *stare decisis* applies only to legal principles, not attempts to apply those principles to disputed facts in a different case. *Gamble v. United States*, 587 U.S. 678, 691 (2019) ("*stare decisis* [applies to] legal principles").

In any event, this Court made clear just five months ago that *Etsitty* has been overruled, stating in *Fowler* that the Tenth Circuit has "join[ed]

the courts that have applied *Bostock's* reasoning to equal protection claims" and holding that "the Policy [at issue there] discriminates based on sex, so intermediate scrutiny applies." *Fowler*, 104 F.4th at 793–94. As *Fowler* explained, there is no reason to "prevent *Bostock*'s commonsense reasoning—based on the inextricable relationship between transgender status and sex—from applying to the initial inquiry of whether there has been discrimination on the basis of sex in the equal protection context." *Id.* at 790.

Instead of addressing *Bostock*'s application to the Students' allegations, the State Defendants misstate the facts, asserting that "[c]ommon sense . . . should *not* necessarily dictate that discrimination is occurring because boys are being prohibited from entering the girls' [facilities]." *See* State Defs.' Br. at 39. As explained above, the Students allege that boys like Andrew and Mark are prohibited from entering the *boys' restroom*, and girls like Sarah are prevented from entering the *girls' restroom*. Ignoring these allegations, the State Defendants further ask the Court to apply their mistaken facts to the wrong step of the Equal Protection inquiry. *Etsitty*'s finding concerned whether discrimination

even existed, Pls.' Br. at 54 n.9, not whether such discrimination survives heightened scrutiny. *See* State Defs.' Br. at 40.

That the Supreme Court did not purport to address restrooms in *Bostock*—because that particular issue was not then before the Court— does not mean the logic of *Bostock* is inapplicable here. The State Defendants have no meaningful response to *Bostock* other than an unexplained attempt to distinguish between "birth certificates" and "employment discrimination" on the one hand, and school restrooms on the other. *See* State Defs.' Br. at 39. As the *Fowler* court recognized, "the corollary between sex and transgender status remains the same." *Fowler*, 104 F.4th at 790.

> 2. The Students plausibly allege facts establishing discrimination on the basis of transgender status, requiring heightened scrutiny.

The Complaint also plausibly alleges that S.B. 615 and Defendants' policies target transgender students and restrict the ability of a boy like Andrew to use the boys' restroom at school—something he regularly did in the past—because he is transgender, whereas boys who are not transgender are not so restricted. Compl. ¶¶ 2, 52–54, 57–58, 68, 131, 133 (A-0011–12, A-0027–31, A-0044–45). This is discrimination on the

basis of transgender status, triggering heightened scrutiny. *See Fowler*, 104 F.4th at 784–85; Pls.' Br. at 39–44. It is irrelevant that S.B. 615 does not expressly reference gender identity or transgender status. *See* State Defs.' Br. at 35. As alleged, S.B. 615 facially operates to discriminate based on those qualities.

That the Supreme Court has not yet recognized transgender status as a quasi-suspect class is beside the point. *See* State Defs.' Br. at 41.[6] All of the factors required for heightened scrutiny are alleged here. *See* Pls.' Br. at 42–44.

With respect to the first factor, *i.e.*, whether the group discriminated against has been historically subjected to discrimination, *id.*, the State Defendants quibble that discrimination in public accommodations—one of the many contexts in which the Students allege that transgender people have long experienced discrimination, Pls.' Br. at 43—"just assumes the question that is at issue here." *See* State Defs.' Br. at 42. The State Defendants fail to articulate how discrimination in

---

[6] The State Defendants err in asserting that the Supreme Court declined to recognize a quasi-suspect class for sexual orientation in *Romer v. Evans*. The *Romer* Court did not need to, and thus did not, reach the issue, as it found the amendment there failed even the "conventional inquiry" of rational basis review. 517 U.S. 620, 631–32 (1996).

other public accommodations, housing, employment, and government services does not amount to historic discrimination.

As for the second factor, the State Defendants fail to dispute or even address whether transgender people have a defining characteristic that frequently bears no relation to ability to perform or contribute to society. Pls.' Br. at 42–44.

With respect to the third factor, *i.e.*, whether transgender people have obvious, immutable, or distinguishing characteristics that define them as a discrete group, *id.*, the State Defendants assert only that gender identity is not immutable because "[u]nlike existing suspect classes, transgender identity is not definitively ascertainable at the moment of birth." *See* State Defs.' Br. at 42. That is not part of the test for heightened scrutiny; instead, traits are considered immutable when the Government cannot require they be changed in order to obtain equal treatment. *See* Pls.' Br. at 44.

Similarly, with respect to the fourth factor, political powerlessness, *id.* at 42–44, the State Defendants confuse the operative test, asserting that "transgender individuals are not a politically powerless group" because "they are supported by the President, federal agencies, medical

associations, the media and entertainment industries, and countless major law firms." *See* State Defs.' Br. at 42. Political powerlessness does not focus on public awareness or pockets of support by some entities, but instead looks to whether "prejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry." *United States v. Carolene Products Co.*, 304 U.S. 144, 153 n.4 (1938). Here, the small minority of the population that is transgender, *see* Pls.' Br. at 44, and the rapid proliferation of anti-transgender legislation emerging from state legislatures (including Oklahoma as alleged in this case), confirm that the political processes necessary for the protection of transgender people are blocked.[7]

The State Defendants assert that the Students "offer no limiting principle" or "identify a sex-based classification that would be constitutional." *See* State Defs.' Br. at 37. This overstates the Students' argument. The Students are *not* arguing that no law that differentiates

---

[7] In any event, "[i]mmutability and lack of political power are not strictly necessary factors" for heightened scrutiny to apply. *Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013).

based on sex could ever be constitutional. For example, if it matters in certain situations that one can get pregnant, then those assigned male at birth can be treated differently than those assigned female at birth. But that does not mean that the discriminatory exclusion of students from restrooms based on their sex assigned at birth is constitutional.

