No. 24-6072

In the United States Court of Appeals
for the Tenth Circuit

ANDREW BRIDGE, *et al.*,

*Plaintiffs-Appellants*,

v.

OKLAHOMA STATE DEPARTMENT OF
EDUCATION, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Oklahoma
Case No. 5:22-CV-787-JD, The Honorable Judge Jodi Dishman

SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLANTS

ORAL ARGUMENT REQUESTED

Megan Lambert (OBA 33216)
Devraat Awasthi (OBA 35544)
AMERICAN CIVIL LIBERTIES UNION
OF OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
dawasthi@acluok.org

Jon W. Davidson
(admitted only in California)
Harper S. Seldin
(admitted only in Pennsylvania)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor

Isaac D. Chaput
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
ichaput@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
rgianchetti@cov.com

Paul D. Castillo

New York, NY 10004
(323) 536-9880
jondavidson@aclu.org
hseldin@aclu.org

Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
(214) 219-8585
pcastillo@lambdalegal.org

*Counsel for Plaintiffs-Appellants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.......................................................... ii

INTRODUCTION .................................................................. 1

ARGUMENT ..................................................................... 3

I.    THE STUDENTS CONTINUE TO STATE A VIABLE EQUAL PROTECTION CLAIM. ..................................... 3

    A.    S.B. 615 Discriminates Against the Students on the Basis of Sex, Requiring Heightened Scrutiny. ...................... 3

    B.    S.B. 615 Also Discriminates Against the Students on the Basis of Transgender Status, Requiring Heightened Scrutiny. ............................................. 6

    C.    S.B. 615 Discriminates Against the Students on the Basis of Sex Under the Supreme Court's Reasoning in *Bostock*. ................................................. 7

    D.    *Skrmetti* Does Not Address the Remaining Equal Protection Issues in This Appeal. ........................... 10

II.    THE STUDENTS ALSO CONTINUE TO STATE A VIABLE TITLE IX CLAIM. ............................................. 14

CONCLUSION ................................................................. 15

CERTIFICATE OF COMPLIANCE ...................................... 17

CERTIFICATE OF SERVICE .......................................... 18

CERTIFICATE OF DIGITAL SUBMISSION ........................ 19

# TABLE OF AUTHORITIES

## Cases

*A.C. by M.C. v. Met. Sch. Dist. of Martinsville*,
   75 F.4th 760 (7th Cir. 2023) ................................................................15

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) .............................................. 7, 8, 9, 10, 13, 14, 15

*Clinton v. Sec. Benefit Life Ins. Co.*,
   63 F.4th 1264 (10th Cir. 2023) ..........................................................12

*Communities for Equity v. Mich. High Sch. Athletic Ass'n*,
   459 F.3d 676 (6th Cir. 2006) .................................................................9

*Doe ex rel. Doe v. Rocky Mountain Classical Acad.*,
   99 F.4th 1256 (10th Cir. 2024) ......................................................13, 14

*Fowler v. Stitt*,
   104 F.4th 770 (10th Cir. 2024) ..........................................9, 10, 12, 13

*Griffith v. El Paso County, Colorado*,
   129 F.4th 790 (10th Cir. 2025) ............................................................10

*Grimm v. Gloucester Cnty. Sch. Bd.*,
   972 F.3d 586 (4th Cir. 2020)................................................................14

*Klikno v. United States*,
   928 F.3d 539 (7th Cir. 2019)..................................................................9

*Stitt v. Fowler*,
   2025 WL 1787695 (U.S. June 30, 2025) ..............................................9

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025) ........... 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15

*Vincent v. Bondi*,
   127 F.4th 1263 (10th Cir. 2025) ...........................................................9

**Statutes**

20 U.S.C. § 1686.................................................................................15

Okla. Stat. tit. 70, § 1-125...............................................................2, 5

**Other Authorities**

34 C.F.R. § 106.33.............................................................................15

## INTRODUCTION

Andrew Bridge, Mark Miles, and Sarah Stiles ("Plaintiffs" or "Students") submit this Supplemental Brief "addressing the impact of the Supreme Court's decision in [*United States v. Skrmetti*, 145 S. Ct. 1816 (2025)] on the issues raised in this appeal." *See* Order, Doc. 180 (10th Cir. June 25, 2025).

