No. 24-6072

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ANDREW BRIDGE, *et al.*,

*Plaintiffs-Appellants,*

v.

OKLAHOMA STATE DEPARTMENT OF EDUCATION, *et al.*,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Western District of Oklahoma
The Honorable Jodi W. Dishman
No. 5:22-cv-00787-JD

**SUPPLEMENTAL BRIEF FOR STATE DEFENDANTS**

GARRY M. GASKINS, II
  *Solicitor General*
ZACH WEST
  *Director of Special Litigation*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
*Counsel for State Defendants*

CULLEN D. SWEENEY
WILL FLANAGAN
  *Assistant Solicitors General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Cullen.Sweeney@oag.ok.gov
William.Flanagan@oag.ok.gov

**ORAL ARGUMENT REQUESTED**

# <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT ......................................................................................................4

    I.   *Skrmetti* negatively impacts Plaintiffs' arguments in several ways........ 4

    II.  *Skrmetti* indicates that rational basis review should apply here............ 8

    III. *Skrmetti* undermines Plaintiffs' arguments on transgender status.......12

    IV. SB 615 survives both rational basis review and intermediate
         scrutiny. ......................................................................................13

CONCLUSION ..................................................................................................15

CERTIFICATE OF COMPLIANCE .......................................................................17

CERTIFICATE OF DIGITAL SUBMISSION ..........................................................17

CERTIFICATE OF SERVICE ..............................................................................17

# TABLE OF AUTHORITIES

## CASES

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) ........................................................... 5, 7

*Fowler v. Stitt*,
104 F.4th 770 (10th Cir. 2024) ...................................... 2, 5, 6

*Free Speech Coal., Inc. v. Paxton*,
145 S. Ct. 2291 (2025) .................................................. 14, 15

*Grzegorczyk v. United States*,
142 S. Ct. 2580 (2022) .......................................................... 6

*Lawrence v. Chater*,
516 U.S. 163 (1996) ............................................................... 6

*Little v. Hecox*,
No. 24-38, 2025 WL 1829165 (July 3, 2025) ......................... 7

*Michael M. v. Superior Ct. of Sonoma Cnty.*,
450 U.S. 464 (1981) .......................................................... 8, 10

*Romer v. Evans*,
517 U.S. 620 (1996) ............................................................ 8, 9

*Stitt v. Fowler*,
2025 WL 1787695 (June 30, 2025) ...................................... 2, 3

*United States v. Skrmetti*,
145 S. Ct. 1816 (2025) ............................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15

*United States v. Virginia*,
518 U.S. 515 (1996) ......................................................... 8, 9, 11

*Vincent v. Bondi*,
127 F.4th 1263 (10th Cir. 2025) ........................................... 6

*Wellons v. Hall*,
558 U.S. 220 (2010) ............................................................... 6

*West Virginia v. B.P.J.*,
   No. 24-43, 2025 WL 1829164 (July 3, 2025) ................................................................. 7

**STATUTES**

70 OKLA. STAT. § 1-125 ........................................................... 3, 4, 10, 11, 12, 13

**OTHER AUTHORITIES**

Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*,
   WASH. POST, Apr. 7, 1975 ................................................................................. 14

## INTRODUCTION

On June 18, 2025, the U.S. Supreme Court issued its much-anticipated decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025). There, in evaluating the appeal of a preliminary injunction, the Court held that "a Tennessee law banning certain medical care for transgender minors" was subject only to rational basis review and did not violate the Equal Protection Clause of the U.S. Constitution. *Id.* at 1824, 1829. "[Q]uestions regarding its policy," the Court explained, should be decided by "the people, their elected representatives, and the democratic process." *Id.* at 1837.

