No. 24-6072

## In the United States Court of Appeals for the Tenth Circuit

ANDREW BRIDGE, *et al.*,

*Plaintiffs-Appellants*,

v.

OKLAHOMA STATE DEPARTMENT OF EDUCATION, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Oklahoma
Case No. 5:22-CV-787-JD, The Honorable Judge Jodi Dishman

### SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLANTS

Megan Lambert (OBA 33216)
Rebecca Barrett (OBA 36997)
AMERICAN CIVIL LIBERTIES UNION
OF OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
rbarrett@acluok.org

Harper S. Seldin
(admitted only in Pennsylvania)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(323) 536-9880
hseldin@aclu.org

Isaac D. Chaput
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
ichaput@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com

Paul D. Castillo
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
(214) 219-8585
pcastillo@lambdalegal.org

*Counsel for Plaintiffs-Appellants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.     THE STUDENTS CONTINUE TO STATE A VIABLE EQUAL
PROTECTION CLAIM. ........................................................................... 2

     A.     *B.P.J.* Confirms that Laws Separating Spaces By Sex Are Sex-Based
Classifications Triggering Heightened Scrutiny. ............................ 2

     B.     *B.P.J.* Does Not Resolve Whether Discrimination on the Basis of
Transgender Status Warrants Heightened Scrutiny. ...................... 2

     C.     The Students Allege that S.B. 615 Fails Heightened Scrutiny
Because a State's Interest in Maintaining Sex-Separated Sports
Teams Is Materially Distinct from Its Interest in Sex-Separated
Restrooms. ................................................................................... 4

II.    THE STUDENTS CONTINUE TO STATE A PLAUSIBLE TITLE IX
CLAIM. ................................................................................................. 7

     A.     The Javits Amendment Applies to Sports Teams, Not Restrooms. .............. 7

     B.     *B.P.J.*'s Definition of "Sex" in Sports Does Not Control Restrooms,
and *Bostock* Still Applies to Title IX in Non-Sports Settings. ..................... 8

     C.     The Students Allege that S.B. 615 Constitutes Unlawful
Discrimination Because It Inflicts Tangible Harm. ......................... 9

CONCLUSION ................................................................................................. 10

CERTIFICATE OF COMPLIANCE ................................................................. 12

CERTIFICATE OF SERVICE .......................................................................... 13

CERTIFICATE OF DIGITAL SUBMISSION ................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**

*A.C. by M.C. v. Metro. Sch. Dist. Martinsville*,
75 F.4th 760 (7th Cir. 2023) ................................................................... 5, 10

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) ...................................................................................... 9

*Burlington N. & Santa Fe Rwy. Co. v. White*,
548 U.S. 53 (2006) ...................................................................................... 10

*Doe ex rel. Doe v. Rocky Mountain Classical Acad.*,
99 F.4th 1256 (10th Cir. 2024) ..................................................................... 1

*Gen. Dynamics Land Sys., Inc. v. Cline*,
540 U.S. 581 (2004) ...................................................................................... 8

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) .................................................................... 3, 8

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005) .................................................................................... 10

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ...................................................................... 3

*Navajo Nation v. New Mexico*,
975 F.2d 741 (10th Cir. 1992) ...................................................................... 3

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979) ...................................................................................... 3

*United States v. Barela*,
797 F.3d 1186 (10th Cir. 2015) .................................................................... 3

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ...................................................................................... 4

*Washington v. Davis*,
426 U.S. 229 (1976) ...................................................................................... 3

*West Virginia v. B.P.J. by Jackson*,
2026 WL 1868739 (U.S. June 30, 2026) ................................ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10

*Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Educ.*,
    858 F.3d 1034 (7th Cir. 2017) .................................................................. 5, 10

**Statutes**

20 U.S.C. § 1681 ....................................................................................... 7

Educ. Amends. of 1974, Pub. L. No. 93-380, § 844 ......................................... 7

**Other Authorities**

34 C.F.R. § 106.33 .................................................................................. 8, 9

## INTRODUCTION

Andrew Bridge, Mark Miles, and Sarah Stiles ("Plaintiffs" or "Students") submit this Supplemental Brief "regarding the impact (if any) of *West Virginia v. B.P.J. by Jackson*, No. 24-43, 2026 WL 1868739 (U.S. June 30, 2026) on the issues raised in this appeal." Order, Doc. 203 (10th Cir. July 1, 2026). The unique sports context of *B.P.J.* distinguishes the result in that case from this appeal regarding restrooms, but the Supreme Court's reasoning to reach that result supports the Students' claims here in several significant ways.

