No. 24-6072

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ANDREW BRIDGE, *et al.*,

*Plaintiffs-Appellants*,

v.

OKLAHOMA STATE DEPARTMENT OF EDUCATION, *et al.*,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Western District of Oklahoma
The Honorable Jodi W. Dishman
No. 5:22-cv-787-JD

**SUPPLEMENTAL BRIEF FOR STATE DEFENDANTS
REGARDING *WEST VIRGINIA V. B.P.J.***

GARRY M. GASKINS, II
 *Solicitor General*
ZACH WEST
 *Director of Special Litigation*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
*Counsel for State Defendants*

CULLEN D. SWEENEY
WILL FLANAGAN
 *Assistant Solicitors General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Cullen.Sweeney@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for State Defendants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................1

ARGUMENT ................................................................................................2

    I.    *B.P.J.* confirms that Title IX turns on biological sex, which defeats Plaintiffs' Title IX claim. .........................................................................2

    II.    *B.P.J.* holds that *Bostock* does not carry over to Title IX. ....................4

    III.    *B.P.J.* confirms that SB 615 does not classify based on transgender status and survives any standard of review. ...........................................6

    IV.    *B.P.J.* firmly forecloses Plaintiffs' demand for remand and further factual development. ..................................................................................8

CONCLUSION .............................................................................................10

CERTIFICATE OF COMPLIANCE ..................................................................12

CERTIFICATE OF DIGITAL SUBMISSION .....................................................12

CERTIFICATE OF SERVICE ........................................................................12

## TABLE OF AUTHORITIES

**CASES**

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020) ................................................................1, 4–6, 10

*Fowler v. Stitt*,
  104 F.4th 770 (10th Cir. 2024) ................................................ 5, 6

*Griffith v. El Paso Cnty.*,
  129 F.4th 790 (10th Cir. 2025) ................................................ 6

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005) ................................................................ 4

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ................................................................ 3

*Michael M. v. Superior Ct. of Sonoma Cnty.*,
  450 U.S. 464 (1981) ................................................................ 7

*Stitt v. Fowler*,
  145 S. Ct. 2840, 2025 WL 1787695 (2025) ............................... 5

*Tuan Anh Nguyen v. INS*,
  533 U.S. 53 (2001) ................................................................ 7, 9

*United States v. Skrmetti*,
  605 U.S. 495 (2025) ........................................... 1, 2, 5–7, 9, 10

*United States v. Virginia*,
  518 U.S. 515 (1996) ................................................................ 7

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................ 7, 9

*West Virginia v. B.P.J.*,
  609 U.S. ----, 2026 WL 1868739 (2026) ..............................1–10

**STATUTES**

20 U.S.C. § 1686 ................................................................ 3

70 OKLA. STAT. § 1-125 ................................................................ 2, 6, 8

**REGULATIONS**

34 C.F.R. § 106.33 ................................................................................................ 3, 5

34 C.F.R. § 106.41 ................................................................................................... 3

## INTRODUCTION

The Supreme Court held in *West Virginia v. B.P.J.*, 609 U.S. ----, 2026 WL 1868739 (2026), that neither Title IX nor the Equal Protection Clause prohibits a State from preserving women's and girls' sports teams exclusively for biological females. That makes it twice in two years that the Supreme Court has rejected the arguments pressed here by Plaintiffs' counsel (the ACLU)—and this time it did so under the intermediate scrutiny standard Plaintiffs insist upon, and over the same demand (echoed here) for further factual development.

*B.P.J.* controls this appeal. It confirms that the term "sex" in Title IX "cannot plausibly be interpreted to refer to anything other than biological sex." 2026 WL 1868739, at *7. It holds that Title VII and *Bostock v. Clayton County*, 590 U.S. 644 (2020), "are not relevant" to the "very different statutory and factual context" of sex-separated school programs. 2026 WL 1868739, at *9. It reiterates that laws classifying on the basis of biological sex "do not classify based on gender identity or transgender status." *Id.* at *14 (citing *United States v. Skrmetti*, 605 U.S. 495, 517 (2025)). And it establishes that courts must uphold such laws without demanding individualized evidentiary showings. Under *B.P.J.*, Oklahoma Senate Bill 615 ("SB 615") is constitutional whether rational basis review or intermediate scrutiny applies. This Court should affirm.

## BACKGROUND

To recap, SB 615 requires multiple-occupancy restrooms and changing areas in Oklahoma public schools to be designated for the exclusive use of the male or female

1

sex, while guaranteeing access to single-occupancy accommodations. 70 OKLA. STAT. § 1-125. Applying intermediate scrutiny, the district court below dismissed as implausible Plaintiffs' claims that SB 615 violates Title IX and the Equal Protection Clause. App.258. This Court abated Plaintiffs' appeal pending the Supreme Court's decision in *Skrmetti*, received supplemental briefing, and heard oral argument.

