No. 24-6072

## In the United States Court of Appeals
## for the Tenth Circuit

ANDREW BRIDGE, *et al.*,

*Plaintiffs-Appellants*,

v.

OKLAHOMA STATE DEPARTMENT OF
EDUCATION, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Oklahoma
Case No. 5:22-CV-787-JD, The Honorable Judge Jodi Dishman

## APPENDIX OF PLAINTIFFS-APPELLANTS

Megan Lambert (OBA 33216)
Devraat Awasthi (OBA 35544)
AMERICAN CIVIL LIBERTIES UNION
OF OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
dawasthi@acluok.org

Jon W. Davidson
(admitted only in California)
Harper S. Seldin
(admitted only in Pennsylvania)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(323) 536-9880

Isaac D. Chaput
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
ichaput@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
rgianchetti@cov.com

Paul D. Castillo
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

jondavidson@aclu.org                    3500 Oak Lawn Ave., Ste. 500
hseldin@aclu.org                        Dallas, TX 75219
                                        (214) 219-8585
                                        pcastillo@lambdalegal.org

*Counsel for Plaintiffs-Appellants*

**ORAL ARGUMENT REQUESTED**

# INDEX OF APPENDIX

**Page**

Docket Sheet, *Bridge, et al. v. Okla. State Dep't of Educ., et al.*, No. 5:22-cv-00787-JD (W.D. Okla.)................................ A-0001

Complaint for Declaratory, Injunctive, and Other Relief (W.D. Okla. Sept. 6, 2022), ECF No. 1 .................................... A-0010

Answer to Complaint by Independent Sch. Dist. No. 89 of Okla. Cty. ("Oklahoma City Public Schools") (W.D. Okla. Oct. 5, 2022), ECF No. 32 ............................................... A-0052

Answer to Complaint by Harding Independence Charter Dist., Inc. (W.D. Okla. Oct. 5, 2022), ECF No. 33 .................. A-0057

Answer to Complaint by Independent Sch. Dist. No. 40 of Cleveland Cty. ("Noble School District") (W.D. Okla. Oct. 6, 2022), ECF No. 35.......................................................... A-0064

Answer to Complaint by Independent Sch. Dist. No. 2 of Cleveland Cty. ("Moore School District") (W.D. Okla. Oct. 6, 2022), ECF No. 39.......................................................... A-0091

Motion to Dismiss by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Okla. State Dep't of Educ., and Trent Smith ("State Defendants") (W.D. Okla. Oct. 26, 2022), ECF No. 47 ........................................... A-0118

Plaintiffs' Response in Opposition to State Defendants' Motion to Dismiss (W.D. Okla. Nov. 16, 2022), ECF No. 53 ........................................................................................ A-0152

State Defendants' Reply in Support of State Defendants' Motion to Dismiss (W.D. Okla. Dec. 2, 2022), ECF No. 63 ........................................................................................ A-0186

Order Permitting Supplemental Briefing (W.D. Okla. Jan. 5, 2023), ECF No. 68 ..................................................... A-0198

School Defendants'[1] Supplemental Brief (W.D. Okla. Feb. 3, 2023), ECF No. 72 .......................................................... A-0200

Plaintiffs' Supplemental Brief in Opposition to State Defendants' Motion to Dismiss (W.D. Okla. Feb. 6, 2023), ECF No. 73 ........................................................... A-0205

State Defendants' Supplemental Brief in Support of State Defendants' Motion to Dismiss (W.D. Okla. Feb. 6, 2023), ECF No. 74 ........................................................... A-0221

Order Granting State Defendants' Motion to Dismiss (W.D. Okla. Jan. 12, 2024), ECF No. 107 ............................. A-0243

School Defendants' Motion for Judgment on the Pleadings (W.D. Okla. Feb. 5, 2024), ECF No. 114 .............. A-0260

Plaintiffs' Response in Opposition to School Defendants' Motion for Judgment on the Pleadings (W.D. Okla. Feb. 7, 2024), ECF No. 116 ............................................................ A-0264

Order Granting School Defendants' Motion for Judgment on the Pleadings (W.D. Okla. Mar. 22, 2024), ECF No. 117 ............................................................................ A-0268

Final Judgment (W.D. Okla. Mar. 22, 2024), ECF No. 118 ....................................................................................... A-0270

Notice of Appeal (W.D. Okla. Apr. 19, 2024), ECF No. 119 ....................................................................................... A-0271

Transmittal Sheet (W.D. Okla. Apr. 19, 2024), ECF No. 120 ....................................................................................... A-0274

Notice of Clerk's Record of Appeal Sent (W.D. Okla. April 19, 2024), ECF No. 121 .................................................. A-0275

---

[1] Oklahoma City Public Schools, Harding Independence Charter Dist., Inc., Noble School District, and Moore School District are collectively "School Defendants."

Query   Reports ▾   Utilities ▾   Help   Log Out

APPEAL,CLOSED,MITCHELL,_AH

**U.S. District Court**
**Western District of Oklahoma[LIVE] (Oklahoma City)**
**CIVIL DOCKET FOR CASE #: 5:22-cv-00787-JD**

Bridge et al v. Oklahoma State Department of Education et al
Assigned to: Judge Jodi W. Dishman
Case in other court: Tenth Circuit, 24-06072
Cause: 42:1983 Civil Rights Act

Date Filed: 09/06/2022
Date Terminated: 03/22/2024
Jury Demand: Plaintiff
Nature of Suit: 448 Civil Rights: Education
Jurisdiction: Federal Question

**Plaintiff**

**Eli Bridge**
*on behalf of Andrew Bridge, a minor, by his next friends and parents*

represented by **Megan E Lambert**
ACLU of Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
405-525-3831
Email: mlambert@acluok.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devrant Awasthi**
ACLU of Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
405-286-1291
Email: dawasthi@acluok.org
*ATTORNEY TO BE NOTICED*

**Isaac D Chaput**
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
415-591-7020
Email: ichaput@cov.com
*ATTORNEY TO BE NOTICED*

**Johanna F Roberts**
ACLU of Oklahoma Foundation
943 E Britton Rd
Oklahoma City, OK 73114
918-697-2202
Email: hroberts@acluok.org
*TERMINATED: 01/27/2023*

**Jon Warren Davidson**
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
323-536-9880
Email: jondavidson@aclu.org
*ATTORNEY TO BE NOTICED*

**Meredith Taylor Brown**
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
212-519-7887
Email: tbrown@aclu.org
*TERMINATED: 11/13/2023*

**Mitchell Aaron Kamin**
Covington & Burling LLP - LOS ANGELES
1999 Avenue of the Stars
Los Angeles, CA 90067
424-332-4759
Email: mkamin@cov.com
*TERMINATED: 08/10/2023*

**Nicholas A Guillory**
Lambda Legal
3500 Oak Lawn Ave, Ste 500
Dallas, TX 75219
512-229-8657
Email: nguillory@lambdalegal.org
*TERMINATED: 10/20/2022*

**Paul David Castillo**
Lambda Legal
3500 Oak Lawn Ave, Ste 500
Dallas, TX 75219
214-302-2216
Fax: 214-481-9140
Email: pcastillo@lambdalegal.org
*ATTORNEY TO BE NOTICED*

**Robert Gianchetti**
Covington & Burling-NEW YORK
620 Eighth Avenue
The New York Times Building
New York, NY 10018
212-841-1000
Email: rgianchetti@cov.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Aysha Prather**
*on behalf of Andrew Bridge, a minor, by his next friends and parents*

represented by **Megan E Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devrant Awasthi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Isaac D Chaput**

A-0001

(See above for address)
*ATTORNEY TO BE NOTICED*

**Johanna F Roberts**
(See above for address)
*TERMINATED: 01/27/2023*

**Jon Warren Davidson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Taylor Brown**
(See above for address)
*TERMINATED: 11/13/2023*

**Mitchell Aaron Kamin**
(See above for address)
*TERMINATED: 08/10/2023*

**Nicholas A Guillory**
(See above for address)
*TERMINATED: 10/20/2022*

**Paul David Castillo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Gianchetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Max Miles**
*on behalf of Mark Miles (a pseudonym), a minor, by his next friends and parents*

represented by **Megan E Lambert**
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devraat Awasthi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Isaac D Chaput**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Johanna F Roberts**
(See above for address)
*TERMINATED: 01/27/2023*

**Jon Warren Davidson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Taylor Brown**
(See above for address)
*TERMINATED: 11/13/2023*

**Mitchell Aaron Kamin**
(See above for address)
*TERMINATED: 08/10/2023*

**Nicholas A Guillory**
(See above for address)
*TERMINATED: 10/20/2022*

**Paul David Castillo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Gianchetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Mia Miles**
*on behalf of Mark Miles (a pseudonym), a minor, by his next friends and parents*

represented by **Megan E Lambert**
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devraat Awasthi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Isaac D Chaput**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Johanna F Roberts**
(See above for address)
*TERMINATED: 01/27/2023*

**Jon Warren Davidson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Taylor Brown**
(See above for address)
*TERMINATED: 11/13/2023*

**Mitchell Aaron Kamin**
(See above for address)
*TERMINATED: 08/10/2023*

**Nicholas A Guillory**
(See above for address)
*TERMINATED: 10/20/2022*

**Paul David Castillo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Gianchetti**

A-0002

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Steve Stiles**
*on behalf of Sarah Stiles (a pseudonym), a minor, by her next friends and parents*

represented by **Megan E Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devraat Awasthi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Isaac D Chaput**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Johanna F Roberts**
(See above for address)
*TERMINATED: 01/27/2023*

**Jon Warren Davidson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Taylor Brown**
(See above for address)
*TERMINATED: 11/13/2023*

**Mitchell Aaron Kamin**
(See above for address)
*TERMINATED: 08/10/2023*

**Nicholas A Guillory**
(See above for address)
*TERMINATED: 10/20/2022*

**Paul David Castillo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Gianchetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Sue Stiles**
*on behalf of Sarah Stiles (a pseudonym), a minor, by her next friends and parents*

represented by **Megan E Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devraat Awasthi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Isaac D Chaput**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Johanna F Roberts**
(See above for address)
*TERMINATED: 01/27/2023*

**Jon Warren Davidson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Taylor Brown**
(See above for address)
*TERMINATED: 11/13/2023*

**Mitchell Aaron Kamin**
(See above for address)
*TERMINATED: 08/10/2023*

**Nicholas A Guillory**
(See above for address)
*TERMINATED: 10/20/2022*

**Paul David Castillo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Gianchetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.
**Defendant**
**Oklahoma State Department of Education**
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
Oklahoma Office of the Attorney General
313 NE 21st St.
Oklahoma City, OK 73105
405-522-4435
Email: audrey.weaver@gov.ok.gov
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
Drummond Law PLLC
1500 S Utica Ave
Suite 400
Tulsa, OK 74104
918-749-7378
Fax: 918-749-7869
Email: gmg@drumlaw.com
*ATTORNEY TO BE NOTICED*

**Kyle Peppler**
DOJ-USAO
210 Park Avenue
Suite 400

A-0003

Oklahoma City, OK 73102
405-553-8700
Email: kyle.peppler@oag.ok.gov
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
Oklahoma Office of Attorney General
313 NE 21st Street
Oklahoma City
Oklahoma City, OK 73105
405-521-3921
Email: william.flanagan@oag.ok.gov
*ATTORNEY TO BE NOTICED*

**Zachary P West**
Attorney General's Ofc-NE 21STREET-OKC
313 NE 21st St
Oklahoma City, OK 73105
405-521-3021
Fax: 405-521-4518
Email: zach.west@oag.ok.gov
*ATTORNEY TO BE NOTICED*

**Defendant**
**Ryan Walters**
*in his official capacity as the State Superintendent of Public Instruction*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Peppler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Donald Burdick**
*in their official capacities as members of the Oklahoma Board of Education*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Peppler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Katie Quebedeaux**
*in their official capacities as members of the Oklahoma Board of Education*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Peppler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Suzanne Reynolds**
*in their official capacities as members of the Oklahoma Board of Education*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Peppler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Kendra Wesson**
*in their official capacities as members of the Oklahoma Board of Education*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Pepper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Trent Smith**
*in their official capacities as members of the Oklahoma Board of Education*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Pepper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Sarah Lepak**
*in their official capacities as members of the Oklahoma Board of Education*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Pepper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Gentner Drummond**
*in his official capacity as Oklahoma Attorney General*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Pepper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Independent School District No 40 of Cleveland County Oklahoma**
*also known as*
Noble Public Schools

represented by **Adam T Heavin**
Rosenstein Fist & Ringold
525 S Main St
Suite 700
Tulsa, OK 74103
918-585-9211
Email: adamheavin@rfrlaw.com
*ATTORNEY TO BE NOTICED*

**Alison A Parker**
Rosenstein, Fist & Ringold
525 S. Main
Ste 700
Tulsa, OK 74103
918-585-9211
Fax: 918-599-9317
Email: aparker@rfrlaw.com
*ATTORNEY TO BE NOTICED*

**Kent B Rainey**
Rosenstein Fist & Ringold
525 S Main St
Suite 700
Tulsa, OK 74103
918-585-9211
Fax: 918-583-5617
Email: borainey@rfrlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**Independent School District No 2 of Cleveland County Oklahoma**
*also known as*

represented by **Adam T Heavin**
(See above for address)

A-0005

Moore Public Schools

*ATTORNEY TO BE NOTICED*

**Alison A Parker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kent B Rainey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Independent School District No 89 of Oklahoma County Oklahoma**
*also known as*
Oklahoma City Public Schools

represented by **Laura L Holmes**
The Center for Education Law
900 N Broadway Ave
Suite 300
Oklahoma City, OK 73102
405-528-2800
Fax: 405-528-5800
Email: lholmes@cfel.com
*ATTORNEY TO BE NOTICED*

**Laura L Holmgren-Ganz**
The Center for Education Law
900 N Broadway Ave
Suite 300
Oklahoma City, OK 73102
405-528-2800
Fax: 405-528-2800
Email: lganz@cfel.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Harding Independence Charter District Inc**

represented by **Laura L Holmgren-Ganz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura L Holmes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Zach Archer**
*official capacity as member of the Oklahoma Board of Education*
*TERMINATED: 01/12/2024*

represented by **Audrey A Weaver**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Garry M Gaskins , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Peppler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary P West**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/06/2022 | 1 | COMPLAINT against Brian Bobek, Carlisha Bradley, Harding Independence Charter District Inc, Estela Hernandez, Joy Hofmeister, Independent School District No 2 of Cleveland County Oklahoma, Independent School District No 40 of Cleveland County Oklahoma, Independent School District No 89 of Oklahoma County Oklahoma, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith filed by Aysha Prather, Eli Bridge, Sue Stiles, Max Miles, Mia Miles, Steve Stiles. (Attachments: # 1 Civil Cover Sheet)(rr) (Entered: 09/06/2022) |
| 09/06/2022 | 2 | Summons Issued Electronically as to Brian Bobek, Carlisha Bradley, Harding Independence Charter District Inc, Estela Hernandez, Joy Hofmeister, Independent School District No 2 of Cleveland County Oklahoma, Independent School District No 40 of Cleveland County Oklahoma, Independent School District No 89 of Oklahoma County Oklahoma, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (rr) (Entered: 09/06/2022) |
| 09/06/2022 |  | PAYMENT FOR A CIVIL CASE Filing fee $ 402, receipt number AOKWDC-3985997. (Lambert, Megan) (Entered: 09/06/2022) |
| 09/06/2022 | 3 | ENTRY of Appearance by Megan E Lambert on behalf of All Plaintiffs (Lambert, Megan) Modified on 9/7/2022 to flatten document (rr). (Entered: 09/06/2022) |
| 09/06/2022 | 4 | MOTION for Leave *to Proceed Pseudonymously* by All Plaintiffs. (Lambert, Megan) (Entered: 09/06/2022) |
| 09/06/2022 | 5 | MOTION for Leave to Appear Pro Hac Vice *for Jon Davidson* Filing fee $ 50, receipt number AOKWDC-3986038 by All Plaintiffs. (Attachments: # 1 Exhibit 1 - PHV Application)(Lambert, Megan) Modified on 9/7/2022 to flatten document (rr). (Entered: 09/06/2022) |
| 09/06/2022 | 6 | MOTION for Leave to Appear Pro Hac Vice *for Paul Castillo* Filing fee $ 50, receipt number AOKWDC-3986039 by All Plaintiffs. (Attachments: # 1 Exhibit 1 - PHV Application)(Lambert, Megan) Modified on 9/7/2022 to flatten document (rr). (Entered: 09/06/2022) |
| 09/06/2022 | 7 | MOTION for Leave to Appear Pro Hac Vice *for Nicholas Guillory* Filing fee $ 50, receipt number AOKWDC-3986040 by All Plaintiffs. (Attachments: # 1 Exhibit 1 - PHV Application)(Lambert, Megan) Modified on 9/7/2022 to flatten document (rr). (Entered: 09/06/2022) |
| 09/06/2022 | 8 | MOTION for Leave to Appear Pro Hac Vice *for Mitchell Kamin* Filing fee $ 50, receipt number AOKWDC-3986041 by All Plaintiffs. (Attachments: # 1 Exhibit 1 - PHV Application)(Lambert, Megan) Modified on 9/7/2022 to flatten document (rr). (Entered: 09/06/2022) |
| 09/06/2022 | 9 | MOTION for Leave to Appear Pro Hac Vice *for Isaac Chaput* Filing fee $ 50, receipt number AOKWDC-3986042 by All Plaintiffs. (Attachments: # 1 Exhibit 1 - PHV Application)(Lambert, Megan) . Modified on 9/7/2022 to flatten document (rr). (Entered: 09/06/2022) |
| 09/08/2022 | 10 | **ORDER** granting 5 Motion to Appear Pro Hac Vice ; granting 6 Motion to Appear Pro Hac Vice ; granting 7 Motion to Appear Pro Hac Vice ; granting 8 Motion to Appear Pro Hac Vice ; granting 9 Motion to Appear Pro Hac Vice. Counsel must register to e-file with this Court and electronically file an entry of appearance consistent with LCvR83.2(g) and LCvR83.4. Signed by Judge Jodi W. Dishman on 09/08/2022. (nv) (Entered: 09/08/2022) |
| 09/12/2022 | 11 | **TEMPORARY ORDER ALLOWING PSEUDONYM LITIGATION** provisionally granting 4 Motion for Leave to Proceed Pseudonymously as set forth in this Order. Signed by Judge Jodi W. Dishman on 09/12/2022. (nv) (Entered: 09/12/2022) |
| 09/14/2022 | 12 | **STRICKEN** ENTRY of Appearance by Jon Warren Davidson on behalf of All Plaintiffs (Davidson, Jon) (Entered: 09/14/2022) |
| 09/14/2022 | 13 | ENTRY of Appearance by Jon Warren Davidson on behalf of All Plaintiffs (Davidson, Jon) Modified on 9/15/2022 to flatten document (rr). (Entered: 09/14/2022) |
| 09/14/2022 |  | NOTICE from the Court 12 Entry of Appearance, **STRICKEN**, as an amended and completed version was filed at Doc. No. 13. (nv) (Entered: 09/14/2022) |
| 09/14/2022 | 14 | ENTRY of Appearance by Johanna F Roberts on behalf of All Plaintiffs (Roberts, Johanna) Modified on 9/15/2022 to flatten document (rr). (Entered: 09/14/2022) |
| 09/14/2022 | 15 | ENTRY of Appearance by Isaac D Chaput on behalf of All Plaintiffs (Chaput, Isaac) (Entered: 09/14/2022) |
| 09/15/2022 | 16 | ENTRY of Appearance by Mitchell Aaron Kamin on behalf of All Plaintiffs (Kamin, Mitchell) (Entered: 09/15/2022) |
| 09/15/2022 | 17 | ENTRY of Appearance by Paul David Castillo on behalf of All Plaintiffs (Castillo, Paul) (Entered: 09/15/2022) |
| 09/15/2022 | 18 | ENTRY of Appearance by Nicholas A Guillory on behalf of All Plaintiffs (Guillory, Nicholas) Modified on 9/15/2022 to flatten document (rr). (Entered: 09/15/2022) |
| 09/15/2022 | 19 | **STRICKEN** MOTION for Leave to Appear Pro Hac Vice *for Taylor Brown* Filing fee $ 50, receipt number AOKWDC-3993230 by All Plaintiffs. (Attachments: # 1 Exhibit 1 - PHV Application)(Lambert, Megan) Modified on 9/15/2022 to flatten document (rr). (Entered: 09/15/2022) |
| 09/16/2022 | 20 | SUMMONS Returned Executed by Aysha Prather, Eli Bridge, Sue Stiles, Max Miles, Mia Miles, Steve Stiles. All Defendants. (Lambert, Megan) (Entered: 09/16/2022) |

| 09/22/2022 | | NOTICE from the Court 19 MOTION for Leave to Appear Pro Hac Vice *for Taylor Brown* Filing fee $ 50, receipt number AOKWDC-3993230, **STRICKEN**. The Request for Admission Pro Hac Vice, paragraph 2 was not correctly answered. Counsel to refile and provide state bar membership number (not just the state). The filing fee **does not** need to be paid a second time. (nv) (Entered: 09/22/2022) |
| 09/22/2022 | 21 | MOTION for Leave to Appear Pro Hac Vice *for Taylor Brown* by All Plaintiffs. (Attachments: # 1 Exhibit 1 - PHV Application)(Lambert, Megan) Modified on 9/22/2022 to flatten document(rr). (Entered: 09/22/2022) |
| 09/23/2022 | 22 | **ORDER** granting 21 Motion to Appear Pro Hac Vice of Meredith Taylor Brown. Counsel must register to e-file with this Court and electronically file an entry of appearance consistent with LCvR83.2(g) and LCvR83.4. Signed by Judge Jodi W. Dishman on 09/23/2022. (nv) (Entered: 09/23/2022) |
| 09/26/2022 | 23 | ENTRY of Appearance by Meredith Taylor Brown on behalf of All Plaintiffs (Brown, Meredith) Modified on 9/26/2022 to flatten document(rr). (Entered: 09/26/2022) |
| 09/29/2022 | 24 | MOTION for Preliminary Injunction by All Plaintiffs. (Attachments: # 1 Attachment 1 - Bridge Decl., # 2 Attachment 2 - Prather Decl., # 3 Attachment 3 - Miles Decl., # 4 Attachment 4 - Mia Miles Decl., # 5 Attachment 5 - Stiles Decl., # 6 Attachment 6 - Sue Stiles Decl., # 7 Attachment 7 - Budge Decl., # 8 Attachment 8 - Kamin Decl.)(Kamin, Mitchell) (Entered: 09/29/2022) |
| 09/29/2022 | 25 | MOTION for Order *on Plaintiff's Motion for Judicial Notice* by All Plaintiffs. (Kamin, Mitchell) (Entered: 09/29/2022) |
| 10/03/2022 | 26 | ENTRY of Appearance by Laura L Holmes on behalf of Harding Independence Charter District Inc, Independent School District No 89 of Oklahoma County Oklahoma (Holmes, Laura) (Entered: 10/03/2022) |
| 10/04/2022 | 27 | ENTRY of Appearance by Audrey A Weaver on behalf of Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith (Weaver, Audrey) (Entered: 10/04/2022) |
| 10/04/2022 | 28 | MOTION for Extension of Time *FOR DEFENDANTS 1-9 TO RESPOND TO PLAINTIFFS COMPLAINT [DOC. 1], MOTION FOR PRELIMINARY INJUNCTION [DOC. 24], AND MOTION FOR JUDICIAL NOTICE [DOC. 25]* by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Weaver, Audrey) (Entered: 10/04/2022) |
| 10/04/2022 | 29 | ENTRY of Appearance by Laura L Holmgren-Ganz on behalf of Independent School District No 89 of Oklahoma County Oklahoma and Harding Independence Charter District Inc(Holmgren-Ganz, Laura) Modified on 10/4/2022 to reflect parties represented by counsel (rr). (Entered: 10/04/2022) |
| 10/04/2022 | 30 | ENTRY of Appearance by Zachary P West on behalf of Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith (West, Zachary) (Entered: 10/04/2022) |
| 10/05/2022 | 31 | **ORDER** granting in part and denying in part 28 Motion for Extension of Time to File. State Defendants shall file their answers, motions, or other responses to 1 Plaintiffs' Complaint for Declaratory Judgment, Injunctive, and Other Relief on or before October 26, 2022. The Motion is otherwise DENIED without prejudice to resubmission. Counsel for all parties are reminded that, absent an emergency, requests for extension of time should be filed at least 48 hours in advance of the deadline.. Signed by Judge Jodi W. Dishman on 10/05/2022. (nv) (Entered: 10/05/2022) |
| 10/05/2022 | 32 | ANSWER to Complaint by Independent School District No 89 of Oklahoma County Oklahoma.(Holmes, Laura) (Entered: 10/05/2022) |
| 10/05/2022 | 33 | ANSWER to Complaint by Harding Independence Charter District Inc.(Holmes, Laura) (Entered: 10/05/2022) |
| 10/06/2022 | 34 | ENTRY of Appearance by Adam T Heavin on behalf of Independent School District No 40 of Cleveland County Oklahoma (Heavin, Adam) (Entered: 10/06/2022) |
| 10/06/2022 | 35 | ANSWER to Complaint by Independent School District No 40 of Cleveland County Oklahoma.(Heavin, Adam) (Entered: 10/06/2022) |
| 10/06/2022 | 36 | ENTRY of Appearance by Kent B Rainey on behalf of Independent School District No 40 of Cleveland County Oklahoma (Rainey, Kent) (Entered: 10/06/2022) |
| 10/06/2022 | 37 | ENTRY of Appearance by Alison A Verret on behalf of Independent School District No 40 of Cleveland County Oklahoma (Verret, Alison) (Entered: 10/06/2022) |
| 10/06/2022 | 38 | ENTRY of Appearance by Kent B Rainey on behalf of Independent School District No 2 of Cleveland County Oklahoma (Rainey, Kent) (Entered: 10/06/2022) |
| 10/06/2022 | 39 | ANSWER to Complaint by Independent School District No 2 of Cleveland County Oklahoma.(Rainey, Kent) (Entered: 10/06/2022) |
| 10/06/2022 | 40 | ENTRY of Appearance by Alison A Verret on behalf of Independent School District No 2 of Cleveland County Oklahoma (Verret, Alison) (Entered: 10/06/2022) |
| 10/06/2022 | 41 | ENTRY of Appearance by Adam T Heavin on behalf of Independent School District No 2 of Cleveland County Oklahoma (Heavin, Adam) (Entered: 10/06/2022) |
| 10/07/2022 | 42 | UNOPPOSED MOTION to Withdraw as Attorney *Nicholas Guillory* by All Plaintiffs. (Guillory, Nicholas) (Entered: 10/07/2022) |
| 10/13/2022 | 43 | CERTIFICATE OF SERVICE by Plaintiffs Eli Bridge, Max Miles, Mia Miles, Aysha Prather, Steve Stiles, Sue Stiles re 25 MOTION for Order *on Plaintiff's Motion for Judicial Notice*, 16 Entry of Appearance, 24 MOTION for Preliminary Injunction , 9 MOTION for Leave to Appear Pro Hac Vice *for Isaac Chaput* Filing fee $ 50, receipt number AOKWDC-3986042, 21 MOTION for Leave to Appear Pro Hac Vice *for Taylor Brown*, 15 Entry of Appearance, 8 MOTION for Leave to Appear Pro Hac Vice *for Mitchell Kamin* Filing fee $ 50, receipt number AOKWDC-3986041, 23 Entry of Appearance, 14 Entry of Appearance, 2 MOTION for Leave to Appear Pro Hac Vice *for Nicholas Guillory* Filing fee $ 50, receipt number AOKWDC-3986040, 17 Entry of Appearance, 13 Entry of Appearance, 5 MOTION for Leave to Appear Pro Hac Vice *for Jon Davidson* Filing fee $ 50, receipt number AOKWDC-3986038, 6 MOTION for Leave to Appear Pro Hac Vice *for Paul Castillo* Filing fee $ 50, receipt number AOKWDC-3986039 (Roberts, Johanna) (Entered: 10/13/2022) |
| 10/20/2022 | 44 | **ORDER** granting 42 Motion to Withdraw as Attorney. Attorney Nicholas A Guillory terminated. Signed by Judge Jodi W. Dishman on 10/20/2022. (nv) (Entered: 10/20/2022) |
| 10/24/2022 | 45 | **STRICKEN**. MOTION for Leave to Proceed Pseudonymously by All Plaintiffs. (Roberts, Johanna) (Entered: 10/24/2022) |
| 10/25/2022 | 46 | AMENDED MOTION for Leave to Proceed Pseudonymously by All Plaintiffs. (Attachments: # 1 Exhibit 1 - Original Motion to Proceed Pseudonymously)(Roberts, Johanna) (Entered: 10/25/2022) |
| 10/25/2022 | | NOTICE from the Court 45 MOTION for Leave to Proceed Pseudonymously, **STRICKEN** as an amended version was filed at Doc. No. 46 (rr) (Entered: 10/25/2022) |
| 10/26/2022 | 47 | MOTION to Dismiss by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Weaver, Audrey) (Entered: 10/26/2022) |
| 11/01/2022 | 48 | ENTRY of Appearance by Kyle Peppler on behalf of Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith (Peppler, Kyle) (Entered: 11/01/2022) |
| 11/02/2022 | 49 | UNOPPOSED MOTION for Extension of Time by All Defendants. (West, Zachary) (Entered: 11/02/2022) |
| 11/07/2022 | 50 | **ORDER** granting in part and denying in part 49 Motion for Extension of Time to File. Defendants shall file their response to Plaintiffs' Motion for Preliminary Injunction [Doc. No. 24] on or before November 16, 2022. The Motion is otherwise DENIED without prejudice to resubmission. Signed by Judge Jodi W. Dishman on 11/07/2022. (nv) (Entered: 11/07/2022) |
| 11/14/2022 | 51 | RESPONSE in Opposition to re 46 AMENDED MOTION for Leave to Proceed Pseudonymously filed by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Flanagan, William) (Entered: 11/14/2022) |
| 11/16/2022 | 52 | RESPONSE to Motion re 24 MOTION for Preliminary Injunction filed by Harding Independence Charter District Inc, Independent School District No 2 of Cleveland County Oklahoma, Independent School District No 40 of Cleveland County Oklahoma. (Attachments: # 1 Exhibit Ex. 1 Stefanick Affidavit, # 2 Exhibit Ex. 2 Solomon Declaration, # 3 Exhibit Ex. 3 Romines Declaration)(Rainey, Kent) (Entered: 11/16/2022) |
| 11/16/2022 | 53 | RESPONSE in Opposition to 47 MOTION to Dismiss filed by All Plaintiffs. (Chaput, Isaac) (Entered: 11/16/2022) |
| 11/16/2022 | 54 | RESPONSE in Opposition to 24 MOTION for Preliminary Injunction filed by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Attachments: # 1 Exhibit 1 - Declaration of Delicia Timmons, # 2 Exhibit 2 - Declaration of R.A., # 3 Exhibit 3 - Declaration of Julia Ray, # 4 Exhibit 4 - Expert Declaration of Kim Davis, # 5 Exhibit 5 - Expert Report of Dr. Debra W. Soh, PhD, # 6 Exhibit 6 - Expert Report of Dr. James Cantor, PhD)(Weaver, Audrey) (Entered: 11/16/2022) |
| 11/17/2022 | 55 | MOTION for Extension of Time to File *Reply to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction [ECF No. 24]* by All Plaintiffs. (Chaput, Isaac) (Entered: 11/17/2022) |
| 11/17/2022 | 56 | ENTRY of Appearance by William P Flanagan on behalf of Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith (Flanagan, William) (Entered: 11/17/2022) |
| 11/18/2022 | 57 | UNOPPOSED MOTION for Extension of Time by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (West, Zachary) (Entered: 11/18/2022) |
| 11/18/2022 | 58 | MOTION for Leave to *Maintain Filed Parent Declaration Under Initials* by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (West, Zachary) (Entered: 11/18/2022) |
| 11/18/2022 | 59 | **ORDER** granting 55 Motion for Extension of Time to File. Plaintiffs shall file their consolidated reply brief, not to exceed twenty pages, on or before December 2, 2022. Signed by Judge Jodi W. Dishman on 11/18/2022. (nv) (Entered: 11/18/2022) |
| 11/18/2022 | 60 | **ORDER** granting 57 Motion for Extension of Time to File. State Defendants shall file their reply to Plaintiffs' Opposition to State Defendants' Motion to Dismiss [Doc. No. 53] on or before December 2, 2022. Signed by Judge Jodi W. Dishman on 11/18/2022. (nv) (Entered: 11/18/2022) |
| 11/21/2022 | 61 | REPLY by Plaintiffs Eli Bridge, Max Miles, Mia Miles, Aysha Prather, Steve Stiles, Sue Stiles re 46 AMENDED MOTION for Leave to Proceed Pseudonymously filed by All Plaintiffs. (Chaput, Isaac) (Entered: 11/21/2022) |
| 12/02/2022 | 62 | REPLY by Plaintiffs Eli Bridge, Max Miles, Mia Miles, Aysha Prather, Steve Stiles, Sue Stiles re 24 MOTION for Preliminary Injunction filed by All Plaintiffs. (Attachments: # 1 Attachment No. 1 - Supplemental Declaration of Sue Stiles, # 2 Attachment No. 2 - Supplemental Declaration of Stephanie L. Budge, PhD, # 3 Attachment No. 3 - Declaration of Isaac D. Chaput)(Chaput, Isaac) (Entered: 12/02/2022) |
| 12/02/2022 | 63 | REPLY by Defendants Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith re 53 Response in Opposition to Motion to Dismiss filed by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Weaver, Audrey) (Entered: 12/02/2022) |
| 12/07/2022 | 64 | MOTION to Strike 62 Reply, *Affidavits in Support of Motion for Preliminary Injunction or, in the Alternative, Motion to File Surreply* by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Weaver, Audrey) (Entered: 12/07/2022) |
| 12/07/2022 | 65 | **ORDER SETTING EXPEDITED BRIEFING.** Before the Court is 64 Motion to Strike Plaintiffs' Reply Affidavits in Support of Motion for Preliminary Injunction or, in the Alternative, Motion to File Surreply. Under LCvR7.1(g), this matter is set for expedited briefing. Any response brief by Plaintiffs shall be limited to seven pages and must be filed on or before December 14, 2022, at 5:00 p.m. No reply will be permitted. If the issues described above are resolved by agreement at any time, counsel shall immediately notify the Court. Signed by Judge Jodi W. Dishman on 12/07/2022. (nv) (Entered: 12/07/2022) |
| 12/14/2022 | 66 | RESPONSE in Opposition to re 64 MOTION to Strike 62 Reply, *Affidavits in Support of Motion for Preliminary Injunction or, in the Alternative, Motion to File Surreply* filed by All Plaintiffs. (Chaput, Isaac) (Entered: 12/14/2022) |
| 12/20/2022 | 67 | **ORDER** granting in part and denying in part 64 Motion to Strike 64 MOTION to Strike 62 Reply, *Affidavits in Support of Motion for Preliminary Injunction or, in the Alternative, Motion to File Surreply*. IT IS FURTHER ORDERED that State Defendants may file a limited surreply as set forth herein by Friday, January 6, 2023. The surreply shall not exceed 20 pages. Signed by Judge Jodi W. Dishman on 12/20/22. (rr) (Entered: 12/20/2022) |

A-0007

| 01/05/2023 | 68 | **ORDER** re 47 MOTION to Dismiss filed by Sarah Lepak, Brian Bobek, Carlisha Bradley, Estela Hernandez, Trent Smith, Oklahoma State Department of Education, John O'Connor, Joy Hofmeister, Jennifer Monies. The parties may file supplemental briefs in response to this Order related solely to the topics mentioned above on or before Monday, February 6, 2023. The supplemental briefs shall not exceed 20 pages. Signed by Judge Jodi W. Dishman on 01/05/2023. (nv) (Entered: 01/05/2023) |
| 01/06/2023 | 69 | SURREPLY re 62 Reply, filed by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Attachments: # 1 Exhibit 1 - Supp. Decl. of Dr. Cantor PhD (FINAL), # 2 Exhibit 2 - Expert Decl and Report of Kenneth Lanning (Reduced), # 3 Exhibit 3 - Expert Opinion of Sheriff Tim Hutchison (Retired), # 4 Exhibit 4 - Supp. Decl. of Kim Davis (FINAL)(Weaver, Audrey) (Entered: 01/06/2023) |
| 01/11/2023 | 70 | MOTION to Withdraw as Attorney by All Plaintiffs. (Roberts, Johanna) (Entered: 01/11/2023) |
| 01/27/2023 | 71 | **ORDER** granting 70 Motion to Withdraw as Attorney. Attorney Johanna F Roberts terminated. Signed by Judge Jodi W. Dishman on 01/27/2023. (nv) (Entered: 01/27/2023) |
| 02/03/2023 | 72 | RESPONSE to Motion re 24 MOTION for Preliminary Injunction filed by Harding Independent Charter District Inc, Independent School District No 2 of Cleveland County Oklahoma, Independent School District No 40 of Cleveland County Oklahoma. (Holmgren-Ganz, Laura) (Entered: 02/03/2023) |
| 02/06/2023 | 73 | MEMORANDUM in Support re 24 MOTION for Preliminary Injunction filed by All Plaintiffs. (Chaput, Isaac) (Entered: 02/06/2023) |
| 02/06/2023 | 74 | RESPONSE to Motion re 47 MOTION to Dismiss by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (West, Zachary) (Entered: 02/06/2023) |
| 06/16/2023 | 75 | **STRICKEN** SUPPLEMENT re 24 MOTION for Preliminary Injunction by All Plaintiffs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Chaput, Isaac) (Entered: 06/16/2023) |
| 06/16/2023 | 76 | **STRICKEN** NOTICE (other) by All Plaintiffs (Chaput, Isaac) (Entered: 06/16/2023) |
| 06/16/2023 |  | NOTICE from the Court, the 75 Supplement is **STRICKEN** for counsel's failure to comply with this Court's CM-ECF Policies and Procedures Manual, Section II(A)(4)(a). Specifically, a description of the exhibit must be provided in the docket entry. Counsel to refile within 24 hours from this Notice. The filing should not differ in substance apart from addressing the deficiencies raised in this Notice. (nv) (Entered: 06/16/2023) |
| 06/16/2023 | 77 | **STRICKEN** SUPPLEMENT re 24 MOTION for Preliminary Injunction by All Plaintiffs. (Attachments: # 1 Exhibit Exhibit 1 - Doe v. Ladapo - 2023 WL 3833848, # 2 Exhibit Exhibit 2 - Fowler v. Stitt, 2023 WL 4010694, # 3 Exhibit Exhibit 3 - Poe v. Drummond, Statement of Interest of the United States, # 4 Exhibit Exhibit 4 - Grabowski v. Board of Regents, 2023 WL 3961123)(Chaput, Isaac) (Entered: 06/16/2023) |
| 06/20/2023 | 78 | **ORDER**. The 76 Notice and 77 Letter, filed by Aysha Prather, Mia Miles, Max Miles, Eli Bridge, Sue Stiles, Steve Stiles are STRICKEN. *See Order* for all details. Signed by Judge Jodi W. Dishman on 6/20/2023. (nv) (Entered: 06/20/2023) |
| 06/21/2023 | 79 | SUPPLEMENT re 24 MOTION for Preliminary Injunction *Amended Notice of Suppl. Authority* by All Plaintiffs. (Attachments: # 1 Exhibit 1 - Doe v Ladapo, 2023 WL 3833848, # 2 Exhibit 2 - Fowler v. Stitt, 2023 WL 4010694, # 3 Exhibit 3 - Poe v Drummond Statement of Interest of the United States, # 4 Exhibit 4 - Grabowski v Board of Regents, 2023 WL 3961123, # 5 Exhibit 5 - KC v. Individual Members of the Med. Licensing Bd. of Ind., 2023 WL 4054086, # 6 Exhibit 6 - Brandt v. Rutledge, 2023 WL 4073727)(Chaput, Isaac) (Entered: 06/21/2023) |
| 06/29/2023 | 80 | SUPPLEMENT re 24 MOTION for Preliminary Injunction by All Plaintiffs. (Attachments: # 1 Exhibit 1 - L.W. v. Skrmetti, 2023 WL 4232308, # 2 Exhibit 2 - Doe v. Thornbury, 2023 WL 4230481)(Chaput, Isaac) (Entered: 06/29/2023) |
| 07/07/2023 | 81 | MOTION to Strike 79 Supplement,, by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Weaver, Audrey) (Entered: 07/07/2023) |
| 07/07/2023 | 82 | **ENTER ORDER** The Court orders expedited briefing on responses to the State Defendants' 81 Motion to Strike Plaintiffs' Amended Notice of Supplemental Authority. Any party who opposes or who has not indicated a position shall file within 7 days of this Order any response brief it wishes to file. No reply will be permitted. Entered at the direction of Judge Jodi W. Dishman on 7/7/2023. (nv) (Entered: 07/07/2023) |
| 07/14/2023 | 83 | RESPONSE in Opposition re 81 MOTION to Strike 79 Supplement,, filed by All Plaintiffs. (Chaput, Isaac) (Entered: 07/14/2023) |
| 08/03/2023 | 84 | MOTION to Withdraw as Attorney *for Mitchell A. Kamin* by All Plaintiffs. (Kamin, Mitchell) (Entered: 08/03/2023) |
| 08/03/2023 | 85 | SUPPLEMENT re 24 MOTION for Preliminary Injunction by All Plaintiffs. (Attachments: # 1 Exhibit 1 - AC by MC v Metropolitan School District of Martinsville, 2023 WL 4881915 (7th Cir. Aug. 1, 2023)(Chaput, Isaac) (Entered: 08/03/2023) |
| 08/10/2023 | 86 | **ORDER** granting 84 Motion to Withdraw as Attorney. Attorney Mitchell Aaron Kamin terminated. Signed by Judge Jodi W. Dishman on 8/10/2023. (nv) (Entered: 08/10/2023) |
| 08/14/2023 | 87 | **ORDER** granting in part and denying in part 81 Motion to Strike. State Defendants' may file a notice of supplemental authority that States response to the United States' Statement of Interest in Poe within 7 days of this Order. Any such notice should not contain argument. Signed by Judge Jodi W. Dishman on 8/14/2023. (nv) (Entered: 08/14/2023) |
| 08/17/2023 | 88 | SUPPLEMENT re 47 MOTION to Dismiss , 54 Response in Opposition to Motion,, by Brian Bobek, Carlisha Bradley, Estela Hernandez, Joy Hofmeister, Sarah Lepak, Jennifer Monies, John O'Connor, Oklahoma State Department of Education, Trent Smith. (Attachments: # 1 Attachment State of Oklahoma's Response to the US' SOI)(West, Zachary) (Entered: 08/17/2023) |
| 08/22/2023 | 89 | AMENDED MOTION for Leave *to Proceed Pseudonymously* by All Plaintiffs. (Attachments: # 1 Exhibit 1 - Poe v. Drummond, 2023 WL 4560820 (N.D. Okla. July 17, 2023))(Chaput, Isaac) (Entered: 08/22/2023) |
| 09/29/2023 | 90 | **ENTER ORDER**. The Court ORDERS the parties to confer and file a motion to substitute any defendant who should be substituted under Federal Rules of Civil Procedure 25(d) and 17(d). The motion shall be filed within fourteen (14) days of this Order, or by October 13, 2023, and a proposed order shall be submitted to the Court via the Court's designated mailbox: dishman-orders@okwd.uscourts.gov. Entered at the direction of Judge Jodi W. Dishman on 9/29/2023. (nv) (Entered: 09/29/2023) |
| 10/10/2023 | 91 | JOINT MOTION to Substitute Party *and Amend Caption* by All Plaintiffs. (Attachments: # 1 Attachment Declaration of Isaac D. Chaput in Support)(Chaput, Isaac) (Entered: 10/10/2023) |
| 10/12/2023 | 92 | **ORDER** granting 91 Motion to Substitute Party. Filings in violation of this Order will be stricken. Signed by Judge Jodi W. Dishman on 10/12/2023. (nv) (Entered: 10/12/2023) |
| 10/13/2023 | 93 | ENTRY of Appearance by Garry M Gaskins, II on behalf of Donald Burdick, Gentner Drummond, Sarah Lepak, Oklahoma State Department of Education, Katie Quebedeaux, Suzanne Reynolds, Trent Smith, Ryan Walters, Kendra Wesson (Gaskins, Garry) (Entered: 10/13/2023) |
| 10/26/2023 | 94 | UNOPPOSED MOTION for Hearing by All Plaintiffs. (Lambert, Megan) (Entered: 10/26/2023) |
| 11/03/2023 | 95 | MOTION to Withdraw as Attorney *for Taylor Flynn* by All Plaintiffs. (Attachments: # 1 Attachment Proposed Order Granting Motion to Withdraw)(Chaput, Isaac) (Entered: 11/03/2023) |
| 11/07/2023 | 96 | **ORDER** granting 94 Motion for Status Conference. The Court sets the parties for a telephonic status conference on Wednesday, December 13, 2023, at 3:30 p.m. Signed by Judge Jodi W. Dishman on 11/07/2023. (nv) (Entered: 11/07/2023) |
| 11/07/2023 |  | Set/Reset Hearings: Telephonic Status Conference set for 12/13/2023 03:30 PM before Judge Jodi W. Dishman. (nv) (Entered: 11/07/2023) |
| 11/08/2023 |  | NOTICE from the Court 95 MOTION to Withdraw as Attorney *for Taylor Flynn* is **STRICKEN**. Upon review of the case docket, the Court notes there is no Entry of Appearance or any record of a Taylor Flynn in this case. (nv) (Entered: 11/08/2023) |
| 11/08/2023 | 97 | MOTION for Leave to Appear Pro Hac Vice *of Robert C. Gianchetti* Filing fee $ 100, receipt number AOKWDC-4290922 by All Plaintiffs. (Attachments: # 1 Exhibit 1 - Request for Admission PHV of Gianchetti)(Lambert, Megan) Attachment 1 replaced on 11/9/2023. Document flattened to optimize CM/ECF display; no other changes made (rp). (Entered: 11/08/2023) |
| 11/09/2023 | 98 | MOTION to Withdraw as Attorney *for Meredith Taylor Brown* by All Plaintiffs. (Chaput, Isaac) (Entered: 11/09/2023) |
| 11/13/2023 | 99 | **ORDER** granting 97 Motion to Appear Pro Hac Vice of Robert C. Gianchetti. Signed by Judge Jodi W. Dishman on 11/13/2023. (nv) (Entered: 11/13/2023) |
| 11/13/2023 | 100 | **ORDER** granting 98 Motion to Withdraw as Attorney. Attorney Meredith Taylor Brown terminated. Signed by Judge Jodi W. Dishman on 11/13/2023. (nv) (Entered: 11/13/2023) |
| 11/15/2023 | 101 | ENTRY of Appearance by Robert Gianchetti on behalf of All Plaintiffs (Gianchetti, Robert) Main Document 101 replaced on 11/17/2023. Document flattened to optimize CM/ECF display; no other changes made (rp). (Entered: 11/15/2023) |
| 11/15/2023 | 102 | MOTION to Substitute Party by Donald Burdick, Gentner Drummond, Sarah Lepak, Oklahoma State Department of Education, Katie Quebedeaux, Suzanne Reynolds, Trent Smith, Ryan Walters, Kendra Wesson. (Weaver, Audrey) (Entered: 11/15/2023) |
| 11/30/2023 | 103 | ENTRY of Appearance by Devraat Awasthi on behalf of All Plaintiffs (Awasthi, Devraat) Main Document 103 replaced on 12/1/2023 . Document flattened to optimize CM/ECF display; no other changes made (rp). (Entered: 11/30/2023) |
| 12/13/2023 | 104 | Minute Entry for proceedings held before Judge Jodi W. Dishman: Telephonic Status Conference held on 12/13/2023. (nv) Modified on 12/13/2023 to correct date listed on minute ONLY (nv). (Entered: 12/13/2023) |
| 01/12/2024 | 105 | **ORDER** granting 102 Motion to Substitute Party. Following this Order, captions for all filings should reflect that Zach Archer is substituted in place of Defendant Suzanne Reynolds. Filings in violation of this Order will be stricken. Signed by Judge Jodi W. Dishman on 1/12/2024. (nv) (Entered: 01/12/2024) |
| 01/12/2024 | 106 | **ORDER** granting 46 Plaintiffs' Renewed Motion for Leave to Proceed Pseudonymously; granting 58 State Defendants' Motion for Leave to Maintain Filed Parent Declaration Under Initials. *See Order* for all details and deadline imposed by the Court. Signed by Judge Jodi W. Dishman on 1/12/2024. (nv) (Entered: 01/12/2024) |
| 01/12/2024 | 107 | **ORDER** granting 25 Plaintiffs' Motion for Judicial Notice; granting 47 State Defendants' Motion to Dismiss and dismissing 1 Plaintiffs' complaint as to the State Defendants with prejudice; and denying as moot 24 Plaintiffs' Motion for Preliminary Injunction as to the State Defendants. Signed by Judge Jodi W. Dishman on 1/12/2024. (nv) (Entered: 01/12/2024) |
| 01/12/2024 | 108 | **NOTICE TO ALL PARTIES AND COUNSEL.** The Court ORDERS counsel to file the Joint Status Report and Discovery Plan (now a single document) by February 16, 2024. (nv) (Entered: 01/12/2024) |
| 01/19/2024 | 109 | MOTION for Protective Order , MOTION for *Leave to Delay Notice* by All Plaintiffs. (Attachments: # 1 Exhibit 1 - Proposed Protective Order)(Awasthi, Devraat) (Entered: 01/19/2024) |
| 01/19/2024 | 110 | **ORDER** granting in part 109 Plaintiffs' Motion for Protective Order and for Leave to Delay Submission of a Notice Disclosing Legal Names, as fully set out in this Order. The Court ORDERS Defendants HICD and Oklahoma City Public Schools to file any opposition or response to the Motion for Protective Order by Tuesday, January 23, 2024. Signed by Judge Jodi W. Dishman on 1/19/2024. (nv) (Entered: 01/19/2024) |
| 01/22/2024 | 111 | **PROTECTIVE ORDER REGARDING PSEUDONYMS** granting 109 Motion for Protective Order. Signed by Judge Jodi W. Dishman on 1/22/2024. (nv) (Entered: 01/22/2024) |
| 01/25/2024 | 112 | (Document Restricted)SEALED DOCUMENT by Eli Bridge, Max Miles, Mia Miles, Aysha Prather, Steve Stiles, Sue Stiles (Awasthi, Devraat) (Entered: 01/25/2024) |
| 01/29/2024 | 113 | (Document Restricted)SEALED DOCUMENT by Donald Burdick, Gentner Drummond, Sarah Lepak, Oklahoma State Department of Education, Katie Quebedeaux, Suzanne Reynolds, Trent Smith, Ryan Walters, Kendra Wesson Re: 111 Order on Motion for Protective Order (Weaver, Audrey) (Entered: 01/29/2024) |

| 02/05/2024 | 114 | MOTION for Judgment on the Pleadings *and Brief in Support* by Harding Independence Charter District Inc, Independent School District No 2 of Cleveland County Oklahoma, Independent School District No 40 of Cleveland County Oklahoma, Independent School District No 89 of Oklahoma County Oklahoma. (Holmes, Laura) (Entered: 02/05/2024) |
| 02/06/2024 | 115 | **ENTER ORDER:** The joint status report and discovery plan deadline of February 16, 2024, is STRICKEN to be reset, if necessary, after the Courts ruling on School Defendants' Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) [Doc. No. 114], which was filed after the Courts Status/Scheduling Conference Docket [Doc. No. 108] and which is not yet fully briefed. Should the parties require a status or scheduling conference before it has been reset by the Court, they should file a motion requesting one. Signed by the direction of Judge Jodi W. Dishman on 02/06/24. (rp) (Entered: 02/06/2024) |
| 02/07/2024 | 116 | RESPONSE in Opposition re 114 MOTION for Judgment on the Pleadings *and Brief in Support* filed by All Plaintiffs. (Chaput, Isaac) (Entered: 02/07/2024) |
| 03/22/2024 | 117 | **ORDER** granting 114 Motion for Judgment on the Pleadings for the same reasons it granted the State Defendants Motion to Dismiss. *See* [Doc. No. 107]. Signed by Judge Jodi W. Dishman on 3/22/2024. (nv) (Entered: 03/22/2024) |
| 03/22/2024 | 118 | **JUDGMENT.** Under Federal Rule of Civil Procedure 58(a), and in accordance with the Court's Orders of January 12, 2024 [Doc. No. 107] and today [Doc. No. 117], the Court dismisses with prejudice Plaintiffs' action against Defendants. Signed by Judge Jodi W. Dishman on 3/2/2024. (nv) (Entered: 03/22/2024) |
| 04/19/2024 | 119 | NOTICE OF APPEAL as to 118 Judgment, by All Plaintiffs. Filing fee $ 605, receipt number AOKWDC-4413894. (Chaput, Isaac) (Entered: 04/19/2024) |
| 04/19/2024 | 120 | PRELIMINARY RECORD LETTER - Electronic Transmission of Notice of Appeal with Preliminary Record sent to Tenth Circuit Court of Appeals re 119 Notice of Appeal (Attachments: # 1 Attachment 1 - Preliminary Record on Appeal)(rp) (Entered: 04/19/2024) |
| 04/19/2024 | 121 | Tenth Circuit USCA Case Number 24-6072 for 119 Notice of Appeal filed by Aysha Prather, Mia Miles, Max Miles, Eli Bridge, Sue Stiles, Steve Stiles. Civil case docketed. Preliminary record filed. DATE RECEIVED: 04/19/2024. Docketing statement, notice of appearance, and transcript order form due 05/03/2024 for Eli Bridge, Max Miles, Mia Miles, Aysha Prather, Steve Stiles, and Sue Stiles. Notice of appearance due on 05/03/2024 for Harding Independence Charter District Inc., Independent School District No. 89 of Oklahoma County Oklahoma, and Oklahoma State Department of Education. [24-6072] (rp) (Entered: 04/19/2024) |
| 05/03/2024 | 122 | TRANSCRIPT Order Form by All Plaintiffs re 119 Notice of Appeal that transcripts are not necessary. See order form for dates and proceedings. (Chaput, Isaac) (Entered: 05/03/2024) |
| 05/03/2024 | 123 | TRANSCRIPT LETTER advising no transcripts are necessary re 119 Notice of Appeal filed by Aysha Prather, Mia Miles, Max Miles, Eli Bridge, Sue Stiles, Steve Stiles. The record is ready for appeal purposes. (rp) (Entered: 05/03/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/27/2024 11:09:12 | | |
| **PACER Login:** | cb091600 | **Client Code:** | 990007.00799.13301 |
| **Description:** | Docket Report | **Search Criteria:** | 5:22-cv-00787-JD Start date: 1/1/1974 End date: 6/27/2024 |
| **Billable Pages:** | 26 | **Cost:** | 2.60 |

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

[1] ANDREW BRIDGE, by his next friends and
parents, ELI BRIDGE and AYSHA PRATHER;

[2] MARK MILES, by his next friends and
parents, MAX MILES and MIA MILES; and

[3] SARAH STILES, by her next friends and
parents, STEVE STILES and SUE STILES,

     *Plaintiffs*,

     v.

[1] OKLAHOMA STATE DEPARTMENT OF
EDUCATION;

[2] JOY HOFMEISTER, in her official capacity
as the State Superintendent of Public Instruction;

[3] CARLISHA BRADLEY,
[4] JENNIFER MONIES,
[5] ESTELA HERNANDEZ,
[6] BRIAN BOBEK,
[7] TRENT SMITH,
[8] SARAH LEPAK, in their official capacities as
members of the Oklahoma Board of Education;

[9] JOHN O'CONNOR, in his official capacity as
Oklahoma Attorney General;

[10] INDEPENDENT SCHOOL DISTRICT NO.
40 OF CLEVELAND COUNTY, OKLAHOMA
a/k/a NOBLE PUBLIC SCHOOLS;

[11] INDEPENDENT SCHOOL DISTRICT NO.
2 OF CLEVELAND COUNTY, OKLAHOMA
a/k/a MOORE PUBLIC SCHOOLS;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.: CIV-22-787-JD

JURY TRIAL DEMANDED

| | |
|---|---|
| [12] INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, OKLAHOMA a/k/a OKLAHOMA CITY PUBLIC SCHOOLS; and | ) ) ) ) ) |
| [13] HARDING INDEPENDENCE CHARTER DISTRICT, INC., | ) ) ) |
| *Defendants*. | ) ) ) |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

## INTRODUCTION

1.      Plaintiffs Andrew Bridge,[1] Mark Miles, and Sarah Stiles,[2] minors represented in this lawsuit by their respective parents and next friends (collectively, "Plaintiffs"), are Oklahoma public school or public charter school students.  They are just like every other middle and high school student, teenagers coming of age as they seek to fit in, navigate life's challenges, obtain support and encouragement, and learn.  Just like their peers, Plaintiffs enter their school's doors each morning filled with dreams for their future careers and lives.  And just like their peers, each one of them is entitled to an education without being singled out for discriminatory unequal treatment.

2.      After the last Oklahoma legislative session, the 2022–2023 school year brought a cruel and harmful burden targeting Plaintiffs simply because they happen to be

---

[1] Pursuant to Fed. R. Civ. P. 5.2(h), Plaintiff Andrew Bridge, a minor, waives the privacy protections afforded by Fed. R. Civ. P. 5.2(a) as to his name only.

[2] For the reasons set forth in a motion contemporaneously filed with this Complaint for Declaratory, Injunctive, and Other Relief, Plaintiffs Mark Miles and Sarah Stiles proceed under pseudonyms.

A-0011

transgender—meaning that they consistently, persistently, and insistently identify as a sex that is different than the sex each was assigned at birth.  Plaintiffs and other youth who are transgender in Oklahoma schools now face mandated discipline, possibly even suspension, simply for using the restroom and other facilities at school corresponding with who they are.

3.      On May 25, 2022, Oklahoma Governor Kevin Stitt signed into law Oklahoma Senate Bill 615, which has been codified as Okla. Stat. tit. 70, § 1-125 ("SB 615"), and which is now in effect.[3]  Section 1 of SB 615 mandates that each Oklahoma public school and public charter school serving pre-kindergarten through twelfth grade students designate all multiple occupancy restrooms or changing areas exclusively for the use of either the "male sex" or the "female sex."  Under SB 615, "sex" is defined as "the physical condition of being male or female based on genetics and physiology, as identified on the individual's original birth certificate."  This is so even when the individual knows themself to be a different sex, and even when others perceive the individual to be a different sex than is identified on their original birth certificate.

4.      Under SB 615, the Oklahoma State Board of Education is required to promulgate and enforce rules to implement the provisions of Section 1 of SB 615.

---

[3] While SB 615 applies to students, school staff, and visitors to the campus of each school, the Complaint focuses specifically on the student population since Plaintiffs are students.

3

5.      Oklahoma school districts and public charter school governing boards are required by SB 615 to adopt a disciplinary action policy for individuals who refuse to comply with the provisions of Section 1 of SB 615.

6.      If the Oklahoma State Board of Education finds that a school district or public charter school is not complying with SB 615, SB 615 requires that the noncompliant school district or public charter school receive a 5% decrease in state funding for the fiscal year following the year of noncompliance.

7.      Plaintiffs bring this action to challenge the legality of recently-enacted SB 615, to preliminarily and permanently enjoin enforcement of SB 615, to obtain declaratory relief regarding SB 615, and to obtain nominal damages on the basis that SB 615 discriminates on its face against students who are transgender, and as applied to each of the Plaintiffs on the basis of their sex, gender identity, and transgender status, in violation of the Fourteenth Amendment to the United States Constitution and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.*

## JURISDICTION AND VENUE

8.      This action arises under the United States Constitution, 42 U.S.C. § 1983, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

9.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) and (4) because the action is brought to redress deprivations, under color of state authority, of rights, privileges, and immunities secured by the U.S. Constitution, and seeks to secure

4

nominal damages and equitable relief under 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights.

10.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in the Western District of Oklahoma under 28 U.S.C. § 1391(b)(1) and (2) because Defendants and/or agents of Defendants reside and/or may be found in this District, and a substantial portion of the communications, transactions, events, or omissions underlying Plaintiffs' claims occurred in this District.

## PARTIES

**A.     Plaintiffs**

12.     Plaintiff Andrew Bridge ("Andy") is a 16-year-old boy enrolled as a student in 12th grade at Noble High School, a public school operated by Defendant Noble Public Schools.  Andy is a hard-working, high-achieving student, who enjoys reading, painting, and competing as a Varsity member of the Noble High School Academic Team.  Andy is also transgender, and therefore harmed by SB 615 and his school's discipline policy, which prohibits him from using the boys' restrooms at school.  This prohibition applies even though Andy used the boys' restrooms at his school without issue during the 2021–2022 academic year.  Andy is a resident of Oklahoma and, as a minor, brings this action pursuant to Federal Rule of Civil Procedure 17(c) by and through his parents and next friends, Eli Bridge and Aysha Prather.

5

A-0014

13.     Plaintiff Mark Miles ("Mark") is a boy enrolled as a student at a public school operated by Defendant Moore Public Schools.  Mark is also transgender, and therefore harmed by SB 615 and his school's discipline policy, which prohibits him from using the boys' restrooms at school.  Mark is a resident of Oklahoma and, as a minor, brings this action pursuant to Federal Rule of Civil Procedure 17(c) by and through his parents and next friends, Max and Mia Miles.

14.     Plaintiff Sarah Stiles ("Sarah") is a girl enrolled as a student at a public charter school operated by Defendant Harding Independent School District, Inc.  Sarah is also transgender, and therefore harmed by SB 615, and her school's discipline policy, which prohibits her from using the girls' restrooms at school.  Sarah is a resident of Oklahoma and, as a minor, brings this action pursuant to Federal Rule of Civil Procedure 17(c) by and through her parents and next friends, Steve and Sue Stiles.

**B.     Defendants**

15.     Defendant Oklahoma State Department of Education ("OSDE") is charged with determining the policies and directing the administration and supervision of the public school system of Oklahoma.  Okla. Stat. tit.70, § 1-105(A).  OSDE is a recipient of Federal financial assistance and, therefore, subject to Title IX.

16.     Defendant Joy Hofmeister is the State Superintendent of Public Instruction ("State Superintendent") in Oklahoma.  She controls and directs OSDE and also serves as a member and chairperson of the State Board of Education ("SBOE").  Okla. Stat. tit.70 §§ 1-105(C), 3-107.1.  In addition to concurrent responsibilities with the other members of the SBOE, the State Superintendent "adopts polices and makes rules for the organization,

6

A-0015

operation and administration" of OSDE.  Okla. Stat. tit. 70, § 3-107.1(2).  The State

Superintendent is also "responsible for interpretation of policy and rules set by the

[SBOE]."  Okla. Stat. tit. 70, § 3-107.1(6).  The State Superintendent's "control" extends

to any "other operations necessary to carry out the powers, duties and functions of the State

Superintendent and the [SBOE]."  Okla. Stat. tit. 70, § 3-107.1(3).  Defendant Hofmeister

is a person within the meaning of 42 U.S.C. § 1983 and is sued in her official capacity for

prospective equitable relief.  At all relevant times, Defendant Hoffmeister has acted and

continues to act under color of state law.

17.     Defendants Carlisha Bradley, Jennifer Monies, Estela Hernandez, Brian

Bobek, Trent Smith, and Sarah Lepak (collectively, "Appointed Board Members") are

members of the SBOE.  The State Superintendent and Appointed Board Members have

concurrent responsibility as the SBOE to, *inter alia*, adopt policies and operate the public

school system of the state.  Okla. Stat. tit. 70, § 3-104.  On August 25, 2022, the SBOE

adopted emergency rules governing the implementation of SB 615 in public schools and

public charter schools.  Defendants Appointed Board Members are each a person within

the meaning of 42 U.S.C. § 1983 and are sued in their official capacities for prospective

equitable relief.  At all relevant times, Defendant Appointed Board Members acted and

continue to act under color of state law.

18.     Defendant John O'Connor ("OAG" or "Oklahoma Attorney General") is the

Attorney General for the State of Oklahoma.  Defendant O'Connor has demonstrated a

willingness to exercise his duties and powers as Oklahoma Attorney General to exclude

students who are transgender from multiple occupancy school restrooms and other sex-

separated facilities that align with such students' gender.  Upon information and belief, Defendant O'Connor will, directly or indirectly, enforce SB 615, through his duties and powers as Oklahoma Attorney General. Okla. Stat. tit. 74, § 74-18b.  *See, e.g.*, Attorney General O'Connor Releases Statement Following the Signing of SB 615 and HB 4327, May 26, 2022 (stating "[t]he Attorney General has been working vigorously on this issue for months now" and has "already begun pushing back… and will continue to do so…."). Defendant O'Connor is a person within the meaning of 42 U.S.C. § 1983 and is sued in his official capacity for prospective equitable relief.  At all relevant times, Defendant O'Connor has acted and continues to act under color of state law.

19.    Defendant Independent School District No. 40 of Cleveland County, Oklahoma ("Noble Public Schools" or "NPS") is a body corporate that acts by and through its governing body, the Noble Board of Education ("Noble BOE").  *See* Okla. Stat. tit. 70, §§ 5-105, 5-106.  Among other powers and duties, the Noble BOE "make[s] rules, not inconsistent with the law or rules of the State Board of Education, governing the board and the school system of" NPS.  Okla. Stat. tit. 70, § 5-117(A)(2). Defendant Noble Public Schools is also a recipient of Federal financial assistance and therefore is subject to Title IX.

20.    Defendant Independent School District No. 2 of Cleveland County, Oklahoma ("Moore Public Schools" or "MPS") is a body corporate that acts by and through its governing body, the Moore Board of Education ("Moore BOE").  *See* Okla. Stat. tit. 70, §§ 5-105, 5-106.  Among other powers and duties, the Moore BOE "make[s] rules, not inconsistent with the law or rules of the State Board of Education, governing the board and

the school system of" MPS.  Okla. Stat. tit. 70, § 5-117(A)(2).  Defendant Moore Public Schools is a recipient of Federal financial assistance and therefore is subject to Title IX.

21.    Defendant Independent School District No. 89 of Oklahoma County, Oklahoma ("Oklahoma City Public Schools" or "OKCPS") is a body corporate that acts by and through its governing body, the Oklahoma City Board of Education ("OKCPS BOE").  *See* Okla. Stat. tit. 70, §§ 5-105, 5-106.  Defendant OKCPS is also a recipient of Federal financial assistance and therefore is subject to Title IX.  Defendant OKCPS is the authorized public chartering agency that sponsors Defendant HICD pursuant to the Oklahoma Charter Schools Act, Okla. Stat. tit. 70, § 3-130 *et seq*., as amended.

22.    Defendant Harding Independence Charter District, Inc. ("HICD") is a not-for-profit corporation authorized to and currently operating two public schools, including Independence Charter Middle School ("ICMS"), chartered by Defendant OKCPS.  HICD was formerly known as Families for Excellence in Education, Inc.  Upon information and belief, Defendant HICD is a recipient of Federal financial assistance, whether directly or indirectly, and therefore is subject to Title IX as a recipient or otherwise.

23.    NPS, MPS, and OKCPS are each a local education agency ("LEA") and HICD is considered a LEA under Oklahoma law for purposes of federal funding.  Okla. Stat. tit. 70, § 3-142(C).  NPS, MPS, OKCPS, and HICD are collectively referred to herein as the "LEA Defendants."

## STATEMENT OF FACTS

### I.    Gender Identity and Gender Dysphoria

24.    Every individual's sex is multifaceted and comprised of many distinct biologically-influenced characteristics, including, but not limited to, chromosomal makeup, hormones, internal and external reproductive organs, secondary sex characteristics, and gender identity. Where there is a divergence between these characteristics, gender identity is the most important and determinative factor. Therefore, someone's sex or gender is properly understood to be the same as their gender identity.

25.    All human beings have a gender identity—the sex or gender the individual knows themself to be. A person's gender identity is a fundamental component of their identity that is durable and deeply rooted. Although the detailed mechanisms are unknown, there is a medical consensus that there is a significant biologic component underlying gender identity. It cannot be changed by social or medical intervention.

26.    When a child is born, healthcare providers typically make a sex designation at birth based on a visual assessment of the infant's external genitalia. This is the sex that is most commonly listed on a person's original birth certificate. Most people are cisgender, meaning that their gender identity aligns with the sex they were assigned at birth. A girl who is cisgender has a female gender identity and was assigned female at birth. A boy who is cisgender has a male gender identity and was assigned male at birth.

27.    Not everyone's gender identity aligns with the sex they were assigned at birth. A person is transgender if they have a gender identity that does not align with their sex assigned at birth. A girl who is transgender has a female gender identity although she

10

was assigned male at birth.  A boy who is transgender has a male gender identity although he was assigned female at birth.

28.    Individuals who are transgender have a consistent, persistent, and insistent understanding that their sex is different from the sex they were assigned as at birth. Individuals who are cisgender have a consistent, persistent, and insistent understanding that their sex is the same as the sex they were assigned at birth.

29.    Some people who are transgender experience sustained and clinically significant distress caused by the incongruence between their gender and their sex assigned at birth.  The American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders ("DSM-5") diagnostic term for this sustained and clinically significant distress is "Gender Dysphoria."  Not all people who are transgender experience gender dysphoria.

30.    In order to be diagnosed with gender dysphoria, the incongruence must have persisted for at least six months and be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.

31.    Being transgender is not itself a medical condition.  But gender dysphoria is a serious medical condition that, if left untreated, can result in debilitating anxiety, severe depression, suicidal ideation, self-harm, and suicide.

32.    The World Professional Association for Transgender Health ("WPATH") and the Endocrine Society have published widely accepted standards of care for treating gender dysphoria.  The medical treatment for gender dysphoria is to eliminate the clinically significant distress by helping a person who is transgender live in alignment with their

A-0020

gender identity. This treatment is sometimes referred to as "gender transition," "transition-related care," or "gender-affirming care." These standards of care are recognized by the American Academy of Pediatrics, which agrees that this care is safe, effective, and medically necessary treatment for the health and well-being of youth suffering from gender dysphoria.

33.    The goal of treatment for gender dysphoria is to align the body and life of a person who is transgender with their gender identity. Generally, treatment in accordance with the WPATH Standards of Care may include: (1) social transition; (2) hormone therapy; and/or (3) gender-affirming surgeries. The precise treatment for gender dysphoria depends upon each person's individualized needs, and the medical standards of care and treatment differ across age groups, depending on whether the person suffering from gender dysphoria is a prepubertal child, adolescent, or adult.

34.    Treatment of gender dysphoria for prepubertal children with gender dysphoria is limited to social transition. Social transition for this age group entails allowing a child who is transgender to live and be socially recognized in accordance with their gender identity in all aspects of their lives. Typically, social transition includes allowing children to wear clothing, cut or grow their hair, adopt other appearance styles, use names and pronouns, and use restrooms and other sex-separated facilities in accordance with their gender, instead of the sex assigned to them at birth.

35.    For example, for a boy who is transgender, social transition can include, among other things, changing his first name to a name typically associated with boys, using male pronouns, changing his identity documents to reflect his male gender, wearing

clothing and modifying his appearance to that stereotypically associated with boys, using

restrooms and other facilities for boys, and otherwise living as a boy in all aspects of life.

And vice versa for a girl who is transgender.

36.     Social transition as part of treatment for gender dysphoria requires that a boy

who is transgender be recognized as a boy and treated the same as all other boys by those

in their lives, including family members, friends, educators, peers, and others in the

community, as well as by government agencies and officials and private entities with which

he interacts, or else he may experience significant harm.  The same is true for social

transition as part of treatment for gender dysphoria for a girl who is transgender.  A girl

who is transgender must be recognized as a girl and treated the same as all other girls by

those in her life, her community, and all government agencies and officials, as well as

private entities with which she interacts, or else she may experience significant harm.

37.     Under the WPATH Standards of Care, when a child begins to enter puberty,

they have the option, under medical supervision and with the informed consent of their

parents or guardians, to receive endogenous puberty-delaying medical treatment.  The

puberty-delaying treatment helps prepubertal children who are transgender live in

alignment with their gender identity and treats the symptoms of gender dysphoria.  Puberty-

delaying treatment is reversible.  It is also the same treatment provided to children who are

experiencing precocious puberty—a condition when young children experience puberty

years before the typical onset of puberty.  Because puberty-delaying treatment allows youth

who are transgender to avoid going through their endogenous puberty, it helps mitigate

gender dysphoria and prevents permanent physical changes that would otherwise accompany their endogenous puberty that are inconsistent with their gender.

38.     For adolescents who are transgender and who are ready to begin puberty (after either puberty-delaying treatment or starting endogenous puberty), the WPATH treatment protocols recommend the initiation of gender identity congruent hormone therapy.  Hormone therapy, which, upon informed consent by a parent or guardian of the adolescent, is provided under the supervision of a medical professional.  Hormone therapy replaces the individual's endogenous hormones with gender identity congruent hormones, at appropriate and standard levels for their age.  Boys who are transgender undergo testosterone therapy, and girls who are transgender undergo estrogen therapy.  Gender identity congruent hormone therapy allows an adolescent who is transgender, depending on a variety of factors and to various degrees, to experience the same physical changes to secondary sexual characteristics experienced by their cisgender peers.

**II.    Youth Who Are Transgender and Their Schools**

39.     The ability to live consistently with one's gender identity is critical to the health and well-being of people who are transgender, but particularly youth who are transgender.

40.     Students who are transgender have been, are, and will continue to attend schools across the country and in Oklahoma.  While students who are transgender have long been part of school communities, in recent decades they have had more widespread access to the medical and psychological support that each needs to live as the person they truly are and to thrive.

A-0023

41.    Because of increased access to care and support from health care providers, their families, and their communities, many students who are transgender attend school without classmates and peers knowing they are transgender. For example, many students have already socially transitioned to the sex they know themselves to be before beginning school and many others transfer to a new school after transitioning.

42.    With hormone therapy, adolescent students who are transgender develop physical sex characteristics typical of their gender identity—not the sex they were assigned at birth. For example, hormone therapy affects muscle tone and structure and produces secondary sex characteristics such as a lower voice and an increase in facial and body hair in boys and breasts and wider hips in girls.

43.    According to every major medical and mental health organization, including the American Medical Association, the American Academy of Pediatrics, the American Psychiatric Association, and the American Psychological Association, excluding boys and girls who are transgender from using the same restrooms as other boys and girls is harmful to the health and wellbeing of those transgender students. When excluded from the multiple occupancy restrooms, students who are transgender often avoid using the restroom entirely. This may be because using single-occupancy restrooms would reveal that they are transgender to others, is stigmatizing, or is impractical to use given how far the single-occupancy restroom may be from a student's classes or for other reasons. Those who avoid using restrooms at school may suffer infections and other negative health consequences as a result of avoiding being forced to use a restroom that does not align with their gender. Treating boys and girls who are transgender differently than their peers and excluding them

A-0024

from the same restrooms used by peers of the same gender also increases their risk of or worsens, their anxiety, depression, suicidal ideation, and self-harm; could lead to suicide; and interferes with the treatment of, and may cause or increase the intensity of, their gender dysphoria.

44.     Educators and school administrators across the country also recognize that excluding boys and girls who are transgender from multiple occupancy restrooms that align with their gender interferes with their ability to learn and thrive at school.  It impairs their ability to develop a healthy sense of self, peer relationships, and the cognitive skills necessary to succeed in adult life.  In light of these harms, the National Association of School Psychologists, National Association of Secondary School Principals, National Association of Elementary School Principals, and the American School Counselor Association have all called upon schools to allow boys and girls who are transgender to use the same restrooms as their cisgender counterparts.

45.     According to the American Academy of Pediatrics and other major medical and mental health organizations, there is no evidence that allowing boys and girls who are transgender to use the same restrooms as their cisgender counterparts causes any harm to cisgender students.

46.     Schools can provide accommodations for all students—whether transgender or not—to enhance their own sense of privacy without discriminating against students who are transgender by excluding them from multiple occupancy restrooms used by students of the same gender as the students who are transgender.

A-0025

47.    Plaintiffs and other students in Oklahoma who are transgender, as well as students across the country who are transgender, already use the same multiple occupancy facilities in public as other boys and girls.

48.    Permitting boys and girls who are transgender to simply exist as who they are, and treating them the same as any other boy or girl, harms no one, and it is the only way that students who are transgender can equally participate in education, employment, and society at large.

## III.    SB 615

49.    SB 615 was originally introduced by Oklahoma State Senator David Bullard on January 21, 2022, as a bill to amend Oklahoma's law regarding inspection of sex education curriculum to, among other things, define "sexual behavior or attitudes" to include "sexual orientation and gender identity."  On April 28, 2022, following an untimely amendment, the Oklahoma House of Representatives voted to suspend Rule 8.8 of the House Rules[4] to introduce an amendment to SB 615.  This amendment removed the original language and title of the bill, changing it from a bill regarding sex education curricula to one discriminating against students who are transgender by denying them equal access to multiple occupancy restrooms and changing areas.

---

[4] Rule 8.8(c) "An amendment to a main floor amendment must be filed no later than forty-eight (48) hours after a bill or joint resolution is initially published on the Floor Calendar, to be eligible for consideration." House Rules of the Oklahoma House of Representatives for the 58th Oklahoma Legislature (2021-2022).

50.     SB 615 in its current form was passed by the Oklahoma Legislature and thereafter signed by Oklahoma Governor Stitt on May 25, 2022, when it immediately went into full force and effect pursuant to Section 2 of SB 615.

51.     As enacted, SB 615 provides that it was adopted "to ensure privacy and safety" at each public school and public charter school that serves students in pre-kindergarten through twelfth grades in Oklahoma.

52.     The purported "privacy" and "safety" concerns are unfounded pretext to target students who are transgender.  Students who are transgender pose no risks to the privacy or safety of other students, whether in using multiple occupancy facilities or in any other context.

53.     In a press release following the passage of SB 615, Senator Bullard explained the purpose of the bill as "removing all forms of indoctrination," noting "how far we slipped in our society" that "we are willing to fail our kids by coercing them into living in someone else's fantasy," presumably referring to the existence of transgender people as a "fantasy."

54.     On August 25, 2022, Defendant SBOE adopted emergency rules pursuant to Section 1(H) of SB 615 ("SBOE Emergency Rules").  The SBOE Emergency Rules are set forth in Title 210 of the Oklahoma Administrative Code as new Section 35-3-186(h).  They mirror SB 615 by requiring every public school and public charter school that serves students in prekindergarten through twelfth grades in Oklahoma to designate all multiple occupancy restrooms or changing areas for the exclusive use of either the male sex or the female sex, defined as "the physical condition of being male or female based on genetics

A-0027

and physiology, as identified on the individual's original birth certificate." SB 615 and the SBOE Emergency Rules also require that schools provide a "Reasonable Accommodation" by providing access to a single-occupancy restroom or changing room for individuals who do not wish to utilize the multiple occupancy restroom or changing area designated for their "sex" (as defined in SB 615).

55.     These restroom "accommodations" provided to Plaintiffs by their respective schools are not accommodations at all.  Offering students who are transgender a choice between single-occupancy restrooms, restrooms designated for a gender incongruent with who they are, or no restrooms at all is discrimination.  These so-called "accommodations" reinforce the differential treatment and trauma associated with living under SB 615, violating Plaintiffs' constitutional and statutory rights under the Equal Protection Clause of the U.S. Constitution and Title IX.

56.     The legislature included a punitive 5% budget cut to school districts found to violate SB 615, delegating enforcement authority to Defendant SBOE.  For Oklahoma schools, particularly those that are already underfunded and forced to limit or cut vital programs and services for students year after year, any decrease in state funding is unpalatable.

57.     SB 615 further provides a new "cause of action" for any "parent or legal guardian enrolled in and physically attending a public school district or public charter school" for "noncompliance" with its mandate to bar transgender students from access to multiple occupancy restrooms that align with their gender.  The threat of private lawsuits

19

and accompanying expenses against Oklahoma public schools and public charter schools underscores the coercive nature of SB 615.

58.     SB 615, the SBOE Emergency Rules, and LEA Defendants' respective disciplinary policies or practices harm students who are transgender, including Plaintiffs, by excluding them from the same multiple occupancy facilities that are provided to peers of their same gender.

**IV.    Plaintiffs' Experiences in Oklahoma Schools as Students Who Are Transgender**

59.     Plaintiffs attend school under compulsion of State law.  Okla. Stat. tit. 70, § 10-105.  Like most students, Plaintiffs attend school to learn, develop friendships, and prepare themselves for higher education and success throughout their adult lives.

**A. Andy Bridge**

60.     Plaintiff Andy Bridge is a boy.  He also is transgender.

61.     Andy is 16 years old, and is a registered student at Noble High School, which is part of the Noble Public Schools in Noble, Oklahoma.  He began his senior year on August 10, 2022.

62.     Andy is an honor student whose academic record is extremely important to him.  He competes on the Varsity team in the Academic Bowl.  After high school, he plans to attend a four-year university to study Psychology.  Ultimately, he would like to be either a clinical psychologist or psychiatrist.  In his free time, he loves to paint and read.

63.     At birth, Andy was designated as "female" on his birth certificate, even though he is a boy.  At the onset of puberty, Andy started to feel uncomfortable with his

body.  After many discussions with his therapist, physician, and supportive friends, and after extensive reading and thinking about gender identity, Andy felt ready to come out to his family as transgender, which he did during the summer of 2020.

64.     As he came to understand his identity as a boy, Andy began taking steps towards aligning his lived experience with his gender.  Andy cut his hair short and began wearing more masculine clothing.  He informed his close friends of his name and pronouns. Each gradual step of his transition brought him a sense of relief and happiness, and he felt like he was finally starting to live the way he was meant to live.

65.     Andy has since been diagnosed with gender dysphoria, and that diagnosis has been confirmed by multiple health providers.

66.     Andy began pursuing medical treatment for gender dysphoria in June 2021 at Oklahoma Children's Adolescent Medicine Clinic ("OU Health").  He has been under the care of health care professionals at OU Health since May 2018 after he was referred there by his primary care physician.

67.     During Andy's junior year at Noble High School in August 2021, he lived as his authentic self, meaning as the boy he is.  His name was changed on his school records where possible and teachers were informed that he uses male pronouns.  At school, he is generally perceived by students and staff alike as a boy.  His peers and teachers generally use male pronouns to refer to him, and he is generally treated as the boy he is in every respect.

68.     Andy consistently used the boys' restrooms at school for the entire 2021– 2022 school year with the knowledge and support of school administration.  He knew that

A-0030

he belonged in the boys' restroom, so he simply used the boys' restrooms along with all the other boys. Andy always used one of the stalls, just as he continues to do in every other setting where he uses male restrooms.

69.      Before school started this year, Andy and his mother spoke with the vice principal and principal of his school regarding the school district's restroom policy. The principal and vice principal called a district-level administrator who stated that NPS's policy is that transgender students would have a single-occupancy restroom made available to them. If there was a complaint about a transgender student using the "wrong" restroom (that is, a multiple occupancy restroom used by students of the same gender), they would be counseled to use other restrooms. If Andy persisted in using the boys' restroom after being counseled to use other restrooms, he would be subject to further discipline. At the end of the conversation, both Andy and his mother made it clear that Andy planned to continue using the boys' restroom this school year.

70.      Since school has started again, Andy has either used the boys' restroom between classes or returned home during extended breaks in his schedule to use the restroom at home.

71.      Being banned from the boys' restroom makes Andy feel singled out and stigmatized. Andy just wants to be treated with the same dignity and respect as all other boys.

### B. Mark Miles

72.      Plaintiff Mark Miles is a boy. He also is transgender.

73.    Mark is a student enrolled at a Moore Public Schools' high school in Oklahoma City, Oklahoma.  He began the current school year on August 11, 2022.

74.    Mark's favorite subject in school is AP music theory.  He loves music and plays guitar.  After he finishes high school, he would like to attend college and study music theory.  Ultimately, he would like a career in music production.

75.    At birth, Mark was designated as "female" on his birth certificate, even though he is a boy.  From a very young age, Mark knew he was a boy.  He would tell people that he was a boy, and if they did not agree he would argue with them.  He never wanted to wear feminine clothing, such as dresses and skirts.  He also never wanted to play with what are traditionally thought of as "girl" toys and would only play with what are traditionally thought of as "boy" toys.

76.    It was not until Mark was ten that he knew what being "transgender" was.  During the summer of 2018, shortly after finding the language to describe himself, he came out to his family as transgender.  Mark's family had a positive reaction to him coming out as transgender—everyone was accepting and supportive of him.

77.    After coming out, Mark began taking steps towards aligning his lived experience with his gender identity.  Mark cut his hair short, and his family began to use his correct pronouns and name.  The day he cut his hair short was one of the happiest days of his life.  With each step he took, Mark began to feel more and more like his true self.

78.    Mark has since been diagnosed with gender dysphoria, and that diagnosis has been confirmed by multiple health providers.

A-0032

79.     Mark began pursuing medical treatment for gender dysphoria in July 2019 at OU Health after he was referred there by his primary care physician.

80.     Mark has consistently used male restrooms in public since 2019 without incident.  Initially during junior high, he would use the faculty restroom because he felt more comfortable doing so.  School ended up being remote during Mark's eighth-grade year due to the COVID-19 pandemic so there was no need to address restroom use at school.

81.     During Mark's freshman year, which began in August 2021, Mark was living as his authentic self, meaning as the boy he is.  He had obtained a legal name change, which was reflected in his school records.  At school, he was generally perceived by students and staff alike as a boy.  His peers and teachers generally used male pronouns, and Mark was generally treated as a boy in every respect.

82.     Mark began using the boys' restroom at the start of the 2021-2022 school year.  He always used one of the stalls, as he continues to do in every other setting where he uses the male restrooms.

83.     In January 2022, a teacher informed the freshman principal that Mark was using the boys' restroom.  The freshman principal contacted both Mark and his parents and informed them that it was Moore Public School's policy that students must use the restroom that that matches the sex they were assigned at birth.  Mark was no longer allowed to use the boys' restroom and was told that he was required to use the single-occupancy faculty restroom.

24

84.     Mark's parents asked for a written copy of the policy on transgender students and restrooms.   On February 9, 2022, they received an email from an Assistant Superintendent at Moore Public Schools stating that "[t]he district does not have a specific policy with regard to this issue" and instead had a "consistent practice."   The email also stated that transgender students would have access to a private restroom facility.

85.     After receiving this email, Mark's parents requested a copy of the MPS's Title IX grievance policy and shortly thereafter filed a Title IX grievance with the school district.   On June 15, 2022, Mark's family received a final Decision and Opinion in the Appeal of the Title IX Grievance.   It denied all relief they had sought under Title IX because of Oklahoma's enactment of SB 615.

86.     While this process was pending, Mark was required to use a single-occupancy restroom.   This caused Mark's anxiety and depression to worsen.   Due to this distress, Mark was pulled out of in-person classes and allowed to finish the school year online.

87.     Not being allowed to use the boys' restroom at school makes Mark very upset and heightens his gender dysphoria.   Mark also feels that being required to use a separate restroom makes it more likely that his classmates will discover he is transgender.   Worrying about this often distracts Mark from his schoolwork.

88.     On August 8, 2022, the Moore BOE adopted a new discipline policy for Moore Public Schools entitled, "Use/Misuse of School Restrooms and Changing Facilities" to comply with SB 615.   In relevant part, students at MPS, including Mark, are subject to "disciplinary action outlined in the school discipline policy" if they do not use a

single-occupancy restroom or designated multiple occupancy restrooms "based on genetics and physiology; as identified on the individual's original birth certificate."

89.     The MPS school discipline policy includes a non-exclusive list of potential disciplinary actions, including a conference with student/parent, detention, in-school suspension, restriction of privileges, behavior contract, and suspension, among others.  *See* MPS Board Policy, Section 7115.

90.     Mark began in-person classes at his high school in August 2022.  Despite MPS's policy, Mark has continued to use the boys' restroom at school just as he uses male restrooms in all other public spaces.

### C.  Sarah Stiles

91.     Plaintiff Sarah Stiles is a girl.  She is also transgender.

92.     Sarah is enrolled as a student at Independence Charter Middle School, which is operated by HICD in Oklahoma City, Oklahoma.  She began school on August 11, 2022.

93.     Sarah's favorite subject at school is history.  In the future she would like to be a drama or music teacher.  For fun, she likes to bowl, play video games, and play the cornet. Sarah is also very active in her church's youth group and a local LGBTQ center's youth group.

94.     At birth, Sarah was designated as "male" on her birth certificate, even though she is a girl.  Sarah began questioning her gender in 2020 and, over time, Sarah started to become more certain that she is transgender.

95.     In the summer of 2021, Sarah first let her parents know that she was questioning her gender identity.  The idea of going through male puberty brought Sarah

A-0035

discomfort. As an initial step, Sarah's family began using her correct pronouns and started doing research to better understand and support her. Coming out to her family gave Sarah a huge sense of relief. When she told her family, it felt like a huge weight off of her chest. As her family began using her correct name and pronouns, it made her feel very happy and euphoric.

96.     Sarah has since been diagnosed with gender dysphoria, and that diagnosis has been confirmed by healthcare providers. Sarah began pursuing medical treatment for gender dysphoria in April 2022 at OU Health.

97.     Sarah attended another middle school during the 2021-2022 school year. Throughout the school year, Sarah was harassed and bullied for being transgender. Most of the bullying and harassment stemmed from the school's restroom policy that required Sarah to use the boys' restroom. In the boys' restroom, Sarah was assaulted on multiple occasions, including being struck on her backside and being shoved in the chest.

98.     Because Sarah's parents were unhappy with how Sarah was being treated at her former school, they decided to enroll her at ICMS after Sue Stiles heard that HICD schools were doing all they could to make sure that transgender students were accepted and treated equally.

99.     Sue Stiles subsequently met with the principal and a counselor at ICMS, as well as HICD Superintendent Steven Stefanik. They were supportive and assured Sue Stiles that Sarah would be able to use the multiple occupancy girls' restrooms at ICMS. They noted that the ICMS Student Bill of Rights guaranteed Sarah's access to multiple

occupancy girls' restrooms.  Sarah was very excited about this because using the girls' restroom feels the most normal for her.

100.    On August 10, 2022, Sarah used the girls' restroom at ICMS without incident during the school day.  Given news reports of several Oklahoma school districts enacting discipline policies in response to SB 615, Sue Stiles contacted the Principal at ICMS that day, asking whether Sarah would be permitted to use the multiple occupancy girls' restroom used by other girls at her school and, if not, what consequences she could face if she does.

101.    In response to Sue Stiles' inquiry, Superintendent Stefanik responded that, despite the assurances previously provided to Sarah Stiles' parents, SB 615 was passed and that ICBS and HICD's governance board are obligated to follow the laws passed in Oklahoma.  He quoted provisions of SB 615 to Sue Stiles, noted that ICMS has created a single-occupancy restroom that Sarah could use, and explained that "the HICD staff and community will support the non-discrimination policy set forth by the governance board and help your student feel safe and comfortable at school, outside of the provisions provided in SB 615."  Superintendent Stefanik thus acknowledged that SB 615 is discriminatory and will cause Sarah and other HICD students who are transgender to feel unsafe and uncomfortable at school.

102.    Defendant HICD, acting through its board, has delegated authority to enforce board policy and rules regarding the discipline of students, including students at ICMS, to the HICD Superintendent.

103.    The single-occupancy restroom that was made available to Sarah is a restroom located in the classroom that is used for in-school suspension ("ISS").  To use the restroom, Sarah must walk through the ISS classroom.  The restroom is also used partially for storage, including an unused wheelchair, empty picture frames, and plants.

104.    Students who attend ISS view that Sarah uses this specific restroom.  This makes Sarah nervous that students will discover that she is transgender because she uses that restroom and will begin to treat her differently.  Sarah has already been approached by a student and asked why she was using that specific restroom.

105.    A trip to the single-occupancy restroom typically takes Sarah 4-6 minutes from her classrooms, and on occasions she has to wait for others to use the restroom, extending the time that she is out of the classroom.  On most trips, Sarah passes three multiple occupancy girls' restrooms.  It takes longer for Sarah to get to the single-occupancy restroom during her four-minute passing periods because there are other students in the hallway; therefore, she can only use the restroom during class time.  This has led to Sarah missing parts of class.

106.    Despite all teachers being notified that Sarah has to use the single-occupancy restroom, a teacher has already complained about the length of time it takes Sarah to use the restroom.  The teacher stated that Sarah's restroom trip took too long and that in the future she has three minutes to use the restroom.  A trip from that specific classroom to the single-occupancy restroom is impossible for Sarah to make in under three minutes.

107.    By excluding Sarah from the girls' restroom, ICMS treats her differently than all of her girl classmates.  This has already had a negative impact on Sarah and Sarah's

parents fear that this will harm her wellbeing.  The policy also puts Sarah at risk of the

disclosure that she is transgender and significantly disrupts Sarah's education by forcing

her to choose between disruptive physical discomfort and missing extended periods of

class.

108.    Sarah is upset because her exclusion from the girls' restroom treats her

differently than every other girl at school and because it takes away from her opportunity

to learn at school for no good reason.  All she wants is to use the restroom that makes sense

for her to use because of whom she knows herself to be and because of how she appears to

others, just like every other student.

**V.    Oklahoma Public Charter Schools and the HICD Charter With Significant Assistance By, and Entwinement With, Defendants OSDE and OKCPS.**

109.    As required by the Oklahoma Charter School Act ("OCSA"), Okla. Stat. tit.

70, § 3-130 *et seq*., HICD and/or Families for Excellence in Education, Inc. filed an

application with Defendant OKCPS to operate ICMS as a public charter school.  ICMS has

been sponsored by OKCPS since its inception in approximately 2000.

110.    OKCPS renewed its charter sponsorship of ICMS in 2021.  ICMS is currently

operating under the charter contract between OKCPS and HICD with a term of July 1,

2021, through June 30, 2026 (hereinafter, "Charter Contract").

111.    The OCSA authorizes students like Plaintiff Sarah Stiles to attend a public

charter school.  Okla. Stat. tit. 70, § 3-140.  Sarah was admitted to ICMS after being

selected for admission pursuant to standards and procedures established by the OCSA.  The

A-0039

OCSA and the Charter Contract are intended to benefit students attending ICMS, like Sarah.

112.    The OCSA prohibits charter schools, including ICMS, from charging tuition or fees.  Okla. Stat. tit. 70, § 3-136(A)(10); *see also id*. at § 3-135(A)(9) (requiring contractual provision that charter schools must "be as equally free and open to all students as traditional public schools").  Therefore, students like Sarah are provided a free education at ICMS without tuition or fees.  Additionally, charter schools must be nonsectarian.  Okla. Stat. tit. 70, § 3-136(A)(2).

113.    The OCSA provides that charter schools are public schools within the public school system of Oklahoma. Okla. Stat. tit. 70, § 1-106; *see also* Charter Contract, Art. IV, 4.2 (stating that ICMS "shall be deemed a public school….").  Like other public schools, ICMS must comply with the Oklahoma Open Meeting Act and the Oklahoma Open Records Act.  *Id*., at 4.4.

114.    The OCSA provides that public funds be allocated to charter schools, including HICD, from funds otherwise allocated to the local school district in accordance with a statutorily-established formula.  Okla. Stat. tit. 70, §§ 3-142.  The allocation is non-discretionary.

115.    The OCSA, with limited exceptions not applicable here, prohibits discriminating against any student in admission on the basis of "ethnicity, national origin, gender, income level, disabling condition, proficiency in the English language, measures of achievement, aptitude, or athletic ability."  Okla. Stat. tit. 70, § 3-140(D).

116.    State law establishes standards regulating student assessment, proficiency, and promotion standards.  *See, e.g.*, Okla. Stat. tit. 70, § 11-103.6. State standards apply to HICD public charter schools, including ICMS.   Charter Contract, Art. V, 5.2 ("The School's educational program shall meet current Oklahoma Academic Standards, as set by state statutes or the Oklahoma State Department of Education.")  If HICD students fail to meet academic performance criteria established by the SBOE, Defendant HICD may lose the charter for ICMS.

117.    The SBOE issues a "School Report Card" for ICMS, as it does for all other Oklahoma public schools.

118.    The OCSA empowers HICD to discipline students, specifically mandating that it shall comply with student suspension requirements in Okla. Stat. tit. 70, § 24-101.3. Policies adopted by HICD governing student conduct must be consistent with the United States and Oklahoma Constitutions.

119.    The Charter Contract requires compliance with "all applicable provisions of local, state and federal law and regulation, specifically including but not limited to health and safety, civil rights… except to the extent such provisions are inapplicable to charter school…."  Charter Contract, Art. IV, 4.2; *see also* Okla. Stat. tit. 70, § 3-136(A)(1).  SB 615 is expressly applicable to charter schools, placing federal law in conflict with Oklahoma state law.

120.    OKCPS may terminate the Charter Contract during the term of the contract "for violations of the law."  Okla. Stat. tit. 70, § 3-137(C); OKCPS Policy I-22(12.1).  In addition, the Charter Contract, after process specified therein, provides for "[p]robation,

termination or nonrenewal" if OKCPS "has reason to believe [ICMS] has failed to meet or violated any provision of state or federal law."  Charter Contract, Art. VII, 7.1.

121.    OKCPS has entered into one or more lease agreements with Families for Excellence in Education, Inc. and/or HICD for operation of a charter school authorized by OKCPS, including but not limited to the real property used for the operation of ICMS.  In 2021, the charter school lease agreement applicable to real property used for the operation of ICMS was "amended to reflect the change in name" replacing Families for Excellence in Education, Inc. with HICD as the tenant.

122.    HICD is under the general direction and control of the SBOE and is financially dependent on OSDE support.

123.    At all relevant times, HICD's conduct causing the deprivation of Sarah Stiles' federal rights is also fairly attributable to the State.  The State's exercise of "coercive power" or "significant encouragement" of SB 615, the SBOE Emergency Rules, the OCSA and other state education laws, the Charter Contract, or any combination thereof, demonstrates a sufficiently close nexus between HICD and the State.  In addition, the provision of a free, uniform public education has been the traditional and exclusive function of the State of Oklahoma.  Defendant HICD is also pervasively entwined with OKCPS and/or OSDE.

124.    For purposes of claims under 42 U.S.C. § 1983, Defendant HICD deprived Plaintiff Sarah Stiles of equal protection, and HICD has acted and continues to act under color of state law.

A-0042

## **CLAIMS FOR RELIEF**

### **COUNT I**

**Denial of Equal Protection**
**U.S. Const. Amend. XIV, pursuant to 42 U.S.C. § 1983**

**(Against Defendants State Superintendent, Appointed Board Members and OAG, in their Official Capacities, as well as Defendants NPS, MPS, and HICD)**

125.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 124 as though fully set forth herein.

126.    Plaintiffs bring this Count against Defendants State Superintendent Joy Hofmeister, the Appointed Board Members (Bradley, Monies, Hernandez, Bobek, Smith, and Lepak), and Attorney General O'Connor in their respective official capacities.

127.    Plaintiff Andy Bridge brings this Count against Defendant Noble Public Schools.  Plaintiff Mark Miles brings this Count against Defendant Moore Public Schools. Plaintiff Sarah Stiles brings this Count against Defendants Harding Independent Charter District, Inc.

128.    Plaintiffs state this cause of action against all Defendants sued in this Count for purposes of seeking declaratory and injunctive relief and nominal damages (except that Plaintiffs do not seek damages from defendants sued in their official capacities), and challenge Defendants' respective policies under SB 615 of excluding students who are transgender from the multiple occupancy facilities at their schools that align with their gender, both facially and as applied to them.

129.    Each of the Defendants sued in this Count is a person acting under color of state law for purposes of 42 U.S.C. § 1983.

A-0043

130.    The Fourteenth Amendment to the U.S. Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

131.    Defendants' exclusion of students who are transgender, including Plaintiffs, from the multiple occupancy facilities aligned with their gender treats students who are transgender differently from similarly-situated students who happen to be cisgender. Under Defendants' discriminatory policies, students who are cisgender are able to use multiple occupancy facilities consistent with their gender, but students who are transgender are banned from multiple occupancy facilities consistent with their gender.

132.    **Discrimination based on Sex:**  Under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, discrimination based on sex is presumptively unconstitutional and subject to heightened scrutiny.

a.    Discrimination based on sex includes, but is not limited to, discrimination based on transgender status, gender nonconformity, sex stereotyping, gender expression, and gender transition.

b.    Defendants' exclusion of Plaintiffs from multiple occupancy facilities that align with their gender discriminates against them on the basis of sex.

c.    Defendants' respective policies discriminate against Plaintiffs based on their transgender status by treating them differently from similarly-situated students who happen to be cisgender.

d.    Defendants' policy also discriminates against Plaintiffs based on gender nonconformity and sex stereotyping by treating them differently from other students based

A-0044

on assumptions derived from Plaintiffs' sex assigned at birth and/or derived from Plaintiffs' genetics and/or physiology.

133. **Discrimination based on Transgender Status:** Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on transgender status is presumptively unconstitutional and subject to strict, or at least heightened, scrutiny.

a. People who are transgender have suffered a long history of extreme discrimination in Oklahoma and across the country and continue to suffer such discrimination to this day. This year alone, Oklahoma has passed three laws targeting people who are transgender. Across the country, more than 140 bills targeting transgender youth were introduced in 2022 alone and at least 30 laws targeting people who are transgender have been enacted by states in just the last two years. People who are transgender are a discrete and insular group and lack the political power to protect their rights through the legislative process. People who are transgender have largely been unable to secure explicit statutory protections against discrimination.

b. A person's gender identity or transgender status bears no relation to a person's ability to contribute to society.

c. Gender identity is generally fixed at an early age and highly resistant to change through intervention.

134. Defendants' discrimination against Plaintiffs is not narrowly tailored or substantially related to furthering any compelling or important government interest. Indeed, it is not even rationally related to any legitimate government interest. SB 615 and Defendants' respective policies do not promote the safety or privacy of students or any

A-0045

other valid governmental interest. They do, however, undermine the health, safety, and privacy of Plaintiffs, who are publicly marked as different and inferior each and every time they are denied access to facilities available to their peers who happen to be cisgender.

135.    SB 615 deprives Plaintiffs and students who are transgender like them of their rights to equal dignity, liberty, and autonomy by branding them as second-class citizens. Defendants thus have denied and continue to deny Plaintiffs equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment.

136.    As a result, Plaintiffs have been irreparably harmed by Defendants' unlawful conduct, including their enforcement of SB 615 and their respective policies (including discipline policies), practices, and actions and are therefore entitled to declaratory and injunctive relief, as well as nominal damages as specified.

### COUNT II

### Violation of Title IX
### 20 U.S.C. § 1681, *et seq.*

### (Against Defendants OSDE, NPS, MPS, HICD, and OKCPS)

137.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 124 as though fully set forth herein.

138.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

A-0046

139.    Plaintiffs bring this Count against Defendant Oklahoma State Department of Education, which is a recipient of Federal financial assistance and not immune "under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a [Title IX] violation." 42 U.S.C. § 2000d-7(a)(1).

140.    Plaintiff Andy Bridge brings this Count against Defendant Noble Public Schools. Plaintiff Mark Miles brings this Count against Defendant Moore Public Schools. Plaintiff Sarah Stiles brings this Count against Defendants Harding Independent Charter District, Inc. and Oklahoma City Public Schools.

141.    The LEA Defendants are recipients of Federal financial assistance.

142.    Under Title IX, discrimination "on the basis of sex" includes, but is not limited to, discrimination on the basis of sex stereotypes, gender identity, and transgender status. By definition, a person who is transgender is someone who lives and identifies with a sex different than the sex assigned to the person at birth.

143.    SB 615, the SBOE Emergency Rules, and each of the respective LEA Defendants' disciplinary policies, procedures, or practices discriminate against Plaintiffs and other Oklahoma public school and public charter school students who are transgender "on the basis of sex" by singling them out for different treatment from students who are cisgender, and by preventing Plaintiffs and other Oklahoma public school and public charter school students who are transgender from accessing the multiple occupancy facilities that align with their gender, in violation of their rights under Title IX.

144.    In addition, Title IX regulations, at § 106.31(b)(6), state in relevant part that "a recipient shall not … aid or perpetuate discrimination against any person by providing

38

A-0047

significant assistance to any agency, organization, or person which discriminates on the basis of sex in providing any aid, benefit or service to students."

145.    Independent from the discriminatory treatment allegations above, Defendant Oklahoma State Department of Education also is aiding and perpetuating discrimination against all Plaintiffs in violation of Title IX, by providing significant assistance to the LEA Defendants, including through, *inter alia*, a substantial relationship between OSDE and each of the LEA Defendants; state aid (or reduction thereof), including aid contingent upon adherence to and enforcement of SB 615; and, education programs or activities by the LEA Defendants that relate so closely to OSDE that they fairly should be considered education programs or activities of OSDE itself.

146.    Defendant Oklahoma City Public Schools is aiding and perpetuating discrimination against Plaintiff Stiles in violation of Title IX, by providing significant assistance to Defendant HICD, including though, *inter alia*, financial support (e.g., state aid and other payments), the provision of tangible resources (e.g., facilities and equipment), intangible benefits (e.g., charter sponsorship and recognition), and a regular and long-term relationship with HICD.

147.    Plaintiffs are, and will continue to be, irreparably harmed by OSDE and the LEA Defendants' unlawful conduct, including their enforcement of SB 615 and their respective policies (including discipline policies), practices, actions, and/or significant assistance, all in violation of Title IX.  Plaintiffs therefore are entitled to declaratory and injunctive relief, as well as nominal damages as specified.

A-0048

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in each of their favor and against Defendants, as follows:

A. Enter a declaratory judgment against the Defendants sued in Count I of this Complaint finding that the provisions of and enforcement by Defendants of Okla. Stat. tit. 70, § 1-125, Okla. Admin. Code 210:35-3-186(h), and LEA Defendants' respective discipline policies as discussed above violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

B. Enter a declaratory judgment against the Defendants sued in Count II of this Complaint finding that the provisions of and enforcement by Defendants of Okla. Stat. tit. 70, § 1-125, Okla. Admin. Code 210:35-3-186(h), and LEA Defendants' respective discipline policies as discussed above violate Plaintiffs' rights under Title IX;

C. Issue preliminary and permanent injunctive relief enjoining enforcement by all Defendants of Okla. Stat. tit. 70, § 1-125, Okla. Admin. Code 210:35-3-186(h), and any other law, custom, or policy (including LEA Defendants' respective discipline policies) that prohibit (i) Plaintiffs from using multiple occupancies restrooms and changing facilities located in public school and public charter school buildings that correspond with each Plaintiff's respective gender identity, rather than the gender assigned to them at birth; and (ii) any students, including those who are transgender, from using multiple occupancy facilities that are in accordance with their gender identity;

D. Issue preliminary and permanent injunctive relief requiring Defendants to permit (i) Plaintiffs to use multiple occupancies restrooms and changing facilities located in public

40

A-0049

school and public charter school buildings that correspond with each Plaintiff's respective gender identity, notwithstanding the provisions of Okla. Stat. tit. 70, § 1-125, Okla. Admin. Code 210:35-3-186(h), or any other law, custom or policy (including LEA Defendants' respective discipline policies) that provide otherwise; and (ii) any students, including those who are transgender, from using multiple occupancy facilities that are in accordance with their gender identity, notwithstanding the provisions of Okla. Stat. tit. 70, § 1-125, Okla. Admin. Code 210:35-3-186(h), or any other law, custom or policy (including LEA Defendants' respective discipline policies) that provide otherwise;

E. Award each Plaintiff, by and through their next friends, against the Defendants Oklahoma State Department of Education, Noble Public Schools, Moore Public Schools, Harding Independent Charter District, Inc., and Oklahoma City Public Schools nominal damages in the amount of $1.00 for violation of each Plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution and/or Title IX;

F. Award Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

G. Grant such other and further relief as the Court deems just and proper.

H. The declaratory and injunctive relief requested in this action is sought against each Defendant and their successors; against each Defendant's officers, board members, employees, and agents; and against all persons acting in active concert or participation with any Defendant or under any Defendant's supervision, direction, or control.

A-0050

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: September 6, 2022

Respectfully submitted,

/s/ Megan Lambert
Megan Lambert

Jon W. Davidson*
(admitted only in California)
Taylor Brown*
American Civil Liberties Union
Foundation
120 Broad Street, 18th Floor
New York, New York 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org
tbrown@aclu.org

Megan Lambert
Bar Number 33216
Johanna Roberts
Bar Number 33599
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Mlambert@acluok.org
Hroberts@acluok.org

Paul D. Castillo*
Nicholas Guillory*
Lambda Legal Defense and Education
Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, Texas 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org
nguillory@lambdalegal.org

Mitchell A. Kamin*
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
mkamin@cov.com

Isaac D. Chaput*
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

*Attorneys for Plaintiffs*

*Motion for admission *pro hac vice* forthcoming

42

A-0051

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ANDREW BRIDGE, et al.,                )
                                      )
              Plaintiffs,             )
-vs-                                  )
                                      )
OKLAHOMA STATE DEPARTMENT             )      Case No. CIV-22-787-JD
OF EDUCATION, et al.,                 )
                                      )
              Defendants.             )

## ANSWER OF OKLAHOMA CITY PUBLIC SCHOOLS

Defendant, Independent School District No. 89 of Oklahoma County, a/k/a Oklahoma City Public Schools ("OKCPS") submits the following answer to Plaintiffs' Complaint for Declaratory Judgment, Injunctive and Other Relief [Doc. 1].

1.    OKCPS admits the allegations contained in Paragraphs 8-11, 23, 109-110, and 119-121 of the Complaint.

2.     OKCPS has no knowledge of the allegations contained in Paragraphs 1-2, 12-14, 24-50, 52-53, 91-108, 111, 122, 124, 139, 140, and 145 of the Complaint and therefore denies same.

3.    OKCPS denies the allegations contained in Paragraphs 55, 58, 142, and 146-147 of the Complaint.

4.    Paragraphs 3-6, 51, 54, 57, 112-115, 130, 138, and 144 of the Complaint are statements of law to which a response is not necessary.

5.      Paragraph 7 of the Complaint is in the nature of a prayer for relief to which no response is required.

6.      OKCPS admits that the Oklahoma State Department of Education ("OSDE") is charged with determining the policies and directing the administration and supervision of the public school system of Oklahoma. OKCPS has no knowledge as to the remaining allegations contained in Paragraph 15 of the Complaint and therefore denies same.

7.      OKCPS admits that Joy Hofmeister is the State Superintendent of Public Instruction in Oklahoma. OKCPS has no knowledge as to the remaining allegations contained in Paragraph 16 of the Complaint and therefore denies same.

8.      OKCPS admits that "Appointed Board Members" are members of the State Board of Education ("SBOE") and have concurrent responsibility to adopt policies and operate the public school system of the state. OKCPS has no knowledge as to the remaining allegations contained in Paragraph 17 of the Complaint and therefore denies same.

9.      OKCPS admits that John O'Connor is the Attorney General for the State of Oklahoma. OKCPS has no knowledge as to the remaining allegations contained in Paragraph 18 of the Complaint and therefore denies same.

10.     As to Paragraphs 19, 20, and 22 of the Complaint, OKCPS admits that each school district acts by and through its governing board. OKCPS admits that HICD is chartered by OKCPS and operates Independence Charter Middle School ("ICMS). To the extent the allegations restate the law, a response is not necessary.

11.     As to Paragraph 21 of the Complaint, OKCPS admits that it is a corporate body that acts by and through its governing board which is the Oklahoma City Public Schools Board of Education ("OKCPS BOE"), and that it is the authorized public chartering agency that sponsors HICD. OKCPS admits that it receives federal financial assistance for students who are enrolled in OKCPS but denies that it receives federal financial assistance for Plaintiff Sarah Stiles.

12.     With respect to the allegations in Paragraph 56, OKCPS admits that Oklahoma schools are underfunded and that any decrease in state aid due to the punitive 5% budget cut for violations of SB615 would be unpalatable.

13.     OKCPS admits that Plaintiffs are required to attend school per state statute, but otherwise denies the allegations contained in Paragraph 59 of the Complaint.

14.     Paragraphs 60-90 contain allegations directed to Defendants other than OKCPS such that no response from OKCPS is necessary.

15.     As to the allegations in Paragraphs 116, 117, and 118, OKCPS admits that state law establishes standards of performance which are incorporated into the Charter Contract with HICD. Based on information and belief, OKCPS believes that SBOE issues a "School Report Card" for ICMS and that ICMS has the authority to discipline students including suspending students. OKCPS denies any remaining allegations in these paragraphs.

16.     As to Paragraph 123 of the Complaint, OKCPS admits that SB 615 involves the State's exercise of coercive power and that the provision of public education has been the

A-0054

traditional function of the State, in conjunction with local school districts. OKCPS denies the remaining allegations contained in Paragraph 123 of the Complaint. OCSA specifically provides that a charter school is liable for its own actions and imposes no liability on a charter school sponsor for the actions of a charter school.

17.     Paragraphs 125 and 137 of the Complaint are a reincorporation of facts to which a response is not necessary.

18.     As to Paragraphs 126 to 136 of the Complaint, there are no allegations against OKCPS such that a response is not necessary.

19.     OKCPS admits that it is a recipient of federal funds as alleged in Paragraph 141 of the Complaint. OKCPS denies that it receives any federal funding as a result of Sarah Stiles enrollment at ICMS and/or HICD. As to the other LEA Defendants, OKCPS has no knowledge as to the remaining allegations and therefore denies same.

20.     At this time, OKCPS has not adopted any disciplinary policies relative to SB 615 as alleged in Paragraph 143 of the Complaint. OKCPS has no knowledge as to the actions of the other LEA Defendants and therefore denies same.

21.     OKCPS generally denies Plaintiffs *ad damnum* clause seeking damages.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs fail to state a claim upon which relief can be granted.

2.     Plaintiffs fail to state the necessary elements for a temporary or permanent injunction.

A-0055

3.      OKCPS is not liable for the actions or policies of HICD and exercises no control over the day to day activities of ICMS and/or HICD. 70 O.S. §3-134(L).

4.      OKCPS is in an untenable position of losing significant state funding if it fails to comply with SB 615 of facing lawsuits for disciplining transgender students in accordance with SB 615 which may conflict with federal law.

5.      OKCPS at all times acted in good faith and without deliberate indifference.

**WHEREFORE,** having fully answered, OKCPS prays that Plaintiffs request for declaratory judgment be denied, that Plaintiffs take nothing by their Complaint, that their prayer for relief be denied, and that their claims be dismissed together with costs and attorneys fees.

S/Laura L. Holmes
Laura L. Holmes, OBA #14748
Laura L. Holmgren-Ganz, OBA #12342
Justin C. Cliburn, OBA #32223
The Center For Education Law, P.C.
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile:  (405) 528-5800
E-Mail: LHolmes@cfel.com
E-Mail: LGanz@cfel.com
E-Mail: JCliburn@cfel.com
Attorneys For OKCPS

**Certificate of Service**

I hereby certify that on October 5, 2022, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

S/Laura L. Holmes
Laura L. Holmes

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ANDREW BRIDGE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **-vs-** | ) | |
| | ) | |
| **OKLAHOMA STATE DEPARTMENT** | ) | **Case No. CIV-22-787-JD** |
| **OF EDUCATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ANSWER OF HARDING INDEPENDENCE CHARTER DISTRICT

Defendant, Harding Independence Charter District, Inc. ("HICD") submits the following Answer to Plaintiffs' Complaint for Declaratory Judgment, Injunctive and Other Relief [Doc. 1].

1.      As to the allegations in Paragraphs 1 and 14 of the Complaint, HICD admits that Plaintiff Sarah Stiles is a student enrolled at Independence Charter Middle School ("ICMS") which is operated by HICD and that she is a resident of Oklahoma, but has no knowledge as to the remaining allegations contained in Paragraphs 1 and 14 of the Complaint and therefore denies same.

2.      HICD admits the allegations contained in Paragraphs 8-11, 23, 91-92, 102, 109-110, and 119-122 of the Complaint.

3.      HICD has no knowledge of the allegations contained in Paragraphs 2, 12 -13, 24-50, 52-53, 93-96, 139, and 145 of the Complaint and therefore denies same.

A-0057

4.     HICD denies the allegations contained in Paragraphs 55, 58, 124, 128-129, 131-136, 142-143, and 146-147 of the Complaint.

5.     Paragraphs 3-6, 51, 54, 57, 112-115, 130, 138, and 144 of the Complaint are statements of law to which a response is not necessary.

6.     Paragraph 7 of the Complaint is in the nature of a prayer for relief to which no response is required.

7.     HICD admits that the Oklahoma State Department of Education ("OSDE") is charged with determining the policies and directing the administration and supervision of the public school system of Oklahoma. HICD has no knowledge as to the remaining allegations contained in Paragraph 15 of the Complaint and therefore denies same.

8.     HICD admits that Joy Hofmeister is the State Superintendent of Public Instruction in Oklahoma. HICD has no knowledge as to the remaining allegations contained in Paragraph 16 of the Complaint and therefore denies same.

9.     HICD admits that "Appointed Board Members" are members of the State Board of Education ("SBOE") and have concurrent responsibility to adopt policies and operate the public school system of the state. HICD has no knowledge as to the remaining allegations contained in Paragraph 17 of the Complaint and therefore denies same.

10.     HICD admits that John O'Connor is the Attorney General for the State of Oklahoma. HICD has no knowledge as to the remaining allegations contained in Paragraph 18 of the Complaint and therefore denies same.

11.     The allegations in Paragraphs 19 and 20 of the Complaint are not directed to HICD such that no response is necessary. To the extent the allegations restate the law, a response is not necessary.

12.     As to Paragraph 21 of the Complaint, HICD admits that OKCPS is a corporate body that acts by and through its governing board which is the Oklahoma City Public Schools Board of Education ("OKCPS BOE") and is the authorized public chartering agency that sponsors HICD. HICD is without knowledge as to the remaining allegations regarding OKCPS and thus denies those allegations.

13.     As to Paragraph 22 of the Complaint, HICD admits that it is a charter school sponsored by OKCPS, operates two schools, ICMS and Harding Charter Preparatory High School ("HDP"), directly receives state and federal financial assistance, and is subject to Title IX as a recipient of federal financial assistance.

14.     With respect to the allegations in Paragraph 56, HICD admits that Oklahoma schools are underfunded and that any decrease in state aid due to the punitive 5% budget cut for violations of SB615 would be unpalatable.

15.     HICD admits that Plaintiffs are required to attend school per state statute but otherwise denies the allegations contained in Paragraph 59 of the Complaint.

16.     Paragraphs 60-90 contain allegations directed to Defendants other than HICD such that no response from HICD is necessary.

17.     As to the allegations of Paragraphs 97 and 98, HICD admits that Sarah Stiles attended another school prior to August of 2022, that she claimed to have been bullied and harassed for being transgender at the previous school, and that she ultimately enrolled in ICMS for the 2022-2023 school year. HICD is without knowledge as to the other allegations in this paragraph and thus denies the other allegations.

18.     With respect to the allegations in Paragraph 99, HICD admits that Sue Stiles met with the principal and a counselor at ICMS, as well as HICD Superintendent Steven Stefanik, and they were supportive. HICD denies the remaining allegations contained in Paragraph 99 of the Complaint.

19.     As to the allegations in Paragraph 100, HICD admits that Sue Stiles contacted the principal at ICMS and raised the questions noted in the Complaint and denies the remaining allegations.

20.     As to the allegations in Paragraph 101, Superintendent Stefanik informed Sue Stiles that SB 615 had passed and offered a single occupancy restroom for Sarah Stiles to use. HICD admits that he also stated that the HICD staff and community would help Sarah feel safe outside of the provisions of SB 615. HICD denies the other allegations contained in Paragraph 101 of the Complaint.

21.     As to the allegations in Paragraph 103, HICD denies the allegations as stated. ICMS has three (3) single occupancy restrooms in the office area which were available for Sarah to utilize.

A-0060

22.     As to the allegations in Paragraphs 104 to 108, HICD is generally without knowledge about these allegations and therefore denies the same. HICD admits that ICMS has several multi-occupancy restrooms that Sarah would pass between the portion of the building where her classes are located and the office where the single-occupancy restrooms are located. HICD also notes that Sarah has not raised any concerns or complaints with the ICMS principal or counselor about the use of the single-occupancy restroom since school began.

23.     With respect to the allegations of Paragraph 111, HICD admits that Sarah was admitted to ICMS but denies the remaining allegations of this paragraph. To the extent the allegations restate the law, a response is not necessary.

24.     As to the allegations in Paragraphs 116, 117, and 118, HICD admits that state law establishes standards of performance which are incorporated into the Charter Contract with OKCPS. HICD admits that SBOE issues a "School Report Card" for ICMS and that it has the authority to discipline students including suspending students. HICD denies any remaining allegations in these paragraphs.

25.     As to Paragraph 123 of the Complaint, HICD admits that SB 615 involves the State's exercise of coercive power and that the provision of public education has been the traditional function of the State, in conjunction with local school districts. HICD denies the remaining allegations contained in Paragraph 123 of the Complaint. HICD is responsible for

A-0061

and makes its own daily decisions in the operations of its schools, particularly ICMS, and those decisions are not controlled by OKCPS.

26.     Paragraphs 125 and 137 of the Complaint are a reincorporation of facts to which a response is not necessary.

27.     As to Paragraphs 126 and 139 of the Complaint, there are no allegations against HICD to which a response is not necessary.

28.     HICD admits that Plaintiff Sarah Stiles attends HICD, but otherwise denies the allegations contained in Paragraphs 127 and 140 of the Complaint.

29.     As to the allegations in Paragraph 141, HICD admits that it is a recipient of federal financial assistance. HICD has no knowledge regarding whether the other LEA Defendants are recipients of federal financial assistance.

30.     HICD generally denies Plaintiffs *ad damnum* clause seeking damages.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs fail to state a claim upon which relief can be granted.

2.     Plaintiffs fail to state the necessary elements for a temporary or permanent injunction.

3.     HICD is in an untenable position of losing significant state funding if it fails to comply with SB 615 of facing lawsuits for disciplining transgender students in accordance with SB 615 which may conflict with federal law.

4.     HICD at all times acted in good faith and without deliberate indifference.

A-0062

**WHEREFORE,** having fully answered, HICD prays that Plaintiffs request for declaratory judgment be denied, that Plaintiffs take nothing by their Complaint, that their prayer for relief be denied, and that their claims be dismissed together with costs and attorneys fees.

S/Laura L. Holmes
Laura L. Holmes, OBA #14748
Laura L. Holmgren-Ganz, OBA #12342
Justin C. Cliburn, OBA #32223
The Center For Education Law, P.C.
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile: (405) 528-5800
E-Mail: LHolmes@cfel.com
E-Mail: LGanz@cfel.com
E-Mail: JCliburn@cfel.com
Attorneys For HICD

## Certificate of Service

I hereby certify that on October 5, 2022, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

S/Laura L. Holmes
Laura L. Holmes

A-0063

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **[1] ANDREW BRIDGE, by his next friends and parents, ELI BRIDGE and AYSHA PRATHER;** ) | |
| ) | |
| **[2] MARK MILES, by his next friends and parents, MAX MILES and MIA MILES; and** ) | **Civil Action No. CIV-22-787-JD** |
| ) | |
| **[3] SARAH STILES, by her next friends and parents, STEVE STILES and SUE STILES,** ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | |
| ) | |
| **[1] OKLAHOMA STATE DEPARTMENT OF EDUCATION;** ) | |
| ) | |
| **[2] JOY HOFFMEISTER, in her official capacity as the State Superintendent of Public Instruction;** ) | |
| ) | |
| **[3] CARLISHA BRADLEY,** ) | |
| **[4] JENNIFER MONIES,** ) | |
| **[5] ESTELA HERNANDEZ,** ) | |
| **[6] BRIAN BOBEK,** ) | |
| **[7] TRENT SMITH,** ) | |
| **[8] SARAH LEPAK, in their official capacities as members of the Oklahoma Board of Education;** ) | |
| ) | |
| **[9] JOHN O'CONNOR, in his official capacity as Oklahoma Attorney General;** ) | |
| ) | |
| **[10] INDEPENDENT SCHOOL DISTRICT NO. 40 OF CLEVELAND COUNTY, OKLAHOMA a/k/a NOBLE PUBLIC SCHOOLS;** ) | |
| ) | |

A-0064

| [11] INDEPENDENT SCHOOL DISTRICT | ) |
|---|---|
| NO. 2 OF CLEVELAND COUNTY, | ) |
| OKLAHOMA a/k/a MOORE PUBLIC | ) |
| SCHOOLS; | ) |
| [12] INDEPENDENT SCHOOL DISTRICT | ) |
| NO. 89 OF OKLAHOMA COUNTY, | ) |
| OKLAHOMA a/k/a OKLAHOMA CITY | ) |
| PUBLIC SCHOOLS; and | ) |
|  | ) |
| [13] HARDING INDEPENDENCE | ) |
| CHARTER DISTRICT, INC., | ) |
|  | ) |
| *Defendants.* | ) |

## ANSWER OF DEFENDANT NOBLE SCHOOL DISTRICT

Defendant Independent Noble School District No. 40 of Cleveland County, Oklahoma, commonly known as the Noble Public Schools ("Noble School District"), for its answer to the claims asserted against it in the Complaint by plaintiff Andrew Bridge, by his next friends and parents Eli Bridge and Aysha Prather (hereinafter "Bridge"), alleges and states as follows.

1.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 1 of the Complaint.

2.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 2 of the Complaint, except that it admits, it became the public policy of the State of Oklahoma, via the legislative enactment of Senate Bill 615 ("SB 615"), that to ensure privacy and safety, each public school and public charter school serving students in prekindergarten through twelfth grade in Oklahoma "shall require every multiple restroom or changing room" to be designated for

1

A-0065

exclusive use of the male and female sexes, respectively, said sex being the gender (male or female) reflected on the individual's original birth certificate.  This requirement applies to all individuals, students and non-students alike.

3.      In answer to paragraph 3 of the Complaint, the Noble School District admits that SB 615 (a) contains the language quoted by the plaintiffs, (b) was signed by Governor Stitt on May 25, 2022, and (c) went into effect immediately after being signed by the Governor as it contained an emergency clause. The Noble School District is without sufficient information to either admit or deny the remaining assertions therein.

4.      In answer to paragraph 4 of the Complaint, the Noble School District admits that SB 615 states: "The State Board of Education shall promulgate rules to implement the provisions of this section."

5.      In answer to paragraph 5 of the Complaint, the Noble School District admits that SB 615 states: "Each Noble School District board of education and public charter school governing board shall adopt a policy to provide disciplinary action for individuals who refuse to comply with the provisions of this section."

6.      The Noble School District denies the allegations contained in paragraph 6 of the Complaint except that the Noble School District admits that SB 615 states: "Upon a finding of noncompliance with the provisions of subsections B and C of this section by the State Board of Education, the noncompliant school district or public charter school shall receive a five percent (5%) decrease in state funding for the school district or public charter school for the fiscal year following the year of noncompliance."

A-0066

7.      The Noble School District asserts that no response is required to paragraph 7 of the Complaint as it does not assert any allegations against it but instead asserts a recitation of the claims asserted by the plaintiffs against all party defendants.

8.      The Noble School District denies the allegations contained in paragraph 8 of the Complaint except that it admits Andrew Bridge, by his next friends and parents Eli Bridge and Aysha Prather, assert claims against it that are premised on 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*.

9.      The Noble School District admits the allegations contained in paragraph 9 of the Complaint.

10.      In answer to paragraph 10 of the Complaint and without admitting plaintiff Bridge's right or entitlement to the relief sought against it, the Noble School District admits that the Court has discretionary authority to enter declaratory and injunctive relief against it only as to the claims asserted against it by plaintiff Bridge.

11.      In answer to paragraph 11 of the Complaint, the Noble School District admits that venue is proper in the United States District Court for the Western District of Oklahoma as to the claims asserted against the Noble School District by plaintiff Bridge.

12.      The Noble School District denies the allegations contained in paragraph 12 of the Complaint except that it admits:

        a.      Plaintiff Andrew Bridge was born with the identified sex of female;

        b.      Plaintiff Andrew Bridge is an individual transitioning from the sex of female to the sex of male;

3

A-0067

    c.    Plaintiff Andrew Bridge is a hard-working, high-achieving student, who enjoys reading, painting, and competing as a Varsity member of the Noble High School Academic Team.

    d.    Plaintiff Andrew Bridge used the boys' restroom during the 2021-2022 year until the spring when a teacher brought concerns to the school administration. Andrew Bridge's mother was notified by a Noble High School assistant principal at that time of concern, and Andrew Bridge was offered a key to a unisex restroom as well as access to the single unit restroom facilities in the administrative offices.

    e.    Pursuant to SB 615 and while on Noble School District grounds, plaintiff Andrew Bridge is required to use a multioccupancy bathroom or changing area that corresponds to the female sex or a single-occupancy restroom or changing area or risk a disciplinary consequence for failing to comply with these requirements; and

    f.    The claims of Andrew Bridge are properly brought by his parents and next friends, Eli Bridge and Aysha Prather.

13.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 13 of the Complaint.

14.    The Noble School District is without sufficient facts to admit or deny the allegations contained in paragraph 14 of the Complaint.

15.    The Noble School District denies the allegations contained in paragraph 15 of the Complaint except that it admits OKLA. STAT. tit. 70, § 1-105(A) states:

The State Department of Education is that department of the state government in which the agencies created or authorized by the Constitution and Legislature are placed and charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state. These agencies are the State Board of Education, the State Superintendent of Public Instruction and any divisions and positions as may be established by law, by the State Board of Education or by the State Superintendent of Public Instruction.

A-0068

16.     In answer to paragraph 16 of the Complaint, the Noble School District admits (a) defendant Joy Hofmeister is the duly elected Superintendent of State Instruction in the State of Oklahoma, and (b) Oklahoma law reads as it reads. The Noble School District is without sufficient information to admit or deny the remaining allegations set forth in paragraph 16.

17.     In answer to paragraph 17 of the Complaint, the Noble School District admits (a) defendants Bradley, Monies, Hernandez, Bobek, Smith, and Lepak are appointed members of the Oklahoma State Board of Education, and (b) Oklahoma law reads as it reads. The Noble School District is without sufficient information to admit or deny the remaining allegations set forth in paragraph 17.

18.     In answer to paragraph 18 of the Complaint, the Noble School District admits (a) defendant John O'Connor is the current Attorney General of the State of Oklahoma, and (b) Oklahoma law reads as it reads. The Noble School District is without sufficient information to admit or deny the remaining allegations set forth in paragraph 18.

19.     The Noble School District admits the allegations contained in paragraph 19 of the Complaint.

20.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 20 of the Complaint except that upon information and belief it admits that the Moore Public Schools is an independent school district under Oklahoma law and its legal name is Independent School District No. 2 of Cleveland County, Oklahoma.

21.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 21 of the Complaint except that upon information and belief it admits that the Oklahoma City Public Schools is an independent school district under Oklahoma law and its legal name is Independent School District No. 89 of Oklahoma County, Oklahoma.

22.    The Noble School District is without sufficient facts to admit or deny the allegations contained in paragraph 22 of the Complaint.

23.    The Noble School District admits the allegations contained in paragraph 23 of the Complaint.

24.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 24 of the Complaint.

25.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 25 of the Complaint.

26.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 26 of the Complaint.

27.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 27 of the Complaint.

28.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 28 of the Complaint.

29.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 29 of the Complaint.

A-0070

30.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 30 of the Complaint.

31.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 31 of the Complaint.

32.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 32 of the Complaint.

33.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 33 of the Complaint.

34.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 34 of the Complaint.

35.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 35 of the Complaint.

36.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 36 of the Complaint.

37.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 37 of the Complaint.

38.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 38 of the Complaint.

39.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 39 of the Complaint.

40.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 40 of the Complaint.

A-0071

41.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 41 of the Complaint.

42.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 42 of the Complaint.

43.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 43 of the Complaint.

44.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 44 of the Complaint.

45.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 45 of the Complaint.

46.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 46 of the Complaint.

47.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 47 of the Complaint.

48.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 48 of the Complaint.

49.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 49 of the Complaint.

50.     The Noble School District admits the allegations contained in paragraph 50 of the Complaint.

A-0072

51.     The Noble School District is without sufficient information to admit or

deny the allegations contained in paragraph 51 of the Complaint except that it admits that

SB 615 states:

> B.    To ensure privacy and safety, each public school and
> public charter school that serves students in
> prekindergarten through twelfth grades in this state shall
> require every multiple occupancy restroom or changing
> area designated as follows:
>
> 1.    For the exclusive use of the male sex; or
> 2.    For the exclusive use of the female sex.

52.     The Noble School District is without sufficient information to admit or

deny the allegations contained in paragraph 52 of the Complaint.

53.     The Noble School District is without sufficient information to admit or

deny the allegations contained in paragraph 53 of the Complaint.

54.     The Noble School District admits the allegations contained in paragraph 54

of the Complaint.

55.     The Noble School District denies the allegations contained in paragraph 55

of the Complaint.

56.     The Noble School District admits the allegations contained in paragraph 56

of the Complaint.

57.     The Noble School District is without sufficient information to admit or

deny the allegations contained in paragraph 57 of the Complaint except that it admits that

SB 615 states:

A-0073

> G.    A parent or legal guardian of a student enrolled in and
> physically attending a public school district or public
> charter school shall have a cause of action against the
> public school district or public charter school for
> noncompliance with the provisions of subsections B and C
> of this section.

58.    The Noble School District is without sufficient information to admit or

deny the allegations contained in paragraph 58 of the Complaint.

59.    The Noble School District is without sufficient information to admit or

deny the allegations contained in paragraph 59 of the Complaint except that it admits that

Oklahoma law has provisions regarding the mandatory attendance of school by students.

60.    The Noble School District denies the allegations contained in paragraph 60

of the Complaint except that it admits:

a.    Plaintiff Andrew Bridge was born with the identified sex of
female; and

b.    Plaintiff Andrew Bridge is an individual transitioning from
the sex of female to the sex of male.

61.    The Noble School District admits the allegations contained in paragraph 61

of the Complaint and further states that Andrew Bridge is registered in the Noble School

District's student information system as a female.

62.    The Noble School District is without sufficient information to admit or

deny the allegations contained in paragraph 62 of the Complaint, except that it admits

plaintiff Andrew Bridge (a) is an honor student who competes on the Varsity Academic

Bowl team, and (b) has expressed an interest to attend college outside of the State of

Oklahoma.

A-0074

63.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 63 of the Complaint, except that it admits plaintiff Andrew Bridge's birth certificate identifies his gender as female.

64.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 64 of the Complaint.

65.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 65 of the Complaint.

66.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 66 of the Complaint.

67.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 67 of the Complaint except it admits (a) teachers at Noble High School were informed of Andrew Bridge's desire to be address as "Andy" wherever and whenever possible, and (b) official school records reflect Andrew Bridge's gender as female, in accordance with his birth certificate.

68.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 68 of the Complaint except it admits (a) high school administration was aware of Andrew Bridge using the boys' restroom during the 2021-2022 school year as there was no Noble School District policy preventing this, and (b) Andrew Bridge's mother was requested to report to high school administration if any harassment or harmful impacts were made.

69.    The School District admits the allegations contained in paragraph 69 of the Complaint.

70.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 70 of the Complaint as it does not monitor the students that enter the restrooms.

71.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 71 of the Complaint except it admits (a) high school administration is following policy required by state law, and (b) no complaints have been reported to high school administration concerning plaintiff Bridge's personal feelings of being singled out or stigmatized.

72.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 72 of the Complaint.

73.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 73 of the Complaint.

74.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 74 of the Complaint.

75.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 75 of the Complaint.

76.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 76 of the Complaint.

77.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 77 of the Complaint.

78.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 78 of the Complaint.

79.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 79 of the Complaint.

80.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 80 of the Complaint.

81.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 81 of the Complaint.

82.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 82 of the Complaint.

83.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 83 of the Complaint.

84.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 84 of the Complaint.

85.      The Noble School District denies the allegations contained in paragraph 85 of the Complaint.

86.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 86 of the Complaint.

87.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 87 of the Complaint.

88.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 88 of the Complaint.

89.      The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 89 of the Complaint.

A-0077

90.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 90 of the Complaint.

91.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 91 of the Complaint.

92.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 92 of the Complaint.

93.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 93 of the Complaint.

94.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 94 of the Complaint.

95.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 95 of the Complaint.

96.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 96 of the Complaint.

97.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 97 of the Complaint.

98.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 98 of the Complaint.

99.     The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 99 of the Complaint.

100.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 100 of the Complaint.

A-0078

101.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 101 of the Complaint.

102.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 102 of the Complaint.

103.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 103 of the Complaint.

104.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 104 of the Complaint.

105.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 105 of the Complaint.

106.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 106 of the Complaint.

107.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 107 of the Complaint.

108.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 108 of the Complaint.

109.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 109 of the Complaint.

110.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 110 of the Complaint.

111.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 111 of the Complaint.

112.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 112 of the Complaint.

113.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 113 of the Complaint.

114.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 114 of the Complaint.

115.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 115 of the Complaint.

116.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 116 of the Complaint.

117.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 117 of the Complaint.

118.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 118 of the Complaint.

119.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 119 of the Complaint.

120.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 120 of the Complaint.

121.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 121 of the Complaint.

122.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 122 of the Complaint.

A-0080

123.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 123 of the Complaint.

124.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 124 of the Complaint.

125.    In answer to paragraph 125 of the Complaint, the Noble School District readopts and realleges its answers to paragraphs 1-124 of the Complaint as though again fully set forth.

126.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 126 of the Complaint.

127.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 127 of the Complaint except that it admits that plaintiff Bridge asserts claims against the Noble School District.

128.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 128 of the Complaint except that it admits the Complaint asserts what it asserts.

129.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 129 of the Complaint except that it admits that it is a "person" for the purposes of 42 U.S.C. § 1983.

130.    The Noble School District admits the allegations contained in paragraph 130 of the Complaint.

17

A-0081

131.    The Noble School District denies the allegations contained in paragraph 131 of the Complaint as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

132.    The Noble School District denies the allegations contained in paragraph 132 of the Complaint.

133.    The Noble School District denies the allegations contained in paragraph 133 of the Complaint.

134.    The Noble School District denies the allegations contained in paragraph 134 of the Complaint.

135.    The Noble School District denies the allegations contained in paragraph 135 of the Complaint.

136.    The Noble School District denies the allegations contained in paragraph 136 of the Complaint.

137.    In answer to paragraph 137 of the Complaint, the Noble School District readopts and realleges its answers to paragraphs 1-124 of the Complaint as though again fully set forth.

138.    The Noble School District admits the allegations contained in paragraph 138 of the Complaint.

139.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 139 of the Complaint except that it admits the Complaint asserts what it asserts.

140.    In answer to paragraph 140 of the Complaint, the Noble School District admits that plaintiff Bridge asserts a Title IX claim against it and the Complaint asserts what it asserts.

141.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 141 of the Complaint except that it admits that it receives federal financial assistance.

142.    The Noble School District denies the allegations contained in paragraph 142 of the Complaint.

143.    The Noble School District denies the allegations contained in paragraph 143 of the Complaint as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

144.     The Noble School District admits the allegations contained in paragraph 144 of the Complaint.

145.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 145 of the Complaint.

146.    The Noble School District is without sufficient information to admit or deny the allegations contained in paragraph 146 of the Complaint.

147.    The Noble School District denies the allegations contained in paragraph 147 of the Complaint as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

A-0083

148.    The Noble School District denies the allegations contained in paragraph 148 of the Complaint, Prayer for Relief, as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

149.    The Noble School District denies any and all allegations contained in the Complaint not heretofore fully addressed.

### Affirmative Defenses

150.    The Noble School District asserts that plaintiff Mark Miles, by his next friends and parents Max Miles and Mia Miles, has failed to state a claim upon which relief may be granted against it, both with respect to his Equal Protection claim and Title IX claim.

151.    The Noble School District asserts that plaintiff Sarah Stiles, by her next friends and parents Steve Stiles and Sue Stiles, has failed to state a claim upon which relief may be granted against it, both with respect to her Equal Protection claim and Title IX claim.

152.    The Noble School District asserts that plaintiff Bridge has failed to state a claim upon which relief may be granted against it, both with respect to his Equal Protection claim and Title IX claim.

153.    The Noble School District asserts that plaintiff Bridge has failed to demonstrate he has standing to bring this action against the Noble School District because the policy complained of in his Complaint, arising from SB 615, which is mandated by the State of Oklahoma, thereby severing a causal connection between his claimed injury and the acts or actions of the Noble School District.

A-0084

154.    The Noble School District asserts that the Title IX claim of plaintiff Bridge contains political questions insofar as plaintiff Bridge's Title IX claim asks the Court to interpret the language "on the basis of sex," a function that fits squarely within the textually demonstrable legislative authority that Congress delegated to the United States Department of Education (the "USDOE"). *See* 20 U.S.C. § 1682 (stating that the USDOE "is authorized and directed to effectuate the provisions [of Title IX] with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. No such rule, regulation, or order shall become effective unless and until approved by the President."). The USDOE is currently in the process of finalizing regulations related to Title IX, and judicial intervention into a process that requires inextricable policy determinations is therefore inappropriate.

155.    The Noble School District asserts that the Title IX claim of plaintiff Bridge amounts to a request for an advisory opinion, due to the temporary injunction—currently in effect, issued by the Eastern District of Tennessee—that prohibits enforcement of Title IX guidance interpreting the language "on the basis of sex" as including gender identity in Oklahoma. *See* Case No. 3:21-cv-308 (E.D. Tenn. July 15, 2022). Furthermore, and depending on the language of the finalized Title IX regulations, any declaratory judgment issued by this Court may not be instructive or applicable.

156.    The School District asserts that the Title IX claim of plaintiff Bridge is  not ripe for adjudication because he has not pleaded a disciplinary consequence stemming from the application of the policy imposed by SB 615.

157.    The Noble School District asserts that plaintiff Bridge is not entitled to equitable relief against the Noble School District because he is not substantially likely to succeed on the merits of his claims against the Noble School District, he has not been irreparably harmed by Noble School District's alleged discriminatory conduct, and the injury the Noble School District would suffer under the injunction outweighs his threatened injury. *See generally Belltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (setting forth requirements for preliminary injunctive relief).

158.    The Noble School District asserts that plaintiff Bridge will be unable to show actual success on the merits of his claims. *See BNSF Ry. Co. v City of Edmond*, 504 F. Supp. 3d 1249, 1262 (W.D. Okla. Nov. 30, 2020) (noting that '[t]he only measurable difference' between the standard required for entry of a preliminary injunction and that for permanent injunctive relief 'is that a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits.").

159.    The Noble School District asserts that plaintiff Bridge has failed to identify any currently recognized suspect class relevant to his Equal Protection claim. *See Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (stating "[t]o date, [the Tenth Circuit]

has not held that a transsexual plaintiff is a member of a protected suspect class for purposes of Equal Protection Claims.").

160.    The Noble School District asserts that plaintiff Bridge has failed to identify any fundamental right at issue in this case prohibiting the unequal treatment about which he complains. *See Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (stating "[u]nequal treatment that does not involve a fundamental right or suspect classification" is justified if it bears a rational relation to a legitimate government interest).

161.    The Noble School District asserts that plaintiff Bridge has failed to claim that the Noble School District had any intent to discriminate against him.

162.    The Noble School District asserts that plaintiff Bridge has failed to allege that the Noble School District has purposefully discriminated against him.

163.    The Noble School District asserts that plaintiff Bridge has failed to claim the Noble School District had any "ill will," "malice," or other similar bad faith in its alleged discrimination against him. *See Vigil v. S. Valley Acad.*, 247 F. App'x 982, 991 (10th Cir. 2007) (noting that when a plaintiff "does not claim to be a member of a protected class, [they] may bring an equal protection claim as a 'class of one' by proving [they were] 'singled out for persecution due to some animosity . . . wholly unrelated to any legitimate state activity.'").

164.    The Noble School District asserts that plaintiff Bridge has failed to identify individuals similarly situated to him "in every material respect." *See Harris v. Pacheco*, 829 F. App'x 331, 333 (10th Cir. 2020) (clarifying that "[t]o prevail on [a] class-of-one

23

A-0087

equal-protection claim, [a plaintiff] must show that others 'similarly situated in every material respect were treated differently.'").

165.    The Noble School District asserts that plaintiff Bridge has failed to allege "that others, 'similarly situated in every material respect,' were treated differently." *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

166.    The Noble School District asserts t the Noble School District's board of education was not the final decisionmaker of any challenged custom, policy, or practice asserted by plaintiff Bridge in this action. Rather, such final decisionmaker was the State of Oklahoma. As a result, the Noble School District's liability for plaintiff Bridge's equal protection claim brought under Section 1983 fails. *See Milligan-Hitt v. Bd. of Trs. of Sheridan Cty. Sch. Dist.*, 523 F.3d 1219, 1224 (10th Cir. 2008) (explaining that "the identity of those final policymakers whose conduct can create municipal liability is a "'question of state law.'").

167.    The Noble School District asserts that it had no discretion or meaningful choice as to whether to adopt the challenged policy mandated by SB 615.

168.    The School District asserts that no voluntary, non-state-coerced act of the Noble School District evidences deliberate indifference or a hostile environment on the part of the Noble School District.

169.    The Noble School District asserts that plaintiff Bridge has failed to identify any provision of Title IX, or its implementing regulations or guidance—in effect at the time of the filing of the Complaint—that prohibits the challenged policy.

170.    The Noble School District reserves the right to seek leave of court to assert additional affirmative defenses through discovery and trial.

**WHEREFORE**, having fully answered the Complaint of plaintiff Andrew Bridge, by his next friends and parents Eli Bridge and Aysha Prather, the Noble School District requests that judgment be entered in its favor and against all of the plaintiff Bridge's claims, that plaintiff Bridge take nothing by way of his claims, and that the Noble School District be awarded its reasonable costs and attorney's fees incurred in the defense of this action and such other relief as the Court deems just and proper.

Respectfully submitted,

*s/*Adam T. Heavin
Kent B. Rainey, OBA No. 14619
Alison A. Verret, OBA No. 20741
Adam T. Heaven, OBA No. 34966
**ROSENSTEIN, FIST & RINGOLD**
525 South Main, Suite 700
Tulsa, Oklahoma 74103
Telephone: (918) 585-9211
Facsimile: (918) 583-5617

*Attorneys for Independent School District No. 40 of Cleveland County, a/k/a Noble Public Schools*

A-0089

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 6, 2022 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*s/*Adam T. Heavin _____

Adam T. Heavin

A-0090

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **[1] ANDREW BRIDGE, by his next friends and parents, ELI BRIDGE and AYSHA PRATHER;** | ) ) ) ) | |
| **[2] MARK MILES, by his next friends and parents, MAX MILES and MIA MILES; and** | ) ) ) ) | **Civil Action No. CIV-22-787-JD** |
| **[3] SARAH STILES, by her next friends and parents, STEVE STILES and SUE STILES,** | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| **v.** | ) ) ) | |
| **[1] OKLAHOMA STATE DEPARTMENT OF EDUCATION;** | ) ) ) | |
| **[2] JOY HOFFMEISTER, in her official capacity as the State Superintendent of Public Instruction;** | ) ) ) ) | |
| **[3] CARLISHA BRADLEY, [4] JENNIFER MONIES, [5] ESTELA HERNANDEZ, [6] BRIAN BOBEK, [7] TRENT SMITH, [8] SARAH LEPAK, in their official capacities as members of the Oklahoma Board of Education;** | ) ) ) ) ) ) ) ) ) | |
| **[9] JOHN O'CONNOR, in his official capacity as Oklahoma Attorney General;** | ) ) ) | |
| **[10] INDEPENDENT SCHOOL DISTRICT NO. 40 OF CLEVELAND COUNTY, OKLAHOMA a/k/a NOBLE PUBLIC SCHOOLS;** | ) ) ) ) ) | |

0

A-0091

| | |
|---|---|
| **[11] INDEPENDENT SCHOOL DISTRICT NO. 2 OF CLEVELAND COUNTY, OKLAHOMA a/k/a MOORE PUBLIC SCHOOLS;** | ) ) ) ) ) |
| **[12] INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, OKLAHOMA a/k/a OKLAHOMA CITY PUBLIC SCHOOLS; and** | ) ) ) ) ) |
| **[13] HARDING INDEPENDENCE CHARTER DISTRICT, INC.,** | ) ) ) |
| *Defendants*. | ) |

## ANSWER OF DEFENDANT MOORE SCHOOL DISTRICT

Defendant Independent Moore School District No. 2 of Cleveland County, Oklahoma, commonly known as the Moore Public Schools ("Moore School District"), for its answer to the claims asserted against it in the Complaint by plaintiff Mike Miles, by his next friends and parents Max Miles and Mia Miles (hereinafter "Miles"), alleges and states as follows.

1.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 1 of the Complaint.

2.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 2 of the Complaint, except that it admits, it became the public policy of the State of Oklahoma, via the legislative enactment of Senate Bill 615 ("SB 615"), that to ensure privacy and safety, each public school and public charter school serving students in prekindergarten through twelfth grade in

1

A-0092

Oklahoma "shall require every multiple restroom or changing room" to be designated for

exclusive use of the male and female sexes, respectively, said sex being the gender (male

or female) reflected on the individual's original birth certificate. This requirement applies

to all individuals, students and non-students alike.

3.      In answer to paragraph 3 of the Complaint, the Moore School District

admits that SB 615 (a) contains the language quoted by the plaintiffs, (b) was signed by

Governor Stitt on May 25, 2022, and (c) went into effect immediately after being signed

by the Governor as it contained an emergency clause. The Moore School District is

without sufficient information to either admit or deny the remaining assertions therein.

4.      In answer to paragraph 4 of the Complaint, the Moore School District

admits that SB 615 states: "The State Board of Education shall promulgate rules to

implement the provisions of this section."

5.      In answer to paragraph 5 of the Complaint, the Moore School District

admits that SB 615 states:

> E.    Each school district board of education and public charter
> school governing board shall adopt a policy to provide
> disciplinary action for individuals who refuse to comply with
> the provisions of this section.

6.      The Moore School District denies the allegations contained in paragraph 6

of the Complaint except that the Moore School District admits that SB 615 states: "Upon

a finding of noncompliance with the provisions of subsections B and C of this section by

the State Board of Education, the noncompliant school district or public charter school

shall receive a five percent (5%) decrease in state funding for the school district or public

charter school for the fiscal year following the year of noncompliance."

7.    The Moore School District asserts that no response is required to paragraph

7 of the Complaint as it does not assert any allegations against it but instead asserts a

recitation of the claims asserted by the plaintiffs against all party defendants.

8.    The Moore School District denies the allegations contained in paragraph 8

of the Complaint except that it admits plaintiff Miles assert claims against it that are

premised on 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972 ("Title

IX"), 20 U.S.C. § 1681 *et seq*.

9.    The Moore School District admits the allegations contained in paragraph 9

of the Complaint.

10.    In answer to paragraph 10 of the Complaint and without admitting the

plaintiff Miles' right or entitlement to the relief sought against it, the Moore School

District admits that the Court has discretionary authority to enter declaratory and

injunctive relief against it only as to the claims asserted against it by plaintiff Miles.

11.    In answer to paragraph 11 of the Complaint, the Moore School District

admits that venue is proper in the United States District Court for the Western District of

Oklahoma as to the claims asserted against the Moore School District by plaintiff Miles.

12.    The Moore School District is without sufficient facts to admit or deny the

allegations contained in paragraph 12 of the Complaint.

13.    The Moore School District denies the allegations contained in paragraph 13

of the Complaint except that it admits:

3

A-0094

a.   Plaintiff Mark Miles was born with the identified sex of
     female;

b.   Plaintiff Mark Miles is an individual transitioning from the
     sex of female to the sex of male;

c.   Pursuant to SB 615 and while on Moore School District
     grounds, plaintiff Mark Miles is required to use a
     multioccupancy bathroom or changing area that corresponds
     to the female sex or a single-occupancy restroom or changing
     area or risk a disciplinary consequence for failing to comply
     with these requirements; and

d.   The claims of Mark Miles are properly brought by his parents
     and next friends, Max and Mia Miles.

14.    The Moore School District is without sufficient facts to admit or deny the

allegations contained in paragraph 14 of the Complaint.

15.    The Moore School District denies the allegations contained in paragraph 15

of the Complaint except that it admits OKLA. STAT. tit. 70, § 1-105(A) states:

> The State Department of Education is that department of the state
> government in which the agencies created or authorized by the
> Constitution and Legislature are placed and charged with the
> responsibility of determining the policies and directing the
> administration and supervision of the public school system of the
> state. These agencies are the State Board of Education, the
> State Superintendent of Public Instruction and any divisions
> and positions as may be established by law, by the State
> Board of Education or by the State Superintendent of Public
> Instruction.

16.    In answer to paragraph 16 of the Complaint, the Moore School District

admits (a) defendant Joy Hofmeister is the duly elected Superintendent of State

Instruction in the State of Oklahoma, and (b) Oklahoma law reads as it reads. The Moore

4

School District is without sufficient information to admit or deny the remaining

allegations set forth in paragraph 16.

17.    In answer to paragraph 17 of the Complaint, the Moore School District

admits (a) defendants Bradley, Monies, Hernandez, Bobek, Smith, and Lepak are

appointed members of the Oklahoma State Board of Education, and (b) Oklahoma law

reads as it reads. The Moore School District is without sufficient information to admit or

deny the remaining allegations set forth in paragraph 17.

18.    In answer to paragraph 18 of the Complaint, the Moore School District

admits (a) defendant John O'Connor is the current Attorney General of the State of

Oklahoma, and (b) Oklahoma law reads as it reads. The Moore School District is without

sufficient information to admit or deny the remaining allegations set forth in paragraph

18.

19.    The Moore School District is without sufficient information to admit or

deny the allegations contained in paragraph 19 of the Complaint except that upon

information and belief it admits that Noble Public Schools is an independent school

district under Oklahoma law and its legal name is Independent School District No. 40 of

Cleveland County, Oklahoma.

20.    The Moore School District admits the allegations contained in paragraph 20

of the Complaint.

21.    The Moore School District is without sufficient information to admit or

deny the allegations contained in paragraph 21 of the Complaint except that upon

information and belief it admits that Oklahoma City Public Schools is an independent

school district under Oklahoma law and its legal name is Independent School District No. 89 of Oklahoma County, Oklahoma.

22.    The Moore School District is without sufficient facts to admit or deny the allegations contained in paragraph 22 of the Complaint.

23.    The Moore School District admits the allegations contained in paragraph 23 of the Complaint.

24.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 24 of the Complaint.

25.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 25 of the Complaint.

26.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 26 of the Complaint.

27.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 27 of the Complaint.

28.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 28 of the Complaint.

29.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 29 of the Complaint.

30.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 30 of the Complaint.

31.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 31 of the Complaint.

32.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 32 of the Complaint.

33.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 33 of the Complaint.

34.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 34 of the Complaint.

35.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 35 of the Complaint.

36.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 36 of the Complaint.

37.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 37 of the Complaint.

38.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 38 of the Complaint.

39.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 39 of the Complaint.

40.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 40 of the Complaint.

41.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 41 of the Complaint.

42.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 42 of the Complaint.

A-0098

43.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 43 of the Complaint.

44.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 44 of the Complaint.

45.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 45 of the Complaint.

46.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 46 of the Complaint.

47.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 47 of the Complaint.

48.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 48 of the Complaint.

49.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 49 of the Complaint.

50.     The Moore School District admits the allegations contained in paragraph 50 of the Complaint.

51.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 51 of the Complaint except that it admits that SB 615 states:

> B.    To ensure privacy and safety, each public school and public charter school that serves students in prekindergarten through twelfth grades in this state shall require every multiple occupancy restroom or changing area designated as follows:

A-0099

      1.      For the exclusive use of the male sex; or
      2.      For the exclusive use of the female sex.

52.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 52 of the Complaint.

53.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 53 of the Complaint.

54.      The Moore School District admits the allegations contained in paragraph 54 of the Complaint.

55.      The Moore School District denies the allegations contained in paragraph 55 of the Complaint.

56.      The Moore School District admits the allegations contained in paragraph 56 of the Complaint.

57.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 57 of the Complaint except that it admits that SB 615 states:

      G.      A parent or legal guardian of a student enrolled in and physically attending a public school district or public charter school shall have a cause of action against the public school district or public charter school for noncompliance with the provisions of subsections B and C of this section.

58.      The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 58 of the Complaint.

9

A-0100

59.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 59 of the Complaint except that it admits that Oklahoma law has provisions regarding the mandatory attendance of school by students.

60.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 60 of the Complaint.

61.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 61 of the Complaint.

62.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 62 of the Complaint.

63.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 63 of the Complaint.

64.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 64 of the Complaint.

65.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 65 of the Complaint.

66.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 66 of the Complaint.

67.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 67 of the Complaint.

68.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 68 of the Complaint.

69.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 69 of the Complaint.

70.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 70 of the Complaint.

71.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 71 of the Complaint.

72.     The Moore School District denies the allegations contained in paragraph 72 of the Complaint except that it admits:

       a.     Plaintiff Mark Miles was born with the identified sex of female; and

       b.     Plaintiff Mark Miles is an individual transitioning from the sex of female to the sex of male.

73.     The Moore School District admits the allegations contained in paragraph 73 of the Complaint.

74.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 74 of the Complaint.

75.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 75 of the Complaint except that it admits that plaintiff Mark Miles's birth certificate originally provided to the Moore School District lists his gender as female and plaintiff Mark Miles has openly identified as a male since elementary school.

76.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 76 of the Complaint except that it admits that plaintiff Mark Miles' parents have been supportive of him.

77.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 77 of the Complaint except that it admits that plaintiff Mark Miles has openly identified as a male in appearance and by preferred name since elementary school.

78.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 78 of the Complaint except that it admits it has received documentation from plaintiff Miles with a diagnosis of gender dysphoria.

79.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 79 of the Complaint.

80.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 80 of the Complaint except it admits plaintiff Mark Miles used a separate restroom until he entered high school, at which time he began using the bathroom associated with the gender to which he identified.

81.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 81 of the Complaint except it admits that it received documentation of a legal name change and this is reflected in the records of the Moore School District.

82.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 82 of the Complaint.

12

A-0103

83.    The Moore School District admits the allegations contained in paragraph 83 of the Complaint except that it denies it had a policy "that students must use the restroom that that matches the sex they were assigned at birth."  Rather, this was the practice of the Moore Public Schools.

84.    The Moore School District admits the allegations contained in paragraph 84 of the Complaint.

85.    The Moore School District denies the allegations contained in paragraph 85 of the Complaint except that it admits:

    (a)    plaintiff Mark Miles' parents requested a copy of the Moore School District's Title IX Grievance Policy;

    (b)    plaintiff Mark Miles' parents filed a Title IX Grievance with the Moore School District; and

    (c)    On June 15, 2022, the Decisionmaker of the Title IX Grievance, J. Douglas Mann, determined:

        (i)    "To date, there has been no determination, by a court of competent jurisdiction to which both MPS [Moore Public Schools] and [plaintiff Miles] are subject, that MPS's requirement that [plaintiff Miles] not use the restroom of his gender identity violates Title IX."

        (ii)    "To date, there has been no determination, by a court of competent jurisdiction to which both MPS and [plaintiff Miles] are subject, which prevents MPS from requiring [plaintiff Miles] to use an SOR [Single Occupancy Restroom]. In fact, such alternative of an SOR is required by S.B. 615 to which MPS has agreed to continue to provide."

13

        (iii)    "As a result, all relief sought by [plaintiff Miles] and his parents under his Title IX grievance is denied."

86.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 86 of the Complaint except that it admits (a) during the pendency of the Title IX grievance filed by his parents, plaintiff Mark Miles was required to use a single occupancy bathroom at school, and (b) at some time plaintiff Mark Miles was withdrawn from in-person classes at the Moore School District by his parents and finished the 2021-2022 school year taking online classes.

87.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 87 of the Complaint.

88.    The Moore School District admits the allegations contained in paragraph 88 of the Complaint.

89.    The Moore School District admits the allegations contained in paragraph 89 of the Complaint.

90.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 90 of the Complaint except that it admits plaintiff Mark Miles began the 2022-2023 school year attending in-person at one of the Moore School District's high schools.

91.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 91 of the Complaint.

92.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 92 of the Complaint.

93.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 93 of the Complaint.

94.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 94 of the Complaint.

95.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 95 of the Complaint.

96.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 96 of the Complaint.

97.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 97 of the Complaint.

98.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 98 of the Complaint.

99.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 99 of the Complaint.

100.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 100 of the Complaint.

101.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 101 of the Complaint.

102.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 102 of the Complaint.

103.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 103 of the Complaint.

104.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 104 of the Complaint.

105.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 105 of the Complaint.

106.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 106 of the Complaint.

107.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 107 of the Complaint.

108.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 108 of the Complaint.

109.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 109 of the Complaint.

110.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 110 of the Complaint.

111.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 111 of the Complaint.

112.     The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 112 of the Complaint.

113.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 113 of the Complaint.

A-0107

114.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 114 of the Complaint.

115.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 115 of the Complaint.

116.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 116 of the Complaint.

117.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 117 of the Complaint.

118.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 118 of the Complaint.

119.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 119 of the Complaint.

120.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 120 of the Complaint.

121.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 121 of the Complaint.

122.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 122 of the Complaint.

123.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 123 of the Complaint.

124.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 124 of the Complaint.

A-0108

125.    In answer to paragraph 125 of the Complaint, the Moore School District readopts and realleges its answers to paragraphs 1-124 of the Complaint as though again fully set forth.

126.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 126 of the Complaint.

127.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 127 of the Complaint except that it admits that plaintiff Miles, by and through his parents, asserts claims against the Moore School District.

128.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 128 of the Complaint except that it admits the Complaint asserts what it asserts.

129.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 129 of the Complaint except that it admits that it is a "person" for the purposes of 42 U.S.C. § 1983.

130.    The Moore School District admits the allegations contained in paragraph 130 of the Complaint.

131.    The Moore School District denies the allegations contained in paragraph 131 of the Complaint as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

132.    The Moore School District denies the allegations contained in paragraph 132 of the Complaint.

18

133.    The Moore School District denies the allegations contained in paragraph 133 of the Complaint.

134.    The Moore School District denies the allegations contained in paragraph 134 of the Complaint.

135.    The Moore School District denies the allegations contained in paragraph 135 of the Complaint.

136.    The Moore School District denies the allegations contained in paragraph 136 of the Complaint.

137.    In answer to paragraph 137 of the Complaint, the Moore School District readopts and realleges its answers to paragraphs 1-124 of the Complaint as though again fully set forth.

138.    The Moore School District admits the allegations contained in paragraph 138 of the Complaint.

139.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 139 of the Complaint except that it admits the Complaint asserts what it asserts.

140.    In answer to paragraph 140 of the Complaint, the Moore School District admits that plaintiff Miles, by and through his parents, assert a Title IX claim against it and the Complaint asserts what it asserts.

141.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 141 of the Complaint except that it admits that it receives federal financial assistance.

19

A-0110

142.    The Moore School District denies the allegations contained in paragraph 142 of the Complaint.

143.    The Moore School District denies the allegations contained in paragraph 143 of the Complaint as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

144.    The Moore School District admits the allegations contained in paragraph 144 of the Complaint.

145.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 145 of the Complaint.

146.    The Moore School District is without sufficient information to admit or deny the allegations contained in paragraph 146 of the Complaint.

147.    The Moore School District denies the allegations contained in paragraph 147 of the Complaint as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

148.    The Moore School District denies the allegations contained in paragraph 148 of the Complaint, Prayer for Relief, as they relate to it and is without sufficient information to admit or deny the remaining allegations as to other party defendants.

149.    The Moore School District denies any and all allegations contained in the Complaint not heretofore fully addressed.

**Affirmative Defenses**

150.    The Moore School District asserts that plaintiff Andrew Bridge, by his next friends and parents Eli Bridge and Asha Prather, has failed to state a claim upon which

relief may be granted against it, both with respect to his Equal Protection claim and Title IX claim.

151.    The Moore School District asserts that plaintiff Sarah Stiles, by her next friends and parents Steve Stiles and Sue Stiles, has failed to state a claim upon which relief may be granted against it, both with respect to her Equal Protection claim and Title IX claim.

152.    The Moore School District asserts that plaintiff Miles has failed to state a claim upon which relief may be granted against it, both with respect to his Equal Protection claim and Title IX claim.

153.    The Moore School District asserts that plaintiff Miles has failed to demonstrate he has standing to bring this action against the Moore School District because the policy complained of in his Complaint, arising from SB 615, which is mandated by the State of Oklahoma, thereby severing a causal connection between his claimed injury and the acts or actions of the Moore School District.

154.    The Moore School District asserts that the Title IX claim of plaintiff Miles contains political questions insofar as plaintiff's Title IX claim asks the Court to interpret the language "on the basis of sex," a function that fits squarely within the textually demonstrable legislative authority that Congress delegated to the United States Department of Education (the "USDOE"). *See* 20 U.S.C. § 1682 (stating that the USDOE "is authorized and directed to effectuate the provisions [of Title IX] with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the

21

financial assistance in connection with which the action is taken. No such rule,

regulation, or order shall become effective unless and until approved by the President.").

The USDOE is currently in the process of finalizing regulations related to Title IX, and

judicial intervention into a process that requires inextricable policy determinations is

therefore inappropriate.

155.    The Moore School District asserts that the Title IX claim of plaintiff Miles

amounts to a request for an advisory opinion, due to the temporary injunction—currently

in effect, issued by the Eastern District of Tennessee—that prohibits enforcement of Title

IX guidance interpreting the language "on the basis of sex" as including gender identity

in Oklahoma. *See* Case No. 3:21-cv-308 (E.D. Tenn. July 15, 2022). Furthermore, and

depending on the language of the finalized Title IX regulations, declaratory judgment

issued by this Court may not be instructive or applicable.

156.    The School District asserts that the Title IX claim of plaintiff Miles is not

ripe for adjudication, because he has not pleaded disciplinary consequences stemming

from application of the policy imposed by SB 615.

157.    The Moore School District asserts that plaintiff Miles is not entitled to

equitable relief against it because he is not substantially likely to succeed on the merits of

his claims against the Moore School District, he has not been irreparably harmed by

Moore School District's alleged discriminatory conduct, and the threatened injury Moore

School District would suffer under the injunction outweighs his threatened injury. *See*

*generally Belltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070

(10th Cir. 2009) (setting forth requirements for preliminary injunctive relief).

158.    The Moore School District asserts that plaintiff Miles will be unable to show actual success on the merits of hislaims. *See BNSF Ry. Co. v City of Edmond*, 504 F. Supp. 3d 1249, 1262 (W.D. Okla. Nov. 30, 2020) (noting that '[t]he only measurable difference' between the standard required for entry of a preliminary injunction and that for permanent injunctive relief 'is that a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits.").

159.    The Moore School District asserts that plaintiff Miles has failed to identify any currently recognized suspect class relevant to his Equal Protection claim. *See Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (stating "[t]o date, [the Tenth Circuit] has not held that a transsexual plaintiff is a member of a protected suspect class for purposes of Equal Protection Claims.").

160.    The Moore School District asserts that plaintiff Miles has failed to identify any fundamental right at issue in this case prohibiting the unequal treatment about which he complains. *See Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (stating "[u]nequal treatment that does not involve a fundamental right or suspect classification" is justified if it bears a rational relation to a legitimate government interest).

161.    The Moore School District asserts that plaintiff Miles has failed to claim that the Moore School District had any intent to discriminate against him.

162.    The Moore School District asserts that plaintiff Miles has failed to allege that that the Moore School District purposefully discriminated against him.

A-0114

163.    The Moore School District asserts that plaintiff Miles has failed to claim that the Moore School District had any "ill will," "malice," or other similar bad faith in the Moore School District's alleged discrimination against him. *See Vigil v. S. Valley Acad.*, 247 F. App'x 982, 991 (10th Cir. 2007) (noting that when a plaintiff "does not claim to be a member of a protected class, [they] may bring an equal protection claim as a 'class of one' by proving [they were] 'singled out for persecution due to some animosity . . . wholly unrelated to any legitimate state activity.").

164.    The Moore School District asserts that plaintiff Miles has failed to identify individuals similarly situated to him "in every material respect." *See Harris v. Pacheco*, 829 F. App'x 331, 333 (10th Cir. 2020) (clarifying that "[t]o prevail on [a] class-of-one equal-protection claim, [a plaintiff] must show that others 'similarly situated in every material respect were treated differently.'").

165.    The Moore School District asserts that plaintiff Miles has failed to allege "that others, 'similarly situated in every material respect,' were treated differently." *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

166.    The Moore School District asserts that the Moore School District's board of education was not the final decisionmaker of any challenged custom, policy, or practice asserted by plaintiff Miles in this action. Rather, such final decisionmaker was the State of Oklahoma. As a result, the Moore School District's liability for plaintiff Miles' equal protection claim brought under Section 1983 fails. *See Milligan-Hitt v. Bd. of Trs. of Sheridan Cty. Sch. Dist.*, 523 F.3d 1219, 1224 (10th Cir. 2008) (explaining that "the

identity of those final policymakers whose conduct can create municipal liability is a "'question of state law.'").

167.    The Moore School District asserts it had no discretion or meaningful choice whether to adopt the challenged policy mandated by SB 615.

168.    The School District asserts that no voluntary, non-state-coerced act of the Moore School District evidences deliberate indifference or a hostile environment on the part of the Moore School District.

169.    The Moore School District asserts that plaintiff Miles has failed to identify any provision of Title IX, or its implementing regulations or guidance—in effect at the time of the filing of the Complaint—that prohibits the challenged policy.

170.    The Moore School District reserves the right to seek leave of court to assert additional affirmative defenses through discovery and trial.

**WHEREFORE**, having fully answered the Complaint of plaintiff Mark Miles, by his next friends and parents Max Miles and Mia Miles, the Moore School District requests that judgment be entered in its favor and against all of the plaintiff Miles' claims, that plaintiff Miles take nothing by way of his claims, and that the Moore School District be awarded its reasonable costs and attorney's fees incurred in the defense of this action and such other relief as the Court deems just and proper.

Respectfully submitted,


s/Kent B. Rainey
Kent B. Rainey, OBA No. 14619
Alison A. Verret, OBA No. 20741
Adam T. Heaven, OBA No. 34966
**ROSENSTEIN, FIST & RINGOLD**
525 South Main, Suite 700
Tulsa, Oklahoma 74103
Telephone: (918) 585-9211
Facsimile: (918) 583-5617

*Attorneys for Independent School District
No. 2 of Cleveland County, a/k/a Moore
Public Schools*


### CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.


s/Kent B. Rainey
Kent B. Rainey

26

A-0117

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANDREW BRIDGE, *et al.*,

*Plaintiffs,*

v.                                                No.  CIV-22-787-JD

OKLAHOMA STATE DEPARTMENT OF
EDUCATION, *et al.*

*Defendants.*

## STATE DEFENDANTS' MOTION TO DISMISS

Submitted by:

ZACH WEST, OBA #30768
  *Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov

AUDREY WEAVER, OBA #33258
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Audrey.Weaver@oag.ok.gov

**COUNSEL FOR STATE DEFENDANTS**               **October 26, 2022**

A-0118

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT AND AUTHORITIES .................................................................3

I.   STANDARD OF REVIEW .......................................................................3

II.  PLAINTIFFS CANNOT STATE A PLAUSIBLE CAUSE OF ACTION FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT. ...............................................................................4

     A.   *Plaintiffs cannot establish that S.B. 615 intentionally discriminates based on transgender status.* ................................5

     B.   *S.B. 615 is substantially related to an important government interest.* ...................................................................9

III. PLAINTIFFS CANNOT STATE A PLAUSIBLE CAUSE OF ACTION FOR VIOLATION OF TITLE IX .......................................................17

CONCLUSION ..................................................................................................25

A-0119

## TABLE OF AUTHORITIES

**Cases:**

*Adams v. Sch. Bd. of St. Johns Cnty.*,
   3 F.4th 1299 (11th Cir. 2021), *reh'g en banc granted*, 9 F.4th 1369 (11th Cir. 2021) .............. 25

*Ashaheed v. Currington*,
   7 F.4th 1236 (10th Cir. 2021) ................................................................................................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 3

*Ballard v. United States*,
   329 U.S. 187 (1946) ............................................................................................................... 10

*Barney v. Pulsipher*,
   143 F.3d 1299 (10th Cir. 1998) ............................................................................................... 4

*Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*,
   536 U.S. 822 (2002) ............................................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 3

*Bostock v. Clayton Cnty., Georgia*,
   140 S. Ct. 1731 (2020) .................................................................................................... *passim*

*Brannum v. Overton Cty. Sch. Bd.*,
   516 F.3d 489 (6th Cir. 2008) ................................................................................................. 23

*Cannon v. Univ. of Chi.*,
   441 U.S. 677 (1979) ............................................................................................................... 24

*Cape v. Tennessee Secondary Sch. Athletic Ass'n*,
   563 F.2d 793 (6th Cir. 1977), *abrogated in part on different grounds in Brentwood Acad. v.
   Tennessee Secondary Sch. Athletic Ass'n*, 190 F.3d 705 (6th Cir. 1999) ........................................ 8

*Carcaño v. McCrory*,
   203 F. Supp. 3d 615 (M.D.N.C. 2016) ................................................................................. 11

*Cardoza-Fonseca v. INS*,
   480 U.S. 421 (1987) ............................................................................................................... 19

*Caskey Baking Co. v. Virginia*,
   313 U.S. 117 (1941) ................................................................................................................. 9

A-0120

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
　　473 U.S. 432 (1985)...................................................................................4, 5

*Doe v. Luzerne Cty.*,
　　660 F.3d 169 (3d Cir. 2011) ...............................................................23

*Etsitty v. Utah Transit Auth.*,
　　502 F.3d 1215 (10th Cir. 2007), *overruled in part on different grounds in*
　　*Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019 (10th Cir. 2021) ............ 12, 13, 24

*F.S. Royster Guano Co. v. Virginia*,
　　253 U.S. 412 (1920)............................................................................9

*Frontiero v. Richardson*,
　　411 U.S. 677 (1973)...........................................................................10

*Grimm v. Gloucester Cnty. Sch. Bd.*,
　　972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020)................................ 21, 25

*Jackson v. Birmingham Bd. of Educ.*,
　　544 U.S. 167 (2005)...........................................................................17

*Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*,
　　97 F. Supp. 3d 657 (W.D. Pa. 2015) .......................................................... 11, 12, 13

*Lee v. Downs*,
　　641 F.2d 1117 (4th Cir. 1981)................................................................ 23, 24

*Meriwether v. Hartop*,
　　992 F.3d 492 (6th Cir. 2021)................................................................24

*Michael M. v. Superior Ct. of Sonoma Cnty.*,
　　450 U.S. 464 (1981)......................................................................8, 10, 11, 12

*N. Haven Bd. of Educ. v. Bell*,
　　456 U.S. 512 (1982)...........................................................................24

*Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*,
　　522 U.S. 479 (1998)...........................................................................19

*Neitzke v. Williams*,
　　490 U.S. 319 (1989)...........................................................................3, 4

*Nordlinger v. Hahn*,
　　505 U.S. 1 (1992)...............................................................................4, 7

A-0121

*Pelcha v. MW Bancorp, Inc.*,
   988 F.3d 318 (6th Cir. 2021) ................................................................24

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989) ............................................................................12

*Romer v. Evans*,
   517 U.S. 620 (1996) ..............................................................................9

*Safford Unified Sch. Dist. No. 1 v. Redding*,
   557 U.S. 364 (2009) ............................................................................14

*Sandifer v. United States Steel Corp.*,
   571 U.S. 220 (2014) ............................................................................20

*SECSYS, LLC v. Vigil*,
   666 F.3d 678 (10th Cir. 2012) ........................................................ 4, 5, 9

*Sepulveda v. Ramirez*,
   967 F.2d 1413 (9th Cir. 1992) ............................................................23

*Sommers v. Budget Mktg., Inc.*,
   667 F.2d 748 (8th Cir. 1982) ..............................................................24

*Taylor v. Roswell Indep. Sch. Dist.*,
   713 F.3d 25 (10th Cir. 2013) ................................................................4

*Teigen v. Renfrow*,
   511 F.3d 1072 (10th Cir. 2007) ............................................................4

*Tonkovich v. Kan. Bd. of Regents*,
   159 F.3d 504 (10th Cir. 1998) ..............................................................5

*Tuan Anh Nguyen v. I.N.S.*,
   533 U.S. 53 (2001) ........................................................................ 10, 11

*Tudor v. Se. Oklahoma State Univ.*,
   13 F.4th 1019 (10th Cir. 2021) ........................................................6, 12

*Ulane v. E. Airlines, Inc.*,
   742 F.2d 1081 (7th Cir. 1984) ..........................................................8, 21

*United States v. Virginia*,
   518 U.S. 515 (1996) ......................................................................*passim*

*Wengler v. Druggists Mut. Ins. Co.*,
   446 U.S. 142 (1980) ............................................................................11

A-0122

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017)................................................................ 24, 25

*Wyoming v. United States*,
    279 F.3d 1214 (10th Cir. 2002)....................................................................4

**Statutes:**

OKLA. STAT. tit. 70, § 1-125................................................................ 1, 2, 3

18 U.S.C. § 249 ..............................................................................................19

20 U.S.C. § 1092 ............................................................................................19

20 U.S.C. § 1681 ........................................................................ 17, 20, 24

20 U.S.C. § 1686 ............................................................................................18

34 U.S.C. § 30503 ..........................................................................................19

42 U.S.C. § 13925 ..........................................................................................19

42 U.S.C. § 2000e-2.......................................................................................24

**Rules:**

Fed. R. Civ. P. 12......................................................................................2, 3

**Regulations**:

34 C.F.R. § 106.33 ........................................................................ 17, 18, 23

34 C.F.R. § 106.37 ........................................................................................17

34 C.F.R. § 106.41 ........................................................................................17

**Legislative Materials:**

S.B. 615, 2022 O.S.L. 323..............................................................................2

39 Fed. Reg. 22,227 (June 20, 1974) ..........................................................22

39 Fed. Reg. 22,230 (June 20, 1974) ..........................................................22

40 Fed. Reg. 24,127 (June 4, 1975) ............................................................22

40 Fed. Reg. 24,141 (June 4, 1975) ............................................................22

A-0123

117 Cong. Rec. 30399 (1971) ...........................................................................23

117 Cong. Rec. 30406 (1971) ...........................................................................23

117 Cong. Rec. 39260 (1971) ...........................................................................22

117 Cong. Rec. 39263 (1971) ...........................................................................22

118 Cong. Rec. 5803 (1972) .............................................................................23

118 Cong. Rec. 5807 (1972) .............................................................................23

H.R. Conf. Rep. No. 92-1085 ...........................................................................22

**Secondary Authorities:**

Callie Marie Rennison, Ph.D., *Rape and Sexual Assault: Reporting to Police and Medical Attention, 1992-2000*, U.S. Dep't of Justice (Aug. 2002) .........................................16

Cambridge Radical Feminist Network, *There Is Nothing Progressive About Removing Women-Only Bathrooms*, Medium (Jan. 13, 2019) .................................... 14, 15

Joan Biskupic, *Ginsburg: Court Needs Another Woman*, USA Today (May 5, 2009) ....................14

Laura Wainman & Nicole DiAntoniao, *Teen boy sexually assaulted classmate in a school bathroom, judge says*, WUSA 9 (Oct. 26, 2021) ............................................16

Paul C. Sweeney, *Abuse Misuse & Abrogation of the Use of Legislative History: Title IX & Peer Sexual Harassment*, 66 UMKC L. Rev. 41 (1997) ...................................... 22, 23

Rochelle F. Hanson, et al., *Factors related to the reporting of childhood rape*, 23 Child Abuse and Neglect 559–569 (1999) .........................................................16

Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post (Apr. 7, 1975) ...................................................................................14

Ryan T. Anderson, Ph.D, and Melody Wood, *Gender Identity Policies in Schools: What Congress, the Courts, and the Trump Administration Should Do,* The Heritage Foundation Backgrounder (Mar. 23, 2017) ..............................................22

*Update: Homeless Man Suspected of Attacking Child in Gas Station Bathroom*, Oklahoma's News 4 (Sept. 16, 2013) ......................................................16

**Dictionaries:**

Merriam-Webster's Collegiate Dictionary 1140 (11th ed. 2011) ......................... 21, 22

A-0124

The American College Dictionary 1109 (1970) ..............................................21

The American Heritage Dictionary 1187 (1976) ...........................................21

The American Heritage Dictionary of the English Language 1187 (1980) ..............................21

The American Heritage Dictionary 1605 (5th ed. 2011) ............................................ 21, 22

The Oxford English Dictionary 578 (1961) ..................................................21

The Random House College Dictionary 1206 (rev. ed. 1973) ...................................21

The Random House College Dictionary 1206 (rev. ed. 1980) ...................................21

Webster's New Collegiate Dictionary 1054 (1979) .........................................21

Webster's New World College Dictionary 1331 (5th ed. 2014) ..................................21

A-0125

## <u>INTRODUCTION</u>

Biological sex is not a meaningless label. Real physiological differences between men and women exist, and they are enduring and immutable. These differences give rise to privacy interests in places where persons routinely disrobe, either partially or completely, such as restrooms and changing areas. Accordingly, our laws and courts have long permitted, with little fanfare, separating those places of heightened privacy into male and female spaces.

Until very recently, it was also undisputed that the word "sex" (and even "gender") meant *biological* sex. Plaintiffs' legal theories seek to turn this well-established precedent and history upside-down and supplant, entirely, objective sex with subjective gender identity. Plaintiffs apparently regard the real physiological differences between males and females as gender stereotypes, and they claim that laws (like Oklahoma's) that designate intimate spaces based on those real physiological differences between males and females are invidious discrimination in violation of the U.S. Constitution. Although Plaintiffs couch their claims as protecting transgender individuals, they really seek to prohibit Oklahoma from recognizing biological sex altogether. The Constitution in no way requires this radical policy preference.

The Oklahoma law Plaintiffs challenge, Senate Bill 615, simply and permissibly requires students to use the multiple occupancy restroom or changing area corresponding with their sex, as determined by objective physiological factors and as identified on the individual's original birth certificate. *See* OKLA. STAT. tit. 70, § 1-125. The statute also provides an accommodation: Students may opt-out and use a single-occupancy restroom or changing room, which must be provided. While S.B. 615 does *separate* based on biological sex, it does so in a way long recognized as permissible, and it otherwise treats all students the exact same

1

A-0126

regardless of transgender status or gender identity. All students may either use the restroom or changing area corresponding with their biological sex or may use a single-occupancy restroom accommodation.

Because S.B. 615 treats all similarly situated individuals the same, Plaintiffs cannot establish intentional discrimination in violation of the Equal Protection Clause. And even if they could, the law withstands intermediate scrutiny because its separation of the two sexes substantially relates to well-recognized, important government interests: protecting privacy and safety in intimate spaces. Plaintiffs' Equal Protection claims fail as a matter of law.

Plaintiffs' Title IX claim likewise cannot succeed as a matter of law. Title IX expressly allows schools to separate living spaces, restrooms, and similar facilities on the basis of sex. And Plaintiffs' argument that "sex" refers only to subjective gender identity is squarely foreclosed by Title IX's text, statutory context, legislative history, and original meaning.

Plaintiffs' far-sweeping legal claims and theories have no basis in law or precedent. Accordingly, no set of facts could establish a plausible claim for relief, and dismissal under Fed. R. Civ. P. 12(b)(6) is proper.

## BACKGROUND

On May 25, 2022, Senate Bill 615 was signed into law and codified as OKLA. STAT. tit. 70, § 1-125 ("S.B. 615"), after passing in the Oklahoma House and Senate with overwhelming support. *See* S.B. 615, 2022 O.S.L. 323.[1] "To ensure privacy and safety" in areas "where individuals may be in various stages of undress in the presence of other individuals[,]" S.B. 615 requires every public school and charter school serving students in pre-kindergarten

---

[1] Available at http://www.oklegislature.gov/BillInfo.aspx?Bill=SB615&Session=2200.

A-0127

through twelfth grades to designate "every multiple occupancy restroom or changing area"

"[f]or the exclusive use of the male sex; or . . . [f]or the exclusive use of the female sex." OKLA.

STAT. tit. 70, § 1-125(B). S.B. 615 defines "sex" as "the physical condition of being male or

female based on genetics and physiology, as identified on the individual's original birth

certificate . . . ." *Id.* at 1-125(A). Schools are also required to "provide a reasonable

accommodation to any individual who does not wish to comply with the" law, the

accommodation being defined as "access to a single-occupancy restroom or changing room."

*Id.* at 1-125(C).

## ARGUMENT AND AUTHORITIES

### I.   STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed.

R. Civ. P. 12(b)(6). While the Court must view a complaint in a light most favorable to the

nonmoving party, courts need not accept as true "labels and conclusions," legal

characterizations, unwarranted deductions of fact, or "naked assertions devoid of further

factual enhancement." *Iqbal*, 556 U.S. at 678-679 (citation omitted).

When a complaint presents a question of law and "it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations," the

complaint "must be dismissed, without regard to whether it is based on an outlandish legal

theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327

(1989) (citation omitted). Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of

A-0128

a dispositive issue of law . . . ." *Id.* at 326; *see also Wyoming v. United States*, 279 F.3d 1214, 1222 (10th Cir. 2002).

## II.    PLAINTIFFS CANNOT STATE A PLAUSIBLE CAUSE OF ACTION FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

The Equal Protection Clause of the Fourteenth Amendment generally directs that "all persons similarly situated should be treated alike[,]" but it "doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). "The Equal Protection Clause does not forbid classifications," nor does it create substantive rights. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 54 (10th Cir. 2013) (citation omitted); *see also Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007). Instead, it "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

To state a plausible claim under the Equal Protection Clause, a plaintiff must first establish "the challenged state action intentionally discriminates between groups of persons." *SECSYS*, 666 F.3d at 685; *see also Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (a plaintiff "must first make a threshold showing that [she was] treated differently from others who were similarly situated to [her]"). Once a plaintiff overcomes this threshold burden, he or she must establish the state's intentional discrimination is not "justified by reference to some upright government purpose." *SECSYS*, 666 F.3d at 686. Here, courts presume the relevant legislation is "valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex.*, 473 U.S. at 440. Only when a plaintiff

4

A-0129

establishes the intentional discrimination targets a fundamental right or a suspect classification does a heightened standard of review apply. *Id.*; *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

### A.    *Plaintiffs cannot establish that S.B. 615 intentionally discriminates based on transgender status.*

A plaintiff bringing an Equal Protection Clause claim bears the burden of first establishing the challenged law intentionally discriminates between similarly situated groups of individuals. *See SECSYS*, 666 F.3d at 685. "[W]hen the law under review is generally applicable to all persons, no presumption of intentional discrimination arises; proof is required." *Id.* After all, "many laws, perhaps most and often unavoidably, affect some groups of persons differently than others . . . ." *Id.*

Here, S.B. 615 separates multiple occupancy restroom facilities based on biological sex but does not otherwise account for or distinguish students based on gender identity, transgender status, or any other characteristic of any kind. To respect the safety and privacy of all students in areas where they may be partially undressed, S.B. 615 simply requires all students to use the restroom or changing facilities that correspond with their biological sex. Although S.B. 615 does separate restroom facilities by biological sex, it treats every *similarly situated* individual the same. It requires all biological males to use the boy's restroom (or a single-occupancy accommodation restroom). Conversely, all biological boys are excluded from using the girl's restroom, and thus all male classmates are treated the exact same regardless of their gender identity. The law likewise requires all biological females to use the girl's restroom (or a single-occupancy accommodation restroom). All biological girls are excluded from using the men's restroom, and thus all female classmates are treated the exact

A-0130

same regardless of their gender identity. This separation based on biological sex requires no knowledge or awareness of gender identity, and as a result, necessarily does not discriminate based on transgender status or gender identity.

Plaintiffs cannot escape the fact that transgender status or gender identity are not at issue by conflating subjective gender identity with sex—treating the two as entirely interchangeable. Such an argument is foreclosed by U.S. Supreme Court and Tenth Circuit authorities indicating that transgender status cannot exist separate and apart from biological sex. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1743 (2020) ("For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex."); *see also Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019, 1028 (10th Cir. 2021) ("In the wake of *Bostock*, it is now clear that transgender discrimination, like that complained of by Dr. Tudor, is discrimination 'because of sex' prohibited under Title VII.").

Put differently, *Bostock* taught that these adverse employment actions against transgender individuals in the Title VII context are cognizable because they are based on stereotypes about biological sex, which is sex-based discrimination. This holding is logically *impossible* if biological sex does not exist apart from gender identity. Indeed, the *Bostock* opinion was built on the foundational fact that "sex" at a baseline refers "to biological distinctions between male and female." *Bostock*, 140 S. Ct. at 1739. Only by recognizing that "homosexuality and transgender status **are distinct concepts from sex**[,]" could the Court find that the adverse employment action at issue there was discrimination *because of* sex in the Title VII context. *Id.* at 1746 (emphasis added).

6

A-0131

To give an example, discrimination against a transgender female for wearing a dress at work is only sex discrimination because the transgender female is a biological male, and the stereotype at issue is (presumably) that a male cannot wear a dress to work. There is no sex stereotype State Defendants are aware of that says a female cannot wear a dress to work, and the entire theory of stereotypes in *Bostock* relies on the view that biological sex is immutable regardless of gender identity. *See, e.g., id.* at 1749 ("Employer hires based on sexual stereotypes? Simple test. Employer sets pension contributions based on sex? Simple test. Employer fires men who do not behave in a sufficiently masculine way around the office? Simple test."). If biological sex doesn't exist, then nothing is simple in this area.

That is almost certainly why *Bostock* stressed it did "not purport to address bathrooms, locker rooms, or anything else of the kind." *Bostock*, 140 S. Ct. at 1753. Not only are there many textual differences between Title VII and laws like Title IX, *see infra* Section III, but adverse employment actions are vastly different from laws permissibly taking into account real physiological differences between the two sexes. Laws separating bathrooms, locker rooms, and similar facilities based on biological sex serve a compelling interest of protecting privacy interests in places where individuals may partially or completely undress. *See infra* Section II(B); *cf. Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."). Such privacy interests were not implicated in *Bostock*.

Plaintiffs simply assume that sex equates to gender identity or transgender status without engaging with this fundamental distinction found in binding case law. Put another way, Plaintiffs' claims hinge on setting aside a key presupposition of *Bostock* by denying the

7

A-0132

existence of objective biological sex. That is why their complaint spends so little time discussing the actual distinction being made here (male/female sex) and instead focuses on impacts to Plaintiffs where no classification or discrimination occurs (transgender status). *See, e.g.,* Doc. 1 at ¶¶ 131-133. Their claim fails as a matter of law unless this Court sets aside precedent and conflates objective biological sex with subjective gender identity. *Contra United States v. Virginia*, 518 U.S. 515, 533 (1996); *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981) (recognizing immutable physiological differences between the *two* sexes).

As many authorities have found, conflating sex with subjective gender identity would wreak havoc in the context of laws separating the two sexes based on real and significant physical differences. In the context of sex-based classifications in athletic activities, for example, the Sixth Circuit highlighted:

> it must be apparent that its basis is the distinct differences in physical characteristics and capabilities between the sexes . . . . It takes little imagination to realize that were play and competition not separated by sex, the great bulk of the females would quickly be eliminated from participation and denied any meaningful opportunity for athletic involvement.

*Cape v. Tennessee Secondary Sch. Athletic Ass'n*, 563 F.2d 793, 795 (6th Cir. 1977), *abrogated in part on different grounds in Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 190 F.3d 705, 706 (6th Cir. 1999). Other courts have likewise noted the distinction between discrimination based on sex and gender identity. *See, e.g., Ulane v. E. Airlines, Inc.*, 742 F.2d 1081, 1085 (7th Cir. 1984) ("[A] prohibition against discrimination based on an individual's sex is not synonymous with a prohibition against discrimination based on an individual's sexual identity disorder or discontent with the sex into which they were born.").

8

To the extent this separation based on biological sex, with equal treatment regardless of gender identity, disproportionately affects certain individuals, that alone is insufficient to establish intentional or purposeful discrimination. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). *Id.*[2] Consequently, Plaintiffs have not and cannot demonstrate S.B. 615 intentionally discriminates or treats similarly situated individuals differently. On this basis alone, Plaintiffs' Equal Protection claims should be dismissed.

**B.     *S.B. 615 is substantially related to an important government interest.***

The mere fact S.B. 615 separates multiple occupancy restroom facilities based on biological sex does not establish the law intentionally or invidiously discriminates in violation of the Equal Protection Clause. After all, not all classifications based on sex are constitutionally impermissible. *See, e.g., Caskey Baking Co. v. Virginia*, 313 U.S. 117, 121 (1941) ("Classification is not discrimination."); *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("Sex classifications may be used to compensate women for particular economic disabilities [they have] suffered, to promot[e] equal employment opportunity, to advance full development of the talent and capacities of our Nation's people." (citations omitted)); *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920) ("[T]he 'equal protection of the laws' required by the Fourteenth Amendment does not prevent the states from resorting to classification for the purposes of legislation. Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard.").

---

[2] Nor can this Court infer improper motive from the fact that S.B. 615 may negatively impact some transgender individuals. *See Romer v. Evans*, 517 U.S. 620, 631 (1996) ("[M]ost legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.").

9

A-0134

The invidious nature of some statutory classifications based on sex does not render sex classifications altogether disposable. The Equal Protection Clause does not aim to eliminate "dispositive realities" of sex, only assumptions, stereotypes, and over-broad generalizations about the tendencies or preferences of men or women. *Virginia*, 518 U.S. at 549-50; *see also Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981) ("Underlying these decisions is the principle that a legislature may not 'make overbroad generalizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class.'" (citation omitted)). Indeed, in *Virginia* the U.S. Supreme Court emphasized that "'[i]nherent differences' between men and women, we have come to appreciate, **remain cause for celebration** . . . ." *Virginia*, 518 U.S. at 533 (emphasis added).

The Supreme Court has long recognized that "sex, like race and national origin, is an immutable characteristic." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973). "Physical differences between men and women . . . are enduring: '[t]he two sexes are not fungible; a community made up exclusively of one [sex] is different from a community composed of both.'" *Virginia*, 518 U.S. at 533 (citing *Ballard v. United States*, 329 U.S. 187, 193 (1946)). As a result, the Supreme Court has explained: "[t]o fail to acknowledge even our most basic biological differences—such as the fact that a mother must be present at birth but the father need not be—risks making the guarantee of equal protection superficial, and so disserving it." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001). In other words, the distinction between men and women is a real one, and "the principle of equal protection does not forbid Congress to address" problems in a way specific to each sex. *Id.*

10

A-0135

Accordingly, the Supreme Court has declined to adopt strict scrutiny to evaluate sex classifications and has not hesitated to uphold sex classifications "used to compensate women 'for particular economic disabilities [they have] suffered,' . . . to 'promot[e] equal employment opportunity,' . . . to advance full development of the talent and capacities of our Nation's people." *Id.* (internal citations omitted); *see also Michael M.*, 450 U.S. at 469 ("[T]his Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances.").

In other words, sex-based classifications are subject, at most, to intermediate scrutiny. Under this standard, a law or government action must be upheld if it "serve[s] important governmental objectives and . . . the discriminatory means employed must be substantially related to the achievement of those objectives." *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980); *see also Virginia*, 518 U.S. at 531 ("Parties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action."). Under intermediate scrutiny, unlike strict scrutiny, the state need not prove the law "is narrowly tailored to achieve a compelling state interest . . . ."*Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021) (citation omitted).

Here, S.B. 615 withstands intermediate scrutiny, as requiring students to use the restroom and locker room associated with their biological sex is substantially related to a sufficiently important government interest: protecting the privacy of students to disrobe and shower outside of the presence of the opposite sex. This compelling government interest has been repeatedly upheld and recognized by courts. *See, e.g.*, *Carcaño v. McCrory*, 203 F. Supp. 3d 615, 641 (M.D.N.C. 2016) (collecting cases); *Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher*

11

A-0136

*Educ.*, 97 F. Supp. 3d 657, 669-670 (W.D. Pa. 2015); *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 478 (1981) (Stewart, J., concurring) ("[W]e have recognized that in certain narrow circumstances men and women are not similarly situated; in these circumstances a gender classification based on clear differences between the sexes is not invidious, and a legislative classification realistically based upon those differences is not unconstitutional.").

Importantly, the Tenth Circuit has held that requiring "employees use restrooms matching their biological sex does not expose biological males to disadvantageous terms and does not discriminate against employees who fail to conform to gender stereotypes . . . ." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007). To be sure, the Tenth Circuit overruled much of *Etsitty* in *Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019 (10th Cir. 2021)*,* but it only did so "to the extent that [*Etsitty*] conflicts with *Bostock*." *Id.* at 1028. And the *Bostock* majority expressly stated that "we do not purport to address bathrooms, locker rooms, or anything else of the kind." *Bostock*, 140 S. Ct. at 1753. Thus, this specific portion of *Etsitty* is still good law, as it does not conflict with *Bostock*. Moreover, as one court succinctly explained in a similar case: "separating students by sex based on biological considerations—which involves the physical differences between men and women—for restroom and locker room use simply does not violate the Equal Protection Clause." *Johnston,*97 F. Supp. 3d at 670.

These authorities confirm that the physiological differences between the two sexes are real and not rooted in stereotypical assumptions. *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (addressing invidious sex stereotyping in the context of Title VII). These biological differences give rise to legitimate privacy interests justifying the exclusion of the opposite sex from certain facilities like restrooms. *See Etsitty*, 502 F.3d at 1224 ("However far *Price Waterhouse*

12

reaches, this court cannot conclude it requires employers to allow biological males to use women's restrooms. Use of a restroom designated for the opposite sex does not constitute a mere failure to conform to sex stereotypes."). A law acknowledging these interests is likewise not rooted in stereotypical assumptions, nor hypothesized or pretextual justifications. *Cf. Virginia*, 518 U.S. at 533 (requiring that a justification be "genuine, not hypothesized or invented *post hoc* in response to litigation").

The fact that transgender individuals may be affected by the exclusion of the opposite sex in facilities like restrooms, or may not prefer that policy choice, is insufficient to render the choice unconstitutional under the Equal Protection Clause. In a similar equal protection challenge in the Western District of Pennsylvania, the court explained:

> [r]egardless of how gender and gender identity are defined, the law recognizes certain distinctions between male and female on the basis of birth sex. Thus, even though Plaintiff is a transgender male, his sex is female, a fact alleged in Plaintiff's complaint and a fact that has legal significance in light of Plaintiff's discrimination claim.

*Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 671 (W.D. Pa. 2015).

By continuing the long-standing practice of separating multiple occupancy restrooms and similar facilities based on biological sex, S.B. 615 furthers the important state interest of protecting students' safety and privacy rights. As Plaintiffs recognize, school attendance is compelled by law. *See* Doc. 1 at ¶ 59. The State is entrusted to provide *all* students with a safe and healthy learning environment in public schools. *See Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830 (2002) (describing "in a public school environment[,] ... the State is responsible for maintaining discipline, health, and safety."). This includes a responsibility to its students to ensure their privacy while engaging in personal

13

A-0138

bathroom functions, disrobing, dressing, and showering outside of the presence of members of the opposite sex. This interest involves not just the State, but also the parents and the students who share similar interests. And these interests are particularly compelling in a school environment where children are still developing, physically and emotionally. *See*, e.g., *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 375 (2009) ("[A]dolescent vulnerability intensifies the patent intrusiveness of the exposure.").

Although these interests extend to both sexes, women are likely the predominant beneficiary and would suffer particular harm under Plaintiffs' Equal Protection theory. As Justice Ginsburg informally observed in an incident involving a school official strip-search of a teenage girl: "Maybe a 13-year-old boy in a locker room doesn't have that same feeling about his body. But a girl who's just the age where she is developing, whether she has developed a lot ... or ... has not developed at all (might be) embarrassed about that." Joan Biskupic, *Ginsburg: Court Needs Another Woman*, USA Today (May 5, 2009).[3] As a result, "[s]eparate places to disrobe, sleep, [and] perform personal bodily functions are permitted, in some situations required, by regard for individual privacy." Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post at A21 (Apr. 7, 1975).

If biological males can have unrestricted access to female-only restrooms, changing areas, locker-rooms, dormitories, and showers, based solely on how they identify or claim to identify, female students would suffer mental, emotional, and developmental harm. "[L]eaving aside the risk of assault, sex-segregated bathrooms give women the peace of mind of knowing

---

[3]  Available  at  https://usatoday30.usatoday.com/news/washington/judicial/2009-05-05-ruthginsburg_N.htm.

A-0139

they can use the bathroom, attend to their menstrual needs and to small children, with a degree of privacy and dignity that would otherwise not exist." Cambridge Radical Feminist Network, *There Is Nothing Progressive About Removing Women-Only Bathrooms*, Medium (Jan. 13, 2019). And the loss of that private space will fall most heavily on "those individuals who — due to having a history of sexual assault, or for religious reasons — do not feel comfortable using a shared intimate space with male strangers." *Id.*

Plaintiffs attempt to downplay this interest by claiming that "[s]tudents who are transgender pose no risks to the privacy or safety of others students . . . ." Doc. 1 at ¶ 52. But Plaintiffs misunderstand that the mere presence of a member of the opposite sex in a restroom or changing area is a violation of privacy, regardless of whether any incident occurs. And Plaintiffs' assurances that *they* pose no safety risk to others does not moot the legitimate safety interest justifying separate facilities. Moreover, Plaintiffs do not explain in any way how a school is supposed to distinguish between a person identifying in good faith as transgender and a person merely claiming a different identity to access otherwise off-limits facilities and potentially prey on the vulnerable. There is no apparent way to discern this objectively; rather, schools are apparently, under this theory, supposed to take people's word for it. That is entirely insufficient when it comes to the responsibility schools have to protect the privacy and safety of their students.

Laws and policies like S.B. 615 have long provided sex-separated restrooms, locker rooms, and dormitories as a means to protect *all* individuals in their most vulnerable moments and when partially or completely undressed. What makes facilities like restrooms private also makes them susceptible to abuse by bad actors. The examples of abuse and assault, attempted

A-0140

or actual, occurring in restrooms and similar facilities are not hypothetical. Take, for example, the 2013 assault of an eight-year-old Oklahoma girl who was locked inside a restroom by "a mostly naked man" who "got between her and the door[,] … wrapped a … coat around her neck[,] and began choking her." *Update: Homeless Man Suspected of Attacking Child in Gas Station Bathroom*, Oklahoma's News 4 (Sept. 16, 2013).[4] Or last year's nationally recognized story of a "15-year-old [Virginia] boy" who "sexually assault[ed] a female classmate in a school bathroom . . . ." Laura Wainman & Nicole DiAntoniao, *Teen boy sexually assaulted classmate in a school bathroom, judge says*, WUSA 9 (Oct. 26, 2021).[5] Neither the State nor Oklahoma women need wait for further assaults to materialize before adopting laws and policies that substantially relate to this compelling safety interest.[6]

What these incidents have in common is a male perpetrator exploiting a bathroom's privacy to prey on vulnerable female victims. Plainly, these safety interests are not pretextual; and laws that exclude the opposite sex from restrooms and similar facilities are substantially related to this compelling interest. To be clear: the argument is not that transgender individuals are more likely to be bad actors, but that others could exploit the seemingly standardless concept of "gender identity" in order to gain access to vulnerable persons.

---

[4] Available at https://kfor.com/news/police-okc-homeless-man-attacks-8-year-old-girl-in-bathroom/.

[5] Available at https://www.wusa9.com/article/news/legal/teen-found-guilty-loudoun-county-bathroom-sexual-assault/65-e383c241-afd1-4539-8fa3-4ccb01562ea9.

[6] These safety interests are again heightened by the fact S.B. 615 applies in a school environment where children are still developing. Studies show that sexual assault remains one of the most underreported crimes, particularly in child victims with only 12% of child sexual abuse being reported to authorities. *See* Rochelle F. Hanson, et al., *Factors related to the reporting of childhood rape*, 23 Child Abuse and Neglect 559–569 (1999); *see also* Callie Marie Rennison, Ph.D., *Rape and Sexual Assault: Reporting to Police and Medical Attention, 1992-2000*, U.S. Dep't of Justice (Aug. 2002) available at https://bjs.ojp.gov/content/pub/pdf/rsarp00.pdf.

A-0141

Accordingly, there is not only a rational basis, but a substantially related basis for the State to require students to use the multiple occupancy restroom and changing room associated with their biological sex (or a single-occupancy accommodation).

III.    **PLAINTIFFS CANNOT STATE A PLAUSIBLE CAUSE OF ACTION FOR VIOLATION OF TITLE IX.**

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Notwithstanding this broad pronouncement, Title IX then clarifies that "nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, *from maintaining separate living facilities for the different sexes*." *Id.* § 1686 (emphasis added). As the U.S. Supreme Court summarized: "Title IX is a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that broad prohibition." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005).

The narrow exceptions continue in regulations promulgated decades ago that, among other things,[7] expressly allow schools to provide "separate toilet, locker room, and shower facilities on the basis of sex," so long as the facilities "provided for students of one sex shall be comparable to such facilities provided for students of the other sex," 34 C.F.R. § 106.33 (May 9, 1980).

---

[7] Title IX regulations also allow covered programs to "operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport," 34 C.F.R. § 106.41(b), and even *requires* universities to consider sex in allocating athletic scholarships, *id.* at § 106.37(c).

A-0142

In 2021, the federal government attempted to adopt a new interpretation of 34 C.F.R. § 106.33 to include concepts such as gender identity. In a challenge brought by the State of Oklahoma and others, the U.S. District Court for the Eastern District of Tennessee enjoined the federal government from implementing its interpretation. *See Tennessee v. U.S. Dep't of Ed.*, E.D. Tenn. Case No. 3:21-cv-308, Doc. 86 (July 15, 2022). The court explained that the federal government's new interpretation improperly "create[d] rights for students and obligations for regulated entities not to discriminate based on sexual orientation or gender identity that appear nowhere in *Bostock*, Title IX, or its implementing regulations." *Id.* at 41.

By suggesting that this Court can simply read "gender identity" into Title IX and its regulations, Plaintiffs seek to have this Court promulgate by fiat a federal regulatory change, without the federal government present, that another Court has already rejected with both Oklahoma and the federal government as parties.

Because S.B. 615 separates restroom facilities on the basis of biological sex, Plaintiffs' Title IX claims can only succeed if the term "sex" in Title IX eschews biological sex and instead means only subjective gender identity. *Cf.* Doc. 1 at ¶ 24 ("Therefore, someone's sex or gender is properly understood to be the same as their gender identity."). Such an interpretation is foreclosed by the plain text and original understanding of Title IX.

Out of the gate, Plaintiffs' Title IX claim face a significant textual hurdle: the congressional decision to use the term "sex" and not "gender identity[,]" as Plaintiffs apparently prefer. To avoid this hurdle, Plaintiffs attempt to rewrite the plain and ordinary understanding of "sex" as one and the same as "gender identity," suggesting that "someone's

18

A-0143

sex or gender is properly understood to be the same as their gender identity." Doc. 1 at ¶ 24. Plaintiffs' interpretation of "sex" as "gender identity" finds no textual support in Title IX.

When Congress wants to protect against gender-identity discrimination, it does so explicitly. *See* 18 U.S.C. § 249(a)(2) (defining hate crimes as causing willful bodily injury to another on the basis of "actual or perceived . . . gender, sexual orientation, [or] gender identity . . . ."); 20 U.S.C. § 1092(f)(1)(F)(ii) (requiring the collection of data related to hate crimes "because of the actual or perceived . . gender, . . . sexual orientation, [or] gender identity . . . ."); 34 U.S.C. § 30503(a)(1)(C) (providing financial assistance in the investigation or prosecution of any crime motivated by "actual or perceived . . . gender, sexual orientation, [or] gender identity . . . ."). The Violence Against Women Act ("VAWA"), for example, prohibits funded programs or activities from discriminating based on either "sex" or "gender identity." 42 U.S.C. § 13925(b)(13)(A). "Sex" and "gender identity" must have meant distinct things to the Congress that enacted VAWA, for equating sex with gender identity would create an obvious surplusage. *See, e.g., Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501 (1998) (rejecting agency interpretation for making statutory language surplusage). The subsequent use of the term "gender identity" in some contexts shows that Congress means something different when it fails to use that term — as it did in Title IX. *See, e.g., Cardoza-Fonseca v. INS*, 480 U.S. 421, 432 (1987) ("The contrast between the language used in the two standards, and the fact that Congress used a new standard to define the term 'refugee,' certainly indicate that Congress intended the two standards to differ.")

Statutory context confirms "sex" as used in Title IX refers to traditional biological sex—not subjective gender identity. Surrounding provisions reveal the biological dichotomy

19

A-0144

that informs the two, distinct sexes. *See* 20 U.S.C. § 1681(a)(2) (describing how an institution may change "from . . . . admit[ting] only students of one sex to . . . admit[ting] students of *both sexes*") (emphasis added)); *id.* § 1681(a)(6)(B) (referring to "Men's" and "Women's" associations and organizations for "Boy[s]" and "Girl[s]," "the membership of which has *traditionally* been limited to persons of *one sex*") (emphases added)); *see also id.* § 1681(a)(5), (a)(7), (a)(8), (a)(9), (b).

In stark contrast, Plaintiffs define sex as "multifaceted and comprised of many distinct biologically-influenced characteristics," but ultimately understood as "the sex or gender the individual knows themselves to be." Doc. 1 at ¶¶ 24-25. Plaintiffs' subjective understanding of "sex" would render Title IX's clear distinctions between *two* sexes, men and women, and boys and girls, entirely superfluous. For example, what purpose would Title IX's *permissive* sex-based distinctions between "Men's" and "Women's" associations serve if such identities are fluid and shift with an individual's self-perception over time? If sex was as subjective as Plaintiffs propose, akin to a feeling and not a biological reality, Congress will have spilled a great deal of ink for no discernable purpose.

The legislative history and ordinary public meaning of the term "sex" at the time Title IX was enacted likewise confirms "sex" cannot be interpreted as subjective gender identity. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment."); *see also Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014) ("It is a "fundamental canon of statutory construction" that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (citation omitted)).

A-0145

At the time Title IX was enacted in 1972, "sex" carried a "narrow, traditional interpretation." *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081, 1085–86 (7th Cir. 1984). During that time, "virtually every dictionary definition of 'sex' referred to the physiological distinctions between males and females." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 632 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (Niemeyer, J. dissenting) (collecting dictionary definitions); *see also The Oxford English Dictionary* 578 (1961) ("[t]he sum of those differences in the structure and function of the reproductive organs on the ground of which beings are distinguished as male and female, and of the other physiological differences consequent on these."); *The American College Dictionary* 1109 (1970) ("the sum of the anatomical and physiological differences with reference to which the male and the female are distinguished . . ."); *The Random House College Dictionary* 1206 (rev. ed. 1973) ("either the male or female division of a species, esp. as differentiated with reference to the reproductive functions."); *The American Heritage Dictionary* 1187 (1976) ("[t]he property or quality by which organisms are classified according to their reproductive functions"); *Webster's New Collegiate Dictionary* 1054 (1979) ("the sum of the structural, functional, and behavioral characteristics of living beings that subserve reproduction by two interacting parents and that distinguish males and females"); *The Random House College Dictionary* 1206 (rev. ed. 1980) ("either the male or female division of a species, esp. as differentiated with reference to the reproductive functions"); *The American Heritage Dictionary of the English Language* 1187 (1980) ( "two divisions" of organisms, "designated male and female," classified "according to their re-productive functions.").[8]

---

[8] That definition of "sex" continues even to today. *See, e.g.*, *Webster's New World College Dictionary* 1331 (5th ed. 2014) ("either of the two divisions, male or female, into which persons, animals, or plants are divided, with reference to their reproductive functions"); *The American Heritage*

A-0146

Additionally, "[t]he phrase 'gender identity' did not exist" in 1972 "outside of some esoteric psychological publications." Ryan T. Anderson, Ph.D, and Melody Wood, *Gender Identity Policies in Schools: What Congress, the Courts, and the Trump Administration Should Do,* The Heritage Foundation Backgrounder (Mar. 23, 2017).[9] In fact, "the word 'gender'" itself "had been coined only recently in contradistinction to sex." *Id.*

The earliest Title IX rulemaking codified sex-separated "toilet, locker room, and shower facilities" without any discussion of gender identity. *See* 39 Fed. Reg. 22,227, 22,230 (June 20, 1974) (proposing the rule that is now C.F.R. § 106.33 without explanation); 40 Fed. Reg. at 24,127, 24,141 (June 4, 1975) (finalizing the same rule without justification or response to commentary). Similarly, proponents of Title IX included an amendment expressly permitting schools to maintain separate living facilities on the basis of sex without any discussion or dissent regarding gender identity. *See* 117 Cong. Rec. 39260, 39263 (1971); H.R. Conf. Rep. No. 92-1085 at 222.

The undisputable purpose of Title IX also confirms the ordinary understand of "sex" as biological. Title IX was initially introduced as the Women's Equality Act of 1971. *See* Paul C. Sweeney, *Abuse Misuse & Abrogation of the Use of Legislative History: Title IX & Peer Sexual Harassment*, 66 UMKC L. Rev. 41, 54 (1997). The senator who introduced the legislation described its aim to "eradicate the pervasive, divisive, and unwarranted discrimination against

---

*Dictionary* 1605 (5th ed. 2011) ("Either of the two divisions, designated female and male, by which most organisms are classified on the basis of their reproductive organs and functions"); *Merriam-Webster's Collegiate Dictionary* 1140 (11th ed. 2011) ("either of the two major forms of individuals that occur in many species and that are distinguished respectively as female or male esp. on the basis of their reproductive organs and structures").

[9] Available at https://www.heritage.org/education/report/gender-identity-policies-schools-what-congress-the-courts-and-the-trump.

a majority of our citizens, *the women of this country*." *Id.* (quotation omitted) (emphasis added). The senator went on: "[w]hat we are trying to do is provide equal access for *women and men* students to the educational process and the extracurricular activities in a school, where there is not a unique facet such as football involved." *Id.* at 59 (citing 117 Cong. Rec. 30399, 30406 (1971)); *see also id.* at 61 (describing Senator Bayh's remarks on the goal to end "corrosive and unjustified discrimination against women" that was "overt and socially acceptable within the academic community").

The statute's proponents focused on prohibiting "sex discrimination," *see* 118 Cong. Rec. 5803 (1972), but at the same time sought to preserve schools' ability to separate males and females to preserve "personal privacy," *see* 118 Cong. Rec. 5807 (1972); *see also Doe v. Luzerne Cty.,* 660 F.3d 169, 176–77 (3d Cir. 2011) (recognizing that an individual has "a constitutionally protected privacy interest in his or her partially clothed body" and that this "reasonable expectation of privacy" exists "particularly while in the presence of members of the opposite sex"); *Brannum v. Overton Cty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008) (explaining that "the constitutional right to privacy . . . includes the right to shield one's body from exposure to viewing by the opposite sex") (citing 118 Cong. Rec. 5803 (1972)); *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992) (explaining that "[t]he right to bodily privacy is fundamental" and that "common sense, decency, and [state] regulations" require recognizing it in a parolee's right not to be observed by an officer of the opposite sex while producing a urine sample); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) (recognizing that, even though inmates in prison "surrender many rights of privacy," their "special sense of privacy in their genitals" should not be violated through exposure unless "reasonably necessary" and

23

A-0148

explaining that the "involuntary exposure of [genitals] in the presence of people of the other sex may be especially demeaning and humiliating").

Nothing in *Bostock* dictates otherwise. *See supra* Section II(A).  The facts of *Bostock* are distinguishable: here, S.B. 615 involves no invidious discrimination nor adverse employment action. The law at issue is also distinguishable: here, the text of Title IX is different from Title VII. *See Bostock*, 140 S. Ct. at 1753 (noting its holding concerned only Title VII, that "other federal or state laws that prohibit sex discrimination"—like Title IX—were not "before" the Court, and refusing to "prejudge any such question" about what those statutes require); *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021) ("Title VII differs from Title IX in important respects."); *cf. Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) ("[T]he Court in *Bostock* was clear on the narrow reach of its decision and how it was limited only to Title VII itself."). Title IX prohibits discrimination "on *the basis* of sex," 20 U.S.C. § 1681(a) (emphasis added), rather than "because of . . . sex," 42 U.S.C. § 2000e-2(a)(1). Additionally, Title IX—unlike Title VII—*expressly authorizes* separation based on sex in certain circumstances, including in restroom facilities.

In the four decades after the enactment of Title IX, there was no question that sex meant sex as it has always been understood. *See, e.g., N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 523 n.13 (1982); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 680 (1979) (describing that Title IX grew from a concern about discrimination against *women*). That was the implicit, if not explicit, holding of nearly every court to consider the issue until very recently. *See, e.g., supra* Section II(B); *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1221–22 (10th Cir. 2007) (Title VII); *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748, 750 (8th Cir. 1982) (Title VII); *but see Whitaker By Whitaker*

A-0149

*v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020). Although some recent cases have emerged adopting Plaintiffs' erroneous and atextual gender identity discrimination theories: "[n]ot long ago, a suit challenging the lawfulness of separating bathrooms on the basis of sex would have been unthinkable." *Adams v. Sch. Bd. of St. Johns Cnty.*, 3 F.4th 1299, 1321 (11th Cir. 2021), *reh'g en banc granted*, 9 F.4th 1369 (11th Cir. 2021) (Pryor, C.J., dissenting). The overwhelming authorities cited herein, as well as basic logic, establish that should still be the case.

Since there can be no legitimate dispute that "sex" in Title IX does not encompass "gender identity" or an individual's subject feeling of gender, Plaintiffs' Title IX claims must fail. The State does not violate Title IX by requiring schools to separate multiple occupancy restrooms and changing areas consistent with students' biological sex. To the contrary, Title IX and its regulations expressly permit such a law.

## **CONCLUSION**

For the many reasons stated herein, Plaintiffs claims fail as a matter of law. State Defendants respectfully this Court dismiss the Complaint in its entirety and grant all other and further relief as the Court deems appropriate.

A-0150

Respectfully submitted,

*s/ Audrey A. Weaver*

ZACH WEST, OBA #30768
 *Solicitor General*
AUDREY A. WEAVER, OBA #33258
 *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:  (405) 521-3921
Zach.west@oag.ok.gov
Audrey.weaver@oag.ok.gov
*Counsel for State Defendants*

A-0151

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| Andrew Bridge, et al.,<br><br>    *Plaintiffs*,<br><br>          v.<br><br>Oklahoma State Department of<br>Education, et al.,<br><br>    *Defendants*. | Case No.: CIV-22-787-JD |

## PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
Taylor Brown (*pro hac vice*)
American Civil Liberties Union Foundation
120 Broad Street, 18th Floor
New York, NY 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org
tbrown@aclu.org

Megan Lambert
Bar Number 33216
Johanna Roberts
Bar Number 33599
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Mlambert@acluok.org
Hroberts@acluok.org

Paul D. Castillo (*pro hac vice*)
Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org

Mitchell A. Kamin (*pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
mkamin@cov.com

Isaac D. Chaput (*pro hac vice*)
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

*Attorneys for Plaintiffs*

A-0152

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .............................................................. 1

II.   BACKGROUND ................................................................................... 2

III.  LEGAL STANDARD ........................................................................... 3

IV.   THE STATE DEFENDANTS FAIL TO GRAPPLE WHATSOEVER
      WITH THE STUDENTS' FACTUAL ALLEGATIONS......................... 3

V.    THE STUDENTS HAVE MORE THAN ADEQUATELY ALLEGED
      VIOLATION OF THE EQUAL PROTECTION CLAUSE. ................... 6

      A.   SB 615 and the State Defendants' conduct enforcing it intentionally
           discriminate against transgender students. ...................................... 6

      B.   Heightened scrutiny must be applied to SB 615 and the State
           Defendants' discrimination against the Students. ....................... 11

      C.   The State Defendants cannot establish that SB 615 and their conduct
           enforcing it are constitutional as a matter of law. ....................... 13

VI.   THE STUDENTS HAVE PROPERLY PLED FACTS THAT
      CONSTITUTE SEX DISCRIMINATION UNDER TITLE IX. ........... 17

      A.   *Bostock* applies with considerable, if not decisive, force to Title IX.......... 19

      B.   SB 615 discriminates against transgender students on the basis of
           sex.................................................................................................. 20

      C.   Title IX's regulation authorizing separate restrooms does not permit
           sex discrimination against transgender students. ......................... 23

      D.   The State Defendants advance the same errors rejected by *Bostock*. ......... 24

VII.  CONCLUSION ................................................................................... 25

i

## TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*A.M. v. Holmes*,
   830 F.3d 1123 (10th Cir. 2016) ................................................................ 9

*Abdi v. Wray*,
   942 F.3d 1019 (10th Cir. 2019) ................................................................ 3

*Adams v. Sch. Bd. of St. Johns Cty., Fla.*,
   3 F.4th 1299 (11th Cir. 2021) ................................................................ 10

*Alvarado v. KOB-TV, L.L.C.*,
   493 F.3d 1210 (10th Cir. 2007) ................................................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 3

*Auwae v. Metro. Life Ins. Co.*,
   441 F. Supp. 3d 1188 (D. Colo. 2020) ...................................................... 3

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*,
   956 F.3d 1228 (10th Cir. 2020) ................................................................ 3

*Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*,
   208 F. Supp. 3d 850 (S.D. Ohio 2016) .................................................... 10

*Bishop v. Okla. ex rel. Edmondson*,
   447 F. Supp. 2d 1239 (N.D. Okla. 2006) .................................................. 5

*Bostock v. Clayton Cty., Ga.*,
   140 S. Ct. 1731 (2020) ....................................................................*passim*

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) ................................................................................ 8

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006) ................................................................................ 21

*Carcaño v. Cooper*,
   2019 WL 3302208 (M.D.N.C. July 23, 2019) .......................................... 14

*Carcaño v. McCrory*,
   203 F. Supp. 3d 615 (M.D.N.C. 2016) .................................................... 14

A-0154

*City of Los Angeles v. Patel,*
    576 U.S. 409 (2015) ................................................................. 8

*Davis v. Monroe Cty. Bd. of Educ.,*
    526 U.S. 629 (1999) ................................................................ 20

*Dodds v. U.S. Dep't of Educ.,*
    845 F.3d 217 (6th Cir. 2016) ............................................. 10, 19

*Doe v. Boyertown Area Sch. Dist.,*
    897 F.3d 518 (3rd Cir. 2018) ............................................. 13, 15

*Doe v. Sch. Dist. No. 1, Denver, Colo.,*
    970 F.3d 1300 (10th Cir. 2020) ............................................... 6

*Doe v. Univ. of Denver,*
    1 F.4th 822 (10th Cir. 2021) ................................................. 22

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.,*
    884 F.3d 566 (6th Cir. 2018) .................................................. 8

*Etsitty v. Utah Transit Auth.,*
    502 F.3d 1215 (10th Cir. 2007) ............................................. 10

*Evancho v. Pine-Richland Sch. Dist.,*
    237 F. Supp. 3d 267 (W.D. Pa. 2017) ............................. 10, 14, 15

*Frappied v. Affinity Gaming Black Hawk, LLC,*
    966 F.3d 1038 (10th Cir. 2020) ......................................... 20, 22

*Free the Nipple-Fort Collins v. City of Fort Collins, Colo.,*
    916 F.3d 792 (10th Cir. 2019) ........................................... 12, 13

*Gebser v. Lago Vista Indep. Sch. Dist.,*
    524 U.S. 274 (1998) ............................................................. 20

*Glenn v. Brumby,*
    663 F.3d 1312 (11th Cir. 2011) ............................................. 10

*Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.,*
    245 F.3d 1172 (10th Cir. 2001) ............................................. 19

*Grimm v. Gloucester Cty. Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020) .......................................*passim*

*A.H. ex rel. Handling v. Minersville Area Sch. Dist.*,
    408 F. Supp. 3d 536 (M.D. Pa. 2019) ..................................................... 10, 14

*Hogan v. Okla. Dep't of Corr.*,
    24 F. App'x 984 (10th Cir. 2002) ................................................................ 4

*Johnston v. Univ. of Pittsburg of Commonwealth Sys. of Higher Educ.*,
    97 F. Supp. 3d 657 (W.D. Pa. 2015) ..................................................... 14, 15

*Michael M. v. Superior Ct. of Sonoma Cty.*,
    450 U.S. 464 (1981) ............................................................................. 14, 15

*Miss. Univ. for Women v. Hogan*,
    458 U.S. 718 (1982) ..................................................................................... 12

*N. Haven Bd. of Educ. v. Bell*,
    456 U.S. 512 (1982) ..................................................................................... 25

*Obergefell v. Hodges*,
    576 U.S. 644 (2015) ................................................................................. 8, 16

*Olmstead v. L.C. ex rel. Zimring*,
    527 U.S. 581 (1999) ..................................................................................... 19

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) ....................................................................................... 21

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ................................................................... 13

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ....................................................................................... 8

*Ray v. McCloud*,
    507 F. Supp. 3d 925 (S.D. Ohio 2020) ..................................................... 12

*United States ex rel. Reed v. KeyPoint Gov't Sols.*,
    923 F.3d 729 (10th Cir. 2019) ..................................................................... 3

*Roberts v. Clark Cty. Sch. Dist.*,
    215 F. Supp. 3d 1001 (D. Nev. 2016) ......................................................... 7

*Sch. of the Ozarks, Inc. v. Biden*,
    41 F.4th 992 (8th Cir. 2022) ....................................................................... 19

*Smith v. City of Salem, Ohio*,
  378 F.3d 566 (6th Cir. 2004) ................................................................ 8, 10

*Sommers v. Budget Mktg., Inc.*,
  667 F.2d 748 (8th Cir. 1982) ...................................................................... 10

*Tennessee v. United States Dep't of Educ.*,
  2022 WL 2791450 (E.D. Tenn. July 15, 2022) ........................................ 24

*Tudor v. Se. Okla. State Univ.*,
  13 F.4th 1019 (10th Cir. 2021) ............................................................ 10, 22

*Turner v. Randolph*,
  195 F. Supp. 677 (W.D. Tenn. 1961)........................................................ 17

*Ulane v. E. Airlines, Inc.*,
  742 F.2d 1081 (7th Cir. 1984) .................................................................. 10

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
  484 U.S. 365 (1988)................................................................................... 20

*United States v. Gordon*,
  638 F.2d 886 (5th Cir. 1981) .................................................................... 24

*United States v. Virginia*,
  518 U.S. 515 (1996).............................................................................. 8, 12

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) .................................................................................. 19

*Vitolo v. Guzman*,
  999 F.3d 353 (6th Cir. 2021) .................................................................... 12

*Walker v. BOKF, Nat'l Ass'n*,
  30 F.4th 994 (10th Cir. 2022) ..................................................................... 6

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
  858 F.3d 1034 (7th Cir. 2017) ............................................................*passim*

## STATUTES

20 U.S.C. § 1681 ............................................................... 17, 21, 22, 23

42 U.S.C. § 2000e-2 .................................................................... 22

A-0157

**OTHER AUTHORITIES**

34 C.F.R. § 106.33 ................................................................................. 23, 24

Fed. R. Civ. P. 12(b)(6) ....................................................................... 3, 4, 5, 16

A-0158

## I.    PRELIMINARY STATEMENT

Plaintiffs Andy Bridge, Mark Miles, and Sarah Stiles (collectively, the "Plaintiffs" or "Students") are Oklahoma public school or public charter school students. Like any other Oklahoma student, each is entitled to an education free from discrimination. But SB 615 prevents the Students from being treated like other Oklahoma students and violates their constitutional and statutory rights. As alleged in the Complaint, the State Defendants have refused to treat the Students like other similarly-situated Oklahoma students based solely on certain sex- and gender-related characteristics—the fact that their true sex and gender identity are incongruent with the sex they were assigned at birth, their transgender status, and their nonconformity with certain sex stereotypes. The State Defendants' policies and actions have denied the Students equal protection of the law based on their sex and transgender status in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and subjected the Students to discrimination on the basis of sex, in violation of Title IX of the Education Amendments of 1972 ("Title IX").

In moving to dismiss the Complaint, the State Defendants rely on ad hominem attacks against transgender people, bald assertions that directly conflict with the Students' factual allegations, and legal arguments that have been rejected by countless courts across the country addressing the exact type of discrimination alleged here. Because the Students' factual allegations must be accepted as true at this juncture and because the Students have more than adequately pled claims under the Equal Protection Clause and Title IX, the State Defendants' Motion to Dismiss should be denied.

A-0159

## II.    BACKGROUND[1]

Plaintiff Andy Bridge is a registered student at Noble High School. ECF No. 1 ¶ 61 (the "Compl."). Andy is a boy who is transgender. *Id.* ¶ 60. Andy consistently used the boys' restroom at school for the entire 2021 school year with the knowledge and support of school administration. *Id.* ¶ 68. Plaintiff Mark Miles is a high school student enrolled at Moore Public Schools. *Id.* ¶ 73. Mark is a boy who also is transgender. *Id.* ¶ 72. Mark began using the boys' restroom at the start of the 2021 school year. He always used one of the stalls, as he continues to do in every other setting where he uses the male restrooms. *Id.* ¶ 82. Plaintiff Sarah Stiles is a student enrolled at Independence Charter Middle School ("ICMS"), which is operated by Harding Independence Charter District, Inc. ("HICD"). *Id.* ¶ 92. Sarah is a girl who is transgender as well. *Id.* ¶ 91. Prior to enrolling at ICMS for the 2022 school year, Sarah's mother was assured by school administration that Sarah would be able to use the multiple occupancy girls' restrooms. *Id.* ¶ 99. On August 10, 2022, Sarah used the girls' restroom at ICMS without incident during the school day. *Id.* ¶ 100.

On May 25, 2022, SB 615 went into effect, mandating that each Oklahoma public school and public charter school serving pre-kindergarten through twelfth grade students designate all multiple occupancy restrooms exclusively for the use of either the "male sex" or the "female sex," defined by SB 615 as "the physical condition of being male or female based on genetics and physiology, as identified on the individual's original birth certificate." *Id.* ¶ 3. On August 25, 2022, the State Board of Education adopted emergency

---

[1] The Students incorporate by reference the Statement of Facts set forth in their Motion for Preliminary Injunction. *See* ECF No. 24 at 3–11.

A-0160

rules governing the implementation of SB 615 in public schools and public charter schools. *Id.* ¶ 54. Each of the Students' respective schools has since implemented disciplinary policies effectuating SB 615. *Id.* ¶¶ 69, 88–89, 101.

### III.    LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint does not need "detailed factual allegations," *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020); rather, "so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard." *Auwae v. Metro. Life Ins. Co.*, 441 F. Supp. 3d 1188, 1191 (D. Colo. 2020). The Court must view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff], accepting the plaintiff's well-pled facts as true and drawing all reasonable inferences in the non-moving party's favor." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019).

### IV.    THE STATE DEFENDANTS FAIL TO GRAPPLE WHATSOEVER WITH THE STUDENTS' FACTUAL ALLEGATIONS.

As the State Defendants concede, the relevant inquiry on a motion to dismiss is whether the complaint contains "sufficient factual matter" to withstand a challenge to the

pleadings. *See* ECF No. 47 at 3 (the "Mot."). Accordingly, in seeking dismissal, the defendant must demonstrate that the particular factual allegations fail to state a plausible claim for relief. Yet the Motion completely ignores the Students' factual allegations. Nor do the State Defendants argue that the Students' claims fail as a matter of law, assuming all of the factual allegations were accepted as true. The State Defendants have failed to satisfy their burden under Rule 12(b)(6). The Motion should be denied on this basis alone.

The State Defendants cite only a few stray paragraphs from the nearly 150-paragraph complaint. *See* Mot. at 8, 13, 15, 18, 19, 20 (citing Compl. ¶¶ 24–25, 52, 59, 131–33). The Motion does not once address the Students' experiences of discrimination by Oklahoma schools on the basis of their gender. The Motion disregards the policies adopted by Noble Public Schools, Moore Public Schools, and HICD in response to SB 615. And the Motion is devoid of any explanation for why the factual allegations, accepted as true, fail to give rise to claims under the Equal Protection Clause or Title IX. The State Defendants cannot carry their burden of demonstrating the inadequacy of the Students' factual allegations by ignoring those allegations. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007) ("[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.").

Rather than confronting the Students' factual allegations, the Motion rests on the State Defendants' bald assertions that the Students cannot ultimately prevail on their constitutional and statutory claims. Such arguments are entirely premature at this initial stage of the proceedings and must await summary judgment, at the earliest. *See Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984, 985 (10th Cir. 2002) ("Factual disputes between

A-0162

the parties cannot be resolved in a motion to dismiss."); *see also Bishop v. Okla. ex rel. Edmondson*, 447 F. Supp. 2d 1239, 1258 (N.D. Okla. 2006), *rev'd on other grounds*, 333 F. App'x 361 (10th Cir. 2009) (denying motion to dismiss equal protection claim because "such challenges are more appropriately decided at the summary judgment stage").

The State Defendants argue that SB 615 should withstand constitutional scrutiny because the legislation purportedly "protect[s] the privacy of students to disrobe and shower outside of the presence of the opposite sex." Mot. at 11. But the Students allege that purported "privacy" and "safety" concerns "are unfounded pretext to target students who are transgender" and that "SB 615 and Defendants' respective policies do not promote the safety or privacy of students or any other valid governmental interest." Compl. ¶¶ 52, 134.[2] This factual dispute cannot be resolved at the pleadings stage and will require discovery to resolve. Moreover, the State Defendants repeatedly reference the amorphous term "biological sex" as the relevant focus for the Students' claims. *See, e.g.*, Mot. at 1.[3] But the Students made specific, factual allegations regarding their sex. Compl. ¶¶ 60, 72, 91. The State Defendants simply ignore these well-pled allegations and instead attack the pleadings based on their counsel's *ipse dixit*. Such an approach is divorced from the Rule

---

[2] Additionally, while the Complaint occasionally refers to multiple occupancy facilities or changing rooms, the Students clarify that they will not seek any relief in this action that applies beyond multiple occupancy restrooms because none of the Students currently has any occasion or need to access multiple occupancy facilities at their schools other than restrooms. This is consistent with the Motion for Preliminary Injunction, which seeks relief as to the ability to access multiple occupancy school restrooms. *See* ECF No. 24 at 25.

[3] The Motion repeatedly uses the term "biological sex" to distinguish those who are male from those who are female. That meaning of "biological sex" is a politicized one, not one grounded in science (or even reflected in SB 615). As the Students allege, "there is a medical consensus that there is a significant *biologic* component underlying gender identity." Compl. ¶ 25 (emphasis added). This factual allegation must be accepted as true.

A-0163

12(b)(6) standard. The Court's role at this stage "is not to weigh potential evidence that the parties might present at trial" but instead to assess whether the "complaint alone is legally sufficient to state a claim for which relief may be granted." *Walker v. BOKF, Nat'l Ass'n*, 30 F.4th 994, 1002 (10th Cir. 2022); *see also Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1311 (10th Cir. 2020) ("[T]he plaintiff is not required to prove her case at the motion-to-dismiss stage."). The Complaint easily clears this threshold.

## V.     THE STUDENTS HAVE MORE THAN ADEQUATELY ALLEGED VIOLATION OF THE EQUAL PROTECTION CLAUSE.

### A.     SB 615 and the State Defendants' conduct enforcing it intentionally discriminate against transgender students.

The Students allege that Andy Bridge is a boy, Compl. ¶¶ 12, 60; Mark Miles is a boy, *id*. ¶¶ 13, 72; and Sarah Stiles is a girl, *id*. ¶¶ 14, 91. The Students further allege that each of them is transgender. *Id.* ¶¶ 12–14, 60, 72, 91. The Students also allege that "Defendants' exclusion of students who are transgender, including Plaintiffs, from the multiple occupancy facilities aligned with their gender treats students who are transgender differently from similarly-situated students who happen to be cisgender" because "[u]nder Defendants' discriminatory policies, students who are cisgender are able to use multiple occupancy facilities consistent with their gender, but students who are transgender are banned from multiple occupancy facilities consistent with their gender." *Id.* ¶ 131. Thus, the State Defendants' contention that, under SB 615, "all male classmates are treated the exact same regardless of their gender identity," Mot. at 5, is simply incorrect according to the Students' well-pled allegations. As a result of SB 615, students with a male gender identity who were identified at birth as female are not allowed to use their schools' multiple

6

occupancy restrooms for males, whereas other students with a male gender identity are permitted to use those restrooms because they were identified as that sex at birth. This is not the same treatment of all male students. The differential treatment rests on the relationship between the sex students were assigned at birth and their gender identity. This necessarily constitutes discrimination based on sex because SB 615 explicitly takes sex into account in its restriction on access to multiple occupancy restrooms, whether that refers to the sex a student was identified as at birth or the difference between that sex and their gender identity. Compl. ¶ 132(a)–(b). It does not matter that SB 615 references "physiology" in distinguishing who may use which restroom. *Roberts v. Clark Cty. Sch. Dist.*, 215 F. Supp. 3d 1001, 1015 (D. Nev. 2016) (discrimination "based on [plaintiff's] genitalia, not his status as a transgender person, [was] a distinction without a difference").

The Students further allege that SB 615 discriminates against them based on transgender status, gender conformity, and sex stereotypes, which the Motion ignores. Compl. ¶¶ 132(c)–(d), 133. SB 615 and the State Defendants' conduct enforcing it deny the Students access to multiple occupancy restrooms they would otherwise use because they are transgender rather than cisgender, which discriminates against them based on transgender status. SB 615 and the State Defendants' enforcement of it also discriminate based on gender conformity and sex stereotypes because SB 615 treats worse those who do not conform to the gender-based expectation and the sex stereotype that people will forever identify as, and act consistently with, the sex they were identified as at birth, as well as treating them worse based on the gender-based expectation and sex stereotype that people should always have identified as, and been identified as, the sex they know

7

themselves to be. These forms of discrimination are independent grounds for finding a

violation of the Equal Protection Clause, and they have been recognized by various courts

as forms of sex discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 272

(1989) (discrimination based on gender non-conformity and sex stereotyping is a form of

sex discrimination); *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 566, 576–

77 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731 (2020)

(same); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 572–74 (6th Cir. 2004) (same).

This discrimination is not simply due to a disparate impact of SB 615. Mot. at 9.

Rather, the Students allege that this discrimination *targets* them because they are

transgender. Compl. ¶ 2. A statute need not expressly reference the group it discriminates

against to constitute intentional disparate treatment that discriminates against members of

that group. *Obergefell v. Hodges*, 576 U.S. 644, 675 (2015) (restricting marriage to

different-sex couples discriminates based on sexual orientation even though heterosexuals

were equally constrained from marrying someone of the same sex); *United States v.

Virginia*, 518 U.S. 515, 542 (1996) (men's college discriminates based on sex even though

"many men would not want to be educated" there); *Bray v. Alexandria Women's Health

Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews."). A law

must be evaluated by those it harms, not those it does not affect. *City of Los Angeles v.

Patel*, 576 U.S. 409, 418 (2015) ("The proper focus of the constitutional inquiry is the group

for whom the law is a restriction, not the group for whom the law is irrelevant.").

SB 615 solely restricts the ability of students whose original birth certificate does

not match their gender identity from accessing multiple occupancy school restrooms. SB

615 and the State Defendants' conduct enforcing it restrict the ability of a boy like Plaintiff Andy Bridge to use the boys' restroom at school—something he regularly did in the past, Compl. ¶ 68—only because he is transgender, whereas boys who are not transgender are not so restricted. *Id.* ¶¶ 54, 58, 131. SB 615 affects only transgender students and therefore intentionally treats them differently than students who are not transgender. This violates the U.S. Constitution's core guarantee regarding governmental action burdening "certain classes of citizens." *A.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016).

Numerous federal appellate and district courts—which the State Defendants almost totally ignore, *see* Mot. at 24–25—have held that restrictions on transgender students' access to multiple occupancy restrooms matching their gender identity discriminate based on sex, transgender status, gender conformity, and/or sex stereotypes and violate or likely violate the Equal Protection Clause. *See Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051, 1054 (7th Cir. 2017), *abrogation on other grounds recognized by Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) (limitation on use of restroom based upon sex on birth certificate "is inherently based upon a sex-classification" because it "cannot be stated without referencing sex," and transgender student likely would succeed on equal protection claim).[4] By contrast, the State Defendants

---

[4] *See also, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 608, 610, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (holding that school's refusal to allow transgender boy to use boys' restroom at school "on its face" created "sex-based classification[]," that transgender boy was "similarly situated to other boys, but was excluded from using the boys restroom facilities based on his sex-assigned-at-birth," and that district court was correct in granting summary judgment in boy's favor on equal protection claim); *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (denying stay of preliminary injunction requiring school to allow transgender girl to use

9

rely on widely rejected, non-precedential dissenting opinions and outdated cases.[5]

*Bostock* confirms that discrimination based on transgender status is a form of sex discrimination. While it is true that *Bostock* involved the context of termination of employees in violation of Title VII, the *reasoning* the Supreme Court employed is equally applicable to sex discrimination claims brought under the Equal Protection Clause and Title IX.[6] That reasoning did not rest upon unique provisions of Title VII, but rather the

---

girls' restroom at school because her exclusion from that restroom treated her unequally based on failure to act consistently with, or to identify with, sex she was assigned at birth and therefore constituted "impermissible discrimination" based on transgender status); *A.H. ex rel. Handling v. Minersville Area Sch. Dist.*, 408 F. Supp. 3d 536, 578 (M.D. Pa. 2019) (granting partial summary judgment in favor of transgender girl because school district's exclusion of her from girls' restroom while on school field trip violated Equal Protection Clause); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 293 (W.D. Pa. 2017) (holding that transgender students showed likelihood of success on equal protection claim challenging denial of access to school restrooms matching their gender identity); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 877 (S.D. Ohio 2016) (same, at to transgender girl).

[5] *See, e.g.*, *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1028 (10th Cir. 2021) (holding that the conclusion in *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215 (10th Cir. 2007), that discrimination based on transgender status is not sex discrimination has been overruled); *Glenn v. Brumby*, 663 F.3d 1312, 1318 n.5 (11th Cir. 2011) (recognizing that *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748 (8th Cir. 1982), is no longer good law); *Smith*, 378 F.3d at 572–73 (recognizing that *Sommers* and *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 1984), are no longer good law); Mot. at 25 (relying on dissenting opinion in *Adams v. Sch. Bd. of St. Johns Cty., Fla.*, 3 F.4th 1299 (11th Cir. 2021)). The State Defendants' argument that *Etsitty* remains good law because it was only overruled "to the extent that [it] conflicts with *Bostock*," Mot. at 12, ignores that the Tenth Circuit explained that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex" and that discrimination against transgender people is intentional treatment of those individuals differently "because of their sex." *Tudor*, 13 F.4th at 1028 (quoting *Bostock*, 140 S. Ct. at 1741–42). That the Supreme Court said that it did not "purport to address bathrooms, locker rooms, or anything else of the kind," *Bostock*, 140 S. Ct. at 1753, was only because those specific issues were not then before it, not because *Bostock*'s reasoning would not equally apply to cases involving those settings.

[6] The State Defendants completely misapprehend *Bostock*. That decision was not "built on the foundational fact that 'sex' at a baseline refers to 'biological distinctions between male and female,'" as the State Defendants contend. Mot. at 6. To the contrary, that was the argument of the employers in that case, which the Supreme Court simply assumed to be true as it conducted its analysis. 140 S. Ct. at 1739 ("[W]e proceed on the assumption that

10

A-0168

recognition that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." 140 S. Ct. at 1741. That is because one cannot categorize someone as transgender without taking sex into account, *id.* at 1746 (discrimination against transgender persons "unavoidably discriminates against persons with one sex identified at birth and another today"), and because discrimination against those who are transgender "necessarily and intentionally applies sex-based rules," *id.* at 1745. That sex and gender identity are not identical concepts does not matter. As the Supreme Court observed, "discrimination based on … transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id.* at 1747.

## B. Heightened scrutiny must be applied to SB 615 and the State Defendants' discrimination against the Students.

Discrimination based on sex and discrimination based on transgender status both receive heightened judicial scrutiny. The State Defendants appear to agree that heightened scrutiny applies to the Students' equal protection claim to the extent it states a claim for sex discrimination. *See* Mot. at 11. However, they fail to address the Students' claim that the discrimination additionally denies the Students' equal protection based on their transgender status. Compl. ¶ 133. That claim independently requires strict, or at least heightened, scrutiny. *See* ECF No. 24 at 14–16; *see also, e.g.*, *Ray v. McCloud*, 507 F. Supp. 3d 925, 937 (S.D. Ohio 2020) ("[T]ransgender individuals are a quasi-suspect class

---

'sex' signified what the employers suggest."). In addition, *Bostock* did not depend on sex-stereotyping arguments, as the State Defendants suggest, Mot. at 6–7, but rather on the recognition that discrimination against transgender people necessarily involves discrimination based at least in part on sex. 140 S. Ct. at 1743 ("For an employer to discriminate against employees for being … transgender, the employer *must* intentionally discriminate against individual men and women in part because of sex." (emphasis added)).

entitled to heighted scrutiny.").

Heighted scrutiny imposes a stringent standard. "[S]ex-based discrimination is presumptively invalid." *Vitolo v. Guzman*, 999 F.3d 353, 364 (6th Cir. 2021). The government "must demonstrate an exceedingly persuasive justification" for government policies that discriminate based on sex. *Virginia*, 518 U.S. at 531. To meet this burden, the government must prove that (1) the sex-based classification serves "important governmental objectives," and (2) the classification is "substantially and directly related" to the achievement of those objectives. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724, 730 (1982); *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 799 (10th Cir. 2019). Moreover, the government's justification must be "genuine, not hypothesized." *Virginia*, 518 U.S. at 533. The State Defendants cannot meet that heavy burden in this case, much less at the pleadings stage.

That SB 615 draws distinctions based on physical differences does not lessen the required scrutiny. As the Tenth Circuit has explained, "the arc of the Court's equal-protection jurisprudence … bends toward requiring more—not less—judicial scrutiny when asserted physical differences are raised to justify gender-based discrimination." *Fort Collins*, 916 F.3d at 805. Indeed, "[a]ny law premised on generalizations about the way women are—or the way men are—will fail constitutional scrutiny because it serves no important governmental objective." *Id*. at 801.

12

A-0170

C.     **The State Defendants cannot establish that SB 615 and their conduct enforcing it are constitutional as a matter of law.**

Whether SB 615 and the State Defendants' conduct substantially and directly further governmental interests in protecting privacy or safety depends on contested facts that cannot be resolved on a motion to dismiss. *See, e.g.*, Compl. ¶¶ 45–47, 52, 68, 80, 82, 97, 100, 134. In particular, the Students allege that the "purported 'privacy' and 'safety' concerns" identified in SB 615 "are unfounded pretext to target students who are transgender" and that "Students who are transgender pose no risks to the privacy or safety of other students, whether in using multiple occupancy facilities or in any other context." *Id*. ¶ 52. Those factual allegations must be accepted as true, requiring denial of the Motion.

The State Defendants fail to address the multitude of federal courts that have rejected privacy and safety justifications for excluding transgender individuals from multiple occupancy restrooms, finding those justifications unfounded and unpersuasive. *See Grimm*, 972 F.3d at 613–15 (holding that school policy similar to SB 615 was not substantially related to important government interests in protecting privacy and instead was "marked by misconception and prejudice" against transgender student).[7] In support of

---

[7] *See also, e.g.*, *Parents for Privacy v. Barr*, 949 F.3d 1210, 1226 (9th Cir. 2020) (affirming dismissal of privacy claims of cisgender students opposed to school district's plan to allow transgender male student to use boys' restroom at school); *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 527–33 (3rd Cir. 2018) (affirming denial of preliminary injunction sought by cisgender students who objected to sharing restrooms with transgender students on privacy grounds); *Whitaker*, 858 F.3d at 1052 (granting preliminary injunction against enforcement of school policy similar to SB 615 as likely violating Equal Protection Clause and concluding that "the School District's privacy argument [wa]s based upon sheer conjecture and abstraction"); *A.H.*, 408 F. Supp. 3d at 578 (granting partial summary judgment that school district's prohibition on transgender girl using female restrooms on school field trips violated Equal Protection Clause because district "failed to demonstrate an exceedingly persuasive justification for its field-trip policy"); *Evancho*, 237 F. Supp. 3d

A-0171

their contention that SB 615 is justified by privacy and safety concerns, the State Defendants rely on inapposite cases and rulings that have been widely discredited.

Arguing that SB 615 protects the "privacy of students to disrobe and shower outside of the presence of the opposite sex," Mot. at 11, the State Defendants cite *Carcaño v. McCrory*, 203 F. Supp. 3d 615 (M.D.N.C. 2016); *Johnston v. Univ. of Pittsburg of Commonwealth Sys. of Higher Educ.*, 97 F. Supp. 3d 657 (W.D. Pa. 2015); and *Michael M. v. Superior Ct. of Sonoma Cty.*, 450 U.S. 464 (1981). As the Students are seeking relief only regarding the restriction on their use of multiple occupancy restrooms that accord with their gender identity, the State Defendants' purported concern is irrelevant, since the Students do not disrobe or shower in multiple occupancy restrooms in Oklahoma schools. Even were that not the case, the State Defendants neglect to mention that, three years after the preliminary injunction ruling they cite in *Carcaño*, the parties entered into a settlement under which the State of North Carolina agreed to stop enforcing the challenged restroom restrictions and instead to allow transgender people to use restrooms in accordance with their gender identity. *Carcaño v. Cooper*, 2019 WL 3302208, at *6 (M.D.N.C. July 23, 2019). The State Defendants also ignore the subsequent holding of the Fourth Circuit a year later in *Grimm* that a school board's policy requiring transgender students to use bathrooms based on their biological sex "[wa]s not substantially related to its important interest in protecting students' privacy." 972 F.3d at 613. Likewise, *Johnston*, which

---

at 294–95 (granting preliminary injunction on transgender students' equal protection claim that they should not be excluded from restroom consistent with their gender identity and stating that doing so would be unlikely to cause harm, including to any privacy interests).

14

A-0172

included claims regarding access to sex-segregated locker rooms, was found unpersuasive by the same district court two years later in *Evancho*. 237 F. Supp. 3d at 287. It also is impossible to square *Johnston* with *Boyertown*, 897 F.3d 518 (3rd Cir. 2018), in which the Third Circuit affirmed the denial of injunctive relief to cisgender students claiming that their school's policy allowing transgender students to access multiple occupancy restrooms and locker rooms consistent with their gender identity violated their privacy. As for *Michael M.*, it is completely inapposite. That case dealt with a sex-based equal protection challenge to a statutory rape law and has no bearing on the Students' challenge to a restriction on transgender students' access to multiple occupancy school restrooms.

While the safety and privacy of students are legitimate interests, the State Defendants cannot meet their burden at this stage to prove that SB 615 and their conduct enforcing it actually substantially and directly further those interests. Allowing transgender students to enter a multiple occupancy restroom, go into a stall to relieve themselves behind a closed door, and wash their hands and leave poses no risk to anyone's safety or privacy. *Whitaker*, 858 F.3d at 1052. It bears no resemblance to government officials strip-searching students. *See* Mot. at 14. It has nothing to do with reported incidents of illegal assaults by cisgender individuals. *Id.* at 16. Any student who engages in illegal or prohibited conduct in multiple occupancy school restrooms can be punished regardless of SB 615. Likewise, schools can easily distinguish between those who are transgender, which the Complaint alleges are those who "have a consistent, persistent, and insistent understanding that their sex is different from the sex they were assigned as at birth," Compl. ¶ 28, from those who

15

A-0173

may falsely claim to be transgender to engage in prohibited conduct that they could just as readily engage in without claiming to be transgender. *See* Mot. at 15.

The State Defendants argue that "the mere presence of a member of the opposite sex in a restroom or changing area is a violation of privacy, regardless of whether any incident occurs." *Id*. As with their other arguments, this entirely ignores that the Students specifically alleged their gender. The State Defendants' factual disagreement with those allegations does not supplant the Rule 12(b)(6) standard. The State Defendants also fail to explain how sharing a restroom with a student who identifies as, appears like, and is otherwise accepted as the same sex as other students in that restroom violates anyone's privacy. *Whitaker*, 858 F.3d at 1052 ("Common sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall."). Indeed, students are more likely to have concerns if a student whom they know as someone of a different sex enters a restroom simply because it is consistent with the sex listed on that student's original birth certificate.

That it may have been "long recognized as permissible," Mot. at 1, to separate restrooms according to aspects of an individual's anatomy does not immunize the State Defendants' discrimination. It of course was long recognized as permissible to restrict marriage to different-sex couples, but that did not shield those restrictions from being held unconstitutional. *Obergefell*, 576 U.S. at 673 ("[I]n interpreting the Equal Protection Clause, the Court has recognized that new insights and societal understandings can reveal unjustified inequality within our most fundamental institutions that once passed unnoticed and unchallenged."). It also was long recognized as permissible to segregate restrooms

16

A-0174

according to race because of the purported dangerousness of Black people, the false belief that Black people carried diseases white people did not naturally carry, and a belief in Black men's innate predatory nature towards white women. That such practices and beliefs were longstanding could not stop them from being tested factually and legally. *See Turner v. Randolph*, 195 F. Supp. 677, 679–80 (W.D. Tenn. 1961) (public library's safety rationale for racial segregation in restrooms was unsupported by any scientific or reliable data). That same principle applies here. The government's interest in privacy cannot be "examined in the abstract" but instead "must be weighed against the facts of the case" to determine "whether this justification is genuine." *Whitaker*, 858 F.3d at 1052. The State Defendants should not be permitted to evade that examination here.

## VI.    THE STUDENTS HAVE PROPERLY PLED FACTS THAT CONSTITUTE SEX DISCRIMINATION UNDER TITLE IX.

When a school provides restrooms on the basis of sex, it must do so in a manner that does not subject individual students to unequal treatment that causes harm. Title IX provides that "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To prove a claim under Title IX, the Students must show (1) discrimination in an educational program "on the basis of sex"; (2) that the program receives Federal financial assistance; and (3) the exclusion harmed the Students. *See Grimm*, 972 F.3d at 616. The Complaint contains sufficient factual information to draw a reasonable inference that the Oklahoma State

A-0175

Department of Education ("OSDE")—the only State Defendant sued by the Students under Title IX—is liable for sex discrimination prohibited by that statute.

Plaintiffs Andy, Mark, and Sarah, as transgender students, experience sex-based discrimination as a result of SB 615. Each of them asserted that SB 615 bars them from the restroom at school congruent with their identity. Specifically, the Students each alleged that they are transgender, *see* Compl. ¶¶ 60, 72, 91, their gender is different than the sex they each were assigned at birth, *id.* ¶¶ 28, 63, 75, 94, and gender identity is not only one of multiple sex-related characteristics but is the most important and determinative factor of a person's sex, *id.* ¶¶ 24, 28. Further, Andy and Mark have pled that they are boys, *id.* ¶¶ 60, 72, and generally perceived and treated as boys, *id.* ¶¶ 67–68, 80–82, but SB 615 prohibits them from using the boys' multiple occupancy restroom at school (unlike cisgender boys), *id.* ¶¶ 2–5, 28, 47, 69, 85, 88, 143. Sarah has pled that she is a girl, *id.* ¶ 91, and generally perceived and treated as a girl, *id.* ¶¶ 95, 99–100, but SB 615 prohibits her from using the girls' multiple occupancy restroom at school (unlike cisgender girls), *id.* ¶¶ 2–5, 28, 47, 101, 107, 143. Taken together, these factual allegations establish the first element of a Title IX claim. Although OSDE does not contest the second and third elements of Title IX, the Students have sufficiently pled those facts as well. OSDE is a recipient of Federal financial assistance, *id.* ¶¶ 15, 139, and SB 615, as enforced by the State Defendants, harms the Students, *id.* ¶¶ 2, 43–44, 69–71, 86–89, 103–08. The Students' Title IX claims are not only plausible but meritorious. *See, e.g.*, *Grimm*, 972 F.3d at 616–19; *Whitaker*, 858 F.3d at 1049–50; *Dodds*, 845 F.3d at 220–22.

A-0176

**A.** *Bostock* **applies with considerable, if not decisive, force to Title IX.**

The State Defendants suggest that *Bostock* is "distinguishable" because it "concerned only Title VII." Mot. at 24. That the Supreme Court addressed only Title VII and reserved judgment about sex-separated restrooms as applied to transgender individuals does not "deprive it of all persuasive force." *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013). The Supreme Court and Tenth Circuit have "looked to [their] Title VII interpretations of discrimination in illuminating Title IX." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 617 n.1 (1999); *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) ("Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims."). *Bostock* thus illuminates the Title IX claims. *Cf. Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1001 (8th Cir. 2022) (emphasizing importance of "consider[ing] the meaning of the Fair Housing Act in light of *Bostock* and its interpretation of similar statutory language").

The reasoning in *Bostock* applies with considerable, if not decisive, force to Title IX. *See, e.g.*, *Grimm*, 972 F.3d at 616 (noting *Bostock* "guides [the] evaluation of claims under Title IX" and finding "little difficulty holding that a bathroom policy precluding [a transgender boy] from using the boys restrooms discriminated against him 'on the basis of sex'"). First, *Bostock* is the Supreme Court's most recent pronouncement of statutory interpretation principles applicable to anti-discrimination statutes that prohibit sex discrimination. Second, *Bostock* applies a straightforward test to conclude that transgender status is "inextricably bound up with sex" and "necessarily entails discrimination based on sex; the first cannot happen without the second." 140 S. Ct. at 1742, 1747. Third, the State

19

Defendants' arguments, discussed further below, replicate the same "repackage[d] errors" that *Bostock* and other Supreme Court "precedents have already rejected." *Id.* at 1744–45. Ultimately, *Bostock* provides compelling guideposts for this Court to apply Title IX's nondiscrimination guarantee and deny the Motion to Dismiss.

**B.    SB 615 discriminates against transgender students on the basis of sex.**

The State Defendants claim that SB 615 "treats all students the exact same regardless of transgender status or gender identity." Mot. at 1–2. Not only does this assertion conflict with the Students' factual allegations, but it also fails to adhere to the principles of statutory construction set forth in *Bostock*. "Statutory construction … is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). By focusing exclusively on the term "sex" in isolation, the State Defendants overlook that "[t]he question isn't just what 'sex' mean[s], but what [a statute barring sex discrimination] says about it." *Bostock*, 140 S. Ct. at 1739.

Consistent with its expansive purpose, the Supreme Court has construed Title IX broadly to bar any practice that, on the basis of sex, denies students equal access to educational opportunities. *See, e.g.*, *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). "Title IX focuses more on 'protecting' individuals from discriminatory practices carried out by recipients of federal funds." *Gebser*, 524 U.S. at 287; *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020) ("As we have explained, *Bostock* requires us to focus our analysis on individuals, not groups.").

Focusing on each of the Students as individuals accords with the requirement that "[n]o person" be subjected to sex discrimination. 20 U.S.C. § 1681(a). As transgender students, the Students are subjected to sex discrimination precisely because of the way SB 615 defines "sex." Importantly, Title IX's statutory term "discrimination" might mean one thing "in one context" and "something different in another context." *See Bostock*, 140 S. Ct. at 1750; *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–69 (2006) ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). In other words, an "act that would be immaterial in some situations is material in others." *Id*. at 69. Harm that rises to the level of a Title IX violation "depends on a constellation of surrounding circumstances." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998). SB 615's restriction of restrooms based on birth-assigned sex is material to Andy, Mark, and Sarah, even though it is immaterial to their cisgender peers who do not suffer injury due to SB 615.

SB 615 discriminates against the Students "on the basis of sex." In *Bostock*, the Supreme Court applied "the 'simple' and 'traditional' standard of but-for causation" to show that transgender status is "inextricably bound up with sex." 140 S. Ct. at 1739, 1742. In short, "sex is necessarily a but-for cause," and discrimination against transgender people "inescapably *intends* to rely on sex in its decisionmaking." *Id*. at 1742 (emphasis in original). "So long as the plaintiff's sex was one but-for cause … that is enough to trigger

A-0179

the law." *Id.* at 1739.[8] *Bostock* forecloses the State Defendants' contention that the Students have no "textual support" and "attempt to rewrite the plain and ordinary understanding of 'sex' as one and the same as 'gender identity.'" Mot. at 18–19. So long as sex plays a role, there is "no significance here if another factor … might also be at work, or even play a more important role." *Bostock*, 140 S. Ct. at 1744; *Frappied*, 966 F.3d at 1046 (applying *Bostock* to ADEA claim); *Tudor*, 13 F.4th at 1028.

Though presented by the State Defendants as a neutral measure that sorts students based on their sex assigned at birth, SB 615 subjects the Students to discrimination based on their transgender status. SB 615 "intentionally penalizes" the Students, as transgender individuals whose identities do not match their sex assigned at birth, for sex-related "traits or actions it tolerates" in cisgender students whose identities match their sex assigned at birth. *Bostock*, 140 S. Ct. at 1741. By intentionally discriminating against the Students on the basis of their transgender status, the State Defendants "unavoidably discriminate[] against persons with one sex identified at birth and another today." *Id.* at 1746.

---

[8] While the State Defendants raise in passing the textual distinction between Title VII's prohibition of discrimination "because of" sex," 42 U.S.C. § 2000e-2(a)(1), and Title IX's prohibition of discrimination "on the basis of" sex, 20 U.S.C. § 1681(a), they do not wrestle with the question. *See* Mot. at 24. Examining the text and analytical framework of Title IX, the Tenth Circuit construes "on the basis of" sex as simply asking whether "sex was a motivating factor." *Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021). As noted in *Bostock*, "motivating factor" causation is a "more forgiving standard," where "liability can sometimes follow even if sex wasn't a but-for cause of the … challenged decision." *Bostock*, 140 S. Ct. at 1740. If a transgender employee can establish causation applying the more rigorous "but for" causation standard under Title VII, a transgender student may establish causation under Title IX.

**C.    Title IX's regulation authorizing separate restrooms does not permit sex discrimination against transgender students.**

The State Defendants claim that OSDE cannot be subject to liability under Title IX because one of Title IX's implementing regulations states that schools "may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. The Students do not challenge the existence of sex-separated facilities at schools. Rather, the Students challenge SB 615's definition of "sex" as applied to transgender students, which operates to exclude them from the restroom corresponding with their identity. *See Grimm*, 972 F.3d at 618 ("All [§ 106.33] suggests is that the act of creating sex-separated restrooms in and of itself is not discriminatory—not that, in applying bathroom policies to [transgender students], the Board may rely on its own discriminatory notions of what 'sex' means."). OSDE cannot justify the intentional exclusion of Andy and Mark as boys who are transgender from the boys' restroom, and Sarah as a girl who is transgender from the girls' restroom, by asserting that SB 615 simply "separates restroom facilities on the basis of biological sex." Mot. at 18. The State Defendants "cannot escape liability by demonstrating that [SB 615] treats males and females comparably as groups." *Bostock*, 140 S. Ct. at 1744.

Additionally, the State Defendants' invocation of Title IX's statutory exemptions does not alter the meaning of "sex" in Title IX. Mot. at 19–20. Unlike the statutory exemptions in 20 U.S.C. § 1681(a)(2)–(9), where the broad prohibition on sex discrimination "shall not apply," 34 C.F.R. § 106.33 merely authorizes schools to "provide

23

A-0181

separate toilet facilities ... on the basis of sex," while leaving the sweeping statutory prohibition on "discrimination" undisturbed. The regulation must be read consistently with Title IX's prohibition on sex discrimination. *See United States v. Gordon*, 638 F.2d 886, 888 (5th Cir. 1981) ("Whatever effect the agency regulation may have under other circumstances, it cannot supersede a statute.").

The State Defendants also suggest that a Tennessee federal court has substantively ruled in favor of the State of Oklahoma, among others, by purportedly "rejecting" the U.S. Department of Education's "new interpretation of 34 C.F.R. § 106.33." Mot. at 18. However, that court ruled solely on procedural APA grounds. *Tennessee v. United States Dep't of Educ.*, 2022 WL 2791450, at *20 (E.D. Tenn. July 15, 2022) ("The Court begins, and ends, with assessing Plaintiffs' notice and comment claim."), *appeal docketed*, No. 22-5807 (6th Cir. Sept. 13, 2022). The *Tennessee* court expressly stated that it was "not tasked" with determining whether any party violated Title IX, but instead focused on "the procedures Defendants needed to follow before issuing the guidance." *Id*. at *10. In fact, the *Tennessee* court agreed with the agency that whether a recipient violates Title IX in a case involving transgender students "would likely require further factual development." *Id.*

**D.   The State Defendants advance the same errors rejected by *Bostock*.**

In an attempt to shift the focus away from Title IX, the State Defendants rely upon the same "repackage[d] errors" rejected in *Bostock*. 140 S. Ct. at 1744. First, the State Defendants refer to other later-enacted laws that explicitly "protect against gender-identity discrimination" and surmise that reference to "gender identity" in subsequent laws shows

"Congress means something different when it fails to use that term—as it did in Title IX."[9] Mot. at 19. However, the Supreme Court rejected that same argument as "speculation" and "a 'particularly dangerous' basis on which to rest an interpretation of an existing law." *Bostock*, 140 S. Ct. at 1747. Next, the State Defendants emphasize the "original understanding" of "sex" by referring to a litany of dictionary definitions "[a]t the time Title IX was enacted in 1972." Mot. at 20–22. Even assuming that "sex" meant "biological sex," Title IX liability does not "turn[] on the outcome" of that term. *Bostock*, 140 S. Ct. at 1739. The State Defendants also canvas legislative history with statements from the statute's proponents seeking to honor Title IX's expected applications. Mot. at 22–23. But the State Defendants are "not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations." *Bostock*, 140 S. Ct. at 1754. However framed, "it is ultimately the provisions of those legislative commands rather than the principal concerns of our legislators by which we are governed." *Id*. at 1749. The Supreme Court has rejected any notion that Title IX's protections are limited to applications foreseen at the time of its enactment. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) ("There is no doubt that if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language.").

**VII.   CONCLUSION**

For the foregoing reasons, the Motion to Dismiss should be denied.

---

[9] This argument is belied by the State Defendants' assertion that "[t]he phrase 'gender identity' did not exist" in 1972. Mot. at 22.

A-0183

DATED: November 16, 2022

Respectfully Submitted,

*/s/ Isaac D. Chaput*
Isaac D. Chaput

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
Taylor Brown (*pro hac vice*)
American Civil Liberties Union
Foundation
120 Broad Street, 18th Floor
New York, NY 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org
tbrown@aclu.org

Paul D. Castillo (*pro hac vice*)
Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org

Megan Lambert
Bar Number 33216
Johanna Roberts
Bar Number 33599
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Mlambert@acluok.org
Hroberts@acluok.org

Mitchell A. Kamin (*pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
mkamin@cov.com

Isaac D. Chaput (*pro hac vice*)
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

*Attorneys for Plaintiffs*

A-0184

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2022, I electronically filed Plaintiffs'

Opposition to State Defendants' Motion to Dismiss with the Court of Clerk via the Court's

CM/ECF system, which effects service upon all counsel of record.


*/s/ Isaac D. Chaput*
Isaac D. Chaput

A-0185

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANDREW BRIDGE, *et al.*,

                *Plaintiffs,*

   v.

OKLAHOMA STATE DEPARTMENT OF
EDUCATION, *et al.*

                *Defendants.*

No.   CIV-22-787-JD

## STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS

Submitted by:

ZACH WEST, OBA #30768
  *Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov

KYLE PEPPLER, OBA #31681
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Kyle.Peppler@oag.ok.gov

AUDREY WEAVER, OBA #33258
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Audrey.Weaver@oag.ok.gov

WILLIAM FLANAGAN, OBA #35110
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
William.Flanagan@oag.ok.gov

**COUNSEL FOR STATE DEFENDANTS**        **December 2, 2022**

In their response, Plaintiffs engage in word games and misdirection, seemingly seeking to avoid dismissal by stoking conceptual confusion. Pushing through the haze, it appears that Plaintiffs are in essence demanding that this Court accept either the irrational proposition that biological boys are the exact same as biological girls (even for purposes of restrooms), or the irrational proposition that sex is an amorphous term that States are prohibited—by the Constitution—from defining based on biology. Or both. Whichever it is, Plaintiffs' view requires a finding that truths that have been understood for centuries are now invidious.

Precedent does not require this, but rather dictates the opposite, and dismissal is proper. Their radical theories aside, Plaintiffs have admitted that the sex of the minors in question was, at birth (*i.e.*, *biologically*), different from the sex designation of the multiple-occupancy restrooms they now demand to use. That is enough, under binding precedent, to merit dismissal. No additional fact that Plaintiffs could establish would entitle them to relief.

I.    **Plaintiffs' contradictory allegations, unwarranted inferences, and barely disguised legal conclusions are not entitled to an assumption of truth.**

To begin, Plaintiffs repeatedly attempt to convert their labels and legal conclusions into factual allegations that must be accepted as true. *See, e.g.*, Doc. 53 at 5, 13 (claiming an allegation of "pretext" is factual). But "hyperbole or legal conclusions[,]" "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them[,]" "mere conclusions characterizing pleaded facts[,]" and internally contradictory allegations are not well-pled facts entitled to the assumption of truth. *Lockett v. Fallin*, 841 F.3d 1098, 1104 n.2 (10th Cir. 2016); *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (citation omitted).

Among other things, Plaintiffs argue that this Court must accept as true that the stated purpose in SB 615 is an "unfounded pretext to target students who are transgender . . . ." Doc.

1

A-0187

53 at 5 (quoting Doc. 1 at ¶ 52). This is a legal conclusion, not a fact entitled to the assumption of truth. *See, e.g., Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) ("general allegations of racial animus and discriminatory treatment are too vague and conclusory to state a claim"); *Jones v. Hosemann*, 812 F. App'x 235, 240 (5th Cir. 2020) (unpublished) (allegation of "pretext" is a "purely legal conclusion[]"). Furthermore, Plaintiffs' speculation about legislative purpose is baseless, as Plaintiffs fail to plead any facts to show the purpose of SB 615 is discriminatory rather than "[t]o ensure privacy and safety." OKLA. STAT. tit. 70, § 1-125(B).

This Court is not required to accept as true Plaintiffs' self-contradicting conclusion that their gender identity *is* their sex. *See* Doc. 53 at 6, 18. Instead, one fact pled by each Plaintiff is fatal to their claims for relief:

- "At birth, Andy was designated as 'female' on his birth certificate," Doc. 1 at ¶ 63;
- "At birth, Mark was designated as 'female' on his birth certificate," *id.* at ¶ 75;
- "At birth, Sarah was designated as 'male' on her birth certificate," *id.* at ¶ 94.

*See also id.* at ¶¶ 12-14, 60, 72, 91 (describing Plaintiffs as "transgender"); *and id.* at ¶¶ 27-28 (acknowledging that transgender individuals have "a gender identity that does not align with their sex assigned at birth."); *see also* Doc. 53 at 18 ("[T]he Students each alleged that they are transgender," and "their gender is different than the sex they each were assigned at birth ….").

The only reasonable inference this Court can draw from these factual allegations is that Plaintiff Bridge is a biological female, Plaintiff Miles is a biological female, and Plaintiff Stiles is a biological male.[1] The terms "biological female[,]" "biological male[,]" or "biological sex,"

---

[1] Even if Plaintiffs' gender identity and transgender status are properly pled factual allegations entitled to the assumption of truth, in other words, those facts are irrelevant to the language and application of SB 615, and therefore do not save their implausible claims from dismissal.

A-0188

as used by State Defendants incorporate the definition relevant to this dispute: the one contained in SB 615.[2] Accordingly, each Plaintiff is either a biological female or biological male "based on genetics and physiology, as identified on the individual's original birth certificate." OKLA. STAT. tit. 70, § 1-125. As a result, Plaintiffs' barebones assertions that "Andy Bridge is a boy, . . . Mark Miles is a boy, . . . Sarah Stiles is a girl[,]" Doc. 53 at 6, do not somehow create a fact dispute sufficient to survive dismissal. *See also id.* (acknowledging Plaintiffs are "transgender."); *see also id.* at 11 (admitting that "sex and gender identity are not identical concepts"). In sum, this Court must reject Plaintiffs' attempt to save their Complaint by improperly conflating their biological sex with their gender identity, in no small part because Plaintiffs fail to identify a single case that embraces this specific point.

Likewise, Plaintiffs cannot dodge the inescapable legal conclusion that their biological sex renders them dissimilar to members of the opposite sex in the context of multiple occupancy restroom and changing area use by representing the conflation of sex and gender identity as a "fact" the Court must accept as true. *See* Doc. 53 at 6 (alleging that separating multiple occupancy restroom use based on biological sex "treats students who are transgender differently from similarly-situated students who happen to be cisgender" (quoting Doc. 1 at ¶ 131)). Plaintiffs, by their own repeated admissions, are not similarly situated in the relevant respect here. As the Supreme Court has explained: "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal citation and marks omitted).

---

[2] Plaintiffs, on the other hand, casually interchange terms such as "gender," "gender identity," "sex," "true sex," "sex assigned at birth," sex "identified at birth," "boys," "girls," "male[s]," and "female[s]," none of which they ever clearly define. *See, e.g.,* Doc. 53 at 1-2, 5-7, 18, 22.

A-0189

## II.   Plaintiffs have not and cannot plead any set of facts to establish SB 615 intentionally discriminates in violation of equal protection.

At base, Plaintiffs' legal argument is that sex-based classifications necessarily entail classification based on transgender status. *See* Doc. 53 at 6-7, 22. The obvious import of Plaintiffs' argument is that *all* sex-based classifications inherently, intentionally, and invidiously discriminate based on gender identity. Plaintiffs offer no limiting principle for their theory, nor do they ever identify a single sex-based classification that would be constitutional. *Contra Kahn v. Shevin*, 416 U.S. 351, 356 n.10 (1974) ("Gender has never been rejected as an impermissible classification in all instances."). Rather, Plaintiffs openly compare separating restrooms based on biological sex to invidious racial segregation, *see, e.g.,* Doc. 53 at 7-9 and 16-17, which telegraphs quite plainly where Plaintiffs' logic leads. In sum, if sex-based classification *is* transgender-based equal protection discrimination, then no law recognizing the inherent physical differences between males and females could ever pass constitutional muster, directly contradicting binding precedent. *See also* Doc. 54 at 10-13.

Plaintiffs make no real effort to grapple with binding precedent contradicting their sweeping legal theory, choosing instead to focus on non-binding cases. For example, Plaintiffs ignore *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) and *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001), cited by State Defendants as expressly confirming immutable physiological differences between the two sexes are real. *Compare* Doc. 47 at 10 *with* Doc. 53. Although Plaintiffs make a half-hearted attempt to distinguish the facts of *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464 (1981), they do nothing to establish its legal principles are inapposite here. *Compare* Doc. 47 at 11 (quoting *Michael M.* for the point that "the sexes are not similarly situated in certain circumstances") *with* Doc. 53 at 15 (declaring *Michael M.* "completely

4

A-0190

inapposite."). Plaintiffs similarly cite *United States v. Virginia*, 518 U.S. 515 (1996), when it suits them, *see* Doc. 53 at 8, 12, while ignoring its unequivocal declaration that "[p]hysical differences between men and women . . . are enduring: '[t]he two sexes are not fungible . . . .'" Doc. 47 at 10 (quoting *Virginia*, 518 U.S. at 533). Finally, Plaintiffs fail to explain why the Tenth Circuit's ruling on bathrooms does not control. *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215 (10th Cir. 2007). In a footnote, Plaintiffs' only response is that *Bostock*'s reasoning would "equally apply" here. *See* Doc. 53 at 10 n.5 (citing *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731 (2021)). But that misses the point. *Etsitty* is binding on the district court until it is overruled, and neither *Bostock* nor the Tenth Circuit overruled *Etsitty*'s bathroom conclusion. *See* Doc. 47 at 12.

To be sure, Plaintiffs claim in a footnote "that they will not seek any relief in this action that applies beyond multiple occupancy restrooms . . . ." Doc. 53 at 5, n.2. This is a hollow assurance. Plaintiffs offer no explanation for how this Court could logically enjoin only part of SB 615 applying to multiple occupancy restrooms, given that students disrobe or undress, at least partially, in all three of these communal spaces.[3] Nor, importantly, do they even concede that shower or locker room separation based on biology *is* constitutional. Simply put, Plaintiffs cannot distance themselves from the sweeping legal consequences of their facial challenge by disclaiming it as applied to a certain factual scenario.

Because sex-based classifications do not *per se* establish transgender-based discrimination as a matter of law, Plaintiffs fail to plead any set of facts to establish SB 615's sex-separation intentionally discriminates against transgender status or gender identity. *See*

---

[3] Plaintiffs' statement that "[s]tudents do not disrobe or shower in multiple occupancy restrooms in Oklahoma schools," Doc. 53 at 14, is uncited and obviously false. Virtually every use of a urinal or toilet will involve disrobing of some sort.

A-0191

Doc. 47 at 4-8. And contrary to Plaintiffs' conclusory assertions, SB 615 applies equally to and affects all students. *Contra* Doc. 53 at 8-9 (claiming SB 615 "affects only transgender students"). Every student, regardless of gender identity, is prohibited from using the multiple occupancy restroom of the opposite biological sex. A non-transgender boy is affected, for example, because he cannot enter the restroom for girls, and vice versa.

Again, Plaintiffs offer nothing to plausibly establish SB 615 intentionally discriminates based on transgender status. A law is not "unconstitutional Solely because it has a . . . disproportionate impact." *Washington v. Davis*, 426 U.S. 229, 239 (1976); *see also* Doc. 47 at 5. Furthermore, members of the opposite biological sex are not similarly situated when it comes to the use of restrooms and changing areas. Because "the legitimate noninvidious purpose" of SB 615 "cannot be missed[,]" and is unambiguously stated in the plain language, Plaintiffs cannot establish intentional discrimination under any set of facts. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 275 (1979); *see also United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("It is a familiar principle of constitutional adjudication that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.").

Moreover, it is worth reiterating that the Supreme Court held that discrimination based on transgender status is discrimination **based on sex**—not the inverse, or a separate category entirely. *See* Doc. 54 at 13 (citing *Bostock*, 140 S. Ct. 1731). In light of *Bostock*, the Tenth Circuit echoed that "transgender discrimination … is discrimination 'because of sex' prohibited under Title VII." *Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019, 1028 (10th Cir. 2021). To go further, to make transgender status an entirely separate category, would require objective sex to yield

6

A-0192

entirely to subjective gender identity—a position that would obliterate the very sex-based classifications upon which equal protection is predicated in the first place.

In the end, Plaintiffs' equal protection claim is foreclosed by binding precedent, and SB 615 is rationally related to safety and privacy interests which "are legitimate interests." Doc. 53 at 15; *see also* OKLA. STAT. tit. 70, § 1-125 (describing the purpose of SB 615 "[t]o ensure privacy and safety . . . ."); *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) (affirming dismissal of equal protection claims because the policy was rationally related to the putative state interest). After all, a law "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotation omitted).

As to intermediate scrutiny, Plaintiffs *concede* that they "do not challenge the existence of sex-separated facilities at schools." Doc. 53 at 23. To the extent this is taken seriously, rather than treated as another play on words, this Court need not even *reach* the issue of whether the sex-separation within SB 615 withstands intermediate scrutiny. Nevertheless, if intermediate scrutiny is utilized, Plaintiffs cannot create a fact dispute over whether the State "actually" has a substantial interest in privacy and safety, or whether the law is "actually" substantially related to achieving that purpose. Doc. 53 at 15.[4] Plaintiffs openly admit that "safety and privacy of students are legitimate interests[,]" and binding precedent is in agreement. *See, e.g., Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) ("Our precedents also leave no room for doubt that

---

[4] Plaintiffs' arguments on these points are at times hopelessly contradictory. *See, e.g.*, Doc. 53 at 13, 15 (arguing that non-binding courts found justifications of privacy and safety "unfounded and unpersuasive" but conceding that "the safety and privacy of students are legitimate interests").

the protection of potential clients' privacy is a substantial state interest.") (quotation omitted); *see also* Doc. 47 at 11-17; *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005) ("Students of course have a significant privacy interest in their unclothed bodies"). Nor is the interest in shielding students' bodily privacy from the presence of the opposite sex "irrelevant" in a place where students literally disrobe to perform bodily functions. *Contra* Doc. 53 at 14.

And it is "almost axiomatic" that SB 615 achieves its privacy and safety interests here by ensuring that students are not forced to disrobe in the presence of members of the opposite sex. *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001) ("None of our gender-based classification equal protection cases have required that the statute under consideration must be capable of achieving its ultimate objective in every instance."); *see also* Doc. 54 at 16-19 (describing "that by separating multiple occupancy restroom and changing facilities on the basis of sex, SB 615 eliminates the opportunity for involuntary bodily exposure to the opposite sex in the most common areas where such bodily exposure may take place."); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 437 (2002) (stating the government "does not bear the burden of providing evidence that rules out every theory ... that is inconsistent with its own").

III.    *Plaintiffs cannot save their Title IX claims by collaterally attacking binding regulations and/or re-defining sex as it is used in Title IX.*

As to Plaintiffs' Title IX claims, Plaintiffs appear to concede that binding regulations expressly permit laws like SB 615 that "separate toilet, locker room, and shower facilities on the basis of sex . . . ." Doc. 53 at 23 (citing 34 C.F.R. § 106.33). Plaintiffs nonetheless attempt to save their Title IX claims by implicitly and collaterally attacking the validity of 34 C.F.R. § 106.33's approval of sex-separated facilities. They do so by arguing that the term "sex" must include gender identity. This, of course, is just a roundabout way of saying that a regulation

8

A-0194

(or a state statute) separating toilets, locker rooms, and showers based on biological sex is unconstitutional.  Plaintiffs' word games continue apace.

Of course, 34 C.F.R. § 106.33 draws support from 20 U.S.C. § 1686, which expressly permits sex-separating "living facilities." Since Title IX's enactment, living facilities have consistently been understood to include restrooms and locker rooms. *See, e.g., Implementing Title IX: The Hew Regulations*, 124 U. PA. L. REV. 806, 810 (1976) ("The term 'living facilities' may include restrooms, lockers, and other school areas where disrobing takes place . . . ."); Jonathan H. Adler, *Auer Evasions*, 16 GEO. J.L. & PUB. POL'Y 1, 20 (2018) ("Title IX expressly allows for the maintenance of single-sex living facilities, such as dormitories, bathrooms, and the like."). Interpreting "living facilities" as encompassing restrooms and the like is further consistent with the legislative intent for Title IX "to permit differential treatment by sex . . . in sports facilities or other instances **where personal privacy must be preserved.**" 118 Cong. Rec. 5,807 (Feb. 28, 1972) (statement of Sen. Birch Bayh) (emphasis added); *see also* Doc. 47 at 20-23. Plaintiffs do virtually nothing to rebut the unassailable evidence that "sex" as used in Title IX meant biological sex. *See* Doc. 47 at 21-22.

Plaintiffs do cite *Grimm v. Gloucester Cnty. Sch. Bd.,* 972 F.3d 586 (4th Cir. 2020), but in doing so they inadvertently reveal why *Grimm* is entirely unpersuasive. *See* Doc. 53 at 23. To say, as *Grimm* did, that sex-separated facilities are permitted but that they can't be applied based on sex (or based on a State's supposedly "discriminatory notions of what 'sex' means") is sophistry at its worst. *Grimm*, 972 F.3d at 618.  It is a ruling that sex-separated facilities are not permitted by the U.S. Constitution—despite all the history and binding precedent to the contrary—dressed up in flimsy rhetoric. Although State Defendants do not have the space to

A-0195

fisk every single court decision cited by Plaintiffs, their reasoning is often similarly weak and porous. In the abrogated *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1052 (7th Cir. 2017), for example, Plaintiffs cite the Seventh Circuit's reliance on "[c]ommon sense" for the proposition that a bathroom stall is sufficient for privacy. Doc. 53 at 16. But if common sense is the measuring stick, then is it really "common sense" that underage boys and girls should be required to disrobe and shower in the same room as each other? Of course not.  Common sense here, if that is what is being relied on, goes entirely in Defendants' favor.[5]

Plaintiffs also have little answer for the two district court decisions from Tennessee that State Defendants cited. The first, issued one month ago, rebutted the very Title IX arguments Plaintiffs make here: "Any argument that the statute merely allows for the existence of separate restrooms, but does not allow schools to limit access to the restroom to the sex for which it is designated is untenable and appears to contradict the very purpose of allowing separate facilities." *D.H. by A.H. v. Williamson Cnty. Bd. of Educ.*, No. 3:22-CV-00570, 2022 WL 16639994, at *10 (M.D. Tenn. Nov. 2, 2022). For the second, Plaintiffs claim that the court's decision was based solely on procedural grounds. Doc. 53 at 24. But they ignore the court's findings that "*Bostock* does not require" the same warped interpretation of Title IX put forth by Plaintiffs here, and that the federal entities—in touting that warped view—"fail[ed] to cabin themselves to *Bostock*'s holding" and instead "advance[d] *new* interpretations of Titles VII and IX and impose[d] *new* legal obligations on regulated entities." *Tenn, v. U.S. Dep't of Educ.*, No. 3:21-CV-308, 2022 WL 2791450, at *16 (E.D. Tenn. July 15, 2022) (emphasis in original).

---

[5] Moreover, in criticizing State Defendants for citing older decisions or dissents, Plaintiffs appear to forget that non-binding case law is only good so far as it is persuasive—and a dissent or even an "outdated" decision can be just as persuasive if not more so than a majority.

A-0196

Respectfully submitted,

*s/ Audrey Weaver*

ZACH WEST, OBA #30768
  *Solicitor General*
KYLE PEPPLER, OBA #31681
AUDREY A. WEAVER, OBA #33258
William Flanagan, OBA #35110
  *Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:  (405) 521-3921
Zach.West@oag.ok.gov
Kyle.Peppler@oag.ok.gov
Audrey.Weaver@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for State Defendants*

11

A-0197

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ELI BRIDGE, on behalf of Andrew Bridge, a minor, by his next friends and parents, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| OKLAHOMA STATE DEPARTMENT OF EDUCATION, et al., | ) ) ) |
| Defendants. | ) ) |

Case No. CIV-22-00787-JD

## <u>ORDER</u>

Pending before the Court are State Defendants' Motion to Dismiss [Doc. No. 47] and Plaintiffs' Motion for Preliminary Injunction [Doc. No. 24]. In the briefing related to these motions, the parties rely on *Adams v. School Board of St. Johns County*, 3 F.4th 1299 (11th Cir. 2021). In August 2021, the Eleventh Circuit granted a petition for rehearing en banc and vacated the panel decision. The Eleventh Circuit's en banc order and several concurring or dissenting opinions have now been filed and published. *See Adams v. Sch. Bd. of St. Johns Cnty.*, --- F.4th ----, 2022 WL 18003879 (11th Cir. 2022) (en banc).

The Court finds that supplemental briefing would be helpful concerning the en banc decision in *Adams*, whether it impacts any of the issues or filings before this Court (and if so, which particular filings), and the procedural sameness or differences between the *Adams* case and this case. The parties should also direct the Court to and discuss any

other authority directly relevant to an issue raised in a pending motion that was issued

after the briefing on that motion was filed.

IT IS THEREFORE ORDERED that the parties may file supplemental briefs in

response to this Order related solely to the topics mentioned above on or before **Monday,**

**February 6, 2023.** The supplemental briefs shall not exceed 20 pages.

IT IS SO ORDERED this 5th day of January 2023.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

A-0199

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ANDREW BRIDGE, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| -vs- | ) | |
| | ) | |
| OKLAHOMA STATE DEPARTMENT | ) | Case No. CIV-22-787-JD |
| OF EDUCATION, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**SCHOOL DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY INJUNCTION
AND BRIEF IN SUPPORT**

Pursuant to the Order of January 5, 2023 [Doc. 68], Harding Independence Charter District, Inc. ("HICD"), Noble Public Schools ("NPS") and Moore Public Schools ("MPS") (collectively "School Defendants") submit their Supplemental Response to Plaintiffs' Motion for Temporary Injunction.

**Proposition I: Unlike *Adams,* S.B. 615 mandates School Defendants' bathroom usage policy.**

Since Plaintiffs filed of their lawsuit and the parties filed various responsive motions and briefs, the Eleventh Circuit revised its decision in *Adams v. Sch. Bd. of St. Johns Cnty.,* ___ F.4th __, 2022 WL 18003879 (11th Cir. 2022). In *Adams,* the plaintiff, a transgender male, filed suit against the school district asserting that his rights under the Equal Protection Clause and Title IX were violated by the school district's bathroom usage policy. *Id.*

The school district's unwritten bathroom policy required students to use the bathroom

according to their biological sex.  As an accommodation, the school district offered single

stall gender neutral bathrooms to any student, including transgender students. The school

district referenced a student's sex according to the original enrollment documents first

submitted by a student. The school district did not accept updates to a student's enrollment

documents to conform with a student's gender identity.  In 2017, the plaintiff, a transgender

male,  used the high school's  male bathroom until a couple of students complained to

administration. After receiving the student complaint, the school's administration directed

the plaintiff to use a gender neutral bathroom.[1]  *Id.* at 797.

Upon review, the Eleventh Circuit held that school district's bathroom policy did not

violate the plaintiff's equal protection rights because it did not unlawfully discriminate on

the basis of sex. *Id.* at 805. The Court reasoned that the school board has a governmental

interest in protecting students' privacy interests in bathrooms and its bathroom policy was

substantially related to the governmental objective. *Id.* The Court also found that, "[b]ecause

the bathroom policy divides students into two groups, both of which include transgender

students, there is a "lack of identity" between the policy and transgender status, as the

bathroom options are 'equivalent to th[ose] provided [to] all' students of the same biological

sex." *Id.* at 809.  Additionally, the Eleventh Circuit held that the school's bathroom policy

---

[1] After the plaintiff in *Adams* filed his lawsuit, the Florida legislators' subsequently passed the Parental Rights in Education bill and the Florida State Board of Education adopted regulations which required each school district to notify parents of its bathroom usage policy including identifying which bathrooms/locker rooms were not separated by biological sex in 2022.

A-0201

did not violate the plaintiff's rights under Title IX because sex-separated living facilities, including bathrooms based on biological sex, are allowed. *Id.* at 811.

The factual background in *Adams* as to policymaking process engaged in y th school district is nothing like that faced by public school districts in Oklahoma, including the Schol Defendants, under S.B. 615. In *Adams,* the school district implemented its own policies and procedures regarding bathroom usage for transgender students.  Like the school policy at issue in *Adams,* Oklahoma's S.B. 615 requires usage of multi-occupancy bathrooms according to a student's biological sex assigned at birth and mandates school districts offer a reasonable accommodation of a single occupancy bathroom/locker room for transgender students. Unlike *Adams*, S.B. 615 deprives School Defendants of their discretionary policymaking authority regarding policies on bathroom usage for their students. Rather, School Defendants are faced with the untenable choice of either complying with the mandates of S.B. 615 and the administrative regulations of the Oklahoma State Board of Education or face reduction of five percent (5%) of their state funding, the possible loss of accreditation, and possible lawsuits from students for non-compliance. Although the policies in *Adams* and S.B. 615 are similar, School Defendants are not allowed to drive their own bus on bathroom usage policy. Instead, they must follow the mandates of state law without any discretionary input or face significant monetary penalty and possible loss of accreditation for noncompliance.

A-0202

## CONCLUSION

For the reasons stated above, School Defendants take no position on the merits of Plaintiffs' requested relief as to S.B. 615 and OSDE Rules. Rather, School Defendants provide the Court with information regarding their inclusion in this litigation and the untenable burden placed on School Defendants because of S.B. 615. Unlike *Adams,* the Oklahoma Legislators and the Oklahoma Board of Education mandate School Defendants' multi-usage bathroom policy with significant monetary penalty for noncompliance.

Respectfully submitted,

The Center For Education Law, P.C.

s/Laura L. Holmgren-Ganz
Laura L. Holmes, OBA #14748
Laura L. Holmgren-Ganz, OBA #12342
Justin C. Cliburn, OBA #32223
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile:  (405) 528-5800
E-Mail:  LHolmes@cfel.com
E-Mail: LGanz@cfel.com
E-Mail: JCliburn@cfel.com
Attorneys for Harding Independence
Charter District, Inc.

Rosenstein, Fist & Ringold

s/Kent B. Rainey
(Signed by Filing Attorney with
permission of Attorney)
Kent B. Rainey, OBA #14619
Alison A. Verret, OBA #20741
Adam T. Heavin, OBA #34966
525 South Main, Suite 700
Tulsa, OK 74103
Telephone:  (918) 585-9211
Facsimile:   (918) 583-5617
E-Mail: borainey@rfrlaw.com
E-Mail: averrett@rfrlaw.com
Attorneys for Moore Public Schools
and Noble Public Schools

A-0203

**<u>Certificate of Service</u>**

I hereby certify that on February 3, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System: Jon W. Davidson, Taylor Brown, Megan Lambert, Paul D. Castillo,  Mitchell A. Kamin, Isaac D. Chaput, Audrey Weaver.

<u>S/Laura L. Holmgren-Ganz          </u>
Laura L. Holmgren-Ganz

A-0204

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

Andrew Bridge, et al.,

    *Plaintiffs*,

        v.

Oklahoma State Department of
Education, et al.,

    *Defendants*.

Case No.: CIV-22-787-JD

## PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *ADAMS V. SCHOOL BOARD OF ST. JOHNS COUNTY*

This brief responds to the Court's January 5, 2023 order (the "January 5 Order") asking the parties to address whether the en banc decision in *Adams v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), impacts any issues or filings before this Court and procedural sameness or differences between *Adams* and this case, as well as other recent opinions relevant to the issues raised in the briefs. *See* ECF No. 68. As explained below, nothing in the *Adams* decision affects the Students' pleadings or entitlement to preliminary injunctive relief in this case, and other recent decisions support the Students' positions.

In July 2018, following a three-day bench trial on the merits, the U.S. District Court for the Middle District of Florida entered judgment in favor of Drew Adams, a Florida high school student, finding that his school district's policy barring him from the boys' restroom because he is transgender violated the Fourteenth Amendment to the U.S. Constitution and

Title IX of the Education Amendments of 1972 ("Title IX"). *Adams v. Sch. Bd. of St. Johns Cty.*, 318 F. Supp. 3d 1293 (M.D. Fla. 2018). In July 2021, the U.S. Court of Appeals for the Eleventh Circuit affirmed the district court's judgment.[1] The next month, the Eleventh Circuit granted a petition for rehearing en banc, vacating the July 2021 panel decision. In December 2022, the Eleventh Circuit, sitting en banc, reversed the district court's judgment. *Adams v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791 (11th Cir. 2022) (en banc).

Nothing in *Adams* changes the Students' entitlement to preliminary injunctive relief or the validity of their claims. The vast weight of authority, from both federal appellate and district courts, holds that restrictions on transgender students' access to multiple occupancy restrooms matching their gender identity discriminate based on sex, transgender status, gender conformity, and/or sex stereotypes and violate or likely violate the Equal Protection Clause and Title IX. The en banc decision in *Adams*—an out-of-circuit opinion wrongly decided both on the factual record and applicable law—stands as an outlier, at odds with the overwhelming weight of authority throughout the country. To the extent the Court considers *Adams* at all, Judge Jill Pryor's thorough dissenting opinion, which is faithful to both the factual record and relevant law, should guide the Court's analysis. *Adams*, 57 F.4th at 832–60 (Pryor, J., dissenting). But as the State Defendants have conceded, because *Adams* is non-binding, out-of-circuit authority, the en banc decision ultimately is "no

---

[1] The Eleventh Circuit had originally affirmed the district court order in August 2020. *Adams v. Sch. Bd. of St. Johns Cty.*, 968 F.3d 1286 (11th Cir. 2020). After a member of that court withheld the mandate, the panel majority sua sponte withdrew its initial opinion and issued a revised opinion in July 2021, again affirming the district court order. *Adams v. Sch. Bd. of St. Johns Cty.*, 3 F.4th 1299 (11th Cir. 2021).

A-0206

substitute for this Court's independent legal analysis." *See* State Defs.' Resp. to Pls.' Mot. for Prelim. Inj. (ECF No. 54) at 13.[2]

## ARGUMENT

### I.    THE PROCEDURAL POSTURE HERE DIFFERS FROM THAT IN *ADAMS* IN SUBSTANTIAL AND SIGNIFICANT RESPECTS.

The procedural posture in *Adams* differs greatly from that in this case. In *Adams*, the district court issued a final judgment and made findings of fact and conclusions of law following a three-day bench trial. *Adams*, 318 F. Supp. 3d at 1298–1327. In so doing, the district court developed what the Eleventh Circuit referred to as "a thorough factual record." *Adams*, 3 F.4th at 1304.

As the en banc panel recognized, after a bench trial the appellate court reviews the district court's conclusions of law *de novo* but must review the district court's factual findings only for clear error. *Adams*, 57 F.4th at 799. Clear error is widely recognized as a high threshold. Indeed, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985); *see also Wallace v. NCL (Bahamas) Ltd.*, 733 F.3d 1093, 1100 (11th Cir. 2013) (clear error is a "highly deferential standard of review").

---

[2] *See Adams*, 57 F.4th at 860 (Pryor, J., dissenting) ("As to equal protection claims by transgender students, the facts unique to each case will determine whether a school district has met its burden under heightened scrutiny.").

A-0207

Notwithstanding the en banc panel's recognition that it must generally defer to the district court's factual findings, the en banc panel largely ignored the factual record below or imposed its own skewed lens on the district court's findings. As Judge Jill Pryor recounted in her vigorous dissent, "the majority opinion d[id] not challenge these findings," yet "reframe[d] th[e] case to its liking" and "reverse[d] the district court without addressing the question presented, without concluding that a single factual finding [wa]s clearly erroneous, without discussing any of the unrebutted expert testimony, and without putting the School District to its evidentiary burden." *Adams*, 57 F.4th at 833, 842 (Pryor, J., dissenting); *see also id.* at 832 (Pryor, J., dissenting) (en banc panel's conclusion that gender identity had no bearing on transgender student's case rests on "disregard of the record evidence—evidence the majority does not contest").

Rather than deferring to the district court's factual findings or identifying any clear error in those findings, the en banc panel substituted its own facts, in particular introducing the term "biological sex" to excuse the school district's discrimination against transgender students. *Id.* at 842–44 (Pryor, J., dissenting). The en banc panel defined "biological sex" as "sex based on chromosomal structure and anatomy at birth" based solely on its own *ipse dixit*, disregarding "unrefuted evidence that gender identity is an immutable, biological component of sex, not something entirely separate." *Id.* at 796; *id.* at 842 (Pryor, J., dissenting). As the district court record in *Adams* established, as Judge Pryor recognized, and as the Students have demonstrated here through expert testimony, "biological sex" "encompasses numerous biological components, *including* gender identity," which should be viewed as the primary component particularly when, as here, "a student's biological

4

A-0208

markers of sex diverge—as they will with all transgender students because, by definition, their gender identity is different from their sex assigned at birth." *Id.* at 842 (Pryor, J., dissenting) (emphasis added). The en banc panel's misuse of the term "biological sex" in contravention of the factual record in *Adams* is but one procedural error permeating the entire opinion and distinguishing it from this case. *See id.* at 844 (Pryor, J., dissenting).

Putting aside the significant procedural errors made by the en banc panel, the relevant standard of review here is much more favorable to the Students than the applicable standard in *Adams*. Unlike in *Adams*, where the transgender student was required to prove by a preponderance of the evidence at trial that the school board violated his rights under the Equal Protection Clause and/or Title IX and that this violation caused him damage, *see Adams*, 318 F. Supp. 3d at 1310, in reviewing the State Defendants' motion to dismiss in this case, the Court must view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the Students], accepting the [Students'] well-pled facts as true and drawing all reasonable inferences in the [Students'] favor." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019); *see also* Pls.' Opp'n to State Defs.' Mot. to Dismiss (ECF No. 53) at 3. And unlike in *Adams*, to prevail on their motion for preliminary injunction, the Students need demonstrate only a substantial likelihood that they will succeed on the merits, not that they have already proved their case by a preponderance of the evidence. *See* Pls.' Mot. for Prelim. Inj. at 11. These are less demanding standards of review than that in *Adams*, and the Students easily satisfy them on the current record.

The Court must decide the adequacy of the Students' pleadings based solely on the specific allegations in their complaint, not the unsupported "factual" assertions underlying

5

the *Adams* en banc ruling. Likewise, the Court must decide the Students' entitlement to preliminary injunctive relief based on the factual record here, which includes unrebutted expert and lay testimony regarding the irreparable harms inflicted on the Students by SB 615 and the School Defendants' disciplinary policies—a record that is at odds with the *Adams* en banc panel's view of the issues and evidence before it.

## II.    THE *ADAMS* EN BANC DECISION IS AN OUTLIER, INCONSISTENT WITH THE VAST WEIGHT OF AUTHORITY, AND SHOULD HAVE NO IMPACT ON THE COURT'S CONSIDERATION OF THIS CASE.

Aside from the en banc panel's plain and improper disregard of the district court's factual findings in *Adams*, the en banc decision is wrong on the merits. As demonstrated in the parties' briefing on the motion to dismiss and motion for preliminary injunction here, the overwhelming weight of recent authority is in the Students' favor. *See, e.g.*, Pls.' Mot. for Prelim. Inj. at 12 & n.6. It is undisputed that every court of appeals to have considered these issues prior to the *Adams* en banc panel, and numerous district courts, have held that excluding transgender students from multiple occupancy school restrooms consistent with their gender identity violates or is likely to violate the Equal Protection Clause and Title IX. The Eleventh Circuit stands alone in concluding otherwise. The *Adams* en banc decision is nothing more than an outlier, wrongly decided on the facts and relevant law.

As an initial matter, the *Adams* en banc decision does not even attempt to grapple with or distinguish—let alone acknowledge—the numerous other federal appellate and district court decisions contrary to its reasoning or outcome, all of which the Students addressed in their briefing and with which the State Defendants did not seriously contend. *See* Pls.' Mot. for Prelim. Inj. at 12 & n.6; Pls.' Opp'n to State Defs.' Mot. to Dismiss at

6

A-0210

13 & n.7; *see also* State Defs.' Resp. to Pls.' Mot. for Prelim. Inj. at 13 (acknowledging "favorable district and circuit court rulings" for the Students).

Despite the en banc panel's broad disregard of relevant case law, the *Adams* en banc decision at least supports the conclusion that SB 615 is subject to heightened or intermediate scrutiny, not rational basis review. The en banc panel recognized that a policy excluding transgender students from restrooms that do not match their "sex determined at birth" is a "sex-based classification." *Adams*, 57 F.4th at 801. Because that policy "classifies on the basis of biological sex," the en banc panel held that it was "subject to intermediate scrutiny." *Id.* at 803. The same is true here.

Not only does SB 615 contain a sex-based classification, but like the policy in *Adams*, SB 615 facially targets transgender students, as it is only those who are transgender who are barred from using a bathroom consistent with their gender identity. *See id.* at 845–46 (Pryor, J., dissenting); *see also* Pls.' Opp'n to State Defs.' Mot. to Dismiss at 8–9.[3] SB 615, like the policy in *Adams*, permits cisgender students to use the restroom matching their gender identity but prevents transgender students from doing the same. Accordingly, like the policy at issue in *Adams*, SB 615 "facially discriminates against transgender students by depriving them of a benefit that is provided to all cisgender students. It places all transgender students on one side of a line, and all cisgender students on the other side."

---

[3] The *Adams* en banc panel erred in not considering that such a policy discriminates not only based on sex but also on the basis of transgender status, which—as the Students have argued, *see* Pls.' Mot. for Prelim. Inj. at 14–16, and as Judge Pryor's dissent demonstrates—independently meets all of the requirements for heightened scrutiny. *See Adams*, 57 F.4th at 845–46 (Pryor, J. dissenting).

A-0211

*Adams*, 57 F.4th at 846 (Pryor, J., dissenting); *id.* at 845 (Pryor, J., dissenting) ("[T]he bathroom policy categorically deprives transgender students of a benefit that is categorically provided to all cisgender students—the option to use the restroom matching one's gender identity."). Because SB 615 and the School Defendants' disciplinary policies facially discriminate against transgender students based on their transgender status, intermediate scrutiny applies independently of whether SB 615 is recognized as making a sex-based classification.

For these reasons, the en banc panel's reliance on *Geduldig v. Aiello*, 417 U.S. 484 (1974), was misplaced. *Geduldig* involved the exclusion of pregnancy-related disabilities from a state insurance program. The Supreme Court ruled that this exclusion did not discriminate based on sex because some women—those who were not pregnant— benefitted from a less comprehensive and less costly insurance program that otherwise would demand a higher rate of employee contribution or a lower scale of benefits for those suffering insured disabilities. *Id.* at 494–97. While some women (those disabled by pregnancy) were harmed by the exclusion, other women (as well as men who could not become pregnant) were not harmed and instead benefitted. As a result, the program was held not to discriminate against women as a class. *Id.* at 496. Unlike in *Geduldig*, however, under SB 615, no "benefits of the [law] accrue to" any transgender students. *Adams*, 57 F.4th at 846 (Pryor, J., dissenting) (quoting *Geduldig*, 417 U.S. at 496 n.20). Transgender students—and only transgender students—are harmed by being "denied the benefit of

8

A-0212

using the restrooms corresponding to their gender identities." *Id.* (Pryor, J., dissenting).[4]

SB 615 harms transgender students as a class, discriminating against them on the basis of both their sex and their transgender status. This constitutes facial discrimination against transgender students. *Id.* (Pryor, J., dissenting); *see also Fain v. Crouch*, 2022 WL 3051015, at *8 (S.D.W. Va. Aug. 2, 2022) (rejecting argument that state law that denied transgender individuals treatment available to cisgender individuals was facially neutral under *Geduldig*).

While the *Adams* en banc panel found that the restroom policy there satisfied heightened scrutiny based on student privacy interests (and, tellingly, it did not rely on alleged concerns about student *safety* as a sufficient justification for the policy), that fact-specific determination has no bearing on whether or not—based on the current record and in the current procedural posture of this case—SB 615 serves an important governmental objective and is substantially related to achieving it. On the record in this case, there is no basis for dismissal of the Students' claims on the pleadings, and this Court should enter the preliminary injunction the Students seek. As Judge Pryor observed with respect to the policy in *Adams*, even if the State Defendants' asserted interest of student "privacy" is a

---

[4] The error of the *Adams* en banc panel is further confirmed by *Obergefell v. Hodges*, 576 U.S. 644 (2015). There the Supreme Court recognized that the restriction of marriage to different-sex couples treated gay men and lesbians as "unequal" to heterosexuals by locking gay men and lesbians and only them out of marriage. *Id.* at 670. It did not matter that state marriage restrictions never expressly referred to gay men or lesbians. It also did not matter that some gay men and lesbians did not have a partner they wished to marry. *All* gay men and lesbians were denied the ability to marry, just as *all* transgender students are denied the ability under SB 615 to use restrooms consistent with their gender identity. This is facial discrimination, which the Supreme Court in *Obergefell* held violated not only the fundamental right to marry but also the Equal Protection Clause. *See id.* at 672–75.

A-0213

sufficiently important interest to satisfy heightened scrutiny, the State Defendants have failed to carry their burden to demonstrate that SB 615 is substantially related to that asserted interest.[5] *See* Pls.' Mot. for Prelim. Inj. at 16–19; Pls.' Reply in Supp. of Mot. for Prelim. Inj. (ECF No. 62) at 11–13. Just as in *Adams*, the State Defendants' purported evidence in support of SB 615 amounts to bald speculation from certain Oklahoma parents that "the mere presence of, for example, a transgender girl could make a cisgender girl feel as uncomfortable in the bathroom as she might be in the presence of a cisgender boy." *Adams*, 57 F.4th at 851 (Pryor, J., dissenting). But "generalized guesses about how school-aged cisgender students may or may not feel with transgender students in the bathroom is not enough to carry the heavy weight of heightened scrutiny." *Id.* (Pryor, J., dissenting).

The en banc panel's analysis with respect to Title IX is equally flawed. Just as Judge Pryor recognized with respect to the policy in *Adams*, "a but-for cause of [the Students'] discriminatory exclusion from [the restrooms associated with their gender identity] was 'sex' within the meaning of Title IX," resulting in violation of Title IX. *Id.* at 858 (Pryor, J., dissenting).[6] Any statutory or regulatory carveout to Title IX is irrelevant. The exceptions to Title IX simply suggest that "the act of creating sex-separated [facilities] in and of itself is not discriminatory." *Id.* (Pryor, J., dissenting); *see also* Pls.' Opp'n to State

---

[5] *See, e.g.*, *Adams*, 57 F.4th at 832 (Pryor, J., dissenting) (school district "bore the evidentiary burden of demonstrating a substantial relationship between its bathroom policy and its asserted governmental interests"); *id.* at 850–51 (Pryor, J., dissenting) ("The burden of justification is demanding and it rests entirely on the School District.").

[6] *See Adams*, 57 F.4th at 856 (Pryor, J., dissenting) ("[O]nly cisgender students receiv[e] the benefit of being permitted to use the restroom matching their gender identity [while] transgender students [are] denied that benefit.").

A-0214

Defs.' Mot. to Dismiss at 23–24. Like the plaintiff in *Adams*, the Students are not challenging the creation of sex-separated facilities in the present case, only their exclusion from multiple occupancy school restrooms that match their gender identity when cisgender students are not so excluded. *See Adams*, 57 F.4th at 832 (Pryor, J., dissenting). Title IX's exceptions do not "address how an educational institution may assign a person to a facility when the biological markers of his sex point in different directions" or "permit an educational institution to rely on its own discriminatory notions of what 'sex' means." *Id.* at 859 (Pryor, J., dissenting).

In sum, the *Adams* en banc decision should have no impact on the Court's decision in this case. That decision reflects a wholesale disregard of the factual record developed in the district court, a flawed and unsupported understanding of the role of gender identity in determining biological sex, and a failure to acknowledge relevant case law. The decision should be discounted as erroneous and contrary to the overwhelming weight of recent decisions finding in favor of transgender students on the issues presented here.

## III.    OTHER RECENT DECISIONS FURTHER DEMONSTRATE THAT THE STUDENTS' CLAIMS SHOULD NOT BE DISMISSED AND THAT PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED HERE.

The Court's January 5 Order also instructed the parties to "direct the Court to and discuss any other authority directly relevant to an issue raised in a pending motion that was issued after the briefing on that motion was filed." *See* ECF No. 68. Several recent decisions entered after the Students' briefing was completed on the motion to dismiss and motion for preliminary injunction warrant the Court's attention.

11

A-0215

In *Hammons v. University of Maryland Medical System Corp.*, a transgender man sued various health systems associated with the University of Maryland, pursuant to Section 1557 of the Affordable Care Act ("ACA"), claiming sex discrimination in the health systems' refusal to allow him to have a hysterectomy performed at their hospital to treat his gender dysphoria. 2023 WL 121741, at *1 (D. Md. Jan. 6, 2023). Section 1557 of the ACA relies on the availability of a claim under Title IX. Therefore, "as under Title IX, Section 1557 prohibits discrimination 'on the basis of sex.'" *Id.* at *5 (citation omitted).

In granting summary judgment in favor of the transgender man, the court concluded that "maintaining a policy against providing gender-affirming care ... and applying that policy [to the transgender man] when cancelling his surgery [wa]s discrimination on the basis of sex." *Id.* at *7. In so holding, the court relied upon the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), on which the Students likewise relied in their briefing on the pending motions. Applying the reasoning of *Bostock*, the court in *Hammons* found that "if a hospital has a policy against performing a surgery to treat gender dysphoria—a condition inextricably related to a person's sex—but will perform that surgery to treat any other medical diagnosis, the hospital intentionally relies on sex in its decisionmaking." *Hammons*, 2023 WL 121741, at *7. The court also relied upon the Fourth Circuit's decision in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), which was discussed in the parties' briefs in this case. *Hammons*, 2023 WL 121741, at *7; *see also* Pls.' Mot. for Prelim. Inj. at 21; Pls.' Reply in Supp. of Mot. for Prelim. Inj.

A-0216

at 14; Pls.' Opp'n to State Defs.' Mot. to Dismiss at 17–19.[7] *Hammons* thus provides further support for the conclusion that there is a substantial likelihood the Students will prevail on their Title IX claims. *See also C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, 2022 WL 17788148, at *5–6 (W.D. Wash. Dec. 19, 2022) (insurance provider violated Section 1557 of the ACA, and by extension Title IX, by denying coverage for gender-affirming care in self-funded health care plans).

In *Soule by Stanescu v. Connecticut Association of Schools, Inc.*, the Second Circuit found that a Connecticut interscholastic athletic conference could not be held liable under Title IX for permitting transgender students to compete on gender-specific athletic teams consistent with their gender identity. 57 F.4th 43 (2d Cir. 2022). The court found that the athletic conference lacked notice that such a policy could violate Title IX, proving fatal to Title IX claims brought by cisgender students. *Id.* at 54–55. In concluding that the athletic conference lacked such notice, the court cited "the Supreme Court's recent decision in

---

[7] The Students anticipate that the State Defendants may reference the recent decision in *B.P.J. v. West Virginia State Board of Education*, 2023 WL 111875 (S.D. W. Va. Jan. 5, 2023), in their supplemental briefing; however, that decision, which did not concern transgender students' use of school restrooms, is distinguishable from the facts here. Moreover, the *B.P.J.* court failed to follow binding Fourth Circuit precedent, including the *Grimm* decision. The *Hammons* court, on the other hand, properly applied circuit precedent and in so doing provided an analysis and reached an outcome that fully support the Students' position here. In *B.P.J.*, the court found constitutionally permissible a West Virginia statute excluding all "biological males," defined to include transgender girls, from participation on girls' sports teams. *Id.* at *1. The court denied the plaintiff's motion for summary judgment on her equal protection and Title IX claims, holding that the statute was substantially related to the important government interest of providing equal athletic opportunities for females and did not violate Title IX because transgender girls were not excluded from school sports entirely. *Id.* at *5–10. That decision—which, again, involved facts different from those here and, in any event, improperly disregarded controlling Fourth Circuit precedent—has been appealed. *See B.P.J. v. W. Va. State Bd. of Educ.*, No. 23-1078 (4th Cir.).

A-0217

*Bostock* … and the decisions of [its] sister circuits interpreting Title IX," including decisions holding that Title IX does not prohibit schools from treating transgender students consistent with their gender identity and "establish[ing] that discrimination based on transgender status is generally prohibited under federal law." *Id.* at 55–56. Like *Hammons*, the *Soule* decision provides further support for the Students' Title IX claims, including the Students' reliance on *Bostock*.

## CONCLUSION

The *Adams* en banc decision is an outlier, wrong on the law and the facts, and should have no impact on this case. For the reasons discussed above and in their prior briefing, the Students have adequately pleaded claims under the Equal Protection Clause and Title IX and are entitled to preliminary injunctive relief.

A-0218

DATED: February 6, 2023                    Respectfully submitted,

                                            /s/ Isaac D. Chaput
                                           Isaac D. Chaput


Jon W. Davidson (*pro hac vice*)           Paul D. Castillo (*pro hac vice*)
(admitted only in California)              Lambda Legal Defense and
American Civil Liberties Union             Education Fund, Inc.
Foundation                                 3500 Oak Lawn Ave., Ste. 500
120 Broad Street, 18th Floor               Dallas, Texas 75219
New York, New York 10005-3919              Telephone: (214) 219-8585
Telephone: (323) 536-9880                  Facsimile: (214) 481-9140
Facsimile: (212) 809-0055                  pcastillo@lambdalegal.org
jondavidson@aclu.org


Megan Lambert                              Mitchell A. Kamin (*pro hac vice*)
Bar Number 33216                           Covington & Burling LLP
American Civil Liberties Union of          1999 Avenue of the Stars
Oklahoma Foundation                        Los Angeles, CA 90067
PO Box 13327                               Telephone: (424) 332-4800
Oklahoma City, OK 73113                    mkamin@cov.com
Telephone: (405) 525-3831
Mlambert@acluok.org                        Isaac D. Chaput (*pro hac vice*)
                                           Covington & Burling LLP
                                           Salesforce Tower
                                           415 Mission Street, Suite 5400
                                           San Francisco, CA 94105
                                           Telephone: (415) 591-6000
                                           ichaput@cov.com

                                           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2023, I electronically filed Plaintiffs' Supplemental Brief Regarding *Adams v. School Board of St. Johns County* with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

/s/ Isaac D. Chaput
Isaac D. Chaput

A-0220

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREW BRIDGE, *et al.*,<br>　　　　　　　　　　　*Plaintiffs*,<br>　　v.<br>OKLAHOMA STATE DEPARTMENT OF<br>EDUCATION, *et al.*<br>　　　　　　　　　　　*Defendants*. | No.　CIV-22-787-JD |

## STATE DEFENDANTS' SUPPLEMENTAL BRIEF

Submitted by:

ZACH WEST, OBA #30768
 *Director of Special Litigation*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov

KYLE PEPPLER, OBA #31681
 *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Kyle.Peppler@oag.ok.gov

AUDREY WEAVER, OBA #33258
 *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Audrey.Weaver@oag.ok.gov

WILLIAM FLANAGAN, OBA #35110
 *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
William.Flanagan@oag.ok.gov

**COUNSEL FOR STATE DEFENDANTS**　　　　　　　　**February 6, 2023**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................ iii

**INTRODUCTION** ........................................................................................ 1

**I.** *ADAMS* COUNSELS STRONGLY TOWARDS DISMISSAL OF THIS CASE. ..................... 1

    a.   *Adams* dismantles Plaintiffs' sweeping case law claims........................... 2

    b.   *Adams* is on point, legally and factually, with the present case. ............... 3

    c.   *Adams* embraced many of State Defendants' arguments and rejected many of Plaintiffs' arguments........................................................... 5

    d.   Per *Adams*, the restroom question is a legal one, not a factual one. ......... 10

    e.   *Adams* relied on additional arguments with which State Defendants agree.............................................................................. 14

**II.** ADDITIONAL AUTHORITY COUNSELS TOWARD DISMISSAL OF THIS CASE. .......... 16

    a.   A federal district court upheld West Virginia's separation of public-school sports teams based on biological sex. ............................................... 16

    b.   In an unpublished opinion, the Tenth Circuit reaffirmed that the Constitution permits the separation of the sexes in athletics......................... 18

**CONCLUSION** ........................................................................................ 19

A-0222

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Sch. Bd. of St. Johns Cty.*,
  57 F.4th 791 (11th Cir. 2022) ................................................................*passim*

*B.P.J. v. W. Va. State Bd. of Educ.*,
  2:21-CV-00316, 2023 WL 111875 (S.D.W. Va. Jan. 5, 2023) ........................ 16, 17

*Bd. of Educ. v. Earls*,
  536 U.S. 822 (2002)................................................................................5

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020) ...........................................................................9

*Bucklew v. Precythe*,
  139 S. Ct. 1112 (2019) ...........................................................................11

*Frontiero v. Richardson*,
  411 U.S. 677 (1973)...............................................................................9

*Geduldig v. Aiello*,
  417 U.S. 484 (1974)...............................................................................14

*Gordon v. Jordan Sch. Dist.*,
  No. 21-4044, 2023 WL 34105 (10th Cir. Jan. 4, 2023) ................................. 18, 19

*Indep. Sch. Dist. No. 89 v. City of Okla. City*,
  1986 OK 47, 722 P.2d 1212 ......................................................................5

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1, 17 (1981) ...............................................................................15

*Vernonia Sch. Dist. 47J v. Acton*,
  515 U.S. 646 (1995)...............................................................................14

**Statutes**

20 U.S.C. § 1686 ........................................................................................7

OKLA. STAT. tit. 70 § 1-125................................................................... 3, 4

OKLA. STAT. tit. 70 § 27-106..................................................................17

**Rules**

34 C.F.R. § 106.33 ......................................................................................7

**Other Authorities**

*En Banc Brief of Amici Curiae States of Tenn., et al., Adams*,
  57 F.4th 791 (No. 18-13592), 2021 WL 5028041 .......................................4

A-0223

## **INTRODUCTION**

On December 30, 2022, the *en banc* Eleventh Circuit held that the "unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex" does not violate the Equal Protection Clause or Title IX. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791, 796 (11th Cir. 2022). A week later, in the present case, this Court requested supplemental briefing on new authorities like *Adams* to assist in ruling on the pending motions. Doc. 68. In the following pages, State Defendants explain why *Adams* and other recent decisions provide substantial support for denying an injunction of Senate Bill 615 ("S.B. 615") to Plaintiffs, Doc. 24, and for granting State Defendants' motion to dismiss, Doc. 47. As *Adams* illustrates, nothing in federal law prohibits public schools from separating bathrooms, locker rooms, showers, sports teams, and the like based on biological sex.

## I.    *ADAMS* COUNSELS STRONGLY TOWARDS DISMISSAL OF THIS CASE.

This Court asked for supplemental briefing on whether the *Adams* decision "impacts any of the issues or filings before this Court (and if so, which particular filings)." Doc. 68. An Eleventh Circuit decision is not binding on this Court, of course. And when it comes to non-binding case law, "a dissent or even an 'outdated' decision can be just as persuasive if not more so than a majority." Doc. 63 at 10 n.5. Thus, the impact *Adams* has on key issues and filings in this case is largely through its persuasiveness in explaining what the Constitution and federal law do or do not require.

The *Adams* majority opinion, authored by Judge Barbara Lagoa and joined by six of her colleagues, is highly persuasive in demonstrating that neither the Constitution nor Title IX prohibits the longstanding practice of separating school bathrooms based on sex. *Adams* is on

1

A-0224

point, it adopted many of the arguments made by State Defendants in the present case, and it rejected multiple arguments made here by Plaintiffs. And critically, the *Adams* majority relied extensively on Supreme Court precedent on sex distinctions, which *is* binding—both on the Eleventh Circuit and this Court. At a bare minimum, then, *Adams* spells out in thorough detail why Plaintiffs are not likely to succeed here, and thus why their motion for a preliminary injunction should be denied. Doc. 24. Going further, *Adams* persuasively indicates that this debate is at its core a legal question, not a factual one. Thus, *Adams* counsels strongly in favor of this Court granting State Defendants' motion to dismiss. Doc. 47.

   a.   ***Adams* dismantles Plaintiffs' sweeping case law claims.**

As an initial matter, Plaintiffs have repeatedly made wild claims about the state of federal case law regarding school restrooms. They have asserted, for example, that "State Defendants rely on … legal arguments that have been rejected by *countless* courts across the country addressing the *exact* type of discrimination alleged here." Doc. 53 at 1 (emphases added). They have also argued that "State Defendants rely on *widely rejected*, non-precedential dissenting opinions and *outdated* cases." *Id.* at 9-10 (emphases added). Even before *Adams*, this was not a fair portrayal of the state of play in federal courts. *See, e.g.,* Doc. 54 at 13-15. The Eleventh Circuit's release of the *Adams* decision, however, undeniably topples Plaintiffs' attempt to convince this Court that any ruling in State Defendants' favor would have to rely on "widely rejected" or "outdated" legal arguments found only in dissents.

Contrariwise, this Court could now rule in favor of State Defendants by simply citing to the most recent and prominent case law development in this arena. To the extent that counting judicial heads matters, as Plaintiffs' previous arguments imply, seven federal appellate

A-0225

judges just agreed with many of the arguments put forth by State Defendants and rejected arguments like those made by Plaintiffs. *See infra* pp. 5-10. And if the recency or date of a decision matters, as Plaintiffs have indicated, this factor now counsels in favor of State Defendants. Stated differently, the Eleventh Circuit just became the first *en banc* appellate court to tackle this issue head-on, and it held decisively that protecting student privacy in restrooms through separation of the biological sexes is "unremarkable," constitutional, and copacetic under Title IX. *Adams*, 57 F.4th at 796. *Adams*, in short, has eliminated one of Plaintiffs' most prominent contentions in this lawsuit.

### b. *Adams* is on point, legally and factually, with the present case.

In the ways that matter, *Adams* is on point with the case presented here. Factually, *Adams* involved a school policy "under which male students must use the male bathroom and female students must use the female bathroom … on the basis of biological sex—which the School Board determines by reference to various documents, including birth certificates …." *Id.* at 797. Likewise, the Oklahoma law challenged here designates every multiple occupancy public school restroom for the "exclusive use" of the male or female sex "based on genetics and physiology, as identified on the individual's original birth certificate." OKLA. STAT. tit. 70 § 1-125(A)-(B). Furthermore, the school policy in *Adams* provided for "[s]ingle-stall, sex-neutral bathrooms … to accommodate any student," *Adams*, 57 F.4th at 797, and Oklahoma's law requires "access to a single-occupancy restroom or changing room" as a "reasonable accommodation," OKLA. STAT. tit. 70 § 1-125(C). Finally, the *Adams* policy was based on "concerns about the privacy, safety, and welfare of students pursuant to the School Board's duties under the governing Florida statute," *Adams*, 57 F.4th at 797, which are the same

3

A-0226

concerns written into the very text of the governing Oklahoma statute, OKLA. STAT. tit. 70 §

1-125(B), a law enacted "[t]o ensure privacy and safety." There is no daylight, substantively,

between the school policy in *Adams* and the Oklahoma law at the center of this lawsuit.

Nor is there any daylight present when comparing the legal nature of the two cases. In

*Adams*, the plaintiff challenged the Florida school district's policy under the Equal Protection

Clause and Title IX—the exact two claims at issue in the present dispute. *Compare* Complaint,

Doc. 1 at 34-39, ¶¶ 125-147, *with Adams*, 57 F.4th at 800. And the Eleventh Circuit ruled on

both those claims, rejecting them completely and with little indication that alternative legal

arguments could somehow change the evaluation. *See, e.g., Adams*, 57 F.4th at 809 ("[T]he

Supreme Court has repeatedly recognized the biological differences between the sexes by

grounding its sex-discrimination jurisprudence on such differences."). And it is not as if the

Eleventh Circuit was deprived of the full panoply of arguments on these issues. To the

contrary, *twenty-five* different amicus briefs were submitted to that court. *See id.* at 793. This

included a brief from the United States, whose arguments the Eleventh Circuit rejected, as

well as a brief from Oklahoma and 16 other states in favor of the Florida school district. *See*

*En Banc Brief of Amici Curiae States of Tenn., et al., Adams*, 57 F.4th 791 (No. 18-13592), 2021 WL

5028041, at *3 ("The age-old practice of assigning students to restrooms based on biological

sex does not violate the Equal Protection Clause or Title IX."). Therefore, the cases are not

significantly different.

To be sure, there are aspects of the *Adams* lawsuit that do not match up perfectly with

the present case. But none of those details are obviously critical—or even particularly

relevant—to the Eleventh Circuit's ultimate and broadly phrased legal conclusion that

"separating school bathrooms based on biological sex passes constitutional muster and comports with Title IX." *Id.* at 796. For instance, there is no significance in the fact that *Adams* involved a single school district's policy, whereas the case presented here involves a statewide statute—especially when the two approaches are functionally identical when it comes to restrooms. The Eleventh Circuit, after all, repeatedly acknowledged that its decision would extend "far beyond" just the plaintiff or school district in that case. *Id.* at 816; *see also id.* ("[A]ffirming the district court's order … would, at the very least, generally impact living facilities, locker rooms, and showers, in addition to bathrooms, at schools across the country …."). Nor is a State or legislature any less of a "school authorit[y]" deserving of "deference" than a school district. *See id.* at 802 ("[I]n a public school environment[,] ... the *State* is responsible for maintaining discipline, health, and safety." (emphasis added) (quoting *Bd. of Educ. v. Earls*, 536 U.S. 822, 830 (2002)); *Indep. Sch. Dist. No. 89 v. City of Okla. City*, 1986 OK 47, 722 P.2d 1212, 1214 ("[A] school district is a subordinate agency of the state."). In sum, State Defendants are skeptical—to say the least—that this or any other distinction between *Adams* and Plaintiffs' case is meaningful.[1]

      **c. *Adams* embraced many of State Defendants' arguments and rejected many of Plaintiffs' arguments.**

To grant judgment on claims brought pursuant to the Equal Protection Clause and Title IX, the Eleventh Circuit endorsed many of the same arguments put forth by State Defendants, general and specific. *Compare, e.g.*, Doc. 54 at 1 (State Defendants: "The physical

---

[1] If Plaintiffs argue that some fact or another unaddressed here makes *Adams* significantly distinguishable, then State Defendants are willing to respond, if the Court so desires. That said, in State Defendants' view, *Adams* speaks plenty well for itself.

5

differences between males and females are real and immutable, not mere stereotypes."), with *Adams*, 57 F.4th at 810, 813 ("To say that the bathroom policy relies on impermissible stereotypes because it is based on the biological differences between males and females is incorrect. … '[S]ex' is not a stereotype."). In doing so, the Eleventh Circuit rejected various arguments laid out by Plaintiffs here. *Compare, e.g.*, Doc. 53 at 16-17 (asserting that Oklahoma's law is akin to racial segregation); *with Adams*, 57 F.4th at 806 ("The dissent equates concerns about privacy in the bathroom with unlawful complaints about racial segregation. But that is a false equivalence."). To list these instances exhaustively would be overly repetitive and exceed the permitted length of this supplemental brief, but several examples are worth raising, especially as they pertain to the appropriateness of granting the motion to dismiss. Doc. 47.

In moving for dismissal under the Equal Protection Clause, State Defendants first argued that "Plaintiffs cannot establish that S.B. 615 intentionally discriminates based on transgender status," in part because "S.B. 615 separates multiple occupancy restroom facilities based on biological sex" and "does not otherwise account for or distinguish students based on gender identity, transgender status, or any other characteristic of any kind." Doc. 47 at 5. *Adams*, in turn, held that the Florida school district's policy did "not discriminate against transgender students," in part because it "facially classifies based on biological sex—not transgender status or gender identity," concepts which "are wholly absent" from the policy. *Adams*, 57 F.4th at 808. "To say that the bathroom policy singles out transgender students," *Adams* held, "mischaracterizes how the policy operates." *Id.* These arguments are the same, as are follow-up points made by State Defendants and the Eleventh Circuit. *Compare, e.g.*, Doc. 47 at 9 n.2 (arguing that an improper motive cannot be inferred from an allegedly negative or

disparate impact on transgender students), *with Adams*, 57 F.4th at 810 (observing that "a disparate impact alone does not violate the Constitution").

State Defendants next contended that "requiring students to use the restroom and locker room associated with their biological sex is substantially related to a sufficiently important government interest: protecting the privacy of students to disrobe and shower outside of the presence of the opposite sex." Doc. 47 at 11; *see also* Doc. 54 at 17-19. The Eleventh Circuit echoed this, holding that the "protection of students' privacy interests in using the bathroom away from the opposite sex and in shielding their bodies from the opposite sex is obviously an important governmental objective[,]" and that the school policy was "substantially related to that objective." *Adams*, 57 F.4th at 803-04. Again, no daylight can be seen here. Moreover, State Defendants pointed out that this "compelling government interest has been repeatedly upheld and recognized by courts," Doc. 47 at 11, whereas *Adams* observed that the "privacy afforded by sex-separated bathrooms has been widely recognized throughout American history and jurisprudence." *Adams*, 57 F.4th at 805. Like State Defendants, the Eleventh Circuit found the Equal Protection analysis to be quite straightforward at its core, and fully supported by history and judicial precedent.

As for Title IX, State Defendants argued for dismissal in part because Plaintiffs' interpretation of Title IX's protection of "sex" to cover gender identity "is foreclosed by the plain text and original understanding" of the statute, which expressly permits sex separation in certain instances. Doc. 47 at 18; *see also* 20 U.S.C. § 1686; 34 C.F.R. § 106.33 ("A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex."). *Adams* agreed: "when Congress prohibited discrimination on the basis of 'sex' in education, it meant

7

A-0230

biological sex[.]" *Adams*, 57 F. 4th at 812. Thus, "[t]he Title IX claim must fail because Title IX allows schools to separate bathrooms by biological sex." *Id.* at 800. In reaching this conclusion, *Adams* cited numerous era-specific dictionary definitions, just like State Defendants did. *Compare id.* at 812-13, *with* Doc. 47 at 21. And both State Defendants and *Adams* agreed that a contrary interpretation would render Title IX's protections against sex discrimination meaningless. Doc. 47 at 1, 20; *Adams*, 57 F.4th at 813, 814 n.7. In sum, State Defendants and the Eleventh Circuit sing the same tune.

Three additional points made by the Eleventh Circuit are worth discussing, as they rebut arguments relied on by Plaintiffs. *First*, Plaintiffs here have repeatedly conflated sex and gender identity, claiming that the term "biological sex" is "amorphous," "politicized," and unscientific. Doc. 53 at 5 & n.3. At the same time, Plaintiffs claim that dismissal cannot be granted because they have alleged that there is a "medical consensus" that biology underlies gender identity. *Id.* Similar arguments were made in *Adams*, and the Eleventh Circuit rejected them completely and on legal grounds. Specifically, the Eleventh Circuit expressly declined to hold that "transgender status and gender identity are equivalent to biological sex" because "such an assertion is contrary to the Supreme Court's reliance on physiological and biological differences between men and women in its sex-discrimination decisions ...." *Adams*, 57 F.4th at 803 n.6; *see also id.* at 807 ("[E]ven the dissent acknowledges, as it must, that gender identity is different from biological sex."). The Eleventh Circuit stated unequivocally that *any* finding from a district court "equating gender identity as akin to biological sex" would have no "legal significance" and "constitute clear error" because it "would refute the Supreme Court's longstanding recognition that 'sex, like race and national origin, is an immutable characteristic

determined solely by the accident of birth.'" *Id.* at 807-08 (quoting *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality opinion)). State Defendants have cited *Frontiero*, Doc. 47 at 10; Doc. 63 at 4, and other Supreme Court cases to make the same point, Doc. 54 at 10–13.

*Second*, Plaintiffs here, like the plaintiff and dissenters in *Adams*, spilled much ink arguing that these types of cases are controlled by the U.S. Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). But the Eleventh Circuit persuasively distinguished *Bostock* in a similar manner as that argued by State Defendants. *See, e.g.,* Doc. 47 at 24. Like State Defendants, the Eleventh Circuit found it significant that *Bostock* did "not purport to address bathrooms, locker rooms, or anything else of the kind[,]" because the "school [*Adams*] is not the workplace [*Bostock*]." *Adams*, 57 F.4th at 808 (quoting *Bostock*, 140 S. Ct. at 1753). Diving in further, the Eleventh Circuit observed that "[w]hile *Bostock* held that 'discrimination based on … transgender status necessarily entails discrimination based on sex,' … [t]his appeal centers on the converse of that statement—whether discrimination based on biological sex necessarily entails discrimination based on transgender status. It does not[.]" *Id.* at 808-09. This is almost precisely how State Defendants have framed the issue: "Although Plaintiffs correctly quote *Bostock*'s conclusion that discrimination based on transgender status necessarily entailed discrimination based on sex, they attempt to use this to establish the reverse: that classification on the basis of sex necessarily entails discrimination based on transgender status. The Supreme Court has never reached this inverse conclusion, nor would it make sense." Doc. 54 at 13; *see also* Doc. 63 at 6 ("the Supreme Court held that discrimination based on transgender status is discrimination based on sex—not the inverse"). State Defendants and the Eleventh Circuit agree: *Bostock* does not favor plaintiffs on these issues.

9

A-0232

*Third*, Plaintiffs have attempted in this case to artificially limit the nature of the relief they are seeking, claiming at one point "that they will not seek any relief in this action that applies beyond multiple occupancy restrooms . . . ." Doc. 53 at 5, n.2; *see also* Doc. 62 at 13 ("[T]he Motion seeks relief only as to the ability to access multiple occupancy school restrooms. Any opinions concerning privacy concerns in locker rooms are thus irrelevant."). The plaintiff in *Adams* attempted a narrowing maneuver, as well, and the Eleventh Circuit refused to go along. Specifically, that court rejected "Adams's attempt to cabin the lawsuit to Adams's particular circumstances" because the statutory approach demanded "would touch upon the interests of all Americans—not just Adams—who are students, as well as their parents or guardians …." *Adams*, 57 F.4th at 800 n.3; *cf. id.* at 817 ("The district court did not identify any textual or other support—because there is none—for its claim that its reading of 'sex' applies only to high school bathrooms."). There is nothing narrow about these arguments.

### d. Per *Adams*, the restroom question is a legal one, not a factual one.

This Court also requested to know the "procedural sameness or differences between the *Adams* case and this case." Doc. 68. Procedurally, *Adams* was an appeal from a three-day bench trial, after which the federal district court granted judgment to the plaintiff (Adams) for supposed violations of Title IX and the Equal Protection Clause. *Adams*, 57 F.4th at 798. Moreover, the district court "enjoined the School Board from prohibiting Adams's use of the male bathrooms and granted Adams $1,000 in compensatory damages." *Id.* Although *Adams* emerged from a bench trial, the Eleventh Circuit gave little indication that its core rulings were based on any particularly unique facts of that case. Thus, *Adams* counsels strongly for, rather than against, granting State Defendants' motion to dismiss.

10

From start to finish, the Eleventh Circuit emphasized over and again the legal focus of its ruling. The opening lines of Judge Lagoa's majority opinion speak to the all-encompassing legal nature of the decision: "This case involves the unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex," the *en banc* court declared. "We hold that … separating school bathrooms based on biological sex passes constitutional muster and comports with Title IX." *Id.* at 796. In addition, the Court rejected Adams's attempt to classify the situation as an "as-applied challenge" in part because of the necessity of establishing a "substantive *rule of law*" that would govern the proceedings. *Id.* at 800 n.3 (emphasis added) (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019)). The rule of law advocated by Adams, the court noted, "would touch on the interests of all Americans—not just Adams—who are students, as well as their parents or guardians, at institutions subject to the statute." *Id.* Thus, the court rejected Adams' proffered legal interpretation, in language that is unmistakably legally grounded rather than factually based: "[W]hen we apply first principles of constitutional and statutory interpretation, this appeal largely resolves itself," *Adams* explained. *Id.* at 800. The same principles apply here.

The Eleventh Circuit gave no indication that it viewed the three-day bench trial as having been necessary or vital. To wit, the Eleventh Circuit did not view the existence of an important privacy concern in restrooms as a fact-specific finding. Rather, it noted that "courts have long found a privacy interest in shielding one's body from the opposite sex in a variety of *legal* contexts." *Id.* at 805 (emphasis added). The same goes for whether the restroom policy was substantially related to that interest. *See id.* And in response to fact-specific arguments about the privacy of individual stalls made by the district court, dissenters, and certain *amici,*

11

A-0234

the Eleventh Circuit stated bluntly that their view was "not the *law*." *Id.* at 806 (emphasis added). Nor, the court emphasized, "is the law predicated on 'problems' or 'reports of problems' from students or their parents when it comes to the validity of sex-separated bathrooms[.]" *Id.* Finally, as discussed above, the Eleventh Circuit opined that any district court finding that gender identity and sex are akin to each other would have no "legal significance" under binding Supreme Court precedent. *Id.* at 807. The Eleventh Circuit could hardly have been clearer: sex-separated bathrooms are constitutional regardless of the facts, so long as a case at its core "involves an individual of one sex seeking access to the bathrooms reserved for those of the opposite sex." *Id.* at 808.

Certainly, *Adams* discussed various facts and factors revealed during the district court proceedings, sometimes in detail. But the court never indicated that those facts were critical to its decision. Rather, the court deployed those facts as either: (1) background material, helpful for understanding the case; (2) supportive of, but not decisive in, its legal conclusion; or (3) rebuttals to the district court and dissenters' reliance on the record. *See, e.g.*, *id.* at 807 ("The dissent's argument relies on a misreading of the record …."); *id.* at 803 n.5 ("[T]he dissent reaches this conclusion through a selective reading of the record, citing to exhibits and testimony where it sees fit.").

To give an example, at one point in its analysis the Eleventh Circuit quoted at length the school district's extensive "Best Practices" efforts to "accommodate LGBTQ students." *Adams*, 57 F.4th at 802-03; *see also id.* at 797-98. The court quickly indicated, however, that the relevance of this material was preliminary to, and separate from, "the constitutional question" in the case. *Id* at 803. And later it explained that "[c]ontrary to the dissent's claim, the School

Board, through the Best Practices Guidelines, did not discriminatorily 'single[] out transgender students'" by "providing them with an alternative—i.e., sex-neutral bathrooms." *Id.* at 810. That is to say, the Eleventh Circuit's lengthy citation of the factual record on this point was merely to provide background to the case and to rebut the dissent's wayward assertion that a reasonable accommodation is somehow evidence of discriminatory intent.

Similarly, the Eleventh Circuit spent time discussing a stipulation made by the parties in *Adams* "that certain parents of students and students in the St. Johns County School District object to a policy or practice that would allow students to use a bathroom that matches their gender identity" because they "believe that such a practice would violate the bodily privacy rights of students and raise privacy, safety and welfare concerns." *Id.* at 797. But nowhere did the Eleventh Circuit state or even imply that this stipulation somehow swung the case, or that a plaintiff who declined to make such a stipulation would prevail.[2] By all appearances, the court brought up the stipulation repeatedly because the district court and dissent's theories failed to take it into account. *See, e.g.*, *Adams*, 57 F.4th at 807.

In the end, if privacy concerns suffice to sustain bathroom policies as a matter of law, and biological sex is grounded in Supreme Court precedent, then what possible factual disputes could be left to resolve in the present case? The parties have provided competing evidence on whether safety is also an important interest, but the Eleventh Circuit did not reach

---

[2] It is difficult to fathom on what ground a plaintiff could even try to deny or avoid this stipulation. Here, State Defendants have introduced into the record the declarations of Oklahoma parents who express these types of beliefs. *See* Doc. 54-1, 54-2, 54-3. In response, Plaintiffs did not deny that the parents hold these beliefs, but rather argued that the beliefs are speculative and misinformed. Doc. 62 at 12.

the safety questions to issue judgment in *Adams*. This Court need not do so, either.[3] A different way of looking at the situation is this: After *Adams*, would a district court in the Eleventh Circuit understand its governing appellate court to be calling for dismissal of these types of cases, or for extensive discovery and another bench trial?  A faithful reading of *Adams* clearly points to the former conclusion, not the latter.[4]

> **e.  *Adams* relied on additional arguments with which State Defendants agree.**

The Eleventh Circuit also relied on several ancillary arguments that State Defendants have not had an opportunity to expound upon fully given page limitations. *See, e.g.*, *Adams*, 57 F.4th at 809 (relying on *Geduldig v. Aiello*, 417 U.S. 484 (1974), to support the argument that the "bathroom policy does not classify students based on transgender status"). Three such arguments are particularly noteworthy.

*First,* as mentioned above, the Eleventh Circuit discussed as a preliminary matter the deference that courts give to government authorities in the public school context. Fourteenth Amendment rights, the Eleventh Circuit correctly observed, "'are different in public schools than elsewhere' because of 'the schools' custodial and tutelary responsibility for children.'" *Id.* at 802 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995)). "Given schools'

---

[3] Because the Florida policy survived intermediate scrutiny, the Eleventh Circuit found it unnecessary to reach other questions, as well, such as whether Adams was "similarly situated" to biological boys and whether "transgender persons constitute a quasi-suspect class." *Id.* at 803 nn.5-6. It did express "grave" skepticism as to whether the plaintiff would prevail on these points, though. *Id.*

[4] Even when the Eleventh Circuit says something like "there is no evidence of purposeful discrimination against transgender students by the School Board," *id.* at 811, this does not appear to be an invitation for evidentiary fishing expeditions. In the very next paragraph, after all, the court cites the well-known proposition that "in all cases of statutory interpretation, *the purpose must be derived from the text*." *Id.* (cleaned up) (emphasis added) (citations omitted).

responsibilities, the Supreme Court has afforded deference to their decisions," the Eleventh Circuit explained. *Id.* As acknowledged by the Eleventh Circuit, this deference does not control the case here, but it is a helpful lens through which to view the proceedings.

*Second*, the Eleventh Circuit at various points discussed the issue of "gender fluidity— i.e., the practice, which the dissent acknowledges, in which some individuals claim to change gender identities associated with the male and female sexes and thereby treat sex as a mutable characteristic." *Id.* at 803 n.6. This practice, the Eleventh Circuit opined, undermined (among other things) the dissent's argument that transgender individuals belong to a suspect class, because such a finding requires immutability. *Id.* State Defendants agree. As above, State Defendants do not think this point critical, but they agree with the Eleventh Circuit that it provides further justification for upholding the longstanding historical practice of separating restrooms based on biological sex.

*Third*, even if the term "sex" in Title IX were unclear, the Eleventh Circuit indicated that it would have ruled in the school district's favor under the Constitution's Spending Clause. "Congress passed Title IX pursuant to its authority under the Spending Clause," the Eleventh Circuit observed, and "if Congress intends to impose a condition on the grant of federal moneys [under its Spending Clause authority], it must do so unambiguously." *Id.* at 815 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). State Defendants concur with *Adams* that the "notion that the School Board [or any other defendant] could or should have been on notice that its policy of separating male and female bathrooms violates Title IX and its precepts is untenable." *Id.* at 816. Because there is no universe in which it is

clear and unambiguous that "sex" in Title IX means something *other* than biological sex, State

Defendants must also prevail against Plaintiffs' Title IX challenge under the Spending Clause.

## II. ADDITIONAL AUTHORITY COUNSELS TOWARD DISMISSAL OF THIS CASE.

This Court also requested supplemental briefing discussing "any other authority

directly relevant to an issue raised in a pending motion that was issued after the briefing on

that motion was filed." Doc. 68. State Defendants direct the Court's attention to two decisions

that have been released recently, both involving secondary school sports. These decisions are

relevant because of the broad implications of Plaintiffs' legal and factual theories. As the

Eleventh Circuit observed in *Adams*, "equating 'sex' to 'gender identity' or 'transgender status'

would also call into question the validity of sex-separated sports teams." *Id.* at 817. Judge Lagoa

wrote separately to opine on this issue, expressing concern that "[d]eparting from a biological

and reproductive understanding of" sex "would have vast societal consequences and

significantly impact girls' and women's rights and sports." *Id.* at 821 (Lagoa, J., specially

concurring). Put simply, decisions upholding sex-separated sports teams as constitutional by

their very nature counsel in favor of upholding sex-separated restrooms, as well.

### a. A federal district court upheld West Virginia's separation of public-school sports teams based on biological sex.

The first case, *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-CV-00316, 2023 WL 111875

(S.D.W. Va. Jan. 5, 2023), was a challenge to West Virginia's definitions of "girl" and "woman"

for the purposes of participation in secondary school sports. Like *Adams* and the present

dispute, the plaintiff in *B.P.J.* challenged the law under Title IX and the Equal Protection

Clause. *Id.* at *3. And like the Oklahoma law being challenged here, West Virginia's "Save

16

A-0239

Women's Sports Bill" defined the terms "girl" and "woman" based on biological sex, or an individual's biology and genetics at birth. *Id.* at *1-2.[5]

Reversing direction after an earlier decision to enjoin the law, the Southern District of West Virginia in early January granted several state defendants summary judgment, finding that the West Virginia law did not violate Title IX or the Equal Protection Clause. *Id.* at *10. There, the question the plaintiff presented to the court was whether defining sex based on biology was "substantially related to the government interest in providing equal athletic opportunities for females." *Id.* at *6. Answering this question in the affirmative, the court held that "[t]he state is permitted to legislate sports rules on this basis because sex, and the physical characteristics that flow from it, are substantially related to athletic performance and fairness in sports." *Id.* at *8; *see also id.* at *9 ("The legislature's definition of 'girl' as being based on 'biological sex' is substantially related to the important government interest of providing equal athletic opportunities for females."). The court reasoned that "[w]hether a person has male or female sex chromosomes determines many of the physical characteristics relevant to athletic performance," and "[t]he fact is . . . that a transgender girl is biologically male and, barring medical intervention, would undergo male puberty like other biological males." *Id.* at *7-8. While the court was sympathetic to the complaints of the plaintiff, and even critical of the state for not "adopt[ing] a different policy," it nonetheless reaffirmed that "it is not for the court to impose such a requirement here." *Id.* at *8.

---

[5] In addition to S.B. 615, Oklahoma recently enacted the Save Women's Sports Act, OKLA. STAT. tit. 70 § 27-106, which requires athletic teams to be designated based on biological sex.

A-0240

As to the plaintiff's Title IX claim, the court recognized that "[t]here is no serious debate that Title IX's endorsement of sex separation in sports refers to biological sex." *Id.* at *9. Therefore, the court's incontrovertible conclusion that "transgender girls are biologically male[,]" and "biological males are not similarly situated to biological females for purposes of athletics" was equally dispositive to the Title IX claim. *Id.* The court further highlighted that "despite [the plaintiff's] repeated argument to the contrary, transgender girls are not excluded from school sports entirely. They are permitted to try out for boys' teams, regardless of how they express their gender." *Id.* There are various aspects of the *B.P.J.* court's Equal Protection and Title IX analyses that can be applied to the analogous issues before this Court in State Defendants' motion to dismiss. *See, e.g.,* Doc. 47 at 7-11, 17-18, 25.

   **b. In an unpublished opinion, the Tenth Circuit reaffirmed that the Constitution permits the separation of the sexes in athletics.**

   In the second relevant case, *Gordon v. Jordan Sch. Dist.*, No. 21-4044, 2023 WL 34105 at *4 (10th Cir. Jan. 4, 2023) (unpublished), a Tenth Circuit panel reaffirmed the fact that the Constitution permits the separation of "girls and boys" for purposes of athletic programs. There, the plaintiffs challenged a school's refusal to create a separate football league for high-school girls under Title IX and the Equal Protection Clause. Although the facts of the *Gordon* case are not on all fours, the claims presented touch on similar legal issues, and Tenth Circuit panel's discussion is relevant to this Court's determination of the motion to dismiss. *See, e.g.,* Doc. 47 at 9-11, 17-18.

   In *Gordon*, the lower court conducted a bench trial and ultimately found that the school policy was facially neutral and not discriminatory, because the existing co-ed football league allowed "girls and boys to play on the same football teams." *Id.* at *4. The Tenth Circuit upheld

18

A-0241

the lower court findings. *Id.* Even though the girls insisted that the co-ed football league deprived them of certain advantages they would have on an all-girls team, "the advantages of a girls-only league wouldn't cast doubt on the facial neutrality of coed teams." *Id.* Most importantly for our purposes here, the Tenth Circuit observed that "[c]ertainly the Constitution doesn't bar separation of all athletic programs for girls and boys." *Gordon*, 2023 WL 34105, at *4. Just as certain, in State Defendants' view, is the fact that the Constitution doesn't bar separation of restrooms for girls and boys, either.

## **CONCLUSION**

For the foregoing reasons, this Court should deny a preliminary injunction to Plaintiffs and grant State Defendants' motion to dismiss.

Respectfully submitted,

s/ *Zach West*

ZACH WEST, OBA #30768
*Director of Special Litigation*
AUDREY A. WEAVER, OBA #33258
KYLE PEPPLER, OBA #31681
WILLIAM FLANAGAN, OBA #35110
*Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Zach.West@oag.ok.gov
Audrey.Weaver@oag.ok.gov
Kyle.Peppler@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for State Defendants*

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ELI BRIDGE, on behalf of Andrew Bridge, a   )
minor, by his next friends and parents, et al.,   )
  )
                  Plaintiffs,   )
  )
v.   )     Case No. CIV-22-00787-JD
  )
OKLAHOMA STATE DEPARTMENT OF   )
EDUCATION, et al.,   )
  )
              Defendants.   )

## <u>ORDER</u>

"Physical differences between men and women . . . are enduring" and the "'two

sexes are not fungible . . . .'" *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quoting

*Ballard v. United States*, 329 U.S. 187, 193 (1946)). In fact, "sex, like race and national

origin, is an immutable characteristic . . . ." *Frontiero v. Richardson*, 411 U.S. 677, 686

(1973) (plurality opinion). With these principles in mind, the Court tackles a question that

has not yet been addressed by the Supreme Court of the United States or the United

States Court of Appeals for the Tenth Circuit: whether separating the use of male and

female restrooms and changing areas in public schools based on a student's biological

sex violates the Equal Protection Clause of the Fourteenth Amendment, U.S. Const.

amend. XIV, § 1, or Title IX of the Education Amendments Act of 1972, 20 U.S.C.

§ 1681 et seq.[1]

---

[1] In *Bostock v. Clayton County, Georgia*, the Supreme Court held that an employer
who fires an individual for being homosexual or transgender unconstitutionally
discriminates against that person because of sex under Title VII. However, the Supreme

Before the Court is Andrew Bridge ("Bridge"), Mark Miles ("Miles"), and Sarah Stiles's ("Stiles") (collectively "Plaintiffs") Motion for Judicial Notice [Doc. No. 25] and a Motion to Dismiss [Doc. No. 47] filed by the Oklahoma State Department of Education ("OSDE"); Ryan Walters, in his official capacity as the State Superintendent of Public Instruction; Donald Burdick, Katie Quebedeaux, Zach Archer, Kendra Wesson, Trent Smith, and Sarah Lepak, all in their official capacities as members of the Oklahoma Board of Education; and Gentner Drummond, in his official capacity as Oklahoma Attorney General (collectively "State Defendants"). Independent School District No. 40 of Cleveland County, Oklahoma ("Noble Public Schools"), Independent School District No. 2 of Cleveland County, Oklahoma ("Moore Public Schools"), Independent School District No. 89 of Oklahoma County, Oklahoma ("Oklahoma City Public Schools"), and Harding Independence Charter District, Inc. ("HICD") are also defendants in this case (collectively "Defendants"). The Motion to Dismiss seeks dismissal of Plaintiffs' complaint [Doc. No. 1] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court GRANTS both motions.

I.    **BACKGROUND**

On May 25, 2022, Oklahoma Governor Kevin Stitt signed Senate Bill 615 ("S.B. 615") into law. Okla. Stat. tit. 70 § 1-125. S.B. 615 states:

> To ensure privacy and safety, each public school and public charter school that serves students in prekindergarten through twelfth grades in this state

---

Court also made clear that its opinion did "not purport to address bathrooms, locker rooms, or anything else of the kind." 590 U.S. ----, 140 S. Ct. 1731, 1753 (2020).

2

A-0244

shall require every multiple occupancy restroom or changing area
designated as follows:

> 1. For the exclusive use of the male sex; or
> 2. For the exclusive use of the female sex.

Each public school or public charter school in this state shall provide a
reasonable accommodation to any individual who does not wish to comply
with the provisions of subsection B of this section. A reasonable
accommodation shall be access to a single occupancy restroom or changing
room.

*Id.* § 1-125(B)–(C). The law defines "sex" as "the physical condition of being male or

female based on genetics and physiology, as identified on the individual's original birth

certificate." *Id.* § 1-125(A)(1).

> "Multiple occupancy restroom or changing area" means an area in a public
> school or public charter school building designed or designated to be used
> by more than one individual at a time, where individuals may be in various
> stages of undress in the presence of other individuals. The term may
> include but is not limited to a school restroom, locker room, changing
> room, or shower room . . . .

*Id.* § 1-125(A)(2). If a school fails to comply with the statute, "the noncompliant school

district or public charter school shall receive a five percent (5%) decrease in state funding

for the school district or public charter school for the fiscal year following the year of

noncompliance." *Id.* § 1-125(F).

Bridge is a transgender boy. *See* Compl. [Doc. No. 1] ¶ 60. This means Bridge

identifies as male, but that Bridge's biological sex, based on anatomy and genetics, is

female. *Id.* ¶¶ 2, 60. After coming out as transgender in 2020, Bridge began taking steps

to appear more masculine such as getting a shorter haircut and wearing more masculine

clothing. *Id.* ¶¶ 63, 64. Bridge attended Noble High School, which is a public school

operated by Noble Public Schools in Cleveland County, Oklahoma. *Id.* ¶¶ 19, 61.[2]

Bridge used the boys' restroom at school during the 2021–2022 school year before S.B.

615 was passed. Compl. [Doc. No. 1] ¶ 68. Before the 2022–2023 school year began,

school administrators informed Bridge that, moving forward, Bridge was not allowed to

use the boys' restroom. *Id.* ¶ 69.

    Miles is a transgender boy. *Id.* ¶ 72. This means Miles identifies as male, but that

Miles's biological sex, based on anatomy and genetics, is female. *Id.* ¶¶ 2, 72. After

beginning to identify as male in 2018, Miles began taking steps to appear more masculine

such as getting a shorter haircut. *Id.* ¶¶ 76–77. Miles attends a public school operated by

Moore Public Schools. *Id.* ¶¶ 20, 73. Miles began using the boys' restroom at school at

the start of the 2021–2022 academic year. *Id.* ¶ 82. In January 2022, the freshman

principal stated that Miles needed to use the single-occupancy restroom or the girls'

restroom. *Id.* ¶ 83. Miles's parents filed a Title IX grievance with the school district but

received a final decision denying relief on June 15, 2022, due to the enactment of S.B.

615. *Id.* ¶ 85.

    Stiles is a transgender girl. *Id.* ¶ 91. This means Stiles identifies as female but that

Stiles's biological sex, based on anatomy and genetics, is male. *Id.* ¶¶ 2, 91. Stiles

---

    [2] "Two related doctrines, standing and mootness, keep federal courts within their
constitutional bounds. Standing concerns whether a plaintiff's action qualifies as a case
or controversy when it is filed; mootness ensures it remains one at the time a court
renders its decision." *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016). Here,
Bridge has graduated from high school since filing this suit. However, the Court is
satisfied that Bridge has standing to challenge the constitutionality of S.B. 615 and that
Bridge's claim is not moot.

A-0246

attended Independence Charter Middle School ("ICMS"), which is a public school in

Oklahoma County operated by HICD. *Id.* ¶¶ 21–22, 92. In 2021, Stiles came out as

transgender to Stiles's family. *Id.* ¶ 95. Sue Stiles, Stiles's mother, subsequently met with

the ICMS principal and the HICD superintendent. *Id.* ¶ 99. Both the principal and

superintendent assured that Stiles could use the girls' restroom. *Id.* However, after S.B.

615 was enacted, Stiles was required to use the boys' restroom or single-occupancy

restroom. *Id.* ¶ 101.

On September 6, 2022, Plaintiffs sued Defendants challenging the constitutionality

of S.B. 615 under the Equal Protection Clause of the Fourteenth Amendment, U.S. Const.

amend. XIV, § 1, and Title IX of the Education Amendments Act of 1972, 20 U.S.C.

§ 1681 et seq.[3]

## II.    <u>LEGAL STANDARDS</u>

"Rule 12(b)(6) dismissal 'is appropriate if the complaint alone is legally

insufficient to state a claim.'" *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 (10th

Cir. 2023) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081,

1104–05 (10th Cir. 2017)). In considering a motion to dismiss under Rule 12(b)(6), the

inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is

plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th

---

[3] Plaintiffs bring their equal protection claim against the State Superintendent, School Board Members, and Oklahoma Attorney General, as well as Noble Public Schools, Moore Public Schools, and HICD. They bring their Title IX claim against OSDE, Noble Public Schools, Moore Public Schools, HICD, and Oklahoma City Public Schools.

Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009).

"[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). "This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Id.* (internal quotations and citation omitted). "However, '[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.'" *Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Accordingly, the Court takes judicial notice of the public records in Plaintiffs' Motion for Judicial Notice [Doc. No. 25] detailing the federal financial assistance received by OSDE, Noble Public Schools, Moore Public Schools, and HICD, and documents describing the adoption and substance of policies implementing S.B. 615 by the Oklahoma State Board of Education, Noble Public School, Moore Public Schools, and HICD. *See High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 n.1 (10th Cir. 2019) (stating courts may take judicial notice of official government records).

## III.   **ANALYSIS**

Plaintiffs argue that S.B. 615 prevents them from being treated like other

Oklahoma students and violates their constitutional and statutory rights, specifically under the Equal Protection Clause of the Fourteenth Amendment and Title IX. Conversely, State Defendants argue that S.B. 615 does not unconstitutionally discriminate and is substantially related to an important governmental interest and does not violate Title IX.

### A.    S.B. 615 does not violate the Equal Protection Clause.

Plaintiffs contend that because Bridge and Miles identify as boys but are not treated like all the other boys at their schools (i.e., allowed to use the boys' restroom), they are being unconstitutionally discriminated against in violation of the Equal Protection Clause. They argue similarly for Stiles. Lastly, they maintain that "[t]his discrimination is not simply due to a disparate impact of [S.B. 615]." Pls.' Resp. [Doc. No. 53] at 15.[4] Rather, they contend the discrimination targets Plaintiffs "because they are transgender." *Id.*

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." In essence, it requires "similarly situated" persons to be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Accordingly, for a statute that classifies individuals based on sex to be constitutional, the classification must serve "'important governmental objectives'" and be "'substantially related to the achievement of those objectives.'" *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)

---

[4] The Court uses ECF page numbering.

7

(quoting *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980)); *see also Craig v. Boren*, 429 U.S. 190, 197, 204 (1976) (analyzing whether unequal treatment based on sex is "substantially related to achievement of the statutory objective").

It is important to note, however, that "[e]qual protection of the laws doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations—two possibilities that might themselves generate rather than prevent injustice." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (internal quotations and citation omitted). "Instead, the Equal Protection Clause is a more particular and profound recognition of the essential and radical equality of all human beings." *Id.*

"To trigger the first part of the equal protection test, it's enough to say that the governmental action intentionally discriminates between persons . . . ." *Id.* at 689. Here, S.B. 615 separates individuals based on their biological sex and requires them to use the facilities that correspond to that sex. Thus, the statute classifies individuals based on sex.[5]

---

[5] Because the Court determines that intermediate scrutiny applies since S.B. 615 classifies individuals on the basis of sex, it does not reach the issue of whether transgender status is a quasi-suspect classification.

Further, concerning whether S.B. 615 discriminates based on transgender status, the Court determines, as the Eleventh Circuit did in its rehearing en banc, that "the [law] facially classifies based on biological sex—not transgender status or gender identity. Transgender status and gender identity are wholly absent from the [law's] classification. And both sides of the classification—biological males and biological females—include transgender students." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808 (11th Cir. 2022) (en banc). This is further supported by the way S.B. 615 "provide[s] a reasonable accommodation to any individual who does not wish to comply with the" requirement that individuals must use the restroom that corresponds to their biological sex.

To determine whether S.B. 615 survives intermediate scrutiny under the second part of the equal protection test, the Court must identify the State's reasons for enacting a sex-based classification. Then, the Court must ask whether the "reasons qualify as important governmental objectives and, if so, whether the gender-based means employed substantially serve those objectives." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 802 (10th Cir. 2019).

The text of S.B. 615 makes its objective clear: to ensure students' privacy and safety from the opposite sex. Okla. Stat. tit. 70 § 1-125. Although Plaintiffs maintain that the Court must conduct fact finding to determine the validity of this objective, determining what is (and is not) an important governmental objective is a legal question.

Separating students based off biological sex (which both parties agree the statute does) so that they are able to use the restroom, change their clothes, and shower outside the presence of the opposite sex is an important governmental objective.[6] "Understanding

---

[6] In their response brief to the State Defendants' Motion to Dismiss, Plaintiffs assert that, "while the [c]omplaint occasionally refers to multiple occupancy facilities or changing rooms, the Students clarify that they will not seek any relief in this action that applies beyond multiple occupancy restrooms because none of the Students currently has any occasion or need to access multiple occupancy facilities at their schools other than restrooms." Pls.' Resp. [Doc. No. 53] at 12 n.2. *Cf.* Compl. [Doc. No. 1] at 40 (seeking relief for "multiple occupancies and changing facilities"). However, Plaintiffs cannot amend their complaint in their response brief, and the Court does not allow it here. *See* Fed. R. Civ. P. 7(b); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))). *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (stating that, for Rule 12(b)(6) motions, a court is required to only consider the facts alleged in the complaint). Regardless, the analysis for determining whether Plaintiffs should be provided access to the multiple occupancy restroom or

why is not difficult—school-age children 'are still developing, both emotionally and physically.'" *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 804 (11th Cir. 2022) (en banc) (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 636 (4th Cir. 2020), as amended (Aug. 28, 2020) (Niemeyer, J., dissenting)). And the Supreme Court has recognized the need for privacy between members of each sex in intimate settings. *See United States v. Virginia*, 518 U.S. 515, 550 n.19 (1996) ("Admitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements . . . ."). It has also recognized the State's role in "maintaining . . . safety" "in a public school environment." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830 (2002).

As Plaintiffs rightly state, "[a]ny law premised on generalizations about the way women are—or the way men are—will fail constitutional scrutiny because it serves no important governmental objective." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 801 (10th Cir. 2019) (internal quotations and citation omitted). However, S.B. 615 addresses much more than mere "generalizations" between males and females. Biological sex is distinct from gender generalizations, and "[u]se of a restroom designated for the opposite sex does not constitute a mere failure to conform to sex stereotypes." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007), *overruled in part on different grounds in Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019

---

changing facility of their choice is identical.

(10th Cir. 2021).[7]

Having established that Oklahoma has an important governmental interest in ensuring students are safe and have privacy from the opposite sex in restrooms, the Court turns to analyze whether S.B. 615 is substantially related to achieving that objective. Here, the governmental interest is almost identical to the means used to protect the interest. Protecting students' safety and privacy interests in school restrooms and changing areas is undoubtedly closely related to the statute's mandate that all multiple occupancy restrooms or changing areas be for the exclusive use of either the male or female sex as determined by "genetics" and "physiology."[8]

The means by which the statute seeks to further that important governmental interest also make practical sense. In addition to being an "unremarkable—and nearly universal—practice," separating restrooms based on biological sex establishes the

---

[7] As stated in *Tudor*, "*Etsitty* is no longer valid precedent to the extent that it conflicts with *Bostock*." 13 F.4th at 1028. But since *Bostock* did not address restrooms, this portion of *Etsitty* is still binding on this Court.

[8] In *Grimm v. Gloucester Cnty. Sch. Bd.*, the Fourth Circuit held that a restroom policy similar to the one here was "not substantially related to [the school board's] important interest in protecting students' privacy" because although students are entitled to privacy, allowing transgender students to use the restroom of their choice does not alter the amount of privacy students receive. 972 F.3d 586, 613–14 (4th Cir. 2020), as amended (Aug. 28, 2020) ("Put another way, the record demonstrates that bodily privacy of cisgender boys using the boys restrooms did not increase when Grimm was banned from those restrooms. Therefore, the Board's policy was not substantially related to its purported goal."). But this ignores why laws such as S.B. 615 are being passed in the first place. As evidenced by its text, S.B. 615 seeks to ensure students' privacy in intimate settings *from the opposite sex*—not from other students in general. *See* 70 Okla. Stat. § 1-125(B) (stating multiple occupancy restrooms and changing areas are to be for the "exclusive use" of one of the two sexes).

11

A-0253

clearest limiting principle regarding who can go in what restroom. *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc). If the Court adopted Plaintiffs' position, any biological male could claim to be transgender and then be allowed to use the same restroom or changing area as girls. This is a major safety concern. The Court in no way suggests that Plaintiffs pose any safety risk to other students. It also does not cast any doubt on Plaintiffs' claims regarding the sincerity of how they identify, nor can it on 12(b)(6) review. However, if Plaintiffs' arguments were adopted, it would put school officials in the position of either having to conduct a subjective analysis of the sincerity of an individual's gender identity or merely take their word for it.[9] Not to mention that if (biological) sex-based classifications such as S.B. 615 were deemed to be equal protection violations, no law recognizing the inherent differences between male and female would pass constitutional muster. This is an untenable position.

In sum, S.B. 615 does not violate the Equal Protection Clause.

**B.    S.B. 615 does not violate Title IX.**

Plaintiffs argue that they were subjected to sex discrimination in violation of Title IX because of the way S.B. 615 defines "sex." They argue that since the Supreme Court has concluded transgender status is "inextricably bound up with sex" when analyzing

---

[9] As stated by State Defendants, "[t]o be clear[,] the argument is not that transgender individuals are more likely to be bad actors, but that others could exploit the seemingly standardless concept of 'gender identity' in order to gain access to vulnerable persons." *See* Mot. [Doc. No. 47] at 24.

Title VII, that excluding a transgender student from a restroom on the basis of biological sex is a violation of Title IX. Pls.' Resp. [Doc. No. 53] at 26. "Title VII, however, is a vastly different statute from Title IX . . . ." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005).

Title IX requires that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).[10] However, "nothing contained [in Title IX] shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686. "A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. "Title IX is a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that broad prohibition." *Jackson*, 544 U.S. at 175.

"'Whatever temptations the statesmanship of policy-making might wisely suggest,' the judge's job is to construe the statute—not to make it better" or change it. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 533 (1947)). This inquiry "must begin[] with the language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69

---

[10] Defendants do not contest that Noble, Moore, and Oklahoma City Public Schools receive federal funding.

A-0255

(2011). "The judge 'must not read in by way of creation,' but instead abide by the 'duty of restraint, th[e] humility of function as merely the translator of another's command.'" *Jones*, 549 U.S. at 216 (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 533–34 (1947)).

So, since S.B. 615 separates students and the restrooms they are allowed to use based on biological sex, Plaintiffs can only prevail if "sex" under Title IX means the sex with which an individual identifies (i.e., their gender identity), not their biological sex. Accordingly, the Court must necessarily interpret what the word "sex" means in the context of Title IX.

To begin, the Court looks to ordinary public meaning of the word "sex" at the time Title IX was enacted in 1972. At that time, "virtually every dictionary definition of 'sex' referred to the physiological distinctions between males and females—particularly with respect to their reproductive functions." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 632 (4th Cir. 2020), as amended (Aug. 28, 2020) (Niemeyer, J. dissenting) (collecting dictionary definitions). In 1961, the Oxford English Dictionary defined sex as "[t]he sum of those differences in the structure and function of the reproductive organs on the ground of which beings are distinguished as male and female, and of the other physiological differences consequent on these." *The Oxford English Dictionary* 578 (1961). In 1970, the American College Dictionary defined sex as "the sum of the anatomical and physiological differences with reference to which the male and the female are distinguished." *The American College Dictionary* 1109 (1970). In 1979, Webster defined it as "the sum of the structural, functional, and behavioral characteristics of living

14

A-0256

beings that subserve reproduction by two interacting parents and that distinguish males and females." *Webster's New Collegiate Dictionary* 1054 (1979). This is by no means an exhaustive list. However, the above excerpts alone show that at the time Title IX was enacted, "sex" was defined by biology and reproductive functions.

Plaintiffs argue that if the Court focuses exclusively on the term "sex", then it will forget that "'[t]he question isn't just what 'sex' mean[s], but what [a statute barring sex discrimination] says about it.'" *See* Pls.' Resp. [Doc. No. 53] at 27 (citing *Bostock*, 140 S. Ct. at 1739). However, given the text of Title IX, which is different than that of Title VII, the definition of "sex" *is* determinative. Title IX explicitly allows schools to "maintain[] separate living facilities" and "separate toilet, locker room, and shower facilities" for the "different sexes." Thus, if the term "different sexes" is referring to different *biological* sex, then Oklahoma's law is perfectly in sync with Title IX.[11]

At the time Title IX was enacted, the ordinary public meaning of "sex" was understood to mean the biological, anatomical, and reproductive differences between male and female. It is up to Congress to change that meaning, not this Court.

---

[11] Plaintiffs repeatedly argue that the "meaning of 'biological sex' is a politicized one, not one grounded in science." Pls.' Resp. [Doc. No. 53] at 12 n.3. Admittedly, other circuits have reached the conclusions advocated for by Plaintiffs. *See Grimm*, 972 F.3d at 618 (stating that the school board "rel[ied] on its own discriminatory notions of what 'sex' mean[t]" because it defined "sex" by referring to the anatomical and physiological differences between males and females); *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048 (7th Cir. 2017) (concluding that biological sex is merely a "sex-based stereotype[]"). However, for the reasons stated previously and absent binding precedent to the contrary, the Court rejects the view that gender identity is synonymous with biological sex or that biological sex is a stereotype.

A-0257

Accordingly, S.B. 615 does not violate Title IX because it falls into one of the statute's narrow exceptions allowing schools to require that the different biological sexes use different living facilities such as restrooms.

**C.    Granting State Defendants' Motion to Dismiss is proper.**

Plaintiffs contend that dismissal is improper because this case involves factual disputes that require discovery before they can be resolved. However, "if, as a matter of law, the complaint . . . is insufficient, a motion to dismiss is proper." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1100 (10th Cir. 2017) (internal quotations and citation omitted). "If such a dismissal operates on the merits of the complaint, it will also ordinarily be entered with prejudice." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

Plaintiffs' complaint makes clear that Bridge's biology is that of a female, Miles's biology is that of a female, and Stiles's biology is that of a male. And, as explained above, the dispositive fact for each of Plaintiffs' claims is their biological sex. No fact-finding conducted by the Court could change this reality or make Plaintiffs' claims cognizable. *See Teigen v. Renfrow*, 511 F.3d 1072, 1075 (10th Cir. 2007) (affirming 12(b)(6) dismissal of an equal protection claim). Therefore, Plaintiffs' claims are legally insufficient, and they have failed to state a claim for which relief may be granted.

## IV.    <u>CONCLUSION</u>

For these reasons, and absent binding Supreme Court or Tenth Circuit precedent to the contrary, the Court concludes that Plaintiffs have failed to state a claim on which relief can be granted. Consequently, the Court GRANTS State Defendants' Motion to

A-0258

Dismiss [Doc. No. 47] and DISMISSES Plaintiffs' complaint [Doc. No. 1] as to the

State Defendants with prejudice. In light of the Court's dismissal of State Defendants,

the Court denies as moot Plaintiffs' Motion for Preliminary Injunction [Doc. No. 24] as

to the State Defendants.[12]

      IT IS SO ORDERED this 12th day of January 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[12] In light of the above analysis, it is clear that Plaintiffs cannot show a substantial likelihood of success on the merits for their Motion for Preliminary Injunction. Since such a showing is required to obtain a preliminary injunction, the Court refrains from addressing the other necessary factors and denies Plaintiffs' Motion for Preliminary Injunction [Doc. No. 24] as to the remaining defendants. *See State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2021) ("When the failure to satisfy one factor is dispositive, a court need not consider the other factors.").

A-0259

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **ANDREW BRIDGE, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| **-vs-** | ) |
| | ) |
| **OKLAHOMA STATE DEPARTMENT** | )    **Case No. CIV-22-787-JD** |
| **OF EDUCATION, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## SCHOOL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT

Harding Independence Charter District, Inc. ("HICD"), Noble Public Schools ("NPS"), Moore Public Schools ("MPS"), and Oklahoma City Public Schools ("OKCPS") (collectively "School Defendants") move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

A Rule 12(c) motion for judgment on the pleadings is treated the same as a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). "A motion proceeding under Rule 12(c) occurs only after the pleadings are closed and is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Krontz v. CNG Logistics, LLC*, No. 19-4081-SAC, 2020 WL 224525 (D. Kan. Jan. 15, 2020); *Totally Tickets v. Sentinel Ins. Co., Ltd.,* 549 F. Supp. 3d 1309, 1311 (W.D. Okla.

1

A-0260

2021). Under this standard, the court accepts as true the complaint's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Schrock v. Wyeth Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). However, the court need not accept as true legal conclusions and assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On September 6, 2022, Plaintiffs filed their Complaint against School Defendants alleging that School Defendants' policies under SB 615 violated Plaintiffs' equal protection rights outlined in the Fourteenth Amendment, U.S. Const. amend. XIV, §1, and that School Defendants discriminated against Plaintiffs in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C., § 1681 et seq. Doc. 1, ¶¶ 128-135, 138-146. The Complaint also alleged that Defendants 1-9 ("State Defendants") were liable for violating Plaintiffs' equal protection rights and rights under Title IX. *Id.* School Defendants answered Plaintiffs' Complaint and admitted that they were recipients of federal funds as alleged in Paragraph 141 of the Complaint. Docs. 32, ¶ 19 (OKCPS), 33, ¶ 29 (HICD), 35, ¶ 141 (Noble), and 39, ¶ 141 (Moore).

On September 29, 2022, Plaintiffs moved for a preliminary injunction. Doc. 24. On October 26, 2022, State Defendants moved to dismiss the Complaint on the basis that Plaintiffs could not establish a plausible cause of action for violation of Plaintiffs' equal protection rights under the Fourteenth Amendment or for violation of Title IX. Doc. 47. On November 16, 2022, School Defendants and State Defendants responded to Plaintiffs' Motion for Preliminary Injunction. Docs. 52 and 54.

On January 12, 2024, this Court issued an Order granting State Defendants' Motion to Dismiss. Doc. 107. The Court concluded that SB 615, codified as Okla. Stat. Tit. 70 §1-

125, does not violate the Equal Protection Clause of the Fourteenth Amendment. Doc. 107,

pp. 7-12. The Court also concluded that SB 615 does not violate Title IX. Doc. 107, pp.

12-16.

Based on the Court's analysis and conclusions finding that Plaintiffs fail to state a

cause of action against State Defendants that SB 615 violates either the Equal Protection

Clause or Title IX, School Defendants move for judgment on the pleadings. The factual

allegations of Plaintiffs' Complaint, viewed in the light most favorable to Plaintiffs, fail to

state a cause of action against School Defendants for the same reasons as set forth in the

Court's January 12, 2024 Order. Therefore, School Defendants are entitled to judgment in

their favor as a matter of law with respect to all claims alleged against them.

S/Laura L. Holmes
Laura L. Holmes, OBA #14748
Laura L. Holmgren-Ganz, OBA #12342
Justin C. Cliburn, OBA #32223
The Center For Education Law, P.C.
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile: (405) 528-5800
E-Mail: LHolmes@cfel.com
E-Mail: LGanz@cfel.com
E-Mail: JCliburn@cfel.com
Attorneys For Harding Independence
Charter District, Inc. and Oklahoma City
Public Schools

A-0262

s/ Kent B. Rainey
Kent B. Rainey, OBA No. 14619
Alison A. Verret, OBA No. 20741
Adam T. Heavin, OBA No. 34966
[Signed by Filing Attorney with
permission of Attorney]
Rosenstein, Fist & Ringold
525 South Main, Suite 700
Tulsa, OK   74103
Telephone:   (918) 585-9211
Facsimile:   (918) 583-5617
E-Mail: borainey@rfrlaw.com
E-Mail: averrett@rfrlaw.com
E-Mail: adamheavin@rfrlaw.com
Attorneys for Moore Public Schools and
Noble Public Schools

**<u>Certificate of Service</u>**

I hereby certify that on February 5, 2024, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

S/Laura L. Holmes
Laura L. Holmes

A-0263

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Andrew Bridge, et al., *Plaintiffs*, v. Oklahoma State Department of Education, et al., *Defendants*. | Case No. CIV-22-787-JD |

## PLAINTIFFS' OPPOSITION TO SCHOOL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

On February 5, 2024, Independent School District No. 40 of Cleveland County, Oklahoma ("Noble Public Schools"), Independent School District No. 2 of Cleveland County, Oklahoma ("Moore Public Schools"), Independent School District No. 89 of Oklahoma County, Oklahoma ("Oklahoma City Public Schools"), and Harding Independence Charter District, Inc. ("HICD," and together with Noble Public Schools, Moore Public Schools, and Oklahoma City Public Schools, the "School Defendants") moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). *See* Doc. No. 114. The School Defendants argue that dismissal of Plaintiffs' claims against the School Defendants is required for the same reasons requiring dismissal of Plaintiffs'

A-0264

claims against the State Defendants,[1] as set forth in the Court's January 12, 2024 Order granting the State Defendants' Motion to Dismiss. *See* Doc. No. 107.

In opposing the School Defendants' motion, Plaintiffs incorporate here by reference the arguments set forth in their Opposition to the State Defendants' Motion to Dismiss. *See* Doc. No. 53. Plaintiffs, however, recognize that the reasoning of the Court's January 12, 2024 Order as to the State Defendants—although Plaintiffs disagree with the Court's decision and intend to appeal it—applies equally to Plaintiffs' claims against the School Defendants. Plaintiffs therefore do not restate their arguments in opposition to dismissal simply to preserve judicial efficiency. Plaintiffs reserve all rights to challenge on appeal the Court's January 12, 2024 Order as to the State Defendants and any forthcoming order as to the School Defendants.

---

[1] The State Defendants include the Oklahoma State Department of Education; Ryan Walters, in his official capacity as the State Superintendent of Public Instruction; Donald Burdick, Katie Quebedeaux, Zach Archer, Kendra Wesson, Trent Smith, and Sarah Lepak, in their official capacities as members of the Oklahoma Board of Education; and Gentner Drummond, in his official capacity as Oklahoma Attorney General.

A-0265

Dated: February 7, 2024

Respectfully submitted,

 /s/ Isaac D. Chaput
Isaac D. Chaput

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
American Civil Liberties Union
Foundation
120 Broad Street, 18th Floor
New York, New York 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org

Paul D. Castillo (*pro hac vice*)
Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, Texas 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org

Megan Lambert (Bar Number 33216)
Devraat Awasthi (Bar Number 35544)
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
mlambert@acluok.org
dawasthi@acluok.org

Isaac D. Chaput (*pro hac vice*)
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

Robert Gianchetti (*pro hac vice*)
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
rgianchetti@cov.com

*Attorneys for Plaintiffs*

A-0266

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 7, 2024, I electronically filed Plaintiffs' Opposition to School Defendants' Motion for Judgment on the Pleadings with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

<u>/s/ Isaac D. Chaput</u>
Isaac D. Chaput

A-0267

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ELI BRIDGE, on behalf of Andrew Bridge, a minor, by his next friends and parents, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| INDEPENDENT SCHOOL DISTRICT NO. 40 OF CLEVELAND COUNTY, OKLAHOMA, also known as Noble Public Schools, et al., | ) ) ) ) ) |
| Defendants. | ) ) |

Case No. CIV-22-00787-JD

**<u>ORDER</u>**

On January 12, 2024, the Court granted the Motion to Dismiss filed by the State Defendants. [Doc. No. 107]. Now before the Court is the School Defendants' Motion for Judgment on the Pleadings [Doc. No. 114]. Plaintiffs responded [Doc. No. 116], and School Defendants did not reply.

The Court reviews a motion under Federal Rule of Civil Procedure 12(c) "'under the standard of review applicable to a Rule 12(b)(6) motion to dismiss.'" *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009) (quoting *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005)). In reviewing a motion to dismiss, the Court "'must look for the plausibility in the complaint.'" *Id.* (quoting *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007)).

Determining plausibility is a "context-specific task" that requires the judge to use her "experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The

concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; rather, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191–92 (10th Cir. 2009) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

The Court already determined that, under the relevant law and assuming the truth of their allegations, Plaintiffs are not entitled to relief against the State Defendants. Although they disagree with the Court's decision, Plaintiffs recognize that the reasoning of the Court's Order of January 12, 2024 "applies equally to Plaintiffs' claims against the School Defendants." [Doc. No. 116 at 2]. Therefore, the Court grants the School Defendants' Motion for the same reasons it granted the State Defendants' Motion to Dismiss. *See* [Doc. No. 107].

IT IS SO ORDERED this 22nd day of March 2024.


_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

A-0269

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELI BRIDGE, on behalf of Andrew Bridge, a minor, by his next friends and parents, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>OKLAHOMA STATE DEPARTMENT OF EDUCATION, et al.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. CIV-22-00787-JD |

### JUDGMENT

Under Federal Rule of Civil Procedure 58(a), and in accordance with the Court's Orders of January 12, 2024 [Doc. No. 107] and today [Doc. No. 117], the Court dismisses with prejudice Plaintiffs' action against Defendants.

IT IS SO ORDERED this 22nd day of March 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

A-0270

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Andrew Bridge, et al.,

    *Plaintiffs*,

          v.

Oklahoma State Department of
Education, et al.,

    *Defendants*.

Case No. CIV-22-787-JD

## <u>NOTICE OF APPEAL</u>

Notice is given that Plaintiffs Andrew Bridge, Mark Miles, and Sarah Stiles, by and through their respective parents and next friends, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the March 22, 2024 Judgment issued by this Court dismissing Plaintiffs' action against all Defendants with prejudice (Doc. No. 118).

A-0271

Dated: April 19, 2024                    Respectfully submitted,

                                          /s/ Isaac D. Chaput
                                         Isaac D. Chaput

Jon W. Davidson (*pro hac vice*)          Paul D. Castillo (*pro hac vice*)
(admitted only in California)            Lambda Legal Defense and
American Civil Liberties Union           Education Fund, Inc.
Foundation                               3500 Oak Lawn Ave., Ste. 500
120 Broad Street, 18th Floor             Dallas, Texas 75219
New York, New York 10005-3919            Telephone: (214) 219-8585
Telephone: (323) 536-9880                Facsimile: (214) 481-9140
Facsimile: (212) 809-0055                pcastillo@lambdalegal.org
jondavidson@aclu.org


Megan Lambert (Bar Number 33216)         Isaac D. Chaput (*pro hac vice*)
Devraat Awasthi (Bar Number 35544)       Covington & Burling LLP
American Civil Liberties Union of        Salesforce Tower
Oklahoma Foundation                      415 Mission Street, Suite 5400
PO Box 13327                             San Francisco, CA 94105
Oklahoma City, OK 73113                  Telephone: (415) 591-6000
Telephone: (405) 525-3831                ichaput@cov.com
mlambert@acluok.org
dawasthi@acluok.org                      Robert Gianchetti (*pro hac vice*)
                                         Covington & Burling LLP
                                         620 Eighth Avenue
                                         New York, NY 10018
                                         Telephone: (212) 841-1000
                                         rgianchetti@cov.com


                                         *Attorneys for Plaintiffs*

A-0272

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on April 19, 2024, I electronically filed the foregoing Notice of Appeal with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

                                    <u>/s/ Isaac D. Chaput</u>
                                      Isaac D. Chaput

A-0273

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**
www.okwd.uscourts.gov

**CARMELITA REEDER SHINN**
CLERK

**JOAN C. KANE**
CHIEF DEPUTY

200 N.W. 4th Street, Room 1210
Oklahoma City, Oklahoma 73102
(405) 609-5000    Fax (405) 609-5099

April 19, 2024

☐ Pro Se    ☑ Retained    ☐ Court Appointed    ☐ USA
                                    (IFP Granted)

Case No: CIV-22-787-JD              Date Filed: 04/19/2024

Style of Case: Bridge et al v. Oklahoma State Department of Education et al
Appellant: Eli Bridge;Aysha Prather;Max Miles;Mia Miles;Steve Stiles;Sue Stiles

☐ Notice of Appeal                  ☐ Amended Notice of Appeal
☐ Interlocutory Appeal              ☐ Cross Appeal
                                    ☐ Tenth Cir. Case No.

Pro se Appellant:
☐ Motion IFP Forms Mailed/Given    ☐ Motion IFP Filed    ☐ Appeal Fee Paid

Retained Counsel:
☑ Appeal Fee Paid    ☐ Appeal Fee Not Paid

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals.  Please refer to the forms and procedures concerning the requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record found on the Tenth Circuit's website, www.ca10.uscourts.gov.

Payment for this case or motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 working days after the notice of appeal was filed in the Circuit Court.  This form must contain the signature of the court reporter if transcripts are being ordered.

If you have questions, please contact this office.

Sincerely,

CARMELITA REEDER SHINN, COURT CLERK

by:  s/ R. Popp
              Case Administrator

cc:    Clerk of the Court, Tenth Circuit Court of Appeals

A-0274

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

April 19, 2024

Mr. Isaac D Chaput
Covington & Burling
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105

Mr. Jon W. Davidson
ACLU Criminal Law Reform Project
125 Broad Street
18th Floor
New York, NY 10004-0000

Robert Gianchetti
Covington & Burling
The New York Times Building
620 Eighth Avenue
New York, NY 10018

Ms. Megan Lambert
ACLU of Oklahoma Foundation
Legal Department
P.O. Box 13327
Oklahoma City, OK 73113

**RE:    24-6072, Bridge, et al v. Oklahoma State Department of Education, et al.,**
        Dist/Ag docket: 5:22-CV-00787-JD

Dear Counsel:

Your appeal has been docketed, and the appeal number is above.

A-0275

**Within 14 days** from the date of this letter, Appellant's counsel must electronically file:

- **An entry of appearance and certificate of interested parties** per 10th Cir. R. 46.1(A) and (D).
- **A docketing statement** per 10th Cir. R. 3.4.
- **A transcript order form or notice that no transcript is necessary** per 10th Cir. R. 10.2. This form must be filed in **both** the district court and this court.

**In addition, all counselled entities** that are required to file a Federal Rule of Appellate Procedure 26.1 disclosure statement must do so **within 14 days of the date of this letter**. All parties must refer to Federal Rule of Appellate Procedure 26.1 and Tenth Circuit Rule 26.1 for applicable disclosure requirements. All parties required to file a disclosure statement must do so even if there is nothing to disclose. Rule 26.1 disclosure statements must be promptly updated as necessary to keep them current.

**Also within 14 days**, Appellee's counsel must electronically file an entry of appearance and certificate of interested parties. **Attorneys that do not enter an appearance within the specified time frame will be removed from the service list.**

The Federal Rules of Appellate Procedure, the Tenth Circuit Rules, and forms for the aforementioned filings are on the court's website. The Clerk's Office has also created a set of quick reference guides and checklists that highlight procedural requirements for appeals filed in this court.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:    William Patrick Flanagan
       Garry Michael Gaskins II
       Laura L. Holmes
       Laura Lynn Holmgren-Ganz
       Kyle Peppler
       Audrey A. Weaver

CMW/at

A-0276

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2024, I electronically filed the foregoing document through the Court's electronic filing system, and that it has been served on all counsel of record through the Court's electronic filing system.

*/s/ Isaac D. Chaput*
Isaac D. Chaput