## B. The Students Allege Sufficient Facts Showing that S.B. 615 and Defendants' Policies Cannot Survive Heightened Scrutiny.

Whether S.B. 615 and Defendants' policies substantially and directly further governmental interests in protecting privacy or safety depends on contested facts that cannot be resolved on a motion to dismiss. *See, e.g.*, Compl. ¶¶ 45–47, 52, 68, 80, 82, 97, 100, 134 (A-0025–27, A-0030–31, A-0033, A-0036–37, A-0045–46); Pls.' Br. at 45–52. In particular, the Students allege that the "purported 'privacy' and 'safety' concerns" identified in S.B. 615 "are unfounded pretext to target students who are transgender" and that "Students who are transgender pose no risks to the privacy or safety of other students, whether in using multiple occupancy facilities or in any other context." Compl. ¶ 52 (A-0027).[8]

---

[8] The State Defendants claim that allegations of "pretext" are legal conclusions. *See* State Defs.' Br. at 43 (citing *Jones v. Hosemann*, 812 F. (continued…)

Those factual allegations must be accepted as true on a motion to dismiss, requiring reversal of the district court's order. *See Fowler*, 104 F.4th at 796 (rejecting claim that Oklahoma's policy prohibiting modification of birth certificates helps "avoid fraud" where "the State Amici d[id] not offer more information, so it is unclear what type of fraud the [p]olicy supposedly prevents"); *Rocky Mountain*, 99 F.4th at 1261 ("the Complaint does not establish that [the defendant] has an 'exceedingly persuasive justification' for its sex-based classification").

While the safety and privacy of students are legitimate interests, the State Defendants cannot at this stage meet their burden of proving that S.B. 615 and their policies substantially and directly further those interests. Indeed, it is impossible for such a showing to be made on a Rule 12(b)(6) motion. At the pleadings stage, the Government "never ha[s] the opportunity to make such a showing," and those suing do not have the opportunity to contest what the Government may put forward,

_____

App'x 235, 240 (5th Cir. 2020)). But in *Jones*, all the plaintiff alleged "is that the individual defendants acted with 'pretext' and 'in retaliation'" and "d[id] not add 'factual content' to these allegations," such as "indicia of the defendants' animus." *Jones*, 812 F. App'x at 240. Here, by contrast, the Students allege sufficient facts underlying their assertion that S.B. 615 and Defendants' policies do not actually promote privacy or safety.

meaning such issues have not been "sufficiently developed such that a court could resolve it in favor of [the Government] on a 12(b)(6) motion." *Id.*

Various courts that have reviewed evidence have rejected privacy and safety justifications for excluding transgender individuals from multiple occupancy restrooms, further indicating that the Students' claims cannot be dismissed on the pleadings. *See, e.g.*, *Grimm*, 972 F.3d at 613–15 (following development of factual record, holding that school policy similar to S.B. 615 was *not* substantially related to important government interests in protecting privacy and instead was "marked by misconception and prejudice" against transgender student); *Doe by & through Doe v. Elkhorn Area Sch. Dist.*, 2024 WL 3617470, at *20 (E.D. Wis. Aug. 1, 2024) (restroom policy did not survive heightened scrutiny based on purported privacy concerns).

## II. THE STUDENTS STATE A VIABLE TITLE IX CLAIM.

### A. The Students Allege Facts Showing that S.B. 615 and Defendants' Policies Constitute Discrimination on the Basis of Sex.

The Students adequately pled a Title IX claim as well. Andrew, Mark, and Sarah allege that they experience sex-based discrimination as a result of S.B. 615. Each of them alleges that S.B. 615 bars them from

the school restroom congruent with the sex with which they identify because of the sex they were assigned at birth. *See, e.g.*, Compl. ¶¶ 28, 63, 75, 94 (A-0020, A-0029–30, A-00032, A-0035). They also allege that their gender identity is not only one of multiple sex-related characteristics but is the most important and determinative factor of their sex. *Id.* ¶¶ 24, 28 (A-0019–20).

Further, Andrew and Mark have pled that they are boys, *id.* ¶¶ 60, 72 (A-0029, A-0031), and are generally perceived and treated as boys, *id.* ¶¶ 67–68, 80–82 (A-0030–31, A-0033), but S.B. 615 prohibits them from using the boys' multiple occupancy restroom at school (unlike other boys) because of their assigned sex at birth, *id.* ¶¶ 2–5, 28, 47, 69, 85, 88, 143 (A-0011–13, A-0020, A-0026, A-0031, A-0034–35, A-0047). Sarah has pled that she is a girl, *id.* ¶ 91 (A-0035), is generally perceived and treated as a girl, *id.* ¶¶ 95, 99–100 (A-0035–37), and that S.B. 615 discriminates against her based on her sex, *id.* ¶¶ 2–3, 101, 107, 143 (A-0011–12, A-0037–39, A-0047). Taken together, these factual allegations establish the first element of a Title IX claim.