*Skrmetti* differs from this case in several key respects, ranging from the procedural posture—review of a preliminary injunction, rather than a motion to dismiss as is the case here—to the specific legal issues raised on appeal here. In *Skrmetti*, the Supreme Court addressed an equal protection challenge to a Tennessee law restricting the availability of certain kinds of gender-affirming care for minors. *See* 145 S. Ct. at 1826–27. That law allowed minors of any sex to receive the specified medical treatments, such as hormones and puberty blockers, for conditions unrelated to gender-affirming care. *Id.* Because of that, the Supreme Court concluded that the Tennessee law classified on the basis of medical

1

use, not sex or transgender status, and therefore warranted only rational basis review. *Id.* at 1829, 1835–37.[1]

By contrast, S.B. 615 says nothing about the treatment of any medical conditions. The sole effect of S.B. 615 is to prevent the Students and others from using school restrooms consistent with their sex because their sex and gender identity differ from the sex they were assigned at birth. *Skrmetti*'s analysis of medical use classifications therefore is wholly inapplicable. Moreover, *Skrmetti* says nothing about the other equal protection issues raised in this appeal, such as whether transgender discrimination is necessarily a form of sex discrimination, whether transgender status is a suspect or quasi-suspect classification, how intermediate scrutiny applies on the facts of this case, or how this Court should address any of these issues under the motion to dismiss standard applicable here. Nor does *Skrmetti*—an equal protection case— say anything at all about Title IX.

---

[1] The Supreme Court also concluded that the Tennessee law classified on the basis of age and that the age-based classification warranted only rational basis review. 145 S. Ct. at 1829, 1835–37. Here, S.B. 615 applies equally to minors and adults, including students over the age of eighteen, adult staff, and adult school visitors. *See* Okla. Stat. tit. 70, § 1-125(B).

*Skrmetti* thus has no impact on the Students' claims. And because the Students have adequately stated claims for relief against all Defendants, the district court's dismissal of Plaintiffs' Complaint should be reversed to allow Plaintiffs to prove their case.

## ARGUMENT

## I. THE STUDENTS CONTINUE TO STATE A VIABLE EQUAL PROTECTION CLAIM.

### A. S.B. 615 Discriminates Against the Students on the Basis of Sex, Requiring Heightened Scrutiny.

As discussed in the Students' Opening Brief and Reply Brief, S.B. 615 facially discriminates on the basis of sex. *See* Pls.' Br. at 34–39; Pls.' Reply Br. at 4–13. *Skrmetti* reinforces that conclusion.

The law at issue in *Skrmetti* allowed minors of any sex to receive hormones or puberty blockers for the treatment of conditions other than gender dysphoria. 145 S. Ct. at 1826–27. As a result, the Supreme Court concluded that the law drew classifications solely on the basis of medical use (and age) and that the law therefore was not subject to heightened scrutiny. *Id.* at 1829–32. In reaching that conclusion, the Supreme Court twice made clear that it was cabining its sex discrimination analysis to the "medical context." *Id.* at 1829–30. The Supreme Court also found that because the Tennessee law prohibited only "the administration of

specific drugs for particular medical uses"—*i.e.*, the use of hormones and puberty blockers for the treatment of gender dysphoria—regardless of the minor's sex, the law did not "mask sex-based classifications." *Id.* at 1831. Applying rational basis review, the Supreme Court upheld the law as constitutional. *Id.* at 1835–37.