Here, represented by the same organization (the ACLU) that lost in *Skrmetti*, Plaintiffs claim that *"Skrmetti* differs from this case in several key respects" and "thus has no impact" on their claims. Plaintiffs' Supplemental Brief ("Pls. Supp.") 1, 3. This strains credulity. A hot-off-the-presses Supreme Court opinion involving the ACLU, transgender minors, and the Equal Protection Clause will obviously have an impact on a pending Tenth Circuit case involving the ACLU, transgender minors, and the Equal Protection Clause. Still, even accepting Plaintiffs' "no impact" premise, Oklahoma should prevail here, for the reasons already stated in prior briefing. Whatever else it may be, Plaintiffs' claim of "no impact" is a practical admission that *nothing* in the Supreme Court's *Skrmetti* opinion favors Plaintiffs. *Skrmetti* provides no positive support for, or "impact" improving, Plaintiffs' equal protection arguments, despite (again) it also being an equal protection case involving transgender minors. The absolute best Plaintiffs can hope for is that *Skrmetti* is entirely distinguishable. This, by itself, is telling.

1

*Skrmetti* may be distinct, but it is not entirely distinguishable. Plaintiffs have complained about the State Defendants' "invented" term "biological sex," Plaintiffs' Opening Brief ("Pls. Br.") 37, whereas *Skrmetti* embraced that phrase over a dozen times, *e.g.*, 145 S. Ct. at 1824 ("transgender" means "gender identity does not align with … biological sex"). And Plaintiffs cited *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), dozens of times prior to *Skrmetti*, only to see *Fowler* vacated and sent back to this Court "for further consideration in light of … *Skrmetti*." *Stitt v. Fowler*, 2025 WL 1787695 (June 30, 2025). Furthermore, the *Skrmetti* majority and concurrences expressly buttress State Defendants' argument that rational basis review is appropriate rather than the intermediate scrutiny the district court applied. That *Skrmetti* will have an impact on this case cannot seriously be denied. In the end, under any standard of review, it remains implausible to claim that the longstanding practice of separating public school restrooms based on biological sex violates the Equal Protection Clause.

## BACKGROUND

Applying intermediate scrutiny, the court below held that Plaintiffs "failed to state a claim on which relief can be granted" in alleging that public school bathrooms and changing areas separated based on biological sex violated Title IX and the Equal Protection Clause. App.258. Plaintiffs appealed to this Court. After briefing, and undoubtedly aware of the factual differences between *Skrmetti* and the present appeal, this Court *sua sponte* abated Plaintiffs' appeal indefinitely "pending the Supreme Court's issuance of a decision in *United States v. Skrmetti*." Order (Feb. 18, 2025).

Meanwhile, in *Skrmetti* the ACLU was making many of the same arguments its attorneys make here: it claimed that the Tennessee law, which prohibited certain medical procedures for transgender minors, "is a classic sex classification," "discriminates against minors because they are transgender," "triggers heightened scrutiny," and "cannot survive any standard of review." Brief for Respondents in Support of Petitioner, *U.S. v. Skrmetti*, No. 23-477, 2024 WL 4003791, at *18, *20, *37. On June 18, 2025, the Supreme Court rejected those arguments. Tennessee's law does not classify based on sex or transgender status, the Court held, and it "clearly" survives rational basis review. *Skrmetti*, 145 S. Ct. at 1835. Soon after, the Supreme Court granted Oklahoma's petition for certiorari defending the State's policy of declining to replace sex on birth certificates with gender identity, vacated *Fowler*, 104 F.4th 770, and remanded "in light of … *Skrmetti*." *Stitt*, 2025 WL 1787695.

In *Skrmetti*, the Supreme Court made several preliminary observations that are significant here. To begin, *Skrmetti* found it "relevant" that the Tennessee law "does not restrict the administration of puberty blockers or hormones to individuals 18 and over." *Id.* at 1826. It is similarly relevant, then, that Oklahoma's law ("SB 615") does not restrict access to restrooms outside of public school "students in prekindergarten through twelfth grades." 70 OKLA. STAT. § 1-125(B). Seemingly aware of this similarity, Plaintiffs protest that SB 615 "prevent[s] transgender individuals (of any age) from using restrooms," Pls. Supp. 4, but they immediately concede (as they must) that it only applies "in public schools," *id.* SB 615 indisputably focuses on minors in schools, that

3

is, and it only applies to adults who are within that framework to protect the privacy and safety of children. Plaintiffs cannot obfuscate the aim and scope of SB 615; like the Tennessee law in *Skrmetti*, SB 615 protects children in a specific context.