As an initial matter, *B.P.J.*'s procedural posture demonstrates that the district court's dismissal of the Students' claims on a motion to dismiss was improper. *B.P.J.* was decided on a motion for summary judgment, with the developed evidentiary record necessary for heightened scrutiny. This case, in contrast, is still in its nascency and before this Court on a motion to dismiss. *B.P.J.*, 2026 WL 1868739, at *6; Pls.' Br., Doc. 51, at 28.

As to the Students' Equal Protection claim, *B.P.J.* confirms that policies creating sex-separated spaces, like S.B. 615, warrant intermediate scrutiny, just as the Students argue here. *B.P.J.*, 2026 WL 1868739, at *10. The Court in *B.P.J.* determined that the states there met their burden under heightened scrutiny to show a substantial relation between the laws at issue and their stated government interests based on the evidence proffered. *Id.* Defendants here fail to meet that burden at the motion to dismiss stage, where the Court must accept the Students' factual allegations as true. *See Doe ex rel. Doe v. Rocky Mountain Classical Acad.*, 99 F.4th 1256, 1261 (10th Cir. 2024) ("the Complaint does not establish that [defendant] has an 'exceedingly persuasive justification' for its sex-based

1

classification … [and] at the 12(b)(6) stage, [defendant] never had the opportunity to make such a showing").

As to the Students' Title IX claims, the *B.P.J.* Court expressly limited its Title IX analysis to the "sports context," relying on the Javits Amendment's unique athletic exceptions to Title IX's prohibition against sex discrimination in education. *B.P.J.*, 2026 WL 1868739, at *9. In non-sports settings like those present here, Title IX continues to bar sex discrimination in education which inflicts injury.

## ARGUMENT

**I.    THE STUDENTS CONTINUE TO STATE A VIABLE EQUAL PROTECTION CLAIM.**

**A.    *B.P.J.* Confirms that Laws Separating Spaces By Sex Are Sex-Based Classifications Triggering Heightened Scrutiny.**

Like the laws at issue in *B.P.J.*, S.B. 615 classifies on the basis of sex. *B.P.J.* confirms what the Students have argued all along: government-enforced separation by birth-assigned sex is a sex-based classification triggering intermediate scrutiny. *B.P.J.*, 2026 WL 1868739, at *10. Because S.B. 615 separates multi-person restrooms based on birth-assigned sex, it therefore warrants heightened scrutiny.[1]

**B.    *B.P.J.* Does Not Resolve Whether Discrimination on the Basis of Transgender Status Warrants Heightened Scrutiny.**

The *B.P.J.* majority opinion declined to "definitively resolve whether rational basis review or intermediate scrutiny applies to transgender classifications." *B.P.J.*, 2026 WL

---

[1] Although the State Defendants claim that S.B. 615 classifies based on biological sex, S.B. 615 classifies based on the letter, either "M" for male or "F" for female, written on students' original birth certificates. *See* Compl. ¶ 3 (A-0012).

2

1868739, at *14. Thus, nothing in *B.P.J.* prevents this Court from recognizing that transgender status discrimination is a quasi-suspect classification meriting heightened scrutiny, as other courts of appeals have held. *See* Compl. ¶ 133 (A-0045–46); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611–13 (4th Cir. 2020); *Karnoski v. Trump*, 926 F.3d 1180, 1199–1201 (9th Cir. 2019).

The Students allege that S.B. 615 discriminates on the basis of transgender status. In dicta, the Court in *B.P.J.* stated that the Idaho and West Virginia laws at issue did not facially classify based on transgender status before explaining why the laws survived heightened scrutiny. *B.P.J.*, 2026 WL 1868739, at *14; *see United States v. Barela*, 797 F.3d 1186, 1190 (10th Cir. 2015) (defining dicta as "statements and comments … not necessarily involved nor essential to determination" of a case). But even if *B.P.J.*'s dicta were binding here (it is not) and S.B. 615 did not facially classify based on transgender status (it does), the Students have plausibly alleged that S.B. 615 was enacted with a discriminatory purpose. *See* Compl. ¶¶ 125–36 (A-0043–45). A statute has a discriminatory purpose when "a particular course of action [was chosen] at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). The Students need not allege the discrimination "was the sole, or even the primary, motivation." *Navajo Nation v. New Mexico*, 975 F.2d 741, 743 (10th Cir. 1992). A discriminatory purpose can be shown through the "totality of the relevant facts," including disparate impact, "historical background of the decision," the "specific sequence of events leading up to the challenged decision," "[d]epartures from the normal procedural sequence," and "the legislative or administrative history." *Washington*

*v. Davis*, 426 U.S. 229, 242 (1976); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–68 (1977). The Students have plausibly alleged purposeful discrimination and are entitled to discovery. *B.P.J.* does not alter that result.