Meanwhile, in *B.P.J.* (consolidated with *Little v. Hecox*), the ACLU pressed claims materially identical to Plaintiffs' claims here, contending that state laws reserving girls' sports for biological females violate Title IX and the Equal Protection Clause. On June 30, 2026, the Supreme Court held that Title IX "allows schools to provide separate women's and men's sports teams defined by biological sex," 2026 WL 1868739, at *9, and that the States' biological-sex classifications survive intermediate scrutiny because they are substantially related to the "vitally important interests" of safety and competitive fairness, *id.* at *16. Although three justices dissented from the equal protection holding, *every* justice agreed that the Title IX claim failed. *See id.* at *20 (Sotomayor, J., concurring in the judgment in part and dissenting in part); *id.* at *36 (Jackson, J., concurring in the judgment in part and dissenting in part).

### ARGUMENT

### I. *B.P.J.* confirms that Title IX turns on biological sex, which defeats Plaintiffs' Title IX claim.

*B.P.J.* squarely holds what State Defendants have argued from the outset, *see* State Defs.' Resp. 21–26: Title IX's prohibition of discrimination "on the basis of sex" refers

to biological sex. The term "'sex' in the 1972 Title IX statute, the 1974 Javits Amendment, and the 1975 Title IX regulations cannot plausibly be interpreted to refer to anything other than biological sex," given the term's ordinary meaning in the early 1970s. 2026 WL 1868739, at *7. That is precisely the conclusion the district court reached, and it is the conclusion Plaintiffs have wasted three briefs attacking as error.

The Supreme Court's reasoning applies here *a fortiori*. *B.P.J.* emphasized that the contemporaneous 1975 regulations are "especially useful in determining the statute's meaning." *Id.* at *7 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)). The regulation in *B.P.J.* merely authorized "separate teams for members of each sex" in certain sports. 34 C.F.R. § 106.41(b). The regulation here speaks directly to the challenged conduct: schools "may provide separate toilet, locker room, and shower facilities on the basis of sex." *Id.* § 106.33. And Title IX itself declares that nothing in the statute prohibits schools "from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686. As Justice Gorsuch observed, Congress "has taken pains to emphasize" that its mandate should not be construed to forbid "separate-sex living facilities in school settings," thereby "signaling that sex separation doesn't always amount to discrimination under the statute." 2026 WL 1868739, at *18 (Gorsuch, J., concurring). If Title IX permits schools to keep biological males off girls' sports teams under a regulation addressed only to "teams," it assuredly permits sex-separated restrooms under provisions that address those facilities by name.

3

Again, Plaintiffs' core Title IX theory—that separating school facilities by biological sex is discrimination "on the basis of sex"—did not garner a single vote at the Supreme Court, even in the less textually explicit context of sports. All nine justices, including the three who dissented in part on equal protection grounds, agreed that the Title IX claim failed. Plaintiffs' Title IX claim was implausible before *B.P.J.*; it is utterly untenable after it.

## II. *B.P.J.* holds that *Bostock* does not carry over to Title IX.

Plaintiffs' briefs have leaned heavily on *Bostock*. *B.P.J.* forecloses that reliance. The Supreme Court held that "Title VII and *Bostock* are not relevant in this very different statutory and factual context." 2026 WL 1868739, at *9. Title VII "concerns employment"; "[t]he two factual contexts are vastly different"; and "the two statutes are also 'vastly different.'" *Id.* at *9 (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005)). Title IX, unlike Title VII, affirmatively "authorizes" sex separation—and *Bostock* "expressly noted" that it did "not purport to address bathrooms, locker rooms, or anything else of the kind." *Id.* at *9 (quoting *Bostock*, 590 U.S. at 681).

Justice Gorsuch—*Bostock*'s author—wrote separately to explain that *Bostock* "supports, not undermines," the Supreme Court's conclusion in *B.P.J.*, because "it is a mistake to assume" that what counts as unlawful discrimination under Title VII "must also amount to unlawful discrimination" under Title IX. *Id.* at *18–19 (Gorsuch, J., concurring). "It's a point *Bostock* took care to underscore": while "[f]iring employees because of a statutorily protected trait surely counts" as unlawful discrimination under

4

Title VII, the question "[w]hether other policies and practices might or might not qualify as unlawful discrimination" under other provisions of law "cannot be simply assumed but must be assessed with reference to the policies in question and according to the relevant law's terms." *Id.* at *19 (quoting *Bostock*, 590 U.S. at 681).