Although the State Defendants do not contest the second and third elements of a Title IX claim, the Students have sufficiently pled those

facts as well.  The Oklahoma State Department of Education ("OSDE") is a recipient of Federal financial assistance, *id.* ¶¶ 15, 139 (A-0015, A-0047), and the State Defendants' enforcement of S.B. 615 harms the Students, *id.* ¶¶ 2, 43–44, 69–71, 86–89, 103–08 (A-0011–12, A-0024–25, A-0031, A-0034–35, A-0038–39).  The Students' Title IX claims thus are plausible and not subject to dismissal on the pleadings.  *See, e.g.*, *Whitaker*, 858 F.3d at 1049–50; *Grimm*, 972 F.3d at 616–19.

1.  *Bostock* applies to the Students' Title IX claim.

*Bostock* confirms that discrimination based on transgender status is a form of sex discrimination.  While *Bostock* involved termination of employees in violation of Title VII, *see* State Defs.' Br. at 17, the *reasoning* the Supreme Court employed is equally applicable to sex discrimination claims brought under Title IX.  That reasoning did not rest upon unique provisions of Title VII, but rather the recognition that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex."  *Bostock*, 590 U.S. at 660.  That sex and gender identity are not identical concepts does not matter.  As the Supreme Court observed, "discrimination based on . . .

transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id.* at 669.

This Court has recognized the same, observing that "[*Bostock*] did not indicate that its logic concerning the intertwined nature of transgender status and sex was confined to Title VII," and "the Court's focus on Title VII and the issue before it suggest[ed] a proper exercise of judicial restraint, not a silent directive that its reasoning about the link between . . . transgender status and sex was restricted to Title VII." *Fowler*, 104 F.4th at 790; *see also Grimm*, 972 F.3d at 616 (noting *Bostock* "guides [the] evaluation of claims under Title IX" and finding "little difficulty holding that a bathroom policy precluding [a transgender boy] from using the boys restrooms discriminated against him 'on the basis of sex'").

The State Defendants replicate the same "repackage[d] errors" that *Bostock* and other "precedents have already rejected." *See Bostock*, 590 U.S. at 666. *First*, the State Defendants refer to later-enacted laws that explicitly "prohibit[] funded programs from discriminating based on either 'sex' or 'gender identity'" and surmise that the reference to "gender identity" in subsequent laws shows "'[s]ex' and 'gender identity' must

have meant distinct things to the Congress." *See* State Defs.' Br. at 22. The Supreme Court rejected that same argument as "speculation" and "a 'particularly dangerous' basis on which to rest an interpretation of an existing law." *Bostock*, 590 U.S. at 670.

Next, the State Defendants assert that Title IX's reference to "sex" must be determined by reviewing contemporaneous dictionary definitions. *See* State Defs.' Br. at 23. Even assuming that "sex" meant "biological sex," Title IX liability, like Title VII liability, does not "turn[] on the outcome" of that term. *Bostock*, 590 U.S. at 655.

The State Defendants also cite purported legislative history concerning Title IX. *See* State Defs.' Br. at 25. But the State Defendants are "not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations." *Bostock*, 590 U.S. at 683. However framed, "it is ultimately the provisions of those legislative commands rather than the principal concerns of our legislators by which we are governed." *Id.* at 674. Indeed, the Supreme Court has rejected any notion that Title IX's protections are limited to applications foreseen at the time of its enactment. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982).

2. S.B. 615 discriminates against transgender students on the basis of sex.

The State Defendants claim that S.B. 615 "treats all students the same regardless of transgender status." *See* State Defs.' Br. at 11. Not only does this assertion conflict with the Students' factual allegations and S.B. 615's bar on transgender students using restrooms that their cisgender peers may use; it also fails to adhere to the statutory construction principles set forth in *Bostock*. By focusing exclusively on the term "sex" in isolation, the State Defendants overlook that "[t]he question isn't just what 'sex' mean[s], but what [a statute barring sex discrimination] says about it." *Bostock*, 590 U.S. at 656.

Consistent with Title IX's expansive purpose, the Supreme Court has construed the statute broadly to bar any practice that, on the basis of sex, denies students equal access to educational opportunities. *See, e.g.*, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998); *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020).

Focusing on each of the Students as individuals accords with the requirement that "[n]o person" be subjected to sex discrimination. 20 U.S.C. § 1681(a). The Students are subjected to discrimination "on the

basis of sex" precisely because of the way S.B. 615 defines "sex"—*i.e.*, one's sex as "identified on the individual's original birth certificate." *See* State Defs.' Br. at 5–6. Because of the sex identified on their birth certificates, only the Students are barred from the only multiuser restrooms that align with their gender, *see, e.g.*, Compl. ¶ 58 (A-0029), and that may be the only multiuser restrooms that are safe for them to use, *see, e.g.*, *id.* ¶ 97 (A-0036).

In *Bostock*, the Court applied "the 'simple' and 'traditional' standard of but-for causation" to show that transgender status is "inextricably bound up with sex." *Bostock*, 590 U.S. at 656, 660–61. Here, "sex is necessarily a but-for *cause*," and discrimination against transgender people "inescapably *intends* to rely on sex in its decisionmaking." *Id.* at 661. There is "no significance here if another factor . . . might also be at work, or even play a more important role." *Id.* at 665. "So long as the plaintiff's sex was one but-for cause . . . that is enough to trigger the law." *Id.* at 656. *Bostock* precludes the State Defendants' contention that "sex" in Title IX excludes gender identity. *See* State Defs.' Br. at 12.

Though the State Defendants present it as a neutral measure that sorts students based on their sex assigned at birth, S.B. 615 "intentionally penalizes" the Students, as transgender individuals whose identity does not match their sex assigned at birth, for sex-related "traits or actions that it tolerates" in cisgender students whose identity matches their sex assigned at birth. *Bostock*, 590 U.S. at 660. By intentionally discriminating against the Students on the basis of their transgender status, the State Defendants "unavoidably discriminate[] against persons with one sex identified at birth and another today." *Id.* at 669.