S.B. 615 contains none of the distinctions based on medical use that drove the Supreme Court's reasoning in *Skrmetti*. As noted above, S.B. 615 says nothing about the treatment of any medical conditions. *See* Compl. ¶ 3 (A-0012). The sole effect of S.B. 615 is to prevent transgender individuals (of any age) from using restrooms in public schools or public charter schools consistent with their sex because their sex does not conform with the sex they were assigned at birth, as listed on their original birth certificates. By contrast, individuals whose sex conforms with the sex listed on their original birth certificates are allowed to use restrooms consistent with their sex. *See id.* ¶¶ 58, 131 (A-0029, A-0044). The differential treatment mandated by S.B. 615 results solely from classifications based on sex and transgender status.[2]

---

[2] Even the district court here agreed that S.B. 615 "classifies individuals based on sex" and that intermediate scrutiny applies. A-0250–51.

*Skrmetti* itself confirms this reasoning.  The dissent in *Skrmetti* argued that the majority's reasoning "may well suggest that a law depriving all individuals who 'have ever, or may someday, menstruate' of access to health insurance would be sex neutral merely because not all women menstruate."  145 S. Ct. at 1880 (Sotomayor, J., dissenting).  The majority responded that the dissent's hypothetical law was distinguishable because, rather than "regulat[ing] a class of treatments or conditions" like the Tennessee law, the dissent's hypothetical law "regulates a class of *persons* identified on the basis of a specified characteristic."  *Id.* at 1834 n.3 (emphasis in original).  The Court expressly stated that its decision does *not* "speak[] to a law that classifies on such a basis."  *Id.*

Here, however, S.B. 615 indeed regulates the use of restrooms by a clearly defined "class of persons" that the law "identifie[s] on the basis of a specified characteristic"—*i.e.*, the "male sex" and the "female sex," with "sex" defined as "the physical condition of being male or female based on genetics and physiology, as identified on the individual's original birth certificate."  Okla. Stat. tit. 70, § 1-125(A)(1), (B)(1)–(2).  S.B. 615

regulates no "class of treatments or conditions" like those at issue in *Skrmetti*. 145 S. Ct. at 1834 n.3.

### B. S.B. 615 Also Discriminates Against the Students on the Basis of Transgender Status, Requiring Heightened Scrutiny.

S.B. 615 also facially discriminates based on transgender status. *See* Pls.' Br. at 39–45; Pls.' Reply Br. at 13–17. By regulating restroom use based on individuals' sex assigned at birth, S.B. 615 creates an unavoidable distinction between transgender and cisgender individuals. By design, S.B. 615 "regulates a class of persons"—*i.e.*, transgender individuals—that it "identifie[s] on the basis of a specified characteristic." *Skrmetti*, 145 S. Ct. at 1834 n.3.

Moreover, *Skrmetti* does not address whether transgender status is a suspect or quasi-suspect classification warranting heightened scrutiny. Instead, the Supreme Court held that the case "does not raise that question" because the Tennessee law "does not classify on the basis of transgender status" in the first place. *Id.* at 1832–33. *Skrmetti* therefore poses no obstacle to this Court concluding that heightened scrutiny applies to transgender discrimination. As the Students have

demonstrated, all of the factors required for heightened scrutiny are adequately alleged here.  *See* Pls.' Br. at 42–44; Pls.' Reply Br. at 14–17.

### C.  S.B. 615 Discriminates Against the Students on the Basis of Sex Under the Supreme Court's Reasoning in *Bostock*.

As discussed in the Student's Opening and Reply Briefs, S.B. 615 facially discriminates on the basis of sex under the Equal Protection Clause based on the Supreme Court's reasoning in *Bostock v. Clayton County*, 590 U.S. 644 (2020).  Pls.' Br. at 38–39; Pls.' Reply Br. at 10–11.

In *Bostock*, the Supreme Court held that discrimination against transgender workers is necessarily a form of sex discrimination prohibited by Title VII.  590 U.S. at 660–62.  The Supreme Court reasoned in *Bostock* that it is "impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex."  *Id.* at 660.  In other words, because transgender discrimination "penalizes a person identified as male at birth for traits or actions that it tolerates in an [individual] identified as female at birth," it necessarily constitutes a form of sex discrimination.  *Id.*

Applied here, S.B. 615 plainly results in sex discrimination under *Bostock*'s reasoning.  Under S.B. 615, a girl whose sex is female and who

7

identifies as female, but whose sex assigned at birth was male, cannot use the girls' restroom. But a girl whose sex is female and who identifies as female, and whose sex assigned at birth was female, *can* use the girls' restroom. Switching the sex assigned at birth switches the result. S.B. 615 therefore "penalizes a person identified as male at birth for traits or actions that it tolerates in an [individual] identified as female at birth." *Bostock*, 590 U.S. at 660. Under *Bostock*, S.B. 615 unavoidably results in sex discrimination.