*Skrmetti* also deemed it "relevant" that the Tennessee law "does not ban fully the administration of such drugs to minors." 145 S. Ct. at 1826. Tennessee's law had exceptions indicating that the law was focused on certain medical procedures rather than sex or transgender status, just like SB 615 has commonsense exceptions showing that it is focused on safety and privacy. Specifically, SB 615 does not apply to persons entering restrooms for "custodial, maintenance, or inspection purposes," to "render emergency medical assistance," or to perform coaching duties within listed boundaries. 70 OKLA. STAT. § 1-125(D). Under those exceptions, a transgender individual could enter school restrooms designated for the opposite biological sex, which means something other than a discriminatory classification is at play here.

## ARGUMENT

### I. *Skrmetti* negatively impacts Plaintiffs' arguments in several ways.

Prior to *Skrmetti*, Plaintiffs criticized the district court for "misstat[ing] the facts" they alleged about sex and drawing "incorrect conclusions based on this misstatement." Pls. Br. 36–37; Pls. Reply 12. That court supposedly relied "on its own preconceived notion of sex" and had the audacity to use a term ("biological sex") that "the State Defendants *invented* in their motion to dismiss." Pls. Br. 37–38 (emphasis added). Plaintiffs ignore this argument now, however, presumably because *Skrmetti* deployed

"biological" or "biological sex" nearly 20 times in the same foundational way as the court did below. The Supreme Court defined "transgender" as meaning someone whose "gender identity does not align with their biological sex," *Skrmetti*, 145 S. Ct. at 1824, it recognized that biological sex can be male or female, *id.* at 1830 n.2, and it observed that "only biological women can become pregnant," *id.* at 1833. *See also id.* at 1856 (Alito, J., concurring in part and in the judgment) ("[A] plaintiff must show that the challenged law differentiates between the two biological sexes: male and female."). *Skrmetti* verifies what State Defendants already explained: the district court acted appropriately in employing biology and "biological sex" to grant the motion to dismiss. *See* State Defendants' Response ("State Defs. Resp.") 32–35.

In addition, Plaintiffs cited this Court's 2024 decision in *Fowler* around 20 times in their opening brief, and nearly a dozen times in their reply, for numerous propositions. *See, e.g.*, Pls. Br. 64 (arguing for reversal "[p]articularly in light of the reasoning in *Bostock* and *Fowler*"). But after *Skrmetti*, the Supreme Court granted certiorari and vacated *Fowler* at Oklahoma's behest and remanded (a "GVR") "for further consideration in light of … *Skrmetti*." *Stitt*, 2025 WL 1787695. That consideration has not taken place yet. Thus, Plaintiffs are forced to admit that *Fowler* is now at *most* just "persuasive"—*i.e.*, non-binding. Pls. Supp. 9. The rendering of dozens of Plaintiffs' formerly binding citations as non-binding broadly undercuts their claim that *Skrmetti* has no impact here.

To be sure, Plaintiffs try to downplay the GVR. Pls. Supp. 9 n.3. And it is true that a GVR does not require a different conclusion. *See, e.g.*, *Vincent v. Bondi*, 127 F.4th

1263, 1264 n.1 (10th Cir. 2025). (If it did, then it would be a summary reversal, not a GVR.) While cherry-picking circuit tidbits, though, Plaintiffs omit the Supreme Court's actual GVR standard. The Supreme Court grants GVRs when there is "a ***reasonable probability*** that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation." *Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (per curiam) (emphasis added); *Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001) (same); *Wellons v. Hall*, 558 U.S. 220, 225 (2010) (per curiam) ("the standard … remains as it always has been"); *see also Grzegorczyk v. United States*, 142 S. Ct. 2580, 2587 (2022) (mem.) (Sotomayor, J., dissenting) ("All [justices] agree that a GVR order is inappropriate when the outcome plainly would not change on remand.").