**C.    The Students Allege that S.B. 615 Fails Heightened Scrutiny Because a State's Interest in Maintaining Sex-Separated Sports Teams Is Materially Distinct from Its Interest in Sex-Separated Restrooms.**

The Court in *B.P.J.* found a substantial relationship between the separation of sports based on so-called "biological sex" and the government's interest in safety and competitive fairness for cisgender female athletes. *B.P.J.*, 2026 WL 1868739, at *11. The State Defendants may argue that because the exclusion of transgender girls and women from school-sponsored women's and girls' sports teams was deemed permissible under the Equal Protection Clause in *B.P.J.*, it necessarily follows that transgender boys and girls may be excluded from boys' and girls' restrooms here. Not so. The two situations are materially distinct in ways that matter under heightened scrutiny.

The Court in *B.P.J.* held that West Virginia and Idaho's exclusions of transgender girls from girls' teams survived heightened scrutiny because "limiting women's and girls' sports to biological females … is substantially related" to "the interests in safety and competitive fairness," which "are important for purposes of equal protection." *B.P.J.*, 2026 WL 1868739, at *11. Crucially, the Supreme Court repeatedly and intentionally cabined its holding to the unique and "distinctive sports context." *See id.* at *12 ("the sports context is again crucial"); *id.* ("[s]ports are different"); *id.* at *13 ("[e]specially in the sports context"); *id.* ("[p]articularly in the sports context"); *id.* at *14 ("[i]n the sports context");

*id.* at \*16 (emphasizing "the nature and reality of sports"). Thus, *B.P.J.*'s narrow athletic sports ruling has no bearing on non-sports facilities like restrooms.

Specifically, the Court observed that "everyone agrees that the States may maintain separate women's and men's teams … because of the inherent physical differences between women and men." *Id.* at \*12; *id.* at \*3 (discussing "differences relevant to athletic performance," including "height, weight, strength, speed, endurance, and jumping ability"). In the distinctive sports context, it was uncontested that schools could rely on group-based generalizations even if they are not true for all individuals, including because "[s]ports are highly competitive and generally zero sum." *Id.* at \*16.

None of those unique features specific to sports applies to the use of school restrooms. Unlike in *B.P.J.*, everyone does *not* agree that separate restrooms are justified by "inherent physical differences" such as chromosomes or genitals. *B.P.J.*, 2026 WL 1868739, at \*12. Although there is an important governmental interest in protecting students from "exposure of their bodies to the opposite sex," allowing transgender students to use restrooms consistent with their identity "does not implicate the interest in preventing bodily exposure, because there is no such exposure." *A.C. by M.C. v. Metro. Sch. Dist. Martinsville*, 75 F.4th 760, 773 (7th Cir. 2023). "Common sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall." *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Educ.*, 858 F.3d 1034, 1052 (7th Cir. 2017). No one is aware of the chromosomes or genitals of someone in a different stall.

Instead of invoking an important governmental interest rooted in "inherent physical differences," *B.P.J.*, 2026 WL 1868739, at *12, the State Defendants rely on stereotypes about transgender people rather than any evidence-based claims. They argue that a transgender person's mere presence in a restroom causes "mental, emotional, and developmental harm," supporting this claim with little more than an opinion piece from a self-published blog. St. Defs.' Mot. Dismiss (A-0138–40). Similarly, their assertion that transgender students pose a risk of "abuse and assault" to other students is unsupported; neither of the two news reports cited indicates that the assailant was transgender or gained access to the victim's location by claiming to be transgender. *Id.* (A-0140–41). As these dubious sources demonstrate, the State Defendants rely on stereotypes about transgender boys and girls, and not on the physical performance differences which justified separate sports teams. *See B.P.J.*, 2026 WL 1868739, at *12.