Nor can Plaintiffs cabin *B.P.J.* to the playing field. Restrooms and locker rooms were applications *Bostock* reserved by name—school sports made the list only by analogy. *See id.* at *19 (Gorsuch, J., concurring) (*Bostock* "stress[ed] that policies concerning 'sex-segregated bathrooms, locker rooms, and dress codes'—and, one might add, school-sponsored sports teams—were not before us"). It would make little sense for *B.P.J.* to settle the analogized application for schools nationwide while leaving the expressly reserved one open for lower courts to extend *Bostock* on their own. And the majority's construction of "sex" governs the 1972 statute and the 1975 regulations as a whole, *id.* at *7—the same regulations that include § 106.33's express authorization of separate "toilet, locker room, and shower facilities." Moreover, as a practical matter, sports and restrooms have much overlap; nearly every sport involves locker rooms, showers, restrooms, and the like. The idea that a school could permissibly separate the sexes on the field but not in the locker room or shower after the game is absurd.

*B.P.J.* confirms what the *Skrmetti*-centered "GVR" of *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), already indicated. *See Stitt v. Fowler*, 145 S. Ct. 2840, 2025 WL 1787695 (2025). Decisions extending *Bostock*'s Title VII reasoning to Title IX and equal protection claims—including *Fowler* and *Griffith v. El Paso County*, 129 F.4th 790 (10th

Cir. 2025), *petition for cert. filed*, No. 25-442 (U.S. Oct. 10, 2025)—rest on a premise the Supreme Court has now rejected in the school context. Plaintiffs' dozens of citations to *Fowler* and *Bostock* here cannot survive *B.P.J.*

### III. *B.P.J.* confirms that SB 615 does not classify based on transgender status and survives any standard of review.

Applying *Skrmetti*, the Supreme Court in *B.P.J.* held that the West Virginia and Idaho laws protecting women's sports "do not classify based on gender identity or transgender status"; they "classify on the basis of biological sex." 2026 WL 1868739, at *14. That was so even though those laws affect transgender athletes. SB 615 presents an easier case still: it says nothing about transgender status, gender identity, or gender dysphoria, and it simply requires all students—without exception or caveat—to use the facilities matching their biological sex, or to use a single-occupancy accommodation. *See* 70 OKLA. STAT. § 1-125. If a law excluding biological males from girls' sports teams does not classify based on transgender status, a law applying one uniform biological rule to every student in the context of restrooms certainly does not.

*B.P.J.* also reiterated that the Supreme Court "has not previously held" that heightened scrutiny applies to transgender or gender-identity classifications, and that "[s]everal Members" of the Court have concluded such classifications receive "only deferential rational basis review." 2026 WL 1868739, at *14. This Court should decline Plaintiffs' invitation to recognize a new quasi-suspect class after *Skrmetti* and *B.P.J.* pointed the other way.

6

In any event, the standard of review does not matter, because in *B.P.J.* "the classification ... readily satisfies rational basis review or intermediate scrutiny." *Id.* So too here. Protecting the privacy and safety of schoolchildren in intimate facilities is a concededly legitimate—and plainly important—governmental interest. Pls.' Reply 18. And separating those intimate facilities by biological sex is substantially related to that interest: "Physical differences between men and women ... are enduring," *B.P.J.*, 2026 WL 1868739, at *10 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)), and *Virginia* itself deemed it "necessary to afford members of each sex privacy from the other sex in living arrangements," 518 U.S. at 550 n.19. Intermediate scrutiny permits a sex-based classification that, like SB 615's, is "not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances." 2026 WL 1868739, at *12 (quoting *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981) (plurality op.)). If biological sex realistically distinguishes students on the playing field, it realistically distinguishes students in states of undress.

Plaintiffs will probably try to confine *B.P.J.*'s equal protection holding to athletics, seizing on the Court's remark that it was speaking "[i]n the distinctive sports context." *Id.* at *12. That will not work: the principles the Court applied are not sports-specific. They come from a time-place-manner speech case (*Ward*), a statutory-rape case (*Michael M.*), and a derivative-citizenship case (*Nguyen*). And the Court was explicit that "when a sex-based classification is justified as a constitutional matter," the States "need not make case-by-case exceptions." *Id.* at *16. If anything, the constitutional

7

justification is even more self-evident here: the athletic advantages of biological males led the Court to canvass physiology, but no evidentiary record is needed to explain the privacy concerns that have always led schools (and society) to separate restrooms, locker rooms, and showers by sex.

SB 615 fares even better than the statutes upheld in *B.P.J.* The principal dissent faulted West Virginia's categorical rule because "there are no procedures" by which an affected student could obtain an individualized alternative. *Id.* at *28 (Sotomayor, J., concurring in the judgment in part and dissenting in part). SB 615, by contrast, guarantees every student unwilling to use the facilities matching his or her biological sex access to a single-occupancy accommodation. 70 OKLA. STAT. § 1-125. Oklahoma's law thus satisfies not only the majority's framework but seemingly even the dissent's.