3. *Department of Education v. Louisiana*, 144 S. Ct. 2507 (2024), does not warrant dismissal of the Students' claims.

In *Department of Education v. Louisiana*, 144 S. Ct. 2507 (2024), several states sought preliminary injunctions against the Department of Education's new Title IX regulations. Louisiana and Kentucky district courts preliminarily enjoined the Department of Education's enforcement of the regulations, and the Fifth and Sixth Circuits declined to stay the injunctions pending appeal. *Id.* at 2509. The Supreme Court denied the Government's applications seeking partial stays of the preliminary injunctions pending resolution of the appeals in the Fifth and Sixth

Circuits.  *Id.*  The decision concerned only whether to grant interim relief related to the new regulations and does not bear on whether the Students here have stated a claim for relief under Title IX.  Contrary to the State Defendants' assertion, *see* State Defs.' Br. at 26–28, a preliminary injunction against the Department of Education's enforcement of the regulations does not preclude the Students from relying on the regulations or the express provisions of the statute in this case.

**B.    Title IX's Regulation Authorizing Separate Restrooms Does Not Permit Sex Discrimination Against Transgender Students.**

The State Defendants argue that OSDE cannot be subject to liability under Title IX because one of Title IX's implementing regulations states that schools may provide "separate toilet, locker room, and shower facilities on the basis of sex."  *See* State Defs.' Br. at 16; 34 C.F.R. § 106.33.  The State Defendants are mistaken.

As explained above, the Students do not challenge the existence of sex-separated facilities at schools.  Rather, they challenge S.B. 615's definition of "sex" to exclude them from the restrooms they previously used and continue to use outside school because the sex listed on their birth certificates is different from how they identify.  *See Grimm*, 972

F.3d at 618 ("Grimm does not challenge sex-separated restrooms; he challenges the Board's discriminatory exclusion of himself from the sex-separated restroom matching his gender identity.").

Moreover, C.F.R. § 106.33 "cannot override the statutory prohibition against *discrimination* on the basis of sex. All [§ 106.33] suggests is that the act of creating sex-separated restrooms in and of itself is not discriminatory—not that, in applying bathroom policies to [transgender students], the Board may rely on its own discriminatory notions of what 'sex' means." *Grimm*, 972 F.3d at 618.

Additionally, the State Defendants' invocation of Title IX's *statutory* exemptions does not undercut the Students' Title IX claim. *See* State Defs.' Br. at 19. Unlike the statutory exemptions in 20 U.S.C. § 1681(a)(2)–(9), where the broad prohibition on sex discrimination "shall not apply," 34 C.F.R. § 106.33 merely authorizes schools to "provide separate toilet . . . facilities on the basis of sex," while leaving the sweeping statutory prohibition on "discrimination" undisturbed. The regulation must be read consistently with Title IX's prohibition on sex discrimination. *See United States v. Gordon*, 638 F.2d 886, 888 (5th Cir.

1981) ("Whatever effect the agency regulation may have under other circumstances, it cannot supersede a statute.").

The State Defendants' reliance on Section 1686—"the more generic Title IX provision allowing for sex-separated living facilities," *Grimm*, 972 F.3d at 618 n.16—fares no better. *See* State Defs.' Br. at 18–20. Not only are schools not "living facilities" but Section 1686 does not permit schools to "act in an arbitrary or discriminatory manner when dividing students into those sex-separated facilities." *Grimm*, 972 F.3d at 618 n.16. Thus, Section 1686 does not excuse the State Defendants' alleged discrimination. *See* Pls.' Br. at 61–63.[9]

---

[9] The amicus brief submitted in support of Defendants further argues that the Students' Title IX claim fails under the Spending Clause. *See* Utah Amicus Br. at 3–8. This argument was not raised by any Defendants below or in their merits brief on appeal, and thus should not be considered by this Court. While the Court has discretion to consider arguments raised solely in an amicus brief, it should do so only in "exceptional circumstances," *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1042 n.11 (10th Cir. 2023), which do not exist here. In any event, the Students' claim does not violate the Spending Clause. *See Grimm*, 972 F.3d at 619 n.18. And even if the Spending Clause were applicable, it would bar only an award of damages under Title IX, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005), not the Students' claim for injunctive relief.

## III. THE SCHOOL DEFENDANTS' ARGUMENT IN FAVOR OF DISMISSAL WAS WAIVED BELOW AND FAILS AS A MATTER OF LAW.

The School Defendants offer no defense of S.B. 615. In fact, they take no "position on the legality of Oklahoma Senate Bill 615." Sch. Defs.' Br. (Doc. 150-1) at 3; *see also id.* at 35 ("While the Plaintiffs and State Defendants dispute the legality of S.B. 615, the School Defendants take no position on this matter.").[10] The School Defendants nonetheless argue that the claims asserted against them should be dismissed on the pleadings based on an argument that they did not assert below when they sought dismissal of the Students' claims and that fails as a matter of law.

### A. The School Defendants Waived the Argument They Now Seek to Assert in Support of Dismissal.

The School Defendants "did not join in the State Defendants' motion to dismiss or file one of their own." Sch. Defs.' Br. at 14. Rather, following the district court's order granting the State Defendants' motion

---

[10] The School Defendants insist that they "did take a position as to the merits of the Plaintiffs' requested relief" in the district court proceedings and accuse the Students of misstating the record. *See* Sch. Defs.' Br. at 2–3. In support of this assertion, they cite pages 509–24 of their supplemental appendix. While the Students have moved to strike the supplemental appendix, *see* Pls.' Mot. to Strike (Doc. 138), the cited pages confirm that the School Defendants took "no position on the merits of Plaintiffs' requested relief as to S.B. 615." Sch. Defs.' Supp. App'x at 524.

to dismiss, the School Defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c), in which they asked the district court to dismiss the Complaint only "for the same reasons as set forth in the Court's January 12, 2024 Order" granting the State Defendants' motion to dismiss. A-0262.