The plaintiffs in *Skrmetti* asked the Supreme Court to apply the reasoning of *Bostock* to their equal protection claims. *See* 145 S. Ct. at 1834. The Supreme Court acknowledged that it has "not yet considered whether *Bostock*'s reasoning reaches beyond the Title VII context." *Id.* But the Supreme Court also expressly held that it "need not do so here" because even "[u]nder the reasoning of *Bostock*, neither . . . sex nor . . . transgender status" was the cause of the plaintiffs' inability to receive certain kinds of medical treatment under the Tennessee law. *Id.* The Court stated that, because "changing a minor's sex or transgender status does not alter the application of [the Tennessee law]," that law does not constitute sex discrimination under *Bostock*'s analysis. *Id.* The Court

8

therefore did not need to, and did not, reach whether *Bostock*'s reasoning applies to equal protection claims as a general matter. *Id.*

As a result, *Skrmetti* says nothing that disturbs the reasoning of this Court's now-vacated decision in *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), which concluded that *Bostock's* analysis of sex discrimination claims under Title VII applies to equal protection claims. *Id.* at 789.[3] Because *Skrmetti* expressly declined to rule on *Bostock*'s application outside of Title VII—and indeed acknowledged *Bostock*'s ongoing validity—this Court's reasoning in *Fowler* remains valid. For the reasons explained in the Students' Opening Brief and Reply Brief, *Fowler* continues to be persuasive authority for the resolution of the Students' claims in this case. Pls.' Br. at 39, 54–55; Pls.' Reply Br. at 11–13.

---

[3] On June 30, 2025, the Supreme Court issued a grant-vacate-remand ("GVR") order in *Fowler*, granting the petition for writ of certiorari, vacating the judgment, and remanding the case to this Court for further consideration in light of *Skrmetti*. *Stitt v. Fowler*, 2025 WL 1787695, at *1 (U.S. June 30, 2025) (mem.). The Supreme Court's GVR order does not comment on *Fowler*'s reasoning. Indeed, it is well-established that a GVR order "doesn't necessarily signal a disagreement with the panel's reasoning or result." *Vincent v. Bondi*, 127 F.4th 1263, 1264 n.1 (10th Cir. 2025). A GVR order does not carry with it "some kind of presumption that the result should change." *Klikno v. United States*, 928 F.3d 539, 544 (7th Cir. 2019). Nor does a GVR order "indicate, [or] even suggest, that the lower court's decision was erroneous." *Communities for Equity v. Mich. High Sch. Athletic Ass'n*, 459 F.3d 676, 680 (6th Cir. 2006). Instead, the Supreme Court's remand is simply "a direction to reassess the validity of [the *Fowler* panel's] opinion in light of [*Skrmetti*]." *Vincent*, 127 F.4th at 1246 n.1. And for the reasons discussed above, nothing in *Skrmetti*'s reasoning compels a different result.

In any case, subsequent decisions of this Court have applied the reasoning in *Bostock* to sex discrimination claims under the Equal Protection Clause.  In *Griffith v. El Paso County, Colorado*, 129 F.4th 790 (10th Cir. 2025), this Court concluded that a jail's policy of letting only cisgender females and not transgender females live in female housing and obtain commissary items like lipstick and female underwear involved "sex classifications." *Id.* at 806–07.  As in the contexts of *Fowler* and *Bostock* as well as in the instant case, the jail's policies "'intentionally treat[ ] [detainees] differently because of their sex assigned at birth.'" *Id.* (alterations in original) (quoting *Fowler*, 104 F.4th at 789).