Thus, with a GVR in *Fowler*, the Supreme Court believes there is a "reasonable probability" that this Court will reject a prior premise that is substantial enough to change "the ultimate outcome of the litigation." *Lawrence*, 516 U.S. at 167. That is much more significant than Plaintiffs let on. If nothing else, this GVR undermines Plaintiffs' contention that *Skrmetti* is distinguishable based on its "procedural posture." Pls. Supp. 1. *Fowler* shares the same posture as this case—an appeal from a dismissal granted to the State—whereas *Skrmetti* involved an appeal of a preliminary injunction. Regardless of this difference, the Supreme Court identified a "reasonable probability" that *Fowler*'s reasoning and outcome could change based on *Skrmetti*. That matters.

Nevertheless, Plaintiffs claim "*Skrmetti* says nothing that disturbs" *Fowler*'s

conclusion that *Bostock* "applies to equal protection claims." Pls. Supp. 9. But even ignoring the GVR, *Skrmetti did* say something on this point: it expressly declined to reach the issue, despite the ACLU (as here) "urg[ing]" the Court to so rule. 145 S. Ct. at 1834. The *Skrmetti* Court showed great caution, which is in line with *Bostock* itself. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020) (declining, even under Title VII, "to address bathrooms, locker rooms, or anything else of the kind"). Meanwhile, the concurring justices explained that *Bostock* does not apply to equal protection claims. *See* 145 S. Ct. at 1839 (Thomas, J., concurring) ("[I]n constitutional challenges, courts need not engage *Bostock* at all."); *id.* at 1855 (Alito, J., concurring in part and in the judgment) (similar). And, just two weeks later, the Court granted certiorari in two cases where courts cited *Bostock* while finding that separating sports based on sex violates equal protection and Title IX. *See Little v. Hecox*, No. 24-38, 2025 WL 1829165 (July 3, 2025); *West Virginia v. B.P.J.*, No. 24-43, 2025 WL 1829164 (July 3, 2025).

Given the Supreme Court's caution, concurrences, and certiorari grants, this Court should think long and hard before embracing Plaintiffs' view that *Skrmetti* means nothing and *Bostock* requires a finding of sex discrimination in public school restrooms as they have existed for countless years. In the end, this Court should decline the invitation to continue along a path where the Supreme Court has refused to tread.[1]

---

[1] Even if *Bostock* applies here, it does not require ruling for Plaintiffs. State Defs. Resp. 16–17, 35–40. In *Skrmetti*, for instance, the Supreme Court assumed that *Bostock* applied and still disagreed with the ACLU that Tennessee's law constituted sex discrimination.

**II.    *Skrmetti* indicates that rational basis review should apply here.**

Originally, State Defendants argued that the "Equal Protection Clause does not eliminate 'dispositive realities' of sex, only assumptions, stereotypes, and overbroad generalizations." State Defs. Resp. 29 (quoting *United States v. Virginia*, 518 U.S. 515, 549–50 (1996)). As a result, the Supreme Court "has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981).

*Skrmetti* confirmed those bedrock principles. To begin, the Supreme Court recounted "the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Skrmetti*, 145 S. Ct. at 1828 (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). Moreover, although sex "*generally* provides no sensible ground for differential treatment," *id.* (emphasis added) (citation omitted), and "sex-based lines *too often* reflect stereotypes or overbroad generalizations about the differences between men and women," *id.* (emphasis added), the Supreme Court "has never suggested that mere reference to sex is sufficient to trigger heightened scrutiny," *id.* at 1829. Rather, "gender specific terms can mark a permissible distinction." *Id.* (quoting *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 64 (2001)).

*Skrmetti* applied those principles to the law before it, where Tennessee prohibited the provision of certain medical procedures to minors with gender dysphoria. The medical arena, the Court explained, is one where "the mere use of sex-based language

8

does not sweep a statute within the reach of heightened scrutiny." *Id.* at 1830. To hold otherwise would be "especially inappropriate," the Court reasoned, in part because "[s]ome medical treatments and procedures are uniquely bound up in sex." *Id.* at 1829. And why is this? In part because "*biological differences* between men and women (differences due to sex chromosome or sex hormones) may contribute to variations seen in the safety and efficacy of drugs, biologics, and medical devices." *Id.* at 1829–30 (emphasis added) (quoting FDA, Sex as a Biological Variable (Jan. 30, 2025)).