Even if the State Defendants had identified an important governmental interest rooted in relevant physical differences, the categorical exclusion of transgender students from restrooms consistent with their gender identity would still fail intermediate scrutiny. The interests specific to sports are inapplicable here. Unlike athletic competitions, communal restrooms are not zero sum. The Equal Protection Clause does not permit the State to deny equal access to a non-zero-sum facility based on unfounded stereotypes.

Accepting all of the Students' well-pleaded factual allegations as true as required on this motion to dismiss, the State Defendants have not met their burden to prove a substantial relationship between their stated goal of protecting student privacy and excluding transgender students from restrooms. Nor can the State Defendants invoke *B.P.J.*'s

language about deference to "the people, their elected representatives, and the democratic process." *B.P.J.*, 2026 WL 1868739, at *15. That deference turned on a legislature's resolution of a genuine "medical and scientific debate" over athletic advantages, on a developed record. In the bathroom context, no such debate exists. Nor can deference to the legislature justify dismissal when the Students' allegations must be accepted as true.

## II.    THE STUDENTS CONTINUE TO STATE A PLAUSIBLE TITLE IX CLAIM.

### A.    The Javits Amendment Applies to Sports Teams, Not Restrooms.

*B.P.J.*'s Title IX holding does not apply to restrooms because it is anchored to the Javits Amendment, which established a distinct framework for sports teams that effectively carved out athletics from Title IX's general prohibition against sex discrimination.

In *B.P.J.*, the Court concluded that excluding transgender girls from girls' teams did not constitute unlawful discrimination because the Javits Amendment specifically authorizes "reasonable provisions considering the nature of particular sports." *See* Educ. Amends. of 1974, Pub. L. No. 93-380, § 844 ("Javits Amendment"). The Javits Amendment explicitly addresses sports teams. As the Supreme Court noted, this provision and the regulations it authorized "guarantee 'equal athletic opportunity'" in the zero-sum context of sports. *B.P.J.*, 2026 WL 1868739, at *8–9.

Title IX's treatment of restrooms is entirely different. There is no separate statute authorizing different rules for restrooms or otherwise exempting them from Title IX's core statutory prohibition on "discrimination." While Title IX authorizes nine specific exceptions to its general prohibition on sex-based discrimination, *see* 20 U.S.C. § 1681(a)(1)–(9), restroom usage is not among them. And no regulation may be applied in

7

a manner that conflicts with the broader statutory mandate. *See Grimm*, 972 F.3d at 618
("[T]he implementing regulation [that is, 34 C.F.R. § 106.33] cannot override the statutory
prohibition against *discrimination* on the basis of sex. All it suggests is that the act of
creating sex-separated restrooms in and of itself is not discriminatory….") (emphasis in
original).

**B.**    ***B.P.J.*'s Definition of "Sex" in Sports Does Not Control Restrooms, and *Bostock* Still Applies to Title IX in Non-Sports Settings.**

The Supreme Court in *B.P.J.* held that the word "sex" in Title IX statutory text and
athletic regulations refers to "biological sex," "particularly in the sports context." *B.P.J.*,
2026 WL 1868739, at *7. That interpretation was driven by the fact that Title IX and its
regulations allow for separate sports teams precisely because of the "inherent physical
differences between biological women and biological men." *Id.* at *8; *see id.* at *34 n.14
(Sotomayor, J., concurring in the judgment in part and dissenting in part) (noting that the
majority's definition was limited to the sports context); *id.* at *36 (Jackson, J., concurring
in the judgment in part and dissenting in part) (same).

The reasons *B.P.J.* gave for defining "sex" as "biological sex" in athletics simply do
not apply to the term "sex" as used in Title IX's restroom regulation, which authorizes
schools to "provide separate toilet … facilities on the basis of sex." 34 C.F.R. § 106.33.
The Supreme Court has repeatedly explained that a statutory or regulatory term can have
different meanings—even in the same statute or regulation—depending on the context in
which it is used. *See, e.g.*, *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004)
(observing that the word "age" has different meanings in the ADEA depending on whether

8

it refers to old age or a bona fide occupational qualification). So too, here, the term "sex" has a distinct functional application when used as part of the phrase "provide separate toilet … facilities" under Section 106.33 than when it is used to "sponsor separate teams" for athletics. Unlike sports, restrooms are not inherently structured around athletic performance differences; they can be separated by students' gender identity and expression.