## IV.    *B.P.J.* firmly forecloses Plaintiffs' demand for remand and further factual development.

Plaintiffs' last redoubt has been procedural: intermediate scrutiny, they say, entitles them to discovery to "prove their case" that no privacy or safety concerns exist. Pls.' Br. 51–52; Pls.' Supp. 3. *B.P.J.* eliminates that argument, in no uncertain terms. The Fourth Circuit in *B.P.J.* had done exactly what Plaintiffs ask this Court to do—remand the equal protection claim "for further fact-finding." 2026 WL 1868739, at *6. The Supreme Court reversed. The plaintiffs' central factual contention was immaterial: "Even if true, that empirical claim would not alter the equal protection conclusion." *Id.* at *14. And it did so over the principal dissent's insistence that the Court "should have

8

affirmed the Fourth Circuit's decision to remand for further factfinding." *Id.* at *23 (Sotomayor, J., concurring in the judgment in part and dissenting in part). The Court resolved the central constitutional question on the law, not the record—precisely the course the district court took here.

The Supreme Court explained why. Under intermediate scrutiny, the "validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case," *id.* at *12 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 801 (1989)); "States are not required to conduct an individual-by-individual comparison," *id.*; and "as-applied challenges are not entertained when courts apply intermediate scrutiny or rational basis review," *id.* at *13 n.5 (citing *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 70 (2001)). Individualized exemptions would create "an enormous practical and administrability problem"—a concern that applies with greater force to school restrooms, where schools would be forced to adjudicate subjective gender-identity claims student by student. *Id.* at *13; *see* App.253–54.

*B.P.J.* also reaffirmed, even under intermediate scrutiny, *Skrmetti*'s deference principle: when legislatures act amid "medical and scientific uncertainty," the "Judiciary must be cautious about swooping in and invalidating laws," and legislatures "maintain 'wide discretion to pass legislation'" in those circumstances. *Id.* at *15 (quoting *Skrmetti*, 605 U.S. at 524). "For good reason": "[e]specially on medical and scientific matters where there is serious debate and disagreement, it can be difficult for courts to

9

meaningfully evaluate the considered policy judgments of the lawmakers who have scrutinized the medical evidence and scientific data before them ....” *Id.* Concessions doomed the plaintiffs there, as they do here. The *B.P.J.* plaintiffs conceded that States may exclude most biological males from girls’ sports; the Court held that the Equal Protection Clause “does not prohibit the States from applying that same principle to all biological males, including those who identify as female.” *Id.* at *12. Plaintiffs here likewise concede that they “do not object to restrooms separated by sex in schools.” Pls.’ Br. 60. Under *B.P.J.*, Oklahoma may implement that admittedly permissible separation through objective biological criteria, applied uniformly to all students, without exceptions based on gender identity. The district court correctly resolved this case on the pleadings. And *B.P.J.* confirms there is nothing left for which to remand.

## CONCLUSION

*B.P.J.* confirms that laws separating the sexes in contexts where biology matters violate neither Title IX nor the Equal Protection Clause. It vindicates the district court’s reliance on biological sex, its refusal to extend *Bostock*, and its dismissal of implausible claims without discovery. This Court should affirm. Whether SB 615 is wise policy remains a question for “the people, their elected representatives, and the democratic process.” 2026 WL 1868739, at *15 (quoting *Skrmetti*, 605 U.S. at 525).

*s/Garry M. Gaskins, II*

GARRY M. GASKINS, II
 *Solicitor General*
ZACH WEST
 *Director of Special Litigation*
CULLEN D. SWEENEY
WILL FLANAGAN
 *Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Cullen.Sweeney@oag.ok.gov
William.Flanagan@oag.ok.gov

*Counsel for State Defendants*

11

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced font (Garamond, 14-point) using Microsoft Word 2016. The document complies with the page limitation set forth in this Court's July 1, 2026, Order, which limits the supplemental brief to 10 pages, because it contains 10 pages of argument.

s/ *Garry M. Gaskins, II*

GARRY M. GASKINS, II

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions have been made as required by 10th Cir. R. 25.5 and the ECF Manual. Additionally, this filing was scanned with CrowdStrike antivirus updated on July 15, 2026.

s/ *Garry M. Gaskins, II*

GARRY M. GASKINS, II

## CERTIFICATE OF SERVICE

I certify that on July 29, 2026, I caused the foregoing to be filed with this Court and served on all parties via the Court's CM/ECF filing system. No paper copies are required pursuant to 10th Cir. R. 27.2.

s/ *Garry M. Gaskins, II*

GARRY M. GASKINS, II