None of the State Defendants' arguments for dismissal concerned whether the School Defendants could be held liable for obeying allegedly mandatory state laws. A-0118–51. Nor did the district court consider any such arguments in granting the State Defendants' motion to dismiss or opine on such issues in resolving either of the dismissal motions. A-0243–59, A-0268–69. Accordingly, the School Defendants have waived any such arguments in favor of dismissal. *See Estrada v. Smart*, 107 F.4th 1254, 1271 (10th Cir. 2024) ("[A]rguments that litigants fail to present before the district court but then subsequently urge on appeal [are deemed] to be forfeited."); *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1254 (10th Cir. 2021) ("[This Court] will not consider an argument that was not fully briefed and decided by the district court."); *Gale v. City & Cnty. of Denver*, 962 F.3d 1189, 1194 (10th Cir. 2020) ("[A]n issue must

be presented to, considered [and] decided by the trial court before it can be raised on appeal.").

By the School Defendants' own admission, the argument they attempt to raise here—that "[t]he School Defendants cannot be held liable for adopting a policy that the Oklahoma Legislature compels them to adopt," Sch. Defs.' Br. at 6—was raised only in response to the Students' separate motion for preliminary injunction, which is not on appeal. *Id.* at 14; *see also* Sch. Defs.' Resp. to Mot. to Strike (Doc. 151) at 2.[11] The School Defendants nevertheless ask the Court to affirm the district court's dismissal order if it is supported by any ground in the underlying record, regardless of whether the School Defendants sought to dismiss the Students' claims on that basis. *See* Sch. Defs.' Br. at 12–16.

This argument disregards this Court's caution that affirming a decision on legal grounds not considered by the trial court is "disfavored."

---

[11] While the Students' motion for preliminary injunction is not on appeal, the district court's order resolving that motion did not even mention or opine on the School Defendants' argument that they cannot be held liable under the Equal Protection Clause or Title IX based on their enforcement of S.B. 615. *See* A-0259 & n.12 (denying motion for preliminary injunction "[i]n light of the above analysis [on the State Defendants' motion to dismiss]").

*Adamscheck v. Am. Fam. Mut. Ins. Co.*, 818 F.3d 576, 588 (10th Cir. 2016). Moreover, the primary authority the School Defendants cite, *Aguilera v. Kirkpatrick*, 241 F.3d 1286 (10th Cir. 2001), is plainly inapposite.

In *Aguilera*, the defendants moved to dismiss for lack of jurisdiction and failure to state a claim under Rules 12(b)(1) and 12(b)(6), respectively. 241 F.3d at 1289. The district court dismissed the case for lack of jurisdiction under Rule 12(b)(1), adopting the reasons stated in the defendants' motion. *Id.* This Court found the district court's order ambiguous because it adopted the reasons in the defendants' brief "without distinguishing those arguments based on jurisdiction from those based on failure to state a claim." *Id.* at 1290. The Court presumed that the district court order incorporated only the defendants' jurisdictional arguments but observed that it could still affirm the dismissal under Rule 12(b)(6) on the alternate ground argued by the defendants—that the plaintiffs failed to state a claim. *Id.* In other words, the Court of Appeals affirmed the dismissal on an alternative ground that

the defendants had expressly argued below in connection with the very order on appeal.[12]

That the School Defendants sought to avoid issuance of a preliminary injunction based on a particular legal ground, *see* Sch. Defs.' Br. at 14, or included affirmative defenses in their answers asserting that "Plaintiffs failed to state a claim," *see id.* at 14–15, does not mean that the argument was raised and preserved as a basis to dismiss the Students' claims on the pleadings.[13] Accordingly, *Aguilera* does not

---

[12] The School Defendants claim that the *Aguilera* court affirmed the dismissal on alternate grounds because refusing to do so would have been a "futile exercise." *See* Sch. Defs.' Br. at 12 (quoting *Aguilera*, 241 F.3d at 1290). This language from *Aguilera* has no application here. Remand was "futile" in *Aguilera* because, while the Court agreed with the district court that dismissal was appropriate, it disagreed that the proper mechanism for dismissal was Rule 12(b)(1) as opposed to Rule 12(b)(6). Returning the case to the district court simply to enter the dismissal under Rule 12(b)(6), as opposed to Rule 12(b)(1), would be futile. Here, there is nothing "futile" in reversing the district court's orders dismissing the Students' claims. Doing so would allow the Students to conduct discovery and prove their allegations that S.B. 615 violates the Equal Protection Clause and Title IX.