### D. *Skrmetti* Does Not Address the Remaining Equal Protection Issues in This Appeal.

*Skrmetti* does not address—and, in some cases, explicitly declines to decide—a host of other equal protection issues relevant to this appeal.

*First*, because *Skrmetti* concluded that the Tennessee law drew classifications based solely on age and medical use, the Supreme Court applied rational basis review rather than intermediate scrutiny.  *See* 145 S. Ct. at 1835–37.  *Skrmetti* therefore says nothing about how this Court should apply intermediate scrutiny in the context of this case, let alone with respect to the specific "privacy and safety" interests cited as the

justification for S.B. 615, *see* Compl. ¶ 51 (A-0027), that the district court's dismissal of this case prevented the Students from showing were not furthered by S.B. 615.

*Second*, *Skrmetti* does not address equal protection claims premised on discriminatory animus or pretext. In *Skrmetti*, the Supreme Court accepted the lower court's conclusion that "plaintiffs had failed to establish that animus toward transgender individuals as a class was the operative force behind [the Tennessee law]," and the Supreme Court did not address how evidence of animus would bear on the equal protection claims at any stage of the analysis. 145 S. Ct. at 1827–28. Moreover, the Supreme Court recognized that the plaintiffs in *Skrmetti* did not "argue[] that [the Tennessee law's] prohibitions are mere pretexts designed to effect an invidious discrimination against transgender individuals." *Id.* at 1833. Here, however, the Students allege that, upon passage of S.B. 615, the bill's sponsor made statements having nothing to do with "privacy and safety," the law's alleged justifications. Compl. ¶¶ 51, 53 (A-0027). Instead, the bill's sponsor stated that S.B. 615 was aimed at "removing all forms of indoctrination" and lamented "how far we slipped in our society" because he thought "we are willing to fail our kids by

coercing them into living in someone else's fantasy." *Id.* ¶ 53 (A-0027). As explained in the Students' Opening Brief, this Court can and should consider those statements when analyzing whether the government's purported "privacy and safety" interests are pretextual. Pls.' Br. at 47–48. Nothing in *Skrmetti* constrains this Court's analysis.

*Third*, *Skrmetti* did not evaluate whether the plaintiffs had adequately stated an equal protection claim to withstand a motion to dismiss—the relevant issue on appeal here. The plaintiffs in *Skrmetti* sought a preliminary injunction and were therefore obligated to prove likelihood of success on the merits. *See* 145 S. Ct. at 1827. Here, the Students have appealed only the district court's grant of the State Defendants' motion to dismiss and the School District Defendants' motion for judgment on the pleadings. *See* Pls.' Br. at 28. As a result, the Students need only show that the allegations in the Complaint, accepted as true, state *plausible* claims for relief—a "low bar." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (citation and quotation marks omitted).

Because *Skrmetti* addresses a preliminary injunction, it says nothing that disturbs this Court's prior analysis in *Fowler* weighing

various aspects of the equal protection claims in that case under the motion to dismiss standard. *See, e.g., Fowler*, 104 F.4th at 788–94, 797 (applying *Bostock* and finding that plaintiffs "plausibly alleged" birth certificate policy "purposefully discriminates on the basis of sex" in violation of the Equal Protection Clause); *id.* at 784–85 ("[A]t minimum, Plaintiffs have alleged facts from which we may reasonably infer purposeful discrimination on the basis of transgender status."); *id.* at 796 (rejecting the claim that Oklahoma's policy prohibiting the modification of birth certificates helps "avoid fraud" where "the State Amici d[id] not offer more information, so it is unclear what type of fraud the [p]olicy supposedly prevents"). On each of these issues, *Fowler* remains persuasive authority that this Court should consider in resolving the instant appeal.