In arguing that the Supreme Court "cabin[ed]" *Skrmetti* to the "medical context," Pls. Supp. 3, Plaintiffs ignore the broader principles that led the Supreme Court to apply rational basis review, such as the principle that legislation referencing sex does not automatically merit heightened scrutiny. They also omit that the Supreme Court did not identify the medical field as the only context in which these principles applied. Contrariwise, although medical procedures were deemed a rather obvious example, the Court at least implied that other contexts exist. *See, e.g.*, *Skrmetti,* 145 S. Ct. at 1829 (heightened scrutiny "would be especially inappropriate in the medical context").

Nevertheless, Plaintiffs argue that "*Skrmetti*'s analysis of medical use classifications … is wholly inapplicable" here. Pls. Supp. 2. But this overlooks the Supreme Court's discussion of *why* the medical context is different. Again, the Court explained that the medical context does not merit heightened scrutiny because of "*biological differences* between men and women (differences due to sex chromosome or

sex hormones).” *Skrmetti*, 145 S. Ct. at 1829 (emphasis added) (citation omitted).[2]

Biological reality *is* what drove the Supreme Court’s reasoning in *Skrmetti*, *contra* Pls.

Supp. 4, and it is at the heart of SB 615’s restroom restrictions. *See, e.g.*, 70 OKLA. STAT.

§ 1-125(A) (“‘Sex’ means the physical condition of being male or female based on

genetics and physiology ….”); State Defs. Resp. 30 (SB 615’s focus is on “physical

anatomy”). As such, heightened scrutiny should not apply—especially given Plaintiffs’

concession that they “do not object to restrooms separated by sex in schools.” Pls. Br.

60. SB 615’s limited separation “realistically reflects the fact that the sexes are not

similarly situated in certain circumstances.” *Michael M.*, 450 U.S. at 469.

State Defendants are not out on a limb here. Multiple justices took the same view

in *Skrmetti*. Joined by Justice Thomas, Justice Barrett wrote that “access to restrooms”

and “eligibility for boys’ and girls’ sports teams” are areas of “legitimate regulatory

policy” where heightened scrutiny is inappropriate. 145 S. Ct. at 1852–53 (Barrett, J.,

concurring). “[L]egislatures have many valid reasons to make policy in these areas, and

as long as the statute is a rational means of pursuing a legitimate end, the Equal

Protection Clause is satisfied.” *Id.* at 1853. Cataloguing cases, Justice Alito added that

“a law classifies based on sex for equal protection purposes” only when it “lay[s] down

one rule for males and one rule for females.” *Id.* at 1856–58 (Alito, J., concurring in part

---

[2] The *Skrmetti* dissenters, in response, conceded that “there are ‘biological differences between men and women.’” 145 S. Ct. at 1878–79 (Sotomayor, J., dissenting).

and in the judgment). Here, unlike cases addressing different drinking ages, different admissions policies, and different citizenship requirements, SB 615 does not "dictat[e] that a particular legal standard applies to one sex but not the other." *Id.* at 1857.

These justices are not out on a limb, either. Justice Alito's description of sex classifications is repeated nearly verbatim by the *Skrmetti* majority. *See* 145 S. Ct. at 1831 ("SB 1 does not mask sex-based classifications. … [T]he law does not prohibit conduct for one sex that it permits for the other."). And like this Court,[3] the Supreme Court has effectively answered the restroom question already. In *Virginia*, the Court acknowledged that "[p]hysical differences between men and women ... are enduring." 518 U.S. at 533. As a result, Justice Ginsburg's majority opinion declared—amid finding unconstitutional the exclusion of women from the Virginia Military Academy—that for a remedy it would "undoubtedly" be "*necessary* to afford members of each sex *privacy* from the other sex in *living arrangements*." *Id.* at 550 n.19 (emphases added). SB 615 tracks this language, *see* 70 OKLA. STAT. § 1-125(B) ("To ensure privacy and safety …."), although SB 615 is far narrower given that the *Virginia* mandate applied to adults in college and covered all living arrangements. To state the obvious, nothing in *Virginia* indicated that the Court's own instructions (or the Title IX language the instructions