Because the Javits Amendment explicitly carved out an exception for sports teams, the *B.P.J.* Court concluded that athletics in Title IX did not parallel *Bostock v. Clayton County*, 590 U.S. 644 (2020). However, it does not follow that *Bostock* is inapplicable in the restroom context. Title VII generally requires that workers are treated without regard to sex, and Title IX imposes the same bar on sex discrimination for schools. While sports are handled differently due to their zero-sum nature and statutory exceptions, restrooms are like any other educational program or activity. Therefore, *B.P.J.*'s language does not undermine the *Bostock* analysis in non-sports settings; discriminating against a student based on their transgender status remains unlawful sex discrimination under Title IX.

C.     **The Students Allege that S.B. 615 Constitutes Unlawful Discrimination Because It Inflicts Tangible Harm.**

Moreover, even if the word "sex" in Title IX and its restroom regulations referred to sex assigned at birth, *B.P.J.* would still not undermine the Students' Title IX claims. As in *B.P.J.*, there is no dispute that excluding transgender students from restrooms consistent with their gender identity is disparate treatment "on the basis of sex" under any definition of the term. *See B.P.J.*, 2026 WL 1868739, at *19 (Gorsuch, J., concurring). The critical question in *B.P.J.* and here is whether that disparate treatment on the basis of sex constitutes

9

"discrimination" under the statute. *See id.* In Title IX, the term "discrimination" refers only "to distinctions or differences in treatment that *injure* protected individuals." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 59–60 (2006) (emphasis added) (interpreting Title VII while citing, *inter alia*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005), which interpreted Title IX); *see also A.C.*, 75 F.4th at 769 ("[W]e ask whether our three plaintiffs are suffering *negative consequences* … for behavior that is being tolerated in male students who are not transgender.") (emphasis added); *Whitaker*, 858 F.3d at 1049 ("A policy that requires an individual to use a bathroom that does not conform with his or her gender identity *punishes* that individual….") (emphasis added). The Students allege that S.B. 615 injures them.

Finally, unlike finite athletic roster spots, restroom usage is not zero-sum and does not inherently require that some students be excluded. While Title IX's athletic regulations do not guarantee every student a spot on a sports team due to the separate statutory framework of the Javits Amendment, Title IX's core prohibition on sex discrimination prohibits policies that inflict tangible injury on students. Access to school restrooms is an educational program and activity to which all students are legally entitled to equal access free from discriminatory harm.

**CONCLUSION**

*B.P.J.*'s holding does not undermine the legal claims at issue in this case. The Students assert viable claims that S.B. 615 violates the Students' rights under both the Equal Protection Clause and Title IX. This Court should reverse the district court's dismissal of the Students' claims on the pleadings and remand for further proceedings.

10

Dated this 29th day of July, 2026.

Respectfully submitted,

/s/ Rebecca Barrett
Rebecca Barrett

Megan Lambert (OBA 33216)
Rebecca Barrett (OBA 36997)
AMERICAN CIVIL LIBERTIES UNION OF
OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
rbarrett@acluok.org

Harper S. Seldin
(admitted only in Pennsylvania)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(323) 536-9880
hseldin@aclu.org

Isaac D. Chaput
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
ichaput@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com

Paul D. Castillo
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
(214) 219-8585
pcastillo@lambdalegal.org

11

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1.      This Supplemental Brief complies with the type-volume limitation of this Court's Order, dated July 1, 2026, providing that the parties' supplemental submissions shall be no longer than 10 pages in a 13- or 14-point font, because it contains 10 pages prepared in 13-point Times New Roman font. *See* Order, Doc. 203 (10th Cir. July 1, 2026).

2.      This Supplemental Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(A) because this Supplemental Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 13-point Times New Roman font.

*/s/ Rebecca Barrett*
Rebecca Barrett

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically filed the foregoing document through the Court's electronic filing system, and that it has been served on all counsel of record through the Court's electronic filing system.

/s/ *Rebecca Barrett*
Rebecca Barrett

13

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing:

1.      All required privacy redactions have been made per 10th Cir. R. 25.5.

2.      If required to file additional hard copies, that the ECF submission is an exact copy of those documents.

3.      The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Cortex XDR Advanced Endpoint Protection, and according to the program are free of viruses.

/s/ Rebecca Barrett
Rebecca Barrett

14