[13] Nor does the Complaint itself "necessitate[] the conclusion that the School Defendants cannot be held legally liable under the Equal Protection Clause or Title IX." *See* Sch. Defs.' Br. at 16. As discussed below, that S.B. 615 purports to mandate action by the School Defendants and brings with it the threat of private lawsuits or budget cuts, *see* Compl. ¶¶ 3, 56–57 (A-0012, A-0028–29), does not mean the School Defendants are immunized from liability.

support the School Defendants' argument that they may on this appeal assert a ground for dismissal that they articulated for the first time on appeal.[14]

This Court has declined to consider arguments that were not asserted in connection with the specific order on appeal even if they were otherwise raised before the district court in connection with other motion practice. For example, in *Blanchard v. Lampert*, 822 F. App'x 811 (10th

---

[14] The other cases cited by the School Defendants are distinguishable. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123 (10th Cir. 2011), involved the opposite procedural posture from that here: the appellant sought to *reverse* (not affirm) the district court's order based on a legal theory he raised only on appeal. *Id.* at 1130. Because the appellant had not attempted to show how his new legal theory satisfied the requisite "plain error" standard, the Court refused to consider his argument. *Id.* at 1131–32. In the remaining cases, the court either affirmed on the same legal theory argued below or on grounds that were raised below in connection with the order that was under review. *See Bradford v. U.S. Dep't of Lab.*, 101 F.4th 707, 714 (10th Cir. 2024) (affirming denial of preliminary injunction on grounds that were raised in motion for preliminary injunction in district court, *see Bradford v. U.S. Dep't of Lab.*, No. 21-cv-03283, Dkt. 7 at 5–18 (D. Colo. Dec. 9, 2021)); *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (affirming dismissal for lack of statutory standing, rather than Article III standing); *Walton v. Powell*, 821 F.3d 1204, 1210 (10th Cir. 2016) (affirming denial of summary judgment under different legal framework from district court after determining district court improperly applied heuristic); *Brown v. Collins*, 517 F. App'x 71, 72 (3d Cir. 2013) (affirming judgment on the pleadings on ground that was raised in motion for judgment on the pleadings in district court, *see Brown v. Collins*, No. 12-cv-00265, Dkt. 35 ¶¶ 6, 9 (E.D. Pa. Nov. 16, 2012)).

Cir. 2020), when reviewing the lower court's decision on a motion to dismiss, this Court declined to consider an argument that was asserted only in connection with a separate motion not on appeal to amend the complaint. *Id.* at 816. Given that such argument was raised in briefing "directed to a motion other than the motion to dismiss being considered on appeal," the Court concluded that the plaintiff had "failed to adequately preserve the issue for appeal." *Id.*; *see also Hiner v. Deere & Co.*, 340 F.3d 1190, 1196 (10th Cir. 2003) (declining to consider argument raised by defendant below in one context and raised in different context on appeal because this Court has "consistently rejected the argument that raising a related theory below is sufficient to preserve an issue for appeal"). Similarly, here, the School Defendants have waived their argument as a basis for dismissing the Students' claims on the pleadings by not asserting that argument in their Rule 12(c) motion.

> **B.    The Students Adequately Allege that the School Defendants Violated the Equal Protection Clause by Adopting and Implementing Policies Carrying Out S.B. 615.**

Even if the School Defendants' argument were not waived, it is incorrect as a matter of law.

The School Defendants claim that "the Oklahoma Legislature has preempted school districts' local control as to the usage of school bathrooms," thereby "stripp[ing]" the School Defendants of "final policymaking authority" and precluding the Students from asserting an equal protection claim against them. *See* Sch. Defs.' Br. at 19. That is incorrect. If S.B. 615 violates the Equal Protection Clause, as the Students allege, the School Defendants cannot hide behind that unconstitutional law. S.B. 615 would be preempted by the Equal Protection Clause.[15]

As this Court explained in *Barber ex rel. Barber v. Colorado Department of Revenue*, 562 F.3d 1222 (10th Cir. 2009), "[Defendant] believes that it is compelled to follow the directive from the state, but the Supremacy Clause of the Constitution requires a different order of priority. A discriminatory state law is not a *defense* to liability under federal law; it is a *source* of liability under federal law. Reliance on state

_____

[15] The School Defendants baldly assert that they were left with "no meaningful choice" but to comply with the requirements of S.B. 615. Sch. Defs.' Br. at 11. Not so. The School Defendants could have brought litigation against State officials if they were denied funding for refusing to enforce S.B. 615. Or they could have filed a cross-complaint in this action against the State Defendants for inducing the School Defendants to violate the Equal Protection Clause.

statutes to excuse non-compliance with federal laws is simply unacceptable under the Supremacy Clause." *Id.* at 1233.[16] Accordingly, the School Defendants are not shielded from liability based on their assertion that they were forced to implement S.B. 615.

Moreover, the School Defendants concede that they "implemented policies" and "adopt[ed] bathroom restrictions in accordance with S.B. 615." *See* Sch. Defs.' Br. at 20, 32–33. On that basis alone, the School Defendants admit that they "have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty," *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014), making them liable for their conduct.

The School Defendants also seek to avoid liability by suggesting they cannot be held liable for enforcing a municipal policy or custom. But, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978),

---

[16] *See also Barber*, 562 F.3d at 1234 (Gorsuch, J., concurring) ("[A] state law at odds with a valid Act of Congress is no law at all. Accordingly, the demands of [a] federal [law] do not yield to state laws that discriminate against the disabled; it works the other way around. State officials who rely on their compliance with discriminatory state laws as evidence of their reasonableness will normally find themselves proving their own liability, not shielding themselves from it.").

the School Defendants are liable for their actions violating federal law.[17]

*Monell* imposes three requirements: (1) the existence of an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). The Students allege sufficient facts to establish each such requirement.

The School Defendants knowingly adopted disciplinary policies for students who do not comply with S.B. 615 and barred transgender students from using restrooms consistent with their gender identity. *See* Compl. ¶¶ 12–14, 19–22, 58, 69, 88–89, 100–02, 128, 136 (A-0014–15, A-0017–18, A-0029, A-0031, A-0034–35, A-0037, A-0043, A-0046).