Separate and apart from *Fowler*, other binding Tenth Circuit precedent likewise demonstrates how the procedural posture of this case—namely, review of the district court's dismissal of the Students' claims on the pleadings—compels a result different from that of *Skrmetti*. *See, e.g., Doe ex rel. Doe v. Rocky Mountain Classical Acad.*, 99 F.4th 1256, 1261 (10th Cir. 2024) (reversing dismissal of plaintiff's claims of

sex discrimination in violation of the Equal Protection Clause and Title IX under Rule 12(b)(6) and observing that "the Complaint does not establish that [the defendant] has an 'exceedingly persuasive justification' for its sex-based classification . . . [and] at the 12(b)(6) stage, [the defendant] never had the opportunity to make such a showing"); *see id.* (recognizing that "this issue was not sufficiently developed such that a court could resolve it in favor of [defendant] on a 12(b)(6) motion").

## II.    THE STUDENTS ALSO CONTINUE TO STATE A VIABLE TITLE IX CLAIM.

In *Skrmetti*, the Supreme Court granted certiorari to decide whether the Tennessee law violated the Equal Protection Clause.  145 S. Ct. at 1828.  The Supreme Court thus did not consider—and had no reason to discuss—a sex discrimination claim under Title IX.  To the contrary, the majority opinion in *Skrmetti* expressly stated that "[w]e have not yet considered whether *Bostock*'s reasoning reaches beyond the Title VII context, and we need not do so here."  *Id.* at 1834.

*Skrmetti* therefore does not prevent this Court from joining other federal courts in concluding that *Bostock*'s reasoning applies to sex discrimination claims under Title IX.  *See*, *e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020) ("After the Supreme Court's

14

recent decision in *Bostock* . . . we have little difficulty holding that a bathroom policy precluding Grimm from using the boys restrooms discriminated against him 'on the basis of sex.' Although *Bostock* interprets Title VII . . . it guides our evaluation of claims under Title IX."); *A.C. by M.C. v. Met. Sch. Dist. of Martinsville,* 75 F.4th 760, 769 (7th Cir. 2023) (similar).

*Skrmetti* also says nothing about the language in 20 U.S.C. § 1686 and 34 C.F.R. § 106.33—relied on by the district court here—which permits certain "living facilities" for different sexes. For the reasons discussed in the Students' briefing, this Court should reverse the district court's mistaken reading of those provisions. Pls.' Br. at 60–64; Pls.' Reply Br. at 27–29. *Skrmetti* poses no obstacle to this Court doing so.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons stated in their prior briefing, Plaintiffs respectfully ask the Court to reverse the district court's dismissal of their Complaint.

Dated this 15th day of July, 2025.

Respectfully submitted,

*/s/ Isaac D. Chaput*
Isaac D. Chaput

Megan Lambert (OBA 33216)
Devraat Awasthi (OBA 35544)
AMERICAN CIVIL LIBERTIES UNION OF
OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
dawasthi@acluok.org

Jon W. Davidson
(admitted only in California)
Harper S. Seldin
(admitted only in Pennsylvania)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(323) 536-9880
jondavidson@aclu.org
hseldin@aclu.org

Isaac D. Chaput
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
ichaput@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
rgianchetti@cov.com

Paul D. Castillo
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
(214) 219-8585
pcastillo@lambdalegal.org

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1.     This Supplemental Brief complies with the type-volume limitation of this Court's Order, dated June 25, 2025, providing that the parties' supplemental submissions shall be no longer than 15 pages in a 13- or 14-point font, because it contains 15 pages prepared in 14-point Century Schoolbook font.  *See* Order, Doc. 180 (10th Cir. June 25, 2025).

2.     This Supplemental Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(A) because this Supplemental Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Isaac D. Chaput*
Isaac D. Chaput

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2025, I electronically filed the foregoing document through the Court's electronic filing system, and that it has been served on all counsel of record through the Court's electronic filing system.

*/s/ Isaac D. Chaput*
Isaac D. Chaput

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing:

1.    All required privacy redactions have been made per 10th Cir. R. 25.5.

2.    If required to file additional hard copies, that the ECF submission is an exact copy of those documents.

3.    The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Cortex XDR Advanced Endpoint Protection, and according to the program are free of viruses.

*/s/ Isaac D. Chaput*
Isaac D. Chaput