---

[3] *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007), *deemed overruled on different grounds in Tudor v. SEOSU*, 13 F.4th 1019, 1028 (10th Cir. 2021); *see also* State Defs. Resp. 38, 40 ("On bathrooms, then, *Etsitty* is still seemingly good law … it cannot be said that *Bostock*'s 'reasoning' overruled *Etsitty* on restrooms.").

resemble[4]) would be subject to intermediate scrutiny. Plaintiffs have now filed three briefs on appeal, and they have never addressed this language.

## III. *Skrmetti* undermines Plaintiffs' arguments on transgender status.

In *Skrmetti*, the Supreme Court held that Tennessee's law did not discriminate based on transgender status. That holding is plainly relevant here. If a law that *expressly* "bann[ed] certain medical care for transgender minors," 145 S. Ct. at 1824, does not classify based on transgender status for purposes of equal protection, then how could a law (SB 615) do so that has nothing to say about transgender individuals, gender identity, transgender medical care, or gender dysphoria? *See* 70 OKLA. STAT. § 1-125 (requiring only that public school restrooms be designated "[f]or the exclusive use of the male" or "female sex"). Logically, it cannot. There is no universe in which SB 615 classifies based on transgender status but the law in *Skrmetti* does not.

Per *Skrmetti*, how a law *actually* classifies is what matters, not just what it might partially affect. The Tennessee law "include[d] only two classifications"—age and medical procedure. *Skrmetti*, 145 S. Ct. at 1833. Similarly, SB 615 "only regulates minor children based on their physical anatomy." State Defs. Br. 30. It certainly does not "identif[y]" transgender individuals, as Plaintiffs claim. Pls. Supp. 6. And for reasons already described above, SB 615's limitations (to public pre-K–12 schools) and

---

[4] Since 1972, 20 U.S.C. § 1686 has allowed "any educational institution receiving funds under" Title IX to "maintain[] separate living facilities for the different sexes."

exceptions (coaching, maintenance, emergencies) are "relevant" under *Skrmetti*, 145 S. Ct. at 1826, and they further show the law is not targeting transgender individuals. Using *Skrmetti*'s language, that is, there is a "lack of identity" between transgender status and the regulated persons. *Id.* at 1833. Transgender individuals, like everyone else, must use the restroom matching their biological sex or take advantage of a reasonable accommodation—*i.e.*, "a single-occupancy restroom or changing room." 70 OKLA. STAT. § 1-125(C). And they may enter the facilities that do *not* match their biological sex in certain commonsense circumstances. All individuals are treated the same.

As a result, like in *Skrmetti*, there is no need here to analyze whether "transgender individuals are a suspect or quasi-suspect class." 145 S. Ct. at 1832. Regardless, *Skrmetti* gave no support to the argument that transgender individuals constitute a suspect class, and the concurrences explained—at length—why they do not qualify. *See Skrmetti*, 145 S. Ct. at 1849–55 (Barrett, J., concurring); *id.* at 1859–67 (Alito, J., concurring in part and in the judgment). Given that the Supreme Court has "*never* embraced a new suspect class under" its "strict" test, *id.* at 1851 (Barrett, J., concurring), this Court should decline to do so now when it is unnecessary to the analysis.