The School Defendants acknowledge this but assert they "cannot be considered the 'moving force' behind the alleged constitutional deprivations because they merely implemented policies mandated by Oklahoma law." *See* Sch. Defs.' Br. at 20. But to hold the School Defendants liable, the Students need only "demonstrate a direct causal

---

[17] It is not true that the School Defendants all began barring the Students from using the restrooms that match their gender identity only after S.B. 615 was signed into law in May 2022. *See* Sch. Defs.' Br. at 24. The Students allege that Moore Public Schools began barring Mark Miles from using the boys' restroom in January 2022. Compl. ¶¶ 83–85 (A-0033–34).

link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). In other words, "the challenged policy . . . must be closely related to the violation of the plaintiff's federally protected right." *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 932 (10th Cir. 2013). Here, the School Defendants' policies are closely related to the violation of equal protection. The policies, which prohibit the Students from using restrooms consistent with their gender identity, "set in motion [the] series of events that [the School Defendants] knew or reasonably should have known would cause [the superintendents and school staff] to deprive [the Students] of [their] constitutional rights." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). "That conduct of other people may have concurrently caused the harm does not change the outcome as to [the School Defendants]." *Id.*

Finally, the Students have alleged the requisite "state of mind." Their allegation that the School Defendants enacted policies that deprive them of equal protection is sufficient. *See Brown*, 520 U.S. at 404–05 ("[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally

protected right necessarily establishes that the municipality acted culpably.").

The School Defendants' cited authorities are inapposite. *Whitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000), stated that a plaintiff "must demonstrate that the [defendant] was 'the moving force' behind [his injury]." *Id.* at 872. Here the Students have alleged that the School Defendants are "the moving force" behind their deprivation of rights by issuing disciplinary policies that prohibit the Students from using the restrooms consistent with their gender identity. *See* Compl. ¶¶ 12–14, 19–22, 58, 69, 88–89, 100–02, 128, 136 (A-0014–15, A-0017–18, A-0029, A-0031, A-0034–35, A-0037, A-0043, A-0046).

*Juzumas v. Nassau County, New York*, 33 F.4th 681 (2d Cir. 2022), is also distinguishable. There, the Second Circuit considered whether a county could be held liable for requiring the plaintiff to surrender his long guns, consistent with state law. The decision turned on "whether the municipality had a 'meaningful choice' as to whether it would enforce the law," and "[i]f it did . . . whether the municipality adopted a 'discrete policy' to enforce the law that represented a 'conscious choice' by one of its policy makers." *Id.* at 688. Because the county merely had been

executing the state law and had not developed its own "independent firearm surrender policy," the court held that the county could not be held liable. *Id.* In contrast, by its own terms, S.B. 615 makes clear that schools *can* decide whether or not to promulgate policies consistent with the statute. *See, e.g.*, Compl. ¶ 6 (A-0013). Because each of the School Defendants implemented such disciplinary policies, they remain proper defendants in this lawsuit.

**C.** **The Students Adequately Allege that the School Defendants Violated Title IX by Adopting and Implementing Policies Carrying Out S.B. 615.**

The Students have adequately pled a Title IX claim against the School Defendants. The School Defendants admit that "they are recipients of federal funds and subject to the provisions of Title IX." *See* Sch. Defs.' Br. at 24. They do not dispute that they will enforce S.B. 615 nor that they knowingly implemented their own policies, which exclude the Students from multiple occupancy restrooms on the basis of their sex and cause them harm. As with the Students' equal protection claim, the School Defendants simply argue that "they had no meaningful choice as to the enforcement of S.B. 615's requirements" and thus cannot be liable under Title IX. *Id.* But the School Defendants cannot escape liability

where the Students allege that the School Defendants' own policies (or those of schools to which they provide significant assistance) violate Title IX. *See* Compl. ¶¶ 12–14, 19–22, 58, 69, 88–89, 100–02, 143, 146–47 (A-0014–15, A-0017–18, A-0029, A-0031, A-0034–35, A-0037, A-0047–48).

The School Defendants' argument that they cannot be liable because they "lack[] the authority to take any remedial action," *see* Sch. Defs.' Br. at 26–27, should be rejected. S.B. 615 clearly contemplates that school districts may or may not opt to implement policies consistent with S.B. 615. And at the time the policies were adopted and continuing now, the School Defendants have the authority to decide whether to continue enforcing the policies they promulgated in connection with S.B. 615.

The Fourth Circuit recently rejected an identical argument in *B.P.J. by Jackson v. West Virginia State Board of Education*, 98 F.4th 542 (4th Cir. 2024), where the defendant school board argued that it had not violated Title IX because "it ha[d] no policy of excluding transgender girls from girls sports teams and that it would merely be complying with state law if it excluded B.P.J. from such teams." *Id.* at 553. As the court explained: "Federal law trumps state law, not vice versa, and those who violate federal law cannot defend on the ground they were simply

following state law." *Id.*; *see also Doe v. Horne*, 683 F. Supp. 3d 950, 956, 974–75 (D. Ariz. 2023) (finding plaintiffs likely to succeed on claim that school's compliance with state law that prevented transgender girls from participating in girls' sports teams violated Title IX), *aff'd*, 115 F.4th 1083 (9th Cir. 2024); *Tirrell v. Edelblut*, 2024 WL 4132435, at *1, 15–17 (D.N.H. Sept. 10, 2024).

### D. Oklahoma City Public Schools Can Be Held Liable for Providing Significant Assistance to Harding Independence Charter District, Inc.

Sarah Stiles adequately pled a Title IX claim against Oklahoma City Public Schools ("OKCPS")—the charter authorizer for Harding Independence Charter District, Inc. ("HICD"). Title IX's prohibition against sex discrimination extends to recipients that provide significant assistance to affiliated entities. 34 C.F.R. § 106.31(b)(6) (covered institutions are prohibited from "providing significant assistance to any agency, organization, or person which discriminates on the basis of sex"). An institution that provides significant assistance to an independent, but discriminatory, entity essentially adopts the discriminatory policies as its own. *See Davis*, 526 U.S. at 643–44 (noting that "the regulatory scheme surrounding Title IX has long provided funding recipients with

notice that they may be liable for their failure to respond to the discriminatory acts of certain nonagents" and that "[t]he Department of Education requires recipients . . . to refrain from particular forms of interaction with outside entities that are known to discriminate").

Whether a school is providing "significant assistance" to an outside organization "will turn on the facts and circumstances of specific situations." 40 Fed. Reg. 24128, at 24132 (1975); *see also* 39 Fed. Reg. 22228, at 22229 (1974) (same). Sarah plausibly alleges that OKCPS provided significant assistance to HICD. *See, e.g.*, Compl. ¶¶ 109–10 (OKCPS has sponsored HICD since its inception); *id.* ¶¶ 119–20 (charter contract between OKCPS and HICD grants OKCPS significant control); *id.* ¶ 121 (HICD uses real property owned by OKCPS, including for operation of HICD middle school Sarah attends); *id.* ¶ 146 (OKCPS provides financial support, tangible resources, and intangible benefits to HICS, and they have a regular and long-term relationship) (A-0039, A-0041–42, A-0048). Each factor standing alone is "significant enough to

create the nexus" required for OKCPS to be liable for HICD's discriminatory actions under Title IX. *See* 40 Fed. Reg. 24128, at 24132.[18]

The School Defendants misapprehend Sarah's theory of liability. OKCPS has a Title IX obligation to ensure that any charter school to which it provides a charter, money (whether Federal or State funds), or other significant assistance is not discriminating on the basis of sex.[19] Under the "significant assistance" regulation, Sarah need not allege that she was enrolled in OKCPS, or that OKCPS itself adopted HICD's bathroom policy. *See* Sch. Defs.' Br. at 31–32. Nor is it of any consequence that OKCPS contends it "exercises no control over the day-

---

[18] *See also* Dear Colleague Letter on Voluntary Youth Service Organizations, Office for Civil Rights (Dec. 15, 2015), at 3 (discussing Title IX's prohibition on significant assistance and factors considered by the Department of Education), available at https://www.ed.gov/sites/ed/files/about/offices/list/ocr/letters/colleague-201512-voluntary-youth-service-organizations.pdf.

[19] "Significant assistance" includes "giv[ing] an organization special status or privileges that it does not offer to all community organizations," including "official recognition of the organization." *See* Letter from Joseph A. Califano, Jr., Secretary, Department of Health, Education, and Welfare, to the Hon. Trent Lott, Member, U.S. House of Representatives (Dec. 27, 1978).

to-day activities" of HICD.[20]  *Id.* at 7.  Sarah's allegations, taken as true, demonstrate OKCPS provides significant assistance to HICD, including a level of functional interdependence and the financial and other contractual links between the charter school and its sponsor.

## CONCLUSION

For the foregoing reasons and those stated in their Opening Brief, Plaintiffs-Appellants respectfully ask the Court to reverse the district court's dismissal of their Complaint.

Dated this 13th day of November, 2024.

Respectfully submitted,

*/s/ Isaac D. Chaput*
Isaac D. Chaput

| | |
|---|---|
| Megan Lambert (OBA 33216) | Isaac D. Chaput |
| Devraat Awasthi (OBA 35544) | COVINGTON & BURLING LLP |
| AMERICAN CIVIL LIBERTIES UNION OF | Salesforce Tower |
| OKLAHOMA FOUNDATION | 415 Mission Street, Suite 5400 |
| P.O. Box 13327 | San Francisco, CA 94105 |
| Oklahoma City, OK 73113 | (415) 591-6000 |
| (405) 525-3831 | ichaput@cov.com |
| mlambert@acluok.org | |
| dawasthi@acluok.org | Robert C. Gianchetti |

---

[20] The School Defendants cite OKLA. STAT. tit. 70, § 3-134(L) to suggest that, under state law, charter sponsors are immune from liability with respect to a charter school "with which they contract."  *See* Sch. Defs.' Br. at 32.  As explained above, however, a state law cannot immunize an entity against liability under federal law.  *See* Section III(B), *supra*.

Jon W. Davidson
(admitted only in California)
Harper S. Seldin
(admitted only in Pennsylvania)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(323) 536-9880
jondavidson@aclu.org
hseldin@aclu.org

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
rgianchetti@cov.com

Paul D. Castillo
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
(214) 219-8585
pcastillo@lambdalegal.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This Brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) and this Court's order, dated September 20, 2024, extending Plaintiffs-Appellants' maximum word count to 10,000 words, because it contains 9,870 words, excluding the parts of the Brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

2.    This Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Isaac D. Chaput*
Isaac D. Chaput

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2024, I electronically filed the foregoing document through the Court's electronic filing system, and that it has been served on all counsel of record through the Court's electronic filing system.

/s/ Isaac D. Chaput
Isaac D. Chaput

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1.      All required privacy redactions have been made per 10th Cir. R. 25.5.

2.      If required to file additional hard copies, that the ECF submission is an exact copy of those documents.

3.      The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Cortex XDR Advanced Endpoint Protection, and according to the program are free of viruses.

*/s/ Isaac D. Chaput*
Isaac D. Chaput