**IV.    SB 615 survives both rational basis review and intermediate scrutiny.**

Like Tennessee's law in *Skrmetti*, SB 615 "clearly meets" the rational basis standard. 145 S. Ct. at 1835. Under rational basis review, states have "wide latitude" and "wide discretion to pass legislation," especially where there is "scientific uncertainty." *Id.* at 1828, 1836 (citations omitted). Moreover, a court's "role is not 'to judge the

wisdom, fairness, or logic' of the law before us." *Id.* at 1837 (citation omitted). Here, protecting the privacy and safety of children in public schools is a concededly legitimate governmental interest, Pls. Reply 18, and separating restrooms on sex—a centuries-old practice—is rationally related to that interest. *See, e.g., Virginia*, 518 U.S. at 550 n.19 (deeming it "necessary" to provide "each sex privacy … in living arrangements"); Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post, Apr. 7, 1975, at A21 ("Separate places to … perform personal bodily functions are permitted, in some situations required, by regard for individual privacy.").

Of course, the district court applied intermediate scrutiny and still (correctly) found Plaintiffs' claims implausible. *See* App.254 ("[I]f (biological) sex-based classifications such as S.B. 615 were deemed to be equal protection violations, no law recognizing the inherent differences between male and female would pass constitutional muster. This is an untenable position."). Plaintiffs object, arguing that intermediate scrutiny requires that they be allowed "to prove their case" that there are no privacy or safety concerns in public school restrooms. Pls. Supp. 3; Pls. Br. 51–52. *Skrmetti* did not involve intermediate scrutiny. But a Supreme Court decision released less than two weeks later did: *Free Speech Coalition, Inc. v. Paxton*, 145 S. Ct. 2291 (2025). There, the Court was crystal clear that intermediate scrutiny can be met early in a case, *contra* Pls. Reply 18, especially if the situation involves upholding a longstanding historical practice.

In reversing a preliminary injunction, *Paxton* held that a Texas law requiring age-verification for pornographic websites "readily survives" intermediate scrutiny and is

therefore a "constitutionally permissible exercise." *Id.* at 2299, 2319. In particular, the Court found: (1) the State had an "important interest in shielding children from sexually explicit content," and (2) the law was "appropriately tailored because it permits users to verify their ages through the established methods of providing government-issued identification and sharing transactional data." *Id.* at 2319. The word "established" is important. Per *Paxton*, "requiring age verification online is plainly a legitimate legislative choice" in part because in-person age verification requirements are a "traditional approach" that have been "commonly used" for more than a half-century. *Id.* at 2317. Those requirements, the Court emphasized, "embody a constitutional judgment— made by generations of legislators and by the American people as a whole—that commands our respect." *Id.* at 2316. Here, Oklahoma has a similarly important interest in protecting children, and separating restrooms based on sex has an even older pedigree that commands the same respect. *See* State Defs. Br. 3–5. If intermediate scrutiny applies, it is therefore "readily" met in this case, as well.

### CONCLUSION

*Skrmetti* provides no help to Plaintiffs, and it strengthens State Defendants' arguments. This Court should therefore affirm the dismissal of Plaintiffs' claims. Whether SB 615 is wise policy should be decided by "the people, their elected representatives, and the democratic process." *Skrmetti*, 145 S. Ct. at 1837.

15

*s/ Zach West*

GARRY M. GASKINS, II
  *Solicitor General*
ZACH WEST
  *Director of Special Litigation*
CULLEN D. SWEENEY
WILL FLANAGAN
  *Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:  (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Cullen.Sweeney@oag.ok.gov
William.Flanagan@oag.ok.gov

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

This response complies with the typeface requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced font (Garamond, 14-point) using Microsoft Word 2016. The document complies with the type-volume limitations set forth in this Court's June 25, 2025, Order, because it utilizes 14-point font and contains 15 pages of argument.

s/ *Zach West*

ZACH WEST

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions have been made as required by 10th Cir. R. 25.5 and the ECF Manual. Additionally, this filing was scanned with Crowdstrike antivirus updated on July 23, 2024.

s/ *Zach West*

ZACH WEST

## CERTIFICATE OF SERVICE

I certify that on August 4, 2025, I caused the foregoing to be filed with this Court and served on all parties via the Court's CM/ECF filing system. No paper copies are required pursuant to 10th Cir. R. 27.2.

s/ *Zach West*

ZACH